**IN THE COURT OF COMMON PLEAS**
**BELMONT COUNTY, OHIO**

COMMON PLEAS COURT
BELMONT CO. OH.

2019 APR 25 AM 11: 13

TERA II, LLC
65010 Country Club Road
Belmont, Ohio 43718

and

TERA III Honza, LLC
65010 Country Club Road
Belmont, Ohio 43718

and

TERA JV, LLC
65010 Country Club Road
Belmont, Ohio 43718

and

TERA Watson, LLC
47002 Watson Road
St. Clairsville, OH 43950

and

Thomas Shaw
47210 Belmont-Warnock Road,
Belmont, Ohio 43718

    Plaintiffs,

     v.

Rice Drilling D LLC
Corporation Service Company
50 West Broad Street Suite 1330
Columbus, OH 43215

and

Gulfport Energy Corporation
Corporation Service Company Agent
50 West Broad Street Suite 1330
Columbus, OH 43215

Case No. *19 CV 157*


            Frank A. Fregiato
Judge _____


**COMPLAINT WITH JURY**
**DEMAND**

and

Ascent Resources-Utica LLC
Capitol Corporate Services Inc. SA
4568 Mayfield Rd Suite 204
Cleveland, OH 44121

and

XTO Energy Inc
Corporation Service Company
50 West Broad Street, Suite 1330
Columbus, OH 43215

and

Phillips Exploration LLC
810 Houston St.
Fort Worth, TX 76102

      Defendants.

## COMPLAINT WITH JURY DEMAND ENDORSED HEREON

Now comes Plaintiffs TERA II, LLC, TERA III Honza, LLC, TERA IV, LLC, TERA

Watson, LLC, and Thomas Shaw (collectively, "Plaintiffs"), by and through counsel, and hereby

states as follows for their Complaint:

## JURISDICTION AND VENUE

1.     Plaintiff TERA II, LLC is an Ohio limited liability company, whose principal

place of business is 65010 Country Club Road, Belmont, Ohio 43718, that owns certain oil and

gas mineral rights subject of this complaint located in Richland Township, Belmont County,

Ohio.

2.     Plaintiff TERA III Honza, LLC is an Ohio limited liability company, whose

principal place of business is 65010 Country Club Road, Belmont, Ohio 43718, that owns certain

oil and gas mineral rights subject of this complaint located in Richland Township, Belmont County, Ohio.

3.    Plaintiff TERA IV, LLC is an Ohio limited liability company, whose principal place of business is 65010 Country Club Road, Belmont, Ohio 43718, that owns certain oil and gas mineral rights subject of this complaint located in Smith Township, Belmont County, Ohio.

4.    Plaintiff TERA Watson, LLC is an Ohio limited liability company, whose principal place of business is 47002 Watson Road, St. Clairsville, Ohio 43950, that owns certain oil and gas mineral rights subject of this complaint located in Richland Township, Belmont County, Ohio.

5.    Plaintiff Thomas Shaw is an individual who resides at 47210 Belmont-Warnock Road, Belmont, Ohio 43718 and owns certain oil and gas mineral rights subject of this complaint located in Richland Township, Belmont County, Ohio.

6.    Defendant Rice Drilling D, LLC is a Delaware limited liability company that is licensed to do business in the State of Ohio with a principal place of business located at 625 Liberty Avenue, Suite 1700, Pittsburgh, PA 15222.

7.    Defendant Gulfport Energy Corporation is a Delaware corporation that is licensed to do business in the State of Ohio and whose principal place of business is 3001 Quail Springs Parkway, Oklahoma City, OK 73134.

8.    Defendant Ascent Resources – Utica, LLC is an Oklahoma limited liability company that is licensed to do business in the State of Ohio with a principal place of business located at 3501 NW 63rd St., Oklahoma City, OK 73116.

3

9. Defendant XTO Energy Inc. (hereinafter "XTO") is a Delaware corporation that is licensed to do business in the State of Ohio and whose principal place of business is 22777 Springwoods Village Pkwy., Spring, TX 77389.

10. Defendant Phillips Exploration, LLC is a Delaware limited liability company that is not licensed to do business in the State of Ohio, but does business in Ohio, and whose principal place of business is 810 Houston St., Fort Worth, TX 76102.

11. Venue is proper in Belmont County, Ohio, pursuant to Civil Rule 3(B)(3) in that this is the County in which Defendants conducted activities which gave rise to the claims for relief, and Rule 3(B)(5) in that this is the County in which the real property which is the subject of the action is located and Rule 3(B)(6) in that this is the County in which the claims for relief arose.

## FACTUAL BACKGROUND

## <u>POINT PLEASANT FORMATION</u>

12. Plaintiffs reassert every allegation contained in the foregoing paragraphs as if stated verbatim herein.

13. In recent years, oil and gas companies have implemented new technology to drill *horizontal* oil and gas wells into shale (rock) formations to extract oil and gas.

14. Starting in 2011, large oil and gas companies such as Defendants began drilling horizontal wells in eastern Ohio in what has become colloquially known as the "Utica/Point Pleasant Shale Play."

15. While the nomenclature for the drilling activity in eastern Ohio is generally called the Utica/Point Pleasant Shale Play, the Utica Shale formation and the Point Pleasant formation are separate and distinct formations.

4

16.     In or around 2012, there was a concerted effort made by the oil and gas industry to specifically delineate a distinction between the Utica formation and the Point Pleasant formation. As explained by Chesapeake Exploration LLC[1] in a 2012 presentation[2] to the Technical Advisory Counsel of the Ohio Department of Natural Resources:

> Although the Utica Shale was (and is) the commonly accepted <u>nomenclature</u> applied to this horizontal shale play [in eastern Ohio], geologic data from wire line logs and cores indicated that it is the Point Pleasant Formation that is the producing reservoir. **The Point Pleasant underlies the Utica**, is approximately 120 feet thick and consists of interbedded shales, calcareous siltstones and carbonates. **The pay zone within the Point Pleasant is a relatively thin layer in the lower third of the Point Pleasant** and it is within that zone where the horizontal drilling and production occurs (emphasis added).

17.     Around the same time, on April 9, 2012, another oil and gas company, Anadarko, that drilled horizontal wells in Ohio requested that the Ohio Department of Natural Resources change the Formation designation on existing Anadarko permits to reflect its target formation as the Point Pleasant formation. It wrote:

> The original applications for those permits to drill reflected the Utica, the Utica/Point Pleasant, or the Utica/Lower Point Pleasant as the target formation. After discussing the fact that the horizontal lateral wells in our exploration efforts are all targeting what **we agreed is typically referred to in [sic] industry as the Point Pleasant formation**, we concluded it would be appropriate to consistently refer to the Point Pleasant formation as our target reservoir for all of our exploration wells…[3]

18.     Also in 2012, the Ohio Legislature passed S.B. 315 defining a "horizontal well" to be "a well that is drilled for the production of oil or gas in which the wellbore reaches a horizontal or near horizontal position in the <u>Point Pleasant</u>, Utica, or Marcellus formation and the well is stimulated" (emphasis added). R.C. 1509.01(GG) (eff. 9/10/2012).

---

[1] Chesapeake Exploration LLC has drilled the most horizontal oil and gas wells in the State of Ohio to date. *See* http://oilandgas.ohiodnr.gov/portals/oilgas/shale-activity/comprehensive/Utica_110318.pdf.
[2] A copy of the Presentation is attached as **Exhibit A**.
[3] A copy of Anadarko's April 9, 2012 email to the Ohio Division of Natural Resources Division of Oil & Gas Resources is attached as **Exhibit B**.

19. In 2012, the Ohio Department of Natural Resources, Division of Geological Survey also recognized that the Utica Shale formation is a separate and distinct formation from the Point Pleasant formation; that the Point Pleasant formation is underneath the Utica Shale formation; that the Point Pleasant formation is above the Trenton Limestone formation; and that the Point Pleasant formation is a primary reservoir of oil, natural gas, and other hydrocarbon products.[4]

20. The Ohio Department of Natural Resources, Division of Oil and Gas Resources Management ("DOGRM") regulates the oil and gas industry in Ohio and requires an oil and gas company to submit a Well Completion Record (Form 8)[5] after drilling and fracturing a horizontal well in Ohio. The Well Completion Record requires the oil and gas company to identify the specific formation(s) from which it is producing oil and gas from a particular well. The second page of Well Completion Record form identifies and lists fifty-seven (57) different formations in Ohio by order of depth.

21. In 2012, DOGRM amended its Well Completion Record to separately identify the Point Pleasant formation. Thereafter, the Well Completion Record form indicates that the Utica Shale formation is distinctly separate from and lies above the Point Pleasant formation.

22. Accordingly, in 2012, the oil and gas industry, the Ohio Legislature, the Ohio Department of Natural Resources Division of Geologic Survey, and the Ohio Department of Natural Resources Division of Oil and Gas, all acknowledged the Point Pleasant formation is separate and distinct from the Utica Shale.

---

[4] See, **Exhibit C**.
[5] A copy of Form 8 Well Completion Record is attached as **Exhibit D**.

23.     The Utica Shale formation and the Point Pleasant formation are separate and distinct formations based on lithology and geologic characteristics.[6]

24.     The Utica Shale formation and the Point Pleasant formation are separate and distinct formations based on stratigraphy.

25.     The Utica Shale formation and the Point Pleasant formation are recognized within the oil and gas industry as being separate and distinct formations.[7]

26.     Defendant Gulfport admits that the Utica Shale and Point Pleasant formations are separate and distinct formations in its Applications for Unit Operations Pursuant to R.C. 1509.28 publicly filed with the DOGRM. For example, in the prepared testimony of Michael Buckner on behalf of Gulfport Energy Corp. in its Application of Gulfport Energy Corporation for Unit Operations in the Horseshoe B Unit, dated July 19, 2017 and later supplemented, filed with the DOGRM ("Horseshoe Application")[8] Gulfport states:

> Q16: What do these exhibits tell us about the Horseshoe B Unit?
>
> A:16: Exhibits MB-1 and MB-2 are a location map and cross section created using downhole electric logs, respectively. **The cross-section suggests equal thickness of the Utica formation and Point Pleasant formation** and the location map shows the extent of the predicted thickness across the Horseshoe B Unit. (emphasis added).
>
> ***
>
> Q19: How and why were these formations chosen?

---

[6] Hickman, J. et al. 2015, A Geologic Play Book for Utica Shale Appalachian Basin Exploration, Final Report July 1, 2015, Utica Shale Appalachian Basin Exploration Consortium, Coordinated by the Appalachian Oil and Natural Gas Consortium at West Virginia University.

[7] U.S. Energy Information Administration, Utica Shale Play: Geology Review, April 2017.

[8] A copy of relevant portions of the Horseshoe Application are attached as **Exhibit E.**

7

A19: We expect to produce from **both the Utica Shale and Point Pleasant formations**, though fractures from completion activities may extend outside those formations. We ask for a 50' buffer above and below the productive formation for this reason. (emphasis added).

27.     Defendant Rice admits that the Utica Shale and Point Pleasant formations are separate and distinct formations in its Applications for Unit Operations Pursuant to R.C. 1509.28 publicly filed with the DOGRM. For example, Rice states it is producing its horizontal wells:

> A6: Fifty feet (50') above the top of the Utica Shale to fifty feet (50') below the base of the Point Pleasant formation.[9]

28.     Defendant Ascent admits that the Utica Shale and Point Pleasant formations are separate and distinct formations in its Applications for Unit Operations Pursuant to R.C. 1509.28 publicly filed with the DOGRM. For example, Ascent states it is producing:

> A8: 50' above the top of the Utica Shale, to 50' below the base of the Point Pleasant formation.[10]

29.     Defendant XTO admits that the Utica Shale and Point Pleasant formations are separate and distinct formations in its Applications for Unit Operations Pursuant to R.C. 1509.28 publicly filed with the DOGRM. For example, XTO states:

> A17: . . . The cross section going over the Heller B Unit shows a near equal thickness of the Utica and Point Pleasant formations. [11]

---

[9] Prepared Direct testimony of Derek Rice attached to the Application of Rice Drilling D LLC ("RICE") FOR UNIT OPERATIONS for the Gold Digger Unit dated January 24, 2014.

[10] Prepared Testimony of Michael Hale on Behalf of Ascent Resources-Utica, LLC attached to the Application of Ascent Resources- Utica, LLC ("ARU") for Unit Operations for the Sophia Joe SW CLR BL Unit dated February 17, 2016.

[11] Prepared Direct Testimony of Jeff Jacksons on Behalf of XTO Energy Inc. ("XTO") (Geologist) attached to the Application of XTO Energy Inc. ("XTO") For Unit Operations for the Heller B Unit dated June 16, 2015.

## PLAINTIFFS' PROPERTY AND LEASES

30.     Plaintiff TERA II, LLC acquired 54.02 acres, more or less, by virtue of Warranty Deed dated October 27, 2011 recorded in the Official Record Book 294, Page 439 and by virtue of Warranty Deed dated March 8, 2015 recorded in the Official Record Book 537, Page 1191 ("TERA II Property").

31.     Plaintiff TERA II, LLC leased 32.865 acres of the TERA II Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record Book 449, Page 197 ("TERA II Lease One"). Rice assigned said lease to Ascent by Assignment and Bill of Sale recorded in Official Record Book 563, Page 534. Ascent assigned a partial interest in the said lease to Gulfport by Correction Assignment, Bill of Sale and Conveyance recorded in Official Record Book 595, Page 56.

32.     Plaintiff TERA II, LLC's predecessor in title leased 0.4606 acres of the TERA II Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record Book 449, Page 193 ("TERA II Lease Two") (TERA II Lease One and TERA II Lease Two shall collectively be referred to as "TERA II Lease"). Rice assigned the TERA II Lease to Ascent by Assignment and Bill of Sale recorded in Official Record Book 563, Page 534.

33.     Prior to executing the TERA II Lease, Rice knew, or should have known, that the Point Pleasant formation was a separate and distinct formation from the Utica formation.

34.     Plaintiff TERA III Honza, LLC acquired 163.06 acres, more or less, by virtue of Warranty Deed dated March 8, 2015 recorded in the Official Record Book 537, Page 1184 ("TERA III Honza Property").

35.     Plaintiff TERA III Honza, LLC's predecessor in title leased the TERA III Honza Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record Book 446, Page 830 ("TERA III Honza Lease").

36.     Prior to executing the TERA III Honza Lease, Rice knew, or should have known, that the Point Pleasant formation was a separate and distinct formation from the Utica formation.

37.     Plaintiff TERA IV, LLC acquired 303.633 acres, more or less, by virtue of Warranty Deed dated March 8, 2015 recorded in the Official Record Book 537, Page 1261 ("TERA IV Property").

38.     Plaintiff TERA IV, LLC's predecessor in title leased the TERA IV Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record Book 446, Page 842 ("TERA IV Lease").

39.     Prior to executing the TERA IV Lease, Rice knew, or should have known, that the Point Pleasant formation was a separate and distinct formation from the Utica formation.

40.     Plaintiff TERA Watson, LLC acquired 7.398 acres, more or less, by virtue of Warranty Deed dated November 15, 2016 recorded in the Official Record Book 652, Page 203 ("TERA Watson Property").

41.     Plaintiff TERA Watson, LLC's predecessor in title leased the TERA Watson Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record Book 446, Page 838 ("TERA Watson Lease").  Rice assigned the said TERA Watson Lease to Ascent by Assignment and Bill of Sale recorded in the Official Record Book 678, Page 25.

42.     Prior to executing the TERA Watson Lease, Rice knew, or should have known, that the Point Pleasant formation was a separate and distinct formation from the Utica formation.

43.     Plaintiff Thomas Shaw is an owner of an undivided one-half (1/2) interest in 66.079 by virtue of deed recorded in Vol. 364, Page 666 of Belmont County, Ohio ("Shaw Property").

44.     Plaintiff Thomas Shaw leased the Shaw Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record Book 449, Page 189 ("Shaw Lease").

45.     Prior to executing the Shaw Lease, Rice knew, or should have known, that the Point Pleasant formation was a separate and distinct formation from the Utica formation.

46.     The TERA II Lease, the TERA III Honza Lease, the TERA Watson Lease, the TERA IV Lease, and the Shaw Lease are identical in their terms and conditions, except as to the property encumbered by each respective lease and the lessor/owner of each property, and are collectively referred to as the "Plaintiffs' Leases".

47.     The Plaintiffs' Leases provide that the lessee has the right to develop and produce oil and gas from the top to the base of Marcellus Shale formation and Utica Shale formation, only.

48.     The Plaintiffs' Leases reserved to the lessor (now the Plaintiffs) all of the oil and gas minerals from all other formation, including but not limited to, the Point Pleasant formation.

49.     Specifically, the granting clause of Plaintiffs' Leases states:

Lessor, in consideration of the payments described herein and the covenants and agreements hereafter contained, hereby leases and lets exclusively to the Lessee all the oil, gas, minerals and their constituents (not including coal) **in the formations commonly known as the Marcellus Shale and the Utica Shale,** underlying the land described below . . . Together with such exclusive rights as may be necessary or convenient for the Lessee to explore for, develop, produce, measure, and market production from said **Marcellus Shale and Utica Shale** underlying the Leasehold . . . [and] to stimulate or fracture said **Marcellus Shale and Utica Shale formations** (emphasis added).

50.    In addition to the granting clause, the Plaintiffs' Leases also contain a reservation clause, titled Article I. Reservations - (a) Lessor's Reserved Rights, which states:

> Lessor reserves all rights not specifically granted to Lessee in this Lease. **Lessor specifically reserves the rights to all products contained in any formation:** (1) from the surface of the Leased Premises to the top of the formation commonly known as the Marcellus Shale, (2) in any and all formations below the base of the Marcellus Shale to the top of the formation commonly known as the Utica Shale, **and (3) in all formations below the base of the Utica Shale.** Notwithstanding anything to the contrary, Lessee is specifically granted the right to penetrate and drill through the shallower formations in order to drill and produce the Leased Products and the Leased Premises. Lessor also reserves the right to drill through any leased shale(s) subject to Lessee approval which shall not be unreasonably withheld so as not to interfere with the Lessee's drilling operations, and a right of way on all lands granted hereunder and the right to use the Leased Premises and any improvements thereon for any and all other purposes, so long as that right of way does not cause unreasonable interference with Lessee's operations or pose an immediate or foreseeable safety problem to Lessee and/or Lessor. Lessee agrees not to unreasonably interfere with the use and employment of said land by Lessor and Lessor's family, agents, employees, invitees, and guests and to comply with all other specific provisions herein relating to the use of the land (emphasis added).

51.    Moreover, the Lessee Covenants in Article XV states:

> Any and all duties and obligations Lessee has are under implied covenants to benefit landowners and covenants under this lease. The Lessee will utilize current and future technologies to develop the property as operator sees fits [sic] after drilling an initial well, as a prudent operator all reasonable efforts to maximize the development of the resources associated with the Leased Premises in a prudent and efficient manner will be employed with then intent and purposed to cause all of the Lessor's acreage to be included in one or more units of production, primarily implementing horizontal drilling techniques, but not excluding vertical techniques so as to maximize production recovery of all the oil and gas resources contained in the **Marcellus Shale and Utica Shale** and to minimize or eliminate any "orphan" acreage (emphasis added).

52.    Subsequent to executing the Plaintiffs' Leases, Rice and its working interest knowingly trespassed when they drilled horizontal wells in and under Plaintiffs' respective

properties that are producing oil and gas minerals from the Plaintiffs' respective Point Pleasant formation.

53.     Subsequent to executing the Plaintiffs' Leases, Gulfport and its working interest knowingly trespassed when they drilled horizontal wells in and under Plaintiffs' respective properties that are producing oil and gas minerals from the Plaintiffs' respective Point Pleasant formation.

54.     Subsequent to executing the Plaintiffs' Leases,  Ascent and its working interest knowingly trespassed when they drilled horizontal wells in and under Plaintiffs' respective properties that are producing oil and gas minerals from the Plaintiffs' respective Point Pleasant formation.

## DRILLING ACTIVITY ON TERA II PROPERTY

55.     Defendant Gulfport has included certain TERA II Property in its Dorsey East Unit where it drilled two horizontal wells: the Dorsey 210963 1B well and the Dorsey 210963 2A well.

56.     Defendants Rice, Ascent, XTO, and Phillips each own an interest in the Dorsey East Unit wells and receive revenues from the sale of oil, gas and/or other hydrocarbon products produced from the aforementioned wells.

57.     Rice entered into a joint venture agreement with Gulfport to allow Gulfport the right to drill a horizontal well pursuant to the TERA II Lease.

58.     Ascent, XTO, and Phillips each have entered into a joint venture agreement with Gulfport to drill said wells.

59.     Prior to drilling the aforementioned wells under the TERA II Lease, Rice, Gulfport, Ascent, XTO, and Phillips each knew, or should have known, that the Point Pleasant formation was separate and distinct from the Utica Shale formation.

13

60.     Prior to drilling the aforementioned wells under the TERA II Lease, Rice, Gulfport, Ascent, XTO, and Phillips knew, or should have known, that the TERA II Lease did not permit them to drill into and produce oil, gas, or other hydrocarbon products from the Point Pleasant formation.

61.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Dorsey 210963 1B Well (API No. 34013210630000) into TERA II's Point Pleasant formation and has illegally produced 8,441,630 MCFs of gas as of September 30, 2018, some or all of which was illegally produced from the TERA II Property.

62.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Dorsey 210963 2A Well (API No. 34013210630000) into TERA II's Point Pleasant formation and has illegally produced 7,437,401 MCFs of gas as of September 30, 2018, some or all of which was illegally produced from the TERA II Property.

## DRILLING ACTIVITY ON TERA III HONZA PROPERTY

63.     Defendant Gulfport has included some of Plaintiff TERA III Honza's Property in its Snodgrass West Unit where it drilled two horizontal wells: the Snodgrass 210010 1B well and the Snodgrass 210010 3A well.

64.     Defendants Rice, Ascent, XTO, and Phillips each own an interest in the Snodgrass West Unit wells and each receive revenues from the sale of oil, gas and/or other hydrocarbon products produced from the aforementioned wells.

65.     Rice entered into a joint venture agreement with Gulfport to allow Gulfport the right to drill a horizontal well pursuant to the TERA III Honza Lease.

66.     Ascent, XTO, and Phillips each have entered into a joint venture agreement with Gulfport to drill said wells.

14

67.     Prior to drilling, Rice, Gulfport, Ascent, XTO, and Phillips each knew, or should have known, that the Point Pleasant formation was separate and distinct from the Utica Shale formation.

68.     Prior to drilling, Rice, Gulfport, Ascent, XTO, and Phillips each knew, or should have known, that the TERA III Honza Lease did not permit them to drill into and produce oil, gas, or other hydrocarbon products from the Point Pleasant formation.

69.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Snodgrass 21 0010 1B well (API No. 34013211100000) into TERA III Honza's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, some or all of which was illegally produced from the TERA III Honza's Property.

70.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Snodgrass 21 0010 3A well (API No. 34013211070000) into TERA III Honza's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, some or all of which was illegally produced from the TERA III Honza's Property.

## DRILLING ACTIVITY ON TERA IV PROPERTY

71.     Defendant Rice has included the TERA IV Property in its Gold Digger Unit (Gold Digger 10 Well), Gold Digger South 3 Unit (Gold Digger 6H Well), Gold Digger South 4 Unit (Gold Digger 8H Well ), Son-Uva Digger North Unit (Son-Uva Digger 1H, Son-Uva Digger 3H, and Son-Uva Digger 5H-A Wells), and Bigfoot 7 Unit (Bigfoot 10 Well).

72.     Rice entered into a joint venture agreement with Gulfport to jointly develop the TERA IV Property. Gulfport is a working interest owner in the TERA IV Lease and has received revenues from the sale of oil, gas, and/or other hydrocarbons produced from said wells.

73.     Ascent, XTO, and Phillips each have entered into a joint venture agreement with Rice to drill said wells.

74.     Defendants Ascent, XTO, and Phillips each own an interest in the Gold Digger South 4 Unit well and each receive revenues from the sale of oil, gas and/or other hydrocarbon products produced from the aforementioned wells.

75.     Prior to drilling, Rice, Gulfport, Ascent, XTO, and Phillips each knew, or should have known, that the Point Pleasant formation was separate and distinct from the Utica Shale formation.

76.     Prior to drilling, Rice, Gulfport, Ascent, XTO, and Phillips each knew, or should have known, that the TERA IV Lease did not permit them to drill into and produce oil, gas, or other hydrocarbon products from the Point Pleasant formation.

77.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Gold Digger Well 6 (API No. 34013210740000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, some or all of which was illegally produced from the TERA IV Property.

78.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Gold Digger Well 8 (API No. 34013210730000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

79.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Gold Digger 10 Well (API No. 34013210720000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

80.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Son-Uva Digger 1H (API No. 34013207790000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

81.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Son-Uva Digger Well 3H (API No. 34013207780000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

82.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Son-Uva Digger Well 5H-A (API No. 34013208700000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

83.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Bigfoot Well 10 (API No. 34013210670000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

## DRILLING ACTIVITY ON TERA WATSON PROPERTY

84.     Defendant Ascent has included the TERA Watson Property in its Coleman RCH BL Unit (Coleman RCH BL 1H Well) and Ross SE RCH BL Unit (Ross SE RCH BL 11H Well).

85.     Prior to drilling, Ascent each knew, or should have known, that the Point Pleasant formation was separate and distinct from the Utica Shale formation.

86.     Prior to drilling, Ascent knew, or should have known, that the TERA Watson Lease did not permit them to drill into and produce oil, gas, or other hydrocarbon products from the Point Pleasant formation.

87.     Notwithstanding its aforesaid knowledge, Ascent drilled its Coleman RCH BL 1H Well (API No. 34013210300000) into TERA Watson's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA Watson Property.

88.     Notwithstanding its aforesaid knowledge, Ascent drilled its Ross SE RCH BL 11H Well (API No. 34013210310000) into TERA Watson's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA Watson Property.

## DRILLING ACTIVITY ON SHAW PROPERTY

89.     Defendant Gulfport has included a portion of the Shaw Property in its Dorsey East Unit where it drilled two horizontal wells: the Dorsey 210963 1B well and the Dorsey 210963 2A well.

90.     Rice entered into a joint venture agreement with Gulfport to jointly develop the Shaw Property.

91.     Prior to drilling, Rice and Gulfport each knew, or should have known, that the Point Pleasant formation was separate and distinct from the Utica Shale formation.

92.     Prior to drilling, Rice and Gulfport each knew, or should have known, that the Shaw Lease did not permit them to drill into and produce oil, gas, or other hydrocarbon products from the Point Pleasant formation.

93. Notwithstanding its aforesaid knowledge, Rice and Gulfport drilled the Dorsey 210963 1B Well (API No. 34013210630000) into Shaw's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the Shaw Property.

94. Notwithstanding its aforesaid knowledge, Defendant Rice and Gulfport drilled the Dorsey 210963 2A Well (API No. 34013210630000) into Shaw's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the Shaw Property.

95. Notwithstanding its aforesaid knowledge, Rice is a working interest owner in the Shaw Lease and has received revenues from the sale of oil, gas, and/or other hydrocarbons produced from said wells.

96. The Well Completion Record forms[12] for each of these wells described above indicate that each of these wells were drilled into and are producing oil and gas from Plaintiffs' Point Pleasant formation.

97. Rice, Gulfport, Ascent, XTO, and Phillips do not have the right to drill into and produce Plaintiffs' Point Pleasant formation under the Plaintiffs' Leases.

98. Rice, Gulfport, Ascent, XTO, and Phillips each negligently, willfully, wantonly, recklessly, and/or intentionally, physically drilled and intruded into formations beyond the boundaries of the leased Marcellus Shale formation and leased Utica Shale formation on Plaintiffs' Properties, and have illegally produced and continue to illegally produce oil, natural gas, and other hydrocarbon products from shale formations beyond the Marcellus and Utica Shale formations,

---

[12] A copy of the Well Completion Records for each well are attached as **Exhibit F**.

19

including but not limited to, Plaintiffs' respective Point Pleasant formations, without any agreement from Plaintiffs, Plaintiffs' predecessors-in-title, or any other lawful right to do so.

## CAUSES OF ACTION

## COUNT I – DECLARATORY JUDGMENT

99.     Plaintiffs reassert every allegation contained above as if stated verbatim herein.

100.    The Plaintiffs' Leases granting clause states:

> Lessor, in consideration of the payments described herein and the covenants and agreements hereafter contained, hereby leases and lets exclusively to the Lessee all the oil, gas, minerals and their constituents (not including coal) **in the formations commonly known as the Marcellus Shale and the Utica Shale,** underlying the land described below . . . Together with such exclusive rights as may be necessary or convenient for the Lessee to explore for, develop, produce, measure, and market production from said **Marcellus Shale and Utica Shale** underlying the Leasehold . . . [and] to stimulate or fracture said **Marcellus Shale and Utica Shale formations** (emphasis added).

101.    Plaintiffs' Leases also state the following:

Lessor's Reserved Rights: **Lessor reserves all rights** not specifically granted to Lessee in this Lease. Lessor specifically reserves the rights to all products contained in any formation: (1) from the surface of the Leased Premises to the top of the formation commonly known as the Marcellus Shale, (2) in any and all formations below the base of the Marcellus Shale to the top of the formation commonly known as the Utica Shale, and (3) in **all formations below the base of the Utica Shale.** Notwithstanding anything to the contrary, Lessee is specifically granted the right to penetrate and drill through the shallower formations in order to drill and produce the Leased Products and the Leased Premises. Lessor also reserves a right of way on all lands granted hereunder and the right to use the Leased Premises and any improvements thereon for any and all other purposes, so long as that right of way does not cause unreasonable interference with Lessee's operations or pose a safety concern to Lessee. Lessee agrees not to unreasonably interfere with the use and enjoyment of said land by Lessor and Lessor's family, agents, employees, invitees, and guests and to comply with all other specific provisions herein relating to the use of the land.

102.    Moreover, the Lessee Covenants in Article XV states:

Any and all duties and obligations Lessee has are under implied covenants to benefit landowners and covenants under this lease. The Lessee will utilize current and future technologies to develop the property as operator sees fits [sic] after drilling an initial well, as a prudent operator all reasonable efforts to maximize the development of the resources associated with the Leased Premises in a prudent and efficient manner will be employed with then intent and purposed to cause all of the Lessor's acreage to be included in one or more units of production, primarily implementing horizontal drilling techniques, but not excluding vertical techniques so as to maximize production recovery of all the oil and gas resources contained in the **Marcellus Shale and Utica Shale** and to minimize or eliminate any "orphan" acreage (emphasis added).

103. Plaintiffs did not grant or convey to Rice, Gulfport, Ascent, XTO, and Phillips the right to produce oil, gas, or other hydrocarbons from below the base of the Utica Shale formation in the subject leases.

104. As set forth above, the Point Pleasant formation is a separate and distinct formation that lies below the base of Utica Shale formation.

105. Rice, Gulfport, and Ascent have each represented in this Declaration of Pooling or Operating Agreements for that they each have the right to drill their horizontal well and produce oil and gas from Plaintiffs' Point Pleasant formation under the Plaintiffs' Lease.

106. Pursuant to O.R.C. § 2721.02, courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed.

107. Pursuant to O.R.C. § 2721.03, any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

21

108.    A declaratory judgment action is proper if: (1) the action is within the scope of the Declaratory Judgment Act; (2) a justiciable controversy exists between adverse parties; and (3) speedy relief is necessary to preserve rights that may otherwise be impaired. *Freedom Found. v. Ohio Dept. of Liquor Control* (1997), 80 Ohio St.3d 202, 204.

109.    Rice, Gulfport, Ascent, XTO and Phillips each allege they have the right to produce oil and gas from below the base of the Utica Shale formation in the Point Pleasant formation pursuant to Plaintiffs' Leases.

110.    A justiciable controversy exists between the parties as to whether or not Plaintiffs reserved under the subject leases the rights to their oil and natural gas from the Point Pleasant formation such that none of the Defendants have the right to drill into and produce oil, gas, or other hydrocarbon products from their respective Point Pleasant formations.

111.    Rice, Gulfport, Ascent, XTO and Phillips continue to produce and receive revenues from the sale of oil, natural gas, and other hydrocarbon products from Plaintiffs' properties, so speedy relief is necessary to preserve Plaintiffs' rights.

112.    This Honorable Court should declare that: (1) Plaintiffs reserved in the subject leases the right to all products contained in any formation below the base of the Utica Shale, including, but not limited to the Point Pleasant formation, (2) the Point Pleasant formation is a separate and distinct formation from the Utica Shale, and lies below the base of the Utica Shale formation; and (3) Rice, Gulfport, Ascent, XTO and Phillips do not have the right under the subject leases to produce oil, natural gas, or other hydrocarbon products from any formation below the Utica Shale including, but not limited to, the Point Pleasant formation.

## COUNT II – TRESPASS

113.    Plaintiffs reassert every allegation contained above as if stated verbatim herein.

114. As set forth above, Plaintiffs' did not lease, but reserved unto the lessors all rights to drill, explore, and/or produce oil, natural gas, or other hydrocarbons from any formation below the base of Utica Shale formation, including, but not limited to, the Point Pleasant formation, and Lessors reserved the right to drill through the two leased formations to produce oil, gas and other hydrocarbons from other formations.

115. Accordingly, Plaintiffs' Leases do not grant the legal authority to any Defendant to drill into or produce oil, natural gas, or other hydrocarbons from the Point Pleasant formation.

116. At all times relevant hereto, Rice, Gulfport, Ascent, XTO and Phillips each knew, or should have known, that the Point Pleasant formation was (and is) separate and distinct from the Utica formation.

117. At all times relevant hereto, Rice, Gulfport, Ascent, XTO and Phillips each knew, or should have known, that Plaintiffs' Leases did not permit any of these Defendants to drill into the Plaintiffs' respective Point Pleasant formations or to recognize revenues from the sale of those products illegally obtained.

118. Despite their aforesaid knowledge, Rice, Gulfport, Ascent, XTO and Phillips each have intentionally drilled into and produced, and continue to produce, oil, gas, and/or other hydrocarbon products from Plaintiffs' Point Pleasant formation.

119. As to each of the wells described above Rice, Gulfport, Ascent, XTO and Phillips each have drilled and hydraulically fractured their wells below the base of the Utica Shale formation, including into the Plaintiffs' reserved Point Pleasant formation, and have thereby intentionally physically invaded the Plaintiffs' property without authorization.

120. Rice, Gulfport, Ascent, XTO and Phillips each have produced, and continue to produce, oil, natural gas, and/or other hydrocarbon products from Plaintiffs' properties from formations below the base of the Utica Shale formation without Plaintiffs' agreement or consent.

121. Rice's, Gulfport's, Ascent's, XTO's and Phillip's drilling and fracturing into formations below the base of the Utica Shale formation constitutes a physical trespass into the mineral estates of the Plaintiffs.

122. Rice's, Gulfport's, Ascent's, XTO's and Phillip's production of oil, natural gas, and/or other hydrocarbon products from formations below the base of the Utica Shale formation constitutes a continuing trespass into the Plaintiffs' mineral estates, specifically and without limitation, in their reserved formations which include the Point Pleasant formation.

123. Rice's, Gulfport's, Ascent's, XTO's and Phillip's trespass was and continues to be intentional, knowingly, willful, and unlawful, and has been done with a conscious disregard for the property rights of Plaintiffs.

124. As a result of Rice's, Gulfport's, Ascent's, XTO's and Phillip's trespass, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven herein, including but not limited to the market value of the oil and gas unlawfully taken from Plaintiffs' reserved mineral estates; the diminution in the value of the Plaintiffs' mineral rights; and the loss of the right to develop and produce oil, natural gas, hydrocarbon products, and other minerals that existed and do exist in the Plaintiffs' Point Pleasant formations and other formations below the base of the Utica Shale formation.

125. Rice, Gulfport, XTO, Phillips, and Ascent, as a result of their respective willful trespasses, are liable to Plaintiffs for the full value of the oil, natural gas, and other hydrocarbon

products removed from Plaintiffs' Point Pleasant formations, without deduction of expenses incurred in exploring, producing, and transporting the natural gas or its hydrocarbon byproducts.

## COUNT III- CONVERSION

126.    Plaintiffs reassert every allegation contained above as if stated verbatim herein.

127.    As set forth above, Plaintiffs' Leases reserved unto the lessor all rights to drill, explore, and/or produce oil, natural gas, or other hydrocarbon products from any formation below the base of Utica Shale formation.

128.    Rice, Gulfport, Ascent, XTO and Phillips, and each of them, have illegally removed oil, natural gas, and/or other hydrocarbons products from Plaintiffs' Point Pleasant formation, and other formations.

129.    Rice's, Gulfport's, Ascent's, XTO's and Phillip's illegal removal of oil, natural gas, and/or other hydrocarbons from formations below the base of the Utica Shale formation from Plaintiffs' properties constitute the wrongful exercise of dominion and control over Plaintiffs' property to the exclusion of Plaintiffs' rights.

130.    Rice's, Gulfport's, Ascent's, XTO's and Phillip's actions have been taken knowingly and with a conscious disregard of the rights of Plaintiffs.

131.    As a result of Rice's, Gulfport's, Ascent's, XTO's and Phillip's actions, Plaintiffs have been harmed in an amount to be proven at trial.

132.    Rice, Gulfport, Ascent, XTO and Phillips are also liable for the Plaintiffs' and prospective class members' attorney fees because "'compensation for time lost as a proximate result of the conversion, or for time and money spent in pursuit of the property converted, may be recovered.'" *Fulks v. Fulks*, 95 Ohio App. 515 (4th Dist. 1953) (quoting, 53 American Jurisprudence, 897, Section 106).

## COUNT IV – UNJUST ENRICHMENT

133.    Plaintiffs reassert every allegation contained above as if stated verbatim herein.

134.    A benefit has been conferred upon each of the Rice, Gulfport, and Ascent by virtue of their respective illegal takings of Plaintiffs' oil, natural gas, and/or other hydrocarbon products from formations below the base of Plaintiffs' respective Utica Shale formations without the right to do so.

135.    Rice, Gulfport, Ascent, XTO and Phillips have knowledge of the benefits they have received and continue to receive from their respective illegal takings of Plaintiffs' oil, natural gas, and/or other hydrocarbon products from formations below the base of Plaintiffs' respective Utica Shale formations without the right to do so.

136.    Rice, Gulfport, Ascent, XTO and Phillips have retained the benefits from their respective illegal takings of Plaintiffs' oil, natural gas, and/or other hydrocarbons from formations below the base of Plaintiffs' respective Utica Shale formations.

137.    Under the circumstances, it would be inequitable and unjust to permit Rice, Gulfport, Ascent, XTO and Phillips to retain the benefits they have each received without compensating the Plaintiffs for the oil, natural gas, and/or other hydrocarbon products the Defendants have illegally removed from formations below the base of Plaintiffs' respective Utica Shale formations without a right to do so.

## COUNT X - FEES

138.    Plaintiff hereby reasserts all of the allegations contained above in this Complaint as if fully rewritten herein.

139.    The Plaintiffs' Leases contain an Indemnity Clause which reads as follows:

**Indemnity:**    Lessee agrees to indemnify, defend, and hold harmless Lessor and Lessor's heirs, successors, agents, assigns, and any other person acting under

26

Lessor's direction and/or control against any and all claims, damages, costs, losses, liabilities, expenses (including but not limited to any reasonable attorneys' fees, expert fees, and court costs) arising out of, incidental to or resulting from the Lessee's Operations and actions, and the Operations and actions of Lessee's servants, agents, employees, guests, licensees, invitees, independent contractors, assigns, or any other person acting under Lessee's direction and control. Lessee's obligations hereunder shall survive the termination of this Lease.

140.     Said Indemnity agreement requires the lessee (Defendants Rice, Gulfport and Ascent) to indemnify the Plaintiff for any expenses incurred as a result of lessee's actions.

141.     Plaintiff is requesting that all its litigation expenses, court costs, attorney fees, audit costs, expert fees, and other related costs be ordered to be paid by Defendants Rice, Gulfport and Ascent, since it was its actions which caused this lawsuit to be filed.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request relief as follows:

a.     A declaration that: (1) Plaintiffs specifically reserved in the subject leases the right to all products contained in any formation below the base of the Utica Shale; (2) the Point Pleasant formation is a separate and distinct formation from the Utica Shale, and lies below the base of the Utica Shale formation; and (3) Defendants do not have the right under the subject leases to produce oil, natural gas, or other hydrocarbon products from any formation below the Utica Shale including in the Point Pleasant formation.

b.     The full value of the oil, natural gas and hydrocarbon products, and any other products removed from Plaintiffs' formations below the base of the Utica Shale formation, without deduction of expenses incurred in exploring, producing, and transporting the oil, natural gas and hydrocarbon products, and any other products;

27

c.     Damages for the diminution of value of the Plaintiffs' mineral estates, the loss of the right to lease, contract for, or otherwise develop and produce natural gas and other minerals that exist from formations below the base of the Utica Shale formation, given the Defendants' unlawful trespass into the formations below the base of the Utica Shale;

d.     Pre- and post-judgment interest;

e.     Reasonable attorneys' fees;

f.     Punitive damages;

g.     Equitable and/or injunctive relief for providing an accounting and notice to Plaintiffs and the class;

h.     Such other and further relief to which Plaintiffs may be entitled.


## JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable.


Respectfully submitted,

**THORNBURG & BEAN**


By _____

Charles H. Bean, Esq.
Attorney Registration No. 0007119
PO Box 96
113 West Main Street
St. Clairsville, Ohio 43950
Telephone: 740-695-0532
Fax:       740-695-8039
Email: cbean_tbg@sbcglobal.net

**LAW OFFICE OF ELIZABETH L. GLICK**

_Elizabeth L. Glick_     By CW

Elizabeth L. Glick, Esq.
P.O. Box 191
St. Clairsville, Ohio 43950
Telephone:    740-695-0533
Fax:           740-695-8039
E-Mail:        EGlick_tbg@att.net


**MYSER & DAVIES**

By _Richard Myser_     By CW

Richard Myser, Esq.
320 Howard Street
Bridgeport, Ohio 43912
Telephone:    740-635-0162


**C.J. WILSON LAW, LLC**

By _____

Craig J. Wilson, Esq.
503 South High Street
Columbus, Ohio 43215
Telephone:    614-723-9050
E-Mail:        craig@cjwilsonlaw.com

_Attorneys for Plaintiff,_
_TERA, LLC._

# Exhibit A

## The Concept of "Take Point" as it Applies to Horizontal Shale Wells

1.  Section 1501:9-1-04 OAC is the rule that governs minimum well spacing and setback conditions in Ohio.

2.  Paragraph D of 1501:9-1-04 OAC allows the chief on his own motion and with the approval of the T.A.C. to make an order to allow for Temporary Minimum Spacing for wells to be drilled in the vicinity of discovery wells.

3.  Pursuant to Paragraph D of 1501:9-1-04 OAC, it is the desire of the Chief to propose a Temporary Minimum Spacing plan that will promote the orderly development of horizontal wells as that term is defined in SB 315. If approved by the T.A.C., the order will remain in effect until it is either rescinded or until such time as a permanent rule change is made pursuant to 1509.25 of the ORC.

## Background

In the early stages of development of the Utica/Point Pleasant in Ohio, it was determined by the Division that spacing for these types of wells would have to meet the requirements of 1501:9-1-04 (C) of the OAC that states that wells greater than 4000 feet in depth must be at least 500 feet from the drilling unit boundary. Since these are horizontally drilled wells, this distance had to be satisfied at the entry and end points of the lateral well bore and along its entire length. The initial point of penetration into the permitted formation was defined as the entry point.

Although the Utica Shale was (and is) the commonly accepted nomenclature applied to this horizontal shale play, geologic data from wire line logs and cores indicated that it is the Point Pleasant Formation that is the producing reservoir. The Point Pleasant underlies the Utica, is approximately 120 feet thick and consists of interbedded shales, calcareous siltstones and carbonates. The pay zone within the Point Pleasant is a relatively thin layer in the lower third of the Point Pleasant and it is within that zone where the horizontal drilling and production occurs.

Figure 1 illustrates the Point Pleasant as it appears on the open hole log. Note that the lowermost fifty feet of the formation is where maximum porosity occurs. While that porosity is relatively minimal compared to Ohio's traditional sandstone and carbonate reservoirs, it is where the stimulation has repeatedly occurred in these wells resulting in upwards of 1000 barrels per day of liquid hydrocarbons and 10 mmcf of gas per day for some of the better wells.

As more wells were drilled from the same well pad and additional "as drilled" information was submitted, it was obvious that maintaining the 500 foot setback to unit lines at the entry point was becoming increasingly problematic. It was also clear that a fair amount of productive reservoir was effectively being sterilized by requiring the non-productive top of the formation to be the setback point. Figure 2 illustrates an "as drilled" plat showing the entry point at less than the minimum distance to the unit line.

To address these concerns, the Division met with various shale producers who have had experience with horizontal shale reservoirs in the western states. During these meetings, the concept of "take point" was brought up. By definition, a "take point" is any place within the horizontal portion of the well that is open to the formation and can allow hydrocarbons to enter the bore hole. It can be a perforation, an external packer in a cased but uncemented horizontal well or an uncased horizontal well. For purposes of this proposal, it will be limited to perforations only and specifically to the first and last perforations in the horizontal section of the well.

Figure 3 illustrates the spacing rule as it currently exists and is applied for horizontal shale wells. Note that both the entry point (PP) into the formation and the end point (T) are 500 feet from the unit lines. The horizontal distance from the entry point to the first take point is approximately 650 feet resulting in a distance of 1150 feet from the unit line. If a vertical well was drilled here, it would only have to be 500 feet from the unit lines under existing spacing rules.

Figure 4 shows two horizontal wells that are drilled in opposite directions from the same well pad where each had a first take point of 1150 feet from the unit line. Under the current spacing rule this scenario leaves approximately 1300 feet of shale resource is potentially undeveloped as opposed to having the take point as the reference point for unit line spacing.

In order to alleviate the spacing problem that exists for horizontal shale wells that is created by a rule that was designed for conventional vertical wells and to help promote conservation by allowing additional oil and gas to be recovered that is not being recovered under the present rule, the Division respectfully asks that the T.A.C.:

- Approve the request for temporary minimum spacing to allow the 500 foot setback to unit lines to be moved from the entry point into the permitted formation to the first perforation or "take point" within the wellbore.
- Approve the request for temporary minimum spacing to allow the 500 foot setback to unit lines be moved from the end point of the lateral bore hole section to the last perforation or "take point" within the wellbore.
- Approve the request prior to the conclusion of today's hearing so that we may proceed with the chief's order as soon as possible.

Thank you. Discussion?

FIGURE 1



6000

P.T.

PLEASANT

☀

6100

FIGURE 2

FIGURE 3

# Take Point Illustration



FIGURE 4

# Perf-to-Perf Spacing

- Under OAC § 1509:9-1-04(C)(4)'s spacing requirements, an opposing offset well must enter the formation 1,000' away.
- The additional ~650' feet between entry point and first perforation equals ~2,300' between perforations.
- Without efficient drainage, conservation is jeopardized.



*Not drawn to scale*

*Attachment 4*

**Opritza, Steve**

# Exhibit B

| | |
|---|---|
| **From:** | Davis, Frank [Frank.Davis@anadarko.com] |
| **Sent:** | Monday, April 09, 2012 4:16 PM |
| **To:** | Opritza, Steve |
| **Cc:** | Nefe, Bertha |
| **Subject:** | Correction to Permits to Drill Horizontal Wells in the Point Pleasant Formation |

Steve,

As we discussed earlier today, Anadarko requests that the ODNR change the Formation designation on the existing Anadarko permits to drill horizontal wells to reflect that target formation as the Point Pleasant formation. The original applications for those permits to drill reflected the Utica, the Utica/Point Pleasant, or the Utica/Lower Point Pleasant as the target formation. After discussing the fact that the horizontal lateral wells in our exploration efforts are all targeting what we agreed is typically referred to in industry as the Point Pleasant formation, we concluded that it would be appropriate to consistently refer to the Point Pleasant formation as our target reservoir for all of our exploration wells. Additionally, this change will be helpful in planning the directional drilling planning associated with these wells.

This change would apply to the following wells:

FREC NOBL OLIVE A-1H, API # 34-121-24349-0100
FREC NOBL BROOKFIELD A-3H, API # 34-121-24350-0100
FREC NOBLE BROOKFIELD A-1H, API # 34-121-24347-0100
FREC NOBLE SHARON A-1H, API # 34-121-24348-0100
FREC GUER SPENCER A-3H, API # 34-059-24204-0000
CSPC COSH LINTON B-1H, API # 34-031-27176-0100
FREC MEIGS C-1H, API # 34-119-28749-0100
FREC MEIGS A-1H, API # 34-119-28745-0100
FERC GUER SPENCER A-1H, API # 34-059-24190-0100
FERC GUER SPENCER A-5H, API # 34-059-24200-0100

Please let me know if you have any question or need additional information or documents regarding this request.

Thank you.

Frank A. Davis
Regulatory Manager - U.S. Onshore, Southern Region
Anadarko Petroleum Corporation
office - 832-636-3130
mobile - 832-867-1624
fax - 832-636-5515

Anadarko Confidentiality Notice: This electronic transmission and any attached documents or other writings are intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. If you have received this communication in error, please immediately notify sender by return e-mail and destroy the communication. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachments by anyone other than the named recipient is strictly prohibited.

**Exhibit C**

# [PS]Geologic Overview and Activity Update for the Utica-Point Pleasant Shale Play in Ohio*

**Lawrence H. Wickstrom[1], Ronald Riley[1], Matthew Erenpreiss[1], and Christopher Perry[1]**

Search and Discovery Article #10409 (2012)**

Posted June 25, 2012

*Adapted from poster presentation at AAPG Annual Convention and Exhibition, Long Beach, California, April 22-25, 2012
**AAPG©2012 Serial rights given by author. For all other rights contact author directly.

[1]Division of Geological Survey, Ohio Department of Natural Resources, Columbus, OH (Larry.Wickstrom@dnr.state.oh.us)

## Abstract

The Ordovician Point Pleasant Formation-Utica Shale interval is shaping up to be the next stop of the "shale gale" in the United States, and Ohio appears to be the primary focus of this play. Leasing activity ramped up in Ohio in late 2010 and still continues at a fevered pitch. The first horizontal exploration wells were drilled and completed in the Utica-Point Pleasant in early 2011.

Within Ohio, the Point Pleasant Formation lies directly above the Trenton Limestone and is, at least in part, equivalent with the thick deposits of the Trenton carbonate platform of northwestern Ohio, famous for the Lima-Indiana oil-and-gas trend, which was the first true giant field produced in North America starting in 1884. As the carbonate platform deposits of the Trenton thin, the interbedded organic-rich carbonates and shales of the Point Pleasant thicken, so that over much of Ohio the Trenton is only about 40-60 feet thick, while the Point Pleasant is 150-200 feet thick. The northwestern-Ohio Trenton carbonate platform represents a distal bulge of the ensuing Taconic Orogeny. As the orogenic activity and subsidence increased, the organic-rich Utica Shale proper transgressed the area from present day east-southeast to west-northwest, eventually overwhelming and drowning the carbonate environments. Thus, in the deeper portions of the present-day basin, the Utica (and Antes) is, in part, laterally equivalent and overlies the Point Pleasant.

Analysis of source rock geochemistry and early drilling results indicate the Utica-Point Pleasant to contain sufficient hydrocarbons to sustain a major drilling play. Oil-source rock pairings indicate the Utica-Point Pleasant has been the primary source for numerous conventional reservoirs in the region. Also, analyses indicate much of the play area in Ohio will be natural gas liquids and oil prone. In fact, a number of historical wells have encountered large shows, and some have produced substantial oil from this interval.

# Geologic Overview and Activity Update for the Utica-Point Pleasant Shale Play in Ohio

## Abstract

The Ordovician Utica Shale-Point Pleasant Formation interval is shaping up to be the next stage of the shale gas boom in the United States, and Ohio appears to be the primary focus of this play. Leasing activity ramped up in Ohio in late 2010 and continues at a fevered pitch. The first horizontal exploration wells were drilled and completed in the Utica-Point Pleasant in early 2011.

Within Ohio, the Point Pleasant Formation lies directly above the Trenton Limestone and is, at least in part, equivalent with the thick deposits of the Trenton carbonate platform of northwestern Ohio, famous for the Lima-Indiana oil-and-gas trend, which was the first true giant field produced in North America starting in 1884. As the carbonate platform deposits of the Trenton thin, the interbedded organic-rich carbonates and shales of the Point Pleasant thicken, so that over much of Ohio the Trenton is only about 40–60 feet thick, while the Point Pleasant is 150–200 feet thick. The northwestern-Ohio

Trenton carbonate platform represents a distal bulge of the ensuing Taconic Orogeny. As the orogenic activity and subsidence increased, the organic-rich Utica Shale prograded/transgressed the area from present-day east-southeast to west-northwest, eventually overwhelming and drowning the carbonate environments. Thus in the deeper portions of the present-day basin, the Utica (and Antes) is, in part, laterally equivalent and overlies the Point Pleasant.

Analysis of results from source rock geochemistry and early drilling indicate the Utica-Point Pleasant to contain a sufficient density of oil-and-gas-in-situ to tin a major drilling play. Oil-source rock pairings indicate the Utica-Point Pleasant has been the primary source for numerous conventional reservoirs in the region. Also, analyses indicate much of the play area in Ohio will be natural gas liquids and oil prone. In fact, a number of historical wells have encountered large shows, and some have produced substantial oil from this interval.

## Development and Activity of the Play



Figure 1.—Exploratory drilling in the Utica-Point Pleasant interval of Ohio began in 2010 with vertical wells. In June 2010 CNX tested 1.5 MMCFPD in the Utica-Point Pleasant in western Belmont County. Anschutz, Hess, and Marquette also had permits for exploratory wells in Ohio by August 2010. Leasing and drilling activity shown where this interval are fairly well known in Ohio as shown by wells in green. The most significant of these was the Leitnaker 70K #2 well drilled in Fairfield County in 1998. This well intersected a fault in the Utica-Point Pleasant interval and produced approximately 50,000 barrels of oil naturally during two years.



Figure 2.—By early 2011 exploration programs were beginning to take shape via leased permits. Operators were developing drilling pads and drilling an initial vertical test well; many were coring the Utica-Point Pleasant interval. The lateral test well would then be plugged back, drilled directionally, and completed as the first horizontal well of the pad. In early 2010 Range Resources announced initial production of a MMCFGPD from their first horizontal Utica well in Beaver County, Pennsylvania. On March 22, 2011, an 18-stage hydraulic fracture stimulation was completed on the Ohio Buckeye Energy (Chesapeake) Buell #8H well (34027210570100), which was put into production shortly after. This was the first production from a horizontal Utica-Point Pleasant well in Ohio.



Figure 3.—With more frequent and densely spaced permitting, the Ohio Geological Survey developed showing vertical (test) wells vs. its activity maps. This map shows the Utica-Point Pleasant horizontal well-permitting and drilling activity as of April 9, 2012. This map and accompanying spreadsheet are updated monthly on the Survey Web site at www.OhioGeology.com. As of that date 128 horizontal wells had been leased and 58 drilled. Twenty-one rigs capable of drilling these wells were active in the state.



Figure 4.—Thus far, Carroll County in central-eastern Ohio has had the most wells drilled and permitted within the play. This map shows the permitted wells' top and bottom hole locations, as well as individual wells in any portion of the state are oriented with NE-SW to intercept NE-SW-oriented natural fractures. Well maps can be generated using the interactive map service at www.OhioGeology.com.

Lawrence H. Wickstrom, Ronald A. Riley, Matthew S. Erenpreiss, and Christopher J. Perry
Ohio Department of Natural Resources, Division of Geological Survey • 2045 Morse Rd., Bldg. C-1, Columbus, OH 43229-6693

# Geologic Overview and Activity Update for the Utica-Point Pleasant Shale Play in Ohio

Lawrence H. Wickstrom, Ronald A. Riley, Matthew S. Erenpreiss, and Christopher J. Perry
Ohio Department of Natural Resources, Division of Geological Survey • 2045 Morse Rd., Bldg. C-1, Columbus, OH 43229-6693



Case: 2:19-cv-02292-ALM-KAJ Doc #: 1-1 Filed: 05/29/19 Page: 41 of 117  PAGEID #: 177





Figure 25.—Stratigraphic cross section of the top of Ordovician to Knox Dolomite from Ontario to West Virginia, illustrating the Utica and Point Pleasant facies. Modified from Patchen and others (2006).

Summary of Core Analyses for the Barth No. 3 (APINO 340312838) in Coshocton County, Ohio



Lawrence H. Wickstrom, Ronald A. Riley, Matthew S. Erenpreiss, and Christopher J. Perry
Ohio Department of Natural Resources, Division of Geological Survey • 2045 Morse Rd., Bldg. C-1, Columbus, OH 43229-6693

# Exhibit D



OHIO DEPARTMENT OF NATURAL RESOURCES
**DIVISION OF OIL & GAS RESOURCES MANAGEMENT**
2045 MORSE RD., F-2, COLUMBUS, OH 43229-6693

## WELL COMPLETION RECORD (Form 8)

DOGRM 5607 (REV 102012)

**This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back), and return to our office within 30 days after expiration.**

| | |
|---|---|
| 1. Owner #: | 3. API #: |
| 2. Owner name, address and telephone numbers:<br><br>Telephone No.: | 4. Type of Permit: |
| | 5. County: |
| | 6. Civil Township: |
| | 7. Footage: |
| 8. Type of Well: | |
| 9. X:   Y: | 21. Date drilling commenced: |
| 10. Quad: | 22. Date drilling completed: |
| 11. Section:   12. Lot: | 23. Date put into production: |
| 13. Fraction:   14. Qtr. Twp: | 24. Date plugged, if dry: |
| 15. Tract: | 25. Producing formation: |
| 16. Allot: | 26. Deepest formation: |
| 17. Well #: | 27. Driller's total depth: |
| 18. Lease Name: | 28. Logger's total depth: |
| 19. PTD:   20. Drilling unit: | 29. Lost hole at ____ feet. |

| 30. Type of tools: | 31. Type of Completion: | 32. Elevation: |
|---|---|---|
| ☐ Cable   ☐ Alt Rotary | ☐ Open Hole | Ground Level |
| ☐ Fluid Rotary   ☐ Service Rig | ☐ Through Casing | Derrick Floor |
| | ☐ Slotted Liner | Kelly Bushing |

33. Perforated intervals and number of shots:

34. Name of Frac Company:

35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): |
|---|---|---|---|---|
| Lbs. _____ | Gals. _____ | Water (gals) | Lbs. ____ | Breakdown ____ |
| Qts. _____ | Type _____ | Water (bbl) | Sks. ____ | ATP ____ |
| Type _____ | Percent _____ | CO2 (tons) | | ISIP ____ |
| | | N2 (mscf) | | 5 min. SIP ____ |
| | | | | Avg. Rate ____ |

METHOD OF FLUID CONTAINMENT:

| FLUIDS: | PIT | FRAC TANK |
|---|---|---|
| Swab | ☐ | ☐ |
| Flowback | ☐ | ☐ |

DATE TREATED:
☐ Well Stimulation Additives Report (Form 8B) Attached
☐ Stimulation Information Reported to FracFocus.

| 36. Amount of initial production per day: | (MCF) | (Bbls) | (Bbls) |
|---|---|---|---|
| Natural: | Gas | Oil | Brine |
| After Treatment: | Gas | | Brine |
| SERC Data:   Number of Tanks: | | Maximum Storage Capacity of all Tanks (bbls.) | |

37. Casing and tubing record:

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | | | | | | |
| Surface: | | | | | | |
| ☐ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| Intermediate: | | | | | | |
| Production: | | | | | | |
| Tubing: | | | | | | |
| Other: | | | | | | |

38. Name of drilling contractor:

39. Type of electrical and/or wireline logs run:
(all logs must be submitted)

40. Name of logging company:

| **DIVISION USE ONLY** | | | |
|---|---|---|---|
| Log Submitted:   Yes/No | FRAC DATA SUBMITTED: | | Well Class: _____ |
| Confidential:   Yes/No | Pressure/Rate Graph ☐ | | |
| | Record ☐ | | |
| | Invoice ☐ | | |



OHIO DEPARTMENT OF NATURAL RESOURCES
**DIVISION OF OIL & GAS RESOURCES MANAGEMENT**
2045 MORSE RD., F-2, COLUMBUS, OH 43229-6693

## WELL COMPLETION RECORD (Form 8)

DOGRM 5607 (REV 102012)

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | | | | |
| Bedford Shale | | | | |
| 2- Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | | | | |
| Marcellus | | | | |
| Big Lime | | | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | | | | |
| Bass Island | | | | |
| Salina | | | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | | | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | | | | |
| Stray Clinton | | | | |
| Red Clinton | | | | |
| White Clinton | | | | |
| Medina | | | | |
| | | | | |
| Queenston | | | | |
| Utica | | | | |
| Point Pleasant | | | | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_____ (SIGNATURE)          _____ (DATE)

_____ (NAME TYPED OR PRINTED)          _____ (TITLE)

_____ (REPRESENTING)

# Exhibit E

**STATE OF OHIO**
**DEPARTMENT OF NATURAL RESOURCES**
**DIVISION OF OIL AND GAS RESOURCES MANAGEMENT**

In re the Matter of the Application of : 
Gulfport Energy Corporation, for : 
Unit Operation :    Application Date:  July 19, 2017
              :    Supplement Date: August 31, 2017
<u>Horseshoe B Unit</u>        :    Supplement Date: November 1, 2017

---

**APPLICATION OF GULFPORT ENERGY CORPORATION**
**FOR UNIT OPERATION**

---

Zachary M. Simpson (0089862)
GULFPORT ENERGY CORPORATION
3001 Quail Springs Parkway
Oklahoma City, Oklahoma 73134

Attorney for Applicant

# TABLE OF CONTENTS

APPLICATION

I.    APPLICANT INFORMATION.................................................................................1

II.   PROJECT DESCRIPTION....................................................................................2

III.  TESTIMONY ......................................................................................................2

IV.   THE CHIEF SHOULD GRANT THIS APPLICATION ...................................3

      A.    Legal Standard ...........................................................................................3

      B.    Gulfport's Application Meets this Standard ...........................................4

            i.     *The Unitized Formation is Part of a Pool* ...................................4

            ii.    *Unit Operations Are Reasonably Necessary to Increase*
                   *Substantially the Ultimate Recovery of Oil and Gas* ...................4

            iii.   *The Value of Additional Recovery Exceeds Its Addi-*
                   *tional Costs* ...................................................................................5

            iv.    *The Unit Plan Meets the Requirements of Ohio Revised*
                   *Code § 1509.28* .............................................................................5

V.    APPROVALS .......................................................................................................6

VI.   HEARING.............................................................................................................6

VII.  CONCLUSION....................................................................................................7

EXHIBITS

Exhibit 1      Unit Agreement
Exhibit 2      Unit Operating Agreement
Exhibit 3      Prepared Direct Testimony of Michael Buckner ("Geologist")
Exhibit 4      Prepared Direct Testimony of Danny Watson ("Reservoir Engineer")
Exhibit 5      Prepared Direct Testimony of Jenae Allert ("Landman")
Exhibit 6      Working Interest Owner Approval

**STATE OF OHIO**
**DEPARTMENT OF NATURAL RESOURCES**
**DIVISION OF OIL AND GAS RESOURCES MANAGEMENT**

In re the Matter of the Application of       :
Gulfport Energy Corporation for       :
Unit Operation       :       Application Date: July 19, 2017
      :
Horseshoe B Unit       :

## APPLICATION

Pursuant to Ohio Revised Code Section 1509.28, Gulfport Energy Corporation ("Gulfport"), hereby respectfully requests the Chief of the Ohio Department of Natural Resources' Division of Oil and Gas Resources Management ("Division") to issue an order authorizing Gulfport to operate the Unitized Formation and applicable land area in Belmont County, Ohio (hereinafter, the "Horseshoe B Unit") as a unit according to the Unit Plan attached hereto and as more fully described herein. Gulfport makes this request for the purpose of substantially increasing the ultimate recovery of oil and natural gas, including related liquids, from the Unitized Formation, and to protect the correlative rights of unit owners, consistent with the public policy of Ohio to conserve and develop the state's natural resources and prevent waste.

I.
APPLICANT INFORMATION

Gulfport is a corporation organized under the laws of the State of Delaware. Gulfport has its principal office in Oklahoma City, Oklahoma and is registered in good standing as an "owner" with the Division.

Gulfport designates to receive service, and respectfully requests that all orders, correspondence, pleadings and documents from the Division and other persons concerning this filing be served upon, the following:

Zachary M. Simpson – Corporate Counsel
Gulfport Energy Corporation
3001 Quail Springs Parkway
Oklahoma City, Oklahoma 73134
Tel. (405) 252-4608
E-mail: zsimpson@gulfportenergy.com

II.
PROJECT DESCRIPTION

The Horseshoe B Unit is located in Belmont County, Ohio, and consists of thirty-two (32) separate tracts of land. See Exhibit A-1 thru A-6 of the Unit Operating Agreement (showing the plat and tract participations, respectively). The total land area in the Horseshoe B Unit is approximately 673.838 surveyed acres. Gulfport has the right to drill on and produce from approximately 654.01760 acres of the proposed unit through its leasehold interest, trade agreement rights, and joint venture agreement rights committed to the Horseshoe B Unit by Gulfport, Rice Drilling D LLC, and XTO Energy Inc. – approximately ninety-seven percent (97.05858%) of the unit area, which is greater than the sixty-five percent (65%) threshold required by Ohio Revised Code § 1509.28.[1] As more specifically described herein, Gulfport seeks authority to drill and complete two horizontal wells in the Unitized Formation from a single well pad located inside the Horseshoe B Unit to efficiently test, develop, and operate the Unitized Formation for oil, nat-ural gas, and related liquids production.

Gulfport's plan for unit operations (the "Unit Plan") is attached to this Application and consists of the Unit Agreement, attached as Exhibit 1; and the Unit Operating Agreement, attached as Exhibit 2. Among other things, the Unit Plan allocates unit production and expenses based upon each tract's surface acreage participation in the unit; includes a carry provision for those unit participants unable to meet their financial obligations, the amount of which is based upon the risks of and costs related to the project; and conforms to industry standards for the drilling and operating of horizontal wells generally used by the Applicant with other interest owners.

III.
TESTIMONY

The following pre-filed testimony has been attached to the Application supporting the Horseshoe B Unit's formation: (i) testimony from a Geologist establishing that the Unitized Formation is part of a pool and supporting the Unit Plan's recommended allocation of unit production and expenses on a surface acreage basis;[2] (ii) testimony from a Reservoir Engineer establishing that unitization is reasonably necessary to increase substantially the recovery of oil and gas, and that the value of the estimated additional resource recovery from unit operations

---

[1] See Prepared Direct Testimony of Jenae Allert at 2-3, attached as Exhibit 5.
[2] See Prepared Direct Testimony of Michael Buckner, attached as Exhibit 3.

2                                                                 Rev. 11.1.2017

exceeds its additional costs;[3] and (iii) testimony from an operational Landman with firsthand knowledge of Gulfport's Ohio development who describes the project generally, the Unit Plan, efforts to lease unleased owners, and the approvals received for unit development.[4]

## IV.
## THE CHIEF SHOULD GRANT THIS APPLICATION

A.    Legal Standard

Ohio Revised Code § 1509.28 requires the Chief of the Division to issue an order providing for the unit operation of a pool – or a part thereof – if it is reasonably necessary to increase substantially the ultimate recovery of oil and gas, and the value of the estimated additional resource recovery from the unit's operations exceeds its additional costs. See Ohio Rev. Code § 1509.28(A).

The Chief's order must be on terms and conditions that are just and reasonable and prescribe a plan for unit operations that includes the following:

> (1) a description of the unit area;
>
> (2) a statement of the nature of the contemplated operations;
>
> (3) an allocation of production from the unit area not used in unit operations, or otherwise lost, to the separately owned tracts;
>
> (4) a provision addressing credits and charges to be made for the investment in wells, tanks, pumps, and other equipment contributed to unit operations by owners in the unit;
>
> (5) a provision addressing how unit operation expenses shall be determined and charged to the separately owned tracts in the unit, and how they will be paid;
>
> (6) a provision, if necessary, for carrying someone unable to meet their financial obligations in connection with the unit;
>
> (7) a provision for the supervision and conduct of unit operations in which each person has a vote with a value corresponding to the percentage of unit operations expenses chargeable against that person's interest;
>
> (8) the time when operations shall commence and the manner in which, and circumstances under which, unit operations will terminate; and
>
> (9) such other provisions appropriate for engaging in unit operation and for the protection or adjustment of correlative rights.

See Ohio Rev. Code § 1509.28(A). The Chief's order becomes effective once approved in writing by those working-interest owners who will be responsible for paying at least sixty-five percent of the costs of the unit's operations and by royalty and unleased fee-owners of sixty-five

---

[3] See Prepared Direct Testimony of Danny Watson, attached as Exhibit 4.
[4] See Prepared Direct Testimony of Jenae Allert, attached as Exhibit 5.

percent of the unit's acreage. Once effective, production that is "allocated to a separately owned tract shall be deemed, for all purposes, to have been actually produced from such tract, and all operations *** [conducted] upon any portion of the unit area shall be deemed for all purposes the conduct of such operations and production from any lease or contract for lands any portion of which is included in the unit area." Ohio Rev. Code § 1509.28.

### B. Gulfport's Application Meets this Standard

#### i. *The Unitized Formation is Part of a Pool*

The "Unitized Formation" consists of the subsurface portion of the Unit Area (i.e., the lands shown on Exhibit A-1 and identified in Exhibit A-2 thru A-6 to the Unit Operating Agreement) at a depth located from fifty feet above the top of the Utica Shale to fifty feet below the top of the Trenton Limestone formation, and frequently referred to as the Utica/Point Pleasant formation. The evidence presented in this Application establishes that the Unitized Formation is part of a pool and thus an appropriate subject of unit operation under Ohio Rev. Code § 1509.28.[5] Additionally, that evidence establishes that the Unitized Formation is likely to be reasonably uniformly distributed throughout the Unit Area – and thus that it is reasonable for the Unit Plan to allocate unit production and expenses to separately owned tracts on a surface acreage basis.[6]

#### ii. *Unit Operations Are Reasonably Necessary to Increase Substantially the Ultimate Recovery of Oil and Gas*

The evidence presented in this Application establishes that unit operations are reasonably necessary to increase substantially the ultimate recovery of oil and gas from the lands making up the Horseshoe B Unit. The Unit Plan contemplates the potential drilling of approximately two (2) horizontal wells from a single well pad, with lateral lengths of approximately 13,493-13,497 feet and with the potential for additional unit wells in the event they are necessary to fully recover the resource.[7] Gulfport estimates that the ultimate recovery from this unit development could be as much as 58.6 billion cubic feet (Bcf) of natural gas from the Unitized Formation.[8] Absent unit development, that recovery would be substantially less: First, the evidence shows that it is unlikely that vertical development of the unit would ever take place because it is likely to be un-

---

[5] A "pool" is defined under Ohio law as "an underground reservoir containing a common accumulation of oil or gas, or both, but does not include a gas storage reservoir." Ohio Rev. Code § 1509.01(E). See also Exhibit 3 at 2-3.
[6] Exhibit 3 at 3-5.
[7] See, e.g., Exhibit 5 at 4-5.
[8] See, e.g., Exhibit 4 at 3-6. We emphasize that these are only estimates, and like the rest of the estimates set forth in this Application, they should be treated as simply estimates based upon the best information available at the time.

economic – resulting in potentially no resource recovery from the Unitized Formation.[9] Second, simply relying on shorter horizontal laterals to develop the Unitized Formation underlying the Horseshoe B Unit would be uneconomical. Oil and gas recovery from horizontal drilling methods is directly related to the length of the lateral – limit a lateral's length and you limit its ultimate recovery. Here, in absence of unit operations being granted, the unleased and uncommitted tracts would prevent the development of all wells in the unit area and lead to stranding the corresponding reserves.[10]

The evidence thus shows that the contemplated unit operations are reasonably necessary to allow for, much less increase substantially, the recovery of oil and gas from the Unitized Formation.[11]

iii.    *The Value of Additional Recovery Exceeds Its Additional Costs*

As set forth in Danny Watson's testimony, Gulfport estimates the difference in net present value between the two scenarios (i.e., the difference between the "Unitized Scenario" and in the "Non-Unitized Scenario – Gulfport Development" referred to in Exhibit 5) is approximately $2.536 million[12] at a net present value discounted at 10% per annum; or $10.521[13] million at an undiscounted net cash flow. See Exhibit 5, showing for each proposed well the estimated value of the well's production and the estimated drilling and operating costs (incorporated here as if fully written herein). In particular, it shows that the capital/drilling costs will average $14.041 million per well. Incorporated into this analysis are both fixed and variable operating cost estimates estimated to be realized to maintain production for the life of the well.[14] Thus, the evidence establishes that the value of the estimated recovery exceeds the estimated additional costs incident to conducting unit operations.

iv.    *The Unit Plan Meets the Requirements of Ohio Revised Code § 1509.28*

The Unit Plan proposed by Gulfport meets the requirements set forth in Ohio Revised Code § 1509.28. The unit area is described in the Unit Agreement at Article 1, as well as on Exhibit A-1 thru A-6 to the Unit Operating Agreement. The nature of the contemplated unit opera-

---

[9] *Id.* at 4-6.
[10] *Id.* at 4-6.
[11] *Id.* at 5-7.
[12] *Id.* at 5-7.

[13] *Id.* at 5-7.

[14] *Id.* at 5-7.

Rev. 11.1.2017

tions can be found generally in the Unit Agreement at Article 3, with greater specificity through-out the Unit Agreement and Unit Operating Agreement.[15] Unit production and unit expenses are allocated on a surface acreage basis as set forth in the Unit Agreement at Articles 3 through 5 (generally), except where otherwise allocated by the Unit Operating Agreement.[16] Payment of unit expenses is addressed generally in Article 3 of the Unit Agreement.[17] No provision for credits and charges related to contributions made by owners in the unit area regarding wells, tanks, pumps and other equipment for unit operations are addressed in the Unit Operating Agreement because none are contemplated.[18] The Unit Plan provides for various carries in the event a participant is unable to meet its financial obligations related to the unit – see, e.g., Article VI of the Unit Operating Agreement.[19] Voting provisions related to the supervision and conduct of unit operations are set forth in Article XV of the Unit Operating Agreement, with each person having a vote that has a value corresponding to the percentage of unit expenses chargeable against that person's interest.[20] Commencement and termination of operations are addressed in Articles 11 and 12 of the Unit Agreement.

## V.
## APPROVALS

As of the filing of this Application, the Unit Plan has been agreed to or approved by ap-proximately ninety-seven percent (97.05858%) of Working Interest Owners. See Exhibit 5 at 2-4, and Exhibit 6. Said approval exceeds the statutory minimum requirements set forth in Ohio Re-vised Code § 1509.28.

## VI.
## HEARING

Ohio Revised Code § 1509.28 requires the Chief to hold a hearing to consider this Appli-cation, when requested by sixty-five percent (65%) of the owners of the land area underlying the proposed unit. Ohio Rev. Code § 1509.28(A). That threshold level is met here. Accordingly, Gulfport respectfully requests that the Division schedule a hearing at an available hearing room located at the Division's Columbus complex for the earliest available unitization docket, to con-sider the Application filed herein.

## VII.

---

[15] See also, e.g., Exhibit 5 at 6-10.
[16] Id. at 7-10.
[17] Id.
[18] Id. at 10.
[19] Id. at 10-13.
[20] Id. at 11-13.

Rev. 11.1.2017

CONCLUSION

Ohio Revised Code § 1509.28 requires the Chief of the Division to issue an order for the unit operation of a pool – or a part thereof – if it is reasonably necessary to increase substantially the recovery of oil and gas, and the value of the estimated additional recovery from the unit's operations exceeds its additional costs. Gulfport respectfully submits that the Application meets this standard, and that the terms and conditions of the Unit Plan are just and reasonable and satis-fy the requirements of Ohio Revised Code § 1509.28(B). Gulfport therefore asks the Chief to issue an order authorizing Gulfport to operate the Horseshoe B Unit according to the Unit Plan attached hereto.

Respectfully submitted,

_____

Zachary M. Simpson (0089862)
GULFPORT ENERGY CORPORATION
3001 Quail Springs Parkway
Oklahoma City, Oklahoma 73134

Attorney for Applicant

7



# EXHIBIT "A-1"
## GULFPORT ENERGY CORPORATION
## HORSESHOE B UNIT
## BELMONT COUNTY, OHIO
### 673.838 ACRES

| MAP ID | PARCEL NUMBER | ACRES |
|---|---|---|
| 1 | 43-00123.000 | 4.728 |
| 2 | 43-00162.000 | 14.104 |
| 3 | 43-00163.000 | 54.871 |
| 4 | 43-00163.000 | 0.667 |
| 5 | 43-00171.000 | 8.304 |
| 6 | 43-00174.000 | 28.589 |
| 7 | 43-00178.001 | 5.761 |
| 8 | 43-00178.006 | 0.477 |
| 9 | 43-00178.007 | 4.050 |
| 10 | 43-00178.008 | 4.462 |
| 11 | 43-00194.003 | 0.405 |
| 12 | 43-00266.000 | 53.895 |
| 13 | 43-00266.001 | 63.228 |
| 14 | 43-00266.002 | 11.104 |
| 15 | 43-00293.000 | 10.333 |
| 16 | 43-00308.000 | 0.766 |
| 17 | 43-00321.000 | 0.577 |
| 18 | 43-00326.000 | 11.733 |
| 19 | 43-00467.000 | 13.460 |
| 20 | 43-00468.000 | 75.047 |
| 21 | 43-00471.000 | 75.502 |
| 22 | 43-00472.000 | 9.410 |
| 23 | 43-00502.000 | 0.074 |
| 24 | 43-00716.000 | 47.930 |
| 25 | 43-00716.001 | 0.504 |
| 26 | 43-00767.000 | 114.027 |
| 27 | 43-00768.000 | 19.117 |
| 28 | 43-00770.000 | 0.004 |
| 29 | 43-00819.000 | 35.682 |
| 30 | 43-60008.000 | 0.689 |
| 31 | 52-00372.000 | 2.019 |
| 32 | 52-00372.002 | 2.319 |

UNIT BOUNDARY - 673.838 ACRES

HORSESHOE B
WASHINGTON & YORK TOWNSHIPS
BELMONT COUNTY, OHIO

1 in = 1,500 ft

Last Updated: July 7, 2017
Version 1

**Gulfport** ENERGY

**STATE OF OHIO**
**DEPARTMENT OF NATURAL RESOURCES**
**DIVISION OF OIL AND GAS RESOURCES MANAGEMENT**

In re the Matter of the Application of    :
Gulfport Energy Corporation, for    :
Unit Operation    :    Application Date: July 19, 2017
    :
<u>Horseshoe B Unit</u>    :

---

**PREPARED TESTIMONY OF MICHAEL BUCKNER**
**ON BEHALF OF GULFPORT ENERGY CORPORATION**

---

Zachary M. Simpson (0089862)
GULFPORT ENERGY CORPORATION
3001 Quail Springs Parkway
Oklahoma City, Oklahoma 73134

Attorney for Applicant,
Gulfport Energy Corporation

Date: July 19, 2017

Exhibit 3

## PREPARED DIRECT TESTIMONY OF MICHAEL BUCKNER

1 **INTRODUCTION.**

2 **Q1.** **Please state your name and business address.**

3 A1. My name is Michael Buckner, and my business address is 3001 Quail Springs

4 Parkway, Oklahoma City, Oklahoma 73134.

5 **Q2.** **Who is your employer?**

6 A2. Gulfport Energy Corporation.

7 **Q3.** **What is your position with Gulfport?**

8 A3. Geologist.

9 **Q4.** **Please describe your professional responsibilities at Gulfport.**

10 A4. My professional responsibilities include interpreting geological data for Gulfport's

11 Ohio asset team. I prepare structure isopach maps and make electric log cross-

12 sections to determine what true vertical depth is needed for each well. I also help

13 set up new drilling units for horizontal wells and geosteer each operated horizontal

14 well to make sure the wellbore stays in the target formation.

15 **Q5.** **Starting with college, would you describe your education background?**

16 A5. I graduated with a Bachelor of Science degree in Geology from the University of

17 North Carolina at Wilmington. I then received a Masters degree in Geology from

18 East Carolina University.

19 **Q6.** **Would you briefly describe your professional experience?**

20 A6. I have ~10 years' experience as a geologist in the oil and gas industry and have

21 worked primarily in unconventional reservoirs within the continental US. I started

22 my career at Chesapeake Energy in the Granite Wash of the Texas panhandle and

23 then worked the Fayetteville shale play in Arkansas. In 2009 I began consulting

24 fulltime and have geosteered for multiple clients in various unconventional

25 reservoirs. I came to Gulfport Energy Corporation in the beginning of 2013 and

26 have been working the Utica/Point Pleasant formation in Ohio ever since.

27 **Q7.** **Are you a member of any professional associations?**

28 A7. I am a member of the American Association of Petroleum Geologist Society, the

29 Ohio Geological Society, and the Oklahoma City Geological Society.

30 **Q8.** **Are you familiar with Gulfport Energy Corporation's Application for Unit**

1          **Operations with respect to the Horseshoe B Unit?**

2   A8.    Yes.

3   **Q9.**   **Could you please describe the Horseshoe B Unit, in terms of its general**

4          **location, surface acreage, and subsurface depth?**

5   A9.    Yes.  The Horseshoe B Unit consists of thirty-two (32) distinct tracts of land

6          totaling approximately 673.838 acres in Washington and York Townships of

7          Belmont County, Ohio. Exhibit MB-1 to the Application depicts the geographical

8          location of the proposed unit in Belmont County in relation to the surrounding

9          counties. The Unitized Formation described in the Application is the subsurface

10         portion of the Horseshoe B Unit at a depth located from 50' above the top of the

11         Utica Shale, to 50' below the top of the Trenton Limestone formation.

12  **UNITIZED FORMATION IS PART OF A POOL.**

13  **Q10.** **In geological terms, what does the term "pool" mean in connection with**

14         **unitization?**

15  A10.  Generally a pool is understood to be a common source of supply in pores of a rock

16         that yields hydrocarbons on drilling.

17  **Q11.** **Ohio Revised Code § 1509.01(E) defines the term "pool" as follows: "'Pool'**

18         **means an underground reservoir containing a common accumulation of oil or**

19         **gas, or both, but does not include a gas storage reservoir. Each zone of a**

20         **geological structure that is completely separated from any other zone in the**

21         **same structure may contain a separate pool." Does this definition of "pool"**

22         **apply to the Horseshoe B Unit?**

23  A11.  Yes. Geologic mapping shows the entire Horseshoe B Unit to be underlain by the

24         Utica/Point Pleasant formation, which is of the same thickness throughout the

25         Horseshoe B Unit area. The hydrocarbon accumulation extends in all directions

26         from this proposed unit and the rock properties such as porosity and water

27         saturation are the same under the entire unit and constitute a common source of

28         supply. This means that the geologic characteristics with equal rock properties

29         extend under the entire unit, suggesting that production would be similar from all

30         wells drilled in the unit. Therefore, the Unitized Formation qualifies as part of a

31         pool – with the entire pool being the Utica/Point Pleasant formation extending

1       beyond the currently defined Horseshoe B Unit.

2   **Q12.**   **How do geologists investigate the geologic characteristics of a shale play in the**

3           **Utica/Point Pleasant formation?**

4   A12.   Geologists study well logs to gain information such as porosity, permeability, water

5           saturation, and thermal maturity in addition to core analysis from Whole Core or

6           Rotary Side-Wall cores in order to match the electric log data to measurements on

7           the actual rock. Correlation of this information over a larger area reveals a regional

8           picture or trend of the Utica/Point Pleasant formation.

9   **Q13.**   **Generally speaking, what sources of data would you review and analyze in**

10          **order to assess the geologic characteristics of a potential shale play?**

11   A13.   Generally speaking, core and electric log data.

12   **Q14.**   **How is this data obtained, and what is it meant to show about the formation?**

13   A14.   Data is obtained thru public information sources such as the ODNR, thru vendors

14           such as IHS, proprietary data from well logs run or cores taken on recently drilled

15           Gulfport wells. Gulfport is also a partner with other operators and has received

16           geological data from wells drilled by partner operators and finally thru data trades

17           with other operators. Geologist correlate the logs well-to-well by picking the same

18           formation top in each well in order to create structure and isopach maps of various

19           formations over the area of interest.

20   **Q15.**   **What data sources did you use in determining the geologic features of the**

21          **Horseshoe B Unit?**

22   A15.   Electric log data from Trenton penetrations in the area were used to construct

23           Exhibits MB-1 and MB-2 to the Unit Application. Since there are not a lot of

24           Trenton penetrations in the area, Exhibit MB-1 shows a well ~5.6 miles to the

25           northwest and one well ~1.425 miles to the east of the proposed unit. The cross-

26           section found in Exhibit MB-2 has been flattened at the top of the Trenton in order

27           to better show the uniform thickness of the Utica/Point Pleasant across the unit.

28   **Q16.**   **What do these exhibits tell us about the Horseshoe B Unit?**

29   A16.   Exhibits MB-1 and MB-2 are a location map and cross section created using

30           downhole electric logs, respectively. The cross-section suggests equal thickness of

31           the Utica formation and Point Pleasant formation and the location map shows the

1        extent of the predicted thickness across the Horseshoe B Unit.

2  **Q17.**  **What is the approximate depth of the Utica/Point Pleasant formation under**

3        **the Horseshoe B Unit?**

4  A17.  The top of the Utica/Point Pleasant formation is expected to be around 9,322 feet

5        True Vertical Depth.

6  **Q18.**  **Which formations are included in the proposed Horseshoe B Unit?**

7  A18.  The Unitized Formation described in the Application is the subsurface portion of

8        the Horseshoe B Unit at a depth located from 50' above the top of the Utica Shale

9        to 50' below the top of the Trenton Limestone formation.

10  **Q19.**  **How and why were these formations chosen?**

11  A19.  We expect to produce from both the Utica Shale and Point Pleasant formations,

12        though fractures from completion activities may extend outside those formations.

13        We ask for a 50' buffer above and below the productive formations for this reason.

14  **Q20.**  **Based on the data you analyzed, should the area be considered a pool?**

15  A20.  Yes

16  **Q21.**  **Could you please explain why?**

17  A21.  Analysis of the data indicates the reservoir properties are very similar over the unit

18        area for the proposed Utica/Point Pleasant formation and would qualify as part of a

19        pool.

20  **ALLOCATION METHODOLOGY**

21  **Q22.**  **Are you generally familiar with the manner in which unit plans allocate**

22        **production and unit expenses to parcels within the unit?**

23  A22.  Yes.

24  **Q23.**  **You testified earlier that the Utica/Point Pleasant formation underlying the**

25        **Horseshoe B Unit has a relatively uniform thickness and reservoir quality.**

26        **Given those characteristics, what would be an appropriate method of**

27        **allocating production and unit expenses among the parcels contained in the**

28        **Horseshoe B Unit?**

29  A23.  Yes because of the reservoir quality and relatively uniform thickness across the

30        unit. An appropriate method of allocation would be on a surface-acreage basis.

31  **Q24.**  **Is this method used elsewhere?**

1    A24.   Yes.

2    **Q25.**   **What method of allocation is utilized in the unit plan for the Horseshoe B**

3           **Unit?**

4    A25.   Based on the testimony of Jenae Allert, production and unit expenses are allocated

5           on a surface-acreage basis.

6    **Q26.**   **Does this conclude your testimony?**

7    A26.   Yes.

M. Buckner





# STATE OF OHIO
## DEPARTMENT OF NATURAL RESOURCES
## DIVISION OF OIL AND GAS RESOURCES MANAGEMENT

| | | |
|---|---|---|
| In re the Matter of the Application of | : | |
| Gulfport Energy Corporation for | : | |
| Unit Operation | : | Application Date: July 17, 2017 |
| | : | Supplement Date: November 1, 2017 |
| Horseshoe B Unit | : | |

---

## PREPARED TESTIMONY OF DANNY WATSON, P.E.
## ON BEHALF OF GULFPORT ENERGY CORPORATION

---

Zachary M. Simpson (0089862)
GULFPORT ENERGY CORPORATION
3001 Quail Springs Parkway
Oklahoma City, Oklahoma 73134

Attorney for Applicant,
Gulfport Energy Corporation

Date: November 1, 2017

Exhibit 4

## PREPARED DIRECT TESTIMONY OF DANNY WATSON, P.E.

1  **Q1.** **Please introduce yourself.**

2  A1.  My name is Danny Watson and my business address is 3001 Quail Springs Parkway,

3  Oklahoma City, Oklahoma 73134. I am the Director of Resource Development for

4  Gulfport Energy Corporation.

5  **Q2.** **What is the purpose of your testimony today?**

6  A2.  I am testifying in support of the Application of Gulfport Energy Corporation for Unit

7  Operation filed with respect to the Horseshoe B Unit, consisting of thirty-two (32)

8  separate tracts of land totaling approximately 673.838 acres in Belmont County, OH. My

9  testimony addresses the following: (1) unit operations for the Horseshoe B Unit are

10  reasonably necessary to increase substantially the recovery of oil and gas and (2) the

11  value of the estimated additional recovery due to unit operations exceeds the estimated

12  additional costs.

13  **Q3.** **Can you summarize your educational experience for me?**

14  A3.  I hold a Bachelors of Science in Petroleum Engineering from West Virginia University.

15  **Q4.** **Are you a member of any professional associations?**

16  A4.  I am a member of The Society of Petroleum Engineers as well as the Society of

17  Petroleum Evaluation Engineers.

18  **Q5.** **Do you hold a professional licensure?**

19  A5.  I am a registered Professional Engineer in the state of Oklahoma.

20  **Q6.** **How long have you been a Reservoir Engineer for Gulfport?**

21  A6.  Over 3 years.

22  **Q7.** **What other work experiences have you had?**

23  A7.  With over 8 years of experience, I have worked for Marshall Miller & Associates as a

24  Reservoir Engineer, Chesapeake Energy as a Completions/Production Engineer, and

25  Gulfport Energy as a Reservoir Engineer, Resource Development Manager, and in my

26  current role as Director of Resource Development.

27  **Q8.** **What does being a reservoir engineer entail?**

28  A8.  I perform reserve evaluations estimating reserves and recoveries. I analyze the economics

29  and risk assessment of developmental wells and projects. I calculate how many

30  hydrocarbons are believed to exist or remain on Gulfport properties as well as how much

31  we can economically expect to produce.

1    **Q9.**    **How do you do that?**

2    A9.    There are several methods available such as volumetric analysis, utilizing analogous

3           offset production, and decline-curve analysis that can be used to make projections about

4           how much hydrocarbon exists and how much can be produced. Geologic data, drilling

5           and fracturing techniques, and costs are considered to estimate economics.

6    **Q10.**    **Did you perform any calculations to support Gulfport's application for unitization**

7           **for the proposed Horseshoe B Unit?**

8    A10.    Yes, I did.

9    **Q11.**    **And did you perform those calculations yourself, or did someone assist you?**

10    A11.    I performed the calculations myself.

11    **Q12.**    **What sort of calculations were you asked to perform?**

12    A12.    I estimated the reserves for both non-unitized and unitized scenarios for the Horseshoe B

13           Unit. Under the current un-unitized acreage, Gulfport would be limited to partial

14           development of the unit with 2 horizontal wells (approximately lateral lengths of 12,338'

15           and 11,137') when considering the exclusion of parcels with uncommitted, unleased, or

16           partially unleased interests. If the acreage were approved for full development, Gulfport

17           would be able to drill two horizontal wells (approximately 13,495' average lateral length)

18           from a single pad in the unit.

19    **Q13.**    **Why horizontal wells?**

20    A13.    The vast majority of unconventional shale reservoirs cannot be produced at economic

21           flow rates and do not produce economic volumes of oil and gas without the use of

22           horizontal drilling and the assistance of stimulation treatments like hydraulic fracturing.

23           This largely explains why Utica Shale exploration and production in Ohio is a recent

24           development. The permeability of shale formations, including the Utica formation, is

25           extremely low. In order for hydrocarbons found in the shale reservoir to flow at economic

26           rates, the surface area open to flow must be maximized. Thus far, horizontal multi-stage,

27           hydraulically-fractured wells are the most efficient way that the oil and gas industry has

28           been able to maximize the surface area exposed to the reservoir for flow purposes.

29    **Q14.**    **How are horizontal wells drilled?**

30    A14.    Horizontal drilling is the process of drilling down vertically to a point commonly

31           referred to as the kickoff point, and then gradually turning the wellbore to drill and place

1       the wellbore in the desired hydrocarbon bearing formation – in this case, the Utica shale –

2       horizontally in order to maximize the areal contact of the reservoir. This technology,

3       along with hydraulically fracturing the formation, is required to economically develop

4       unconventional resources like shale gas formations.

5    **Q15.**   **How deep is the desired hydrocarbon bearing formation that you are referring to?**

6    A15.    It depends on the well being drilled, but for the proposed Horseshoe B Unit, it is likely to

7       be approximately 9,885' TVD (true vertical depth) based on data gathered from an offset

8       that was recently drilled.

9    **Q16.**   **Is horizontal drilling common in the oil and gas industry?**

10    A16.    Yes. The oil and gas industry has been drilling horizontal wells for many years. Also,

11       hydraulic fracturing has been used in the oil and gas industry for more than seventy years.

12       The combination of hydraulic fracturing and horizontal drilling is what is allowing shale

13       formations like the Utica to finally be developed.

14    **Q17.**   **Is it fair to say, then, that horizontal wells are the predominant method used to**

15       **develop shale formations like the Utica today?**

16    A17.    Yes.

17    **Q18.**   **Turning specifically to the Horseshoe B Unit, have you made an estimate of the**

18       **production you anticipate from the proposed unit's operations?**

19    A18.    Yes, I have evaluated and estimated the production potential from the Utica formation in

20       the Horseshoe B Unit and believe that the gross production from unitized operations, as

21       proposed in this application, if successful, could be as much as 58.6 BCF of gas.

22    **Q19.**   **How did you make those estimates?**

23    A19.    From analogy of offset Utica horizontal wells and from decline-curve analysis. There are

24       horizontal Utica wells located within approximately two miles of the proposed unit that I

25       believe have similar characteristics in terms of fluid type and production profile;

26       therefore, data from those wells were used in my calculations.

27    **Q20.**   **Once you had that data from the other Utica shale wells, what did you do with it?**

28    A20.    I used actual production data from those wells to develop an average Utica production

29       profile or "type curve" using decline-curve analysis.  With all wells, production and

30       pressure is highest at the onset and gradually decreases to a point where production

31       cannot be sustained without some degree of additional stimulation.  These declines can be

1    plotted and, for wells within the same formation, tend to exhibit similar characteristics.

2    In the type curve process, data from the first day of production for all the wells are all

3    aligned, and the production volumes are then averaged. This will produce the average

4    production profile of the wells included in the type curve. A mathematical expression is

5    then used to match the existing production and forecast the future production that is

6    expected to be produced from the well. This is referred to as "decline-curve analysis."

7    Type curves are routinely used in the industry to estimate reserves.

8    **Q21.** **I see that you've qualified your calculations as an estimate. Does that mean that you**

9    **cannot calculate the production from these wells ahead of time with mathematical**

10    **certainty?**

11    A21.   Yes, that is correct. The ultimate recovery of a well cannot be known until it has

12    produced its last drop, which will not be for many years. However, we have established

13    production and test data in the area.

14    **Q22.** **In your professional opinion, would it be economic to develop the Horseshoe B Unit**

15    **using traditional vertical drilling?**

16    A22.   No. These unconventional reservoirs cannot be produced at economic flow rates or do

17    not produce economic volumes of oil and gas without the use of horizontal drilling and

18    the assistance of stimulation treatments. This largely explains why the Utica Shale had

19    not been developed prior to the recent horizontal activity in Ohio.

20    **Q23.** **Are the estimates that you made based on good engineering practices and accepted**

21    **methods in the industry?**

22    A23.   Yes

23    **Q24.** **Do you have the calculations you performed?**

24    A24.   Yes. The summary of my calculations are attached to this prepared testimony as Exhibit

25    "DW-1"

26    **Q25.** **Can you summarize what your calculations show?**

27    A25.   First, I looked at the economics of non-unitization. In this case, Gulfport would be

28    limited to partial development of the unit when considering the exclusion of parcels with

29    uncommitted, unleased, or partially unleased interests. For this scenario, the Horseshoe

30    B A & B laterals would measure approximately 12,338' and 11,137', respectively.

31    **Q26.** **Did you also estimate what could be recovered if operations in this area are unitized,**

1        **as is being proposed by this application?**

2   A26.   Yes. In that case, a unitization order would provide for accounting of unleased, partially

3        leased, and/or otherwise uncommitted interests, allowing Gulfport to fully develop the

4        unit with two horizontal laterals.. The Horseshoe B A and B laterals would measure

5        approximately 13,493' & 13,497', respectively.

6   **Q27.   Can you summarize what those calculations show?**

7   A27.   Yes. Under the current un-unitized acreage, Gulfport would be limited to partial

8        development of the unit with two horizontal wells with an estimated recovery of 50.9 bcf

9        of gas over the productive life of the two wells. If unitization occurs, Gulfport will be

10       able to produce approximately 58.6 bcf of gas over the productive life of the two wells.

11  **Q28.   Is the unitized recovery due solely to being able to drill beneath the currently**

12       **uncommitted, unleased, or partially leased parcels?**

13  A28.   No. The oil and gas from those parcels accounts for part of the increase, but the majority

14       of the increase is from what would otherwise be stranded reserves associated with fully

15       leased parcels that could not be produced unless the Division approves the unitization

16       application for full unit operation. The oil and gas reserves associated with the fully

17       leased parcels would forever be left behind if not produced through unit operation by

18       these wells. Drilling an additional well or wells to try to recover those stranded reserves

19       is simply not economically feasible.

20  **Q29.   Let's shift our focus to the economic calculations for this project. Have you made**

21       **an estimate of the economics of the proposed development of the Horseshoe B Unit?**

22  A29.   Yes

23  **Q30.   Would you walk us through your economic evaluation, beginning with your**

24       **estimate of the anticipated revenue stream from the Horseshoe B Unit development?**

25  A30.   During the reserve estimation process, not only were the ultimate reserve numbers

26       estimated, but the production profile of the reservoir hydrocarbons over time was also

27       developed. The production profile and a price scenario were used to develop the

28       revenues that are expected from the proposed unit's development.

29  **Q31.   What do you mean when you say "production profile over time of the reservoir**

30       **hydrocarbons," and why is it important?**

31  A31.   I am referring to the actual production we expect on a daily or monthly basis for the

Danny Watson, P.E.
Rev. 11.1.2017

1    well's entire life. This is important when doing an economic evaluation in which revenue

2    from future production is discounted in order to obtain the net present value and rate of

3    return for the specific project.

4    **Q32.  What price scenario did you use?**

5    A32.  A six-year forward strip price for July 10, 2017 was used.  This is the market's current

6    view of what gas and oil prices will be in the future and are not guaranteed to be the price

7    received for the produced hydrocarbons from the Horseshoe B Unit. I have attached those

8    figures as Exhibit "DW-2".

9    **Q33.  What about anticipated capital and operating expenses?**

10   A33.  Capital and operating expenses were incorporated as well.  The total estimated capital is

11   based on the anticipated costs for any processes related to pre-drill operations, drilling,

12   completions, facilities, and initially producing the well.  The basis for this estimate comes

13   from recent costs we have experienced with our Utica formation development in the state

14   of Ohio.  These costs were adjusted to correspond to the respective lateral length of each

15   lateral within the proposed unit.  Also incorporated into the analysis are both fixed and

16   variable operating cost estimates estimated to be realized to maintain production for the

17   life of the well.

18   **Q34.  Based on this information and your professional judgment, does the value of the**

19   **estimated recovery from the operations proposed for the Horseshoe B Unit exceed**

20   **its estimated costs?**

21   A34.  Yes. The total estimated cost of developing the Horseshoe B Unit is approximately $28.1

22   million.  Undiscounted Net Cash Flow is $58.2 million and using a 10% discount rate, the

23   net present value is approximately $19.3 million.

24   **Q35.  In your professional opinion, do you believe that the proposed unit operations for**

25   **the Horseshoe B Unit are reasonably necessary to increase substantially the ultimate**

26   **recovery of oil and gas from the unit area?**

27   A35.  Yes.  It is my professional opinion that unit operations are reasonably necessary to

28   increase substantially the ultimate recovery of oil and gas from the unit area.  This area

29   would not be able to be fully developed without unit operations.  Further, unit operation

30   will protect the correlative rights of all of the mineral owners by effectively and

31   efficiently draining all of the reserves, eliminating any waste of mineral resources

Danny Watson, P.E.
Rev. 11.1.2017

1      associated with stranded reserves. There is no doubt in my mind that unit operation will

2      substantially increase the ultimate recovery of oil and gas from this unit area.

3  **Q36.  In your professional opinion, does the value of increased recovery attributable to**

4          **unit operations exceed the estimated additional costs of unit operation?**

5  A36.    Yes. To increase the exposure to the reservoir and produce the maximum amount of

6          hydrocarbons, placing horizontal wells across the entire proposed unit is ideal. This limits

7          the capital cost by limiting the number of required surface locations and wells and

8          maximizes the production from the proposed unit's operations. Without the proposed

9          unit operations, we would not be able to fully develop this area. As indicated above, the

10         estimated development of the proposed unit would require $28.1 million in capital, and

11         would have an undiscounted net cash flow of $58.2 million and a net present value

12         discounted at 10% per annum of approximately $19.3 million. Thus, the value of the

13         increased recovery significantly outweighs the increased cost of unitized operation.

14         Financially, it makes sense to operate as a unit.

15  **Q37.  And your opinions are based on your education and professional experience?**

16  A37.    Yes

17  **Q38.  Does this conclude your testimony?**

18  A38.    Yes.

Exhibit "DW-1"
HORSESHOE B

| Unitized Scenario | | | | | | | |
|---|---|---|---|---|---|---|---|
| Well Name | Lateral Length (ft) | Equivalent EUR (bcfe) | Undiscounted Net Revenue (M$) | Undiscounted Operating Expenses (M$) | Capital Costs (M$) | Undiscounted Net Cash Flow (M$) | PV10 (M$) |
| HORSESHOE B-A | 13,493 | 29.3 | 48,117 | 4,375 | 14,040 | 29,120 | 9,633 |
| HORSESHOE B-B | 13,497 | 29.3 | 48,135 | 4,383 | 14,043 | 29,126 | 9,631 |
| Total | 26,990 | 58.6 | 96,253 | 8,758 | 28,082 | 58,246 | 19,264 |

| Non-Unitized Scenario | | | | | | | |
|---|---|---|---|---|---|---|---|
| Well Name | Lateral Length (ft) | Equivalent EUR (bcfe) | Undiscounted Net Revenue (M$) | Undiscounted Operating Expenses (M$) | Capital Costs (M$) | Undiscounted Net Cash Flow (M$) | PV10 (M$) |
| HORSESHOE B-A | 12,338 | 26.8 | 43,848 | 4,506 | 13,204 | 25,606 | 8,773 |
| HORSESHOE B-B | 11,137 | 24.2 | 39,442 | 4,506 | 12,334 | 22,119 | 7,955 |
| Total | 23,475 | 50.9 | 83,290 | 9,012 | 25,537 | 47,725 | 16,728 |

Rev. 11/1/2017

EXHIBIT "DW-2"

STRIP PRICES AS OF JULY 10, 2017

| DATE | OIL PRICE $/BBL. | GAS PRICE $/MCF |
|---|---|---|
| July-Dec 2017 | 47.29 | 3.13 |
| Jan-Dec 2018 | 46.23 | 2.94 |
| Jan-Dec 2019 | 47.89 | 2.80 |
| Jan-Dec 2020 | 49.22 | 2.78 |
| Jan-Dec 2021 | 50.60 | 2.86 |
| Jan-Dec 2022 | 51.89 | 2.92 |
| To Life | 53.68 | 3.16 |



# EXHIBIT "DW-3"
## GULFPORT ENERGY CORPORATION
## HORSESHOE B UNIT
## BELMONT COUNTY, OHIO
### 673.838 ACRES

Legend:

- – – – PRODUCING WELLS
- HORSESHOE B
- CHARLIE 210472
- CHARLIE 210055
- CONWAY 210464
- CONWAY 210119
- GEORGE 210467
- GEORGE 210084
- THOMPSON SOUTH 210466
- THOMPSON SOUTH 210235
- VALERIE 210473

HORSESHOE B
WASHINGTON & YORK TOWNSHIPS
BELMONT COUNTY, OHIO

1 in = 6,000 ft



Last Updated: July 7, 2017
Version 1

## Exhibit DW-3.1 to the Horseshoe B Unitization Application
### dtd. July 19, 2017

| WELLBORE NAME | UNIT | PROD START (DATE) | LATERAL (FT)* |
|---|---|---|---|
| CHARLIE 210055 3C | DICKSON-CRAVAT | 11/30/2016 | 8208 |
| CHARLIE 210055 2B | DICKSON-CRAVAT | 11/30/2016 | 8536 |
| CHARLIE 210055 1A | DICKSON-CRAVAT | 11/30/2016 | 6753 |
| THOMPSON SOUTH 210235 5A | THOMPSON SOUTHWEST | 8/1/2016 | 9865 |
| THOMPSON SOUTH 210235 4B | THOMPSON SOUTHWEST | 7/31/2016 | 9849 |
| THOMPSON SOUTH 210235 3C | THOMPSON SOUTHWEST | 7/31/2016 | 9637 |
| THOMPSON SOUTH 210466 1A | THOMPSON SOUTHEAST | 7/31/2016 | 9871 |
| CONWAY 210464 1A | CONWAY EAST | 6/23/2016 | 7874 |
| THOMPSON SOUTH 210235 2D | THOMPSON SOUTHWEST | 7/31/2016 | 9854 |
| CONWAY 210119 5A | CONWAY WEST | 6/22/2016 | 7432 |
| CONWAY 210119 4B | CONWAY WEST | 6/22/2016 | 7354 |
| CONWAY 210119 3C | CONWAY WEST | 6/22/2016 | 7658 |
| CHARLIE 210472 4A | CHARLIE NORTH | 11/30/2016 | 7872 |
| CHARLIE 210472 5B | CHARLIE NORTH | 11/30/2016 | 7307 |
| CHARLIE 210472 6C | CHARLIE NORTH | 11/30/2016 | 6793 |
| GEORGE 210084 2B | GEORGE SOUTHWEST | 8/18/2016 | 10109 |
| GEORGE 210467 3A | GEORGE SOUTHEAST | 8/18/2016 | 6635 |
| GEORGE 210467 4B | GEORGE SOUTHEAST | 8/18/2016 | 10268 |
| VALERIE 210473 4C | VALERIE | 11/28/2016 | 6955 |
| VALERIE 210473 1A | VALERIE | 11/30/2016 | 7011 |
| VALERIE 210473 2B | VALERIE | 11/30/2016 | 6825 |

*footage based on
productive lateral length

**STATE OF OHIO**
**DEPARTMENT OF NATURAL RESOURCES**
**DIVISION OF OIL AND GAS RESOURCES MANAGEMENT**

| | | |
|---|---|---|
| In re the Matter of the Application of | : | |
| Gulfport Energy Corporation for | : | |
| Unit Operation | : | Application Date: July 19, 2017 |
| | : | Supplement Date: November 1, 2017 |
| Horseshoe B Unit | : | |

---

**PREPARED TESTIMONY OF JENAE ALLERT**
**ON BEHALF OF GULFPORT ENERGY CORPORATION**

---

Zachary M. Simpson (0089862)
GULFPORT ENERGY CORPORATION
3001 Quail Springs Parkway
Oklahoma City, Oklahoma 73134

Attorney for Applicant,
Gulfport Energy Corporation

Date: November 1, 2017

Exhibit 4

1        **INTRODUCTION.**

2   **Q1.**   **Please state your name and business address.**

3   A1.   My name is Jenae C. Allert and my business address is 3001 Quail Springs

4        Parkway, Oklahoma City, Oklahoma 73134

5   **Q2.**   **Who is your employer?**

6   A2.   Gulfport Energy Corporation ("Gulfport")

7   **Q3.**   **What is your position with Gulfport?**

8   A3.   I am Coordinator – Land & Legal.

9   **Q4.**   **Please describe your professional responsibilities at Gulfport.**

10   A4.   My primary responsibilities involve preparing and overseeing development of

11        drilling units from the early stages of designing the unit based on Gulfport's lease

12        position, acquisition of leases or rights to drill, and title work up and through the

13        drilling phase, ending at overseeing attorneys determining title for the distribution

14        of production proceeds.

15   **Q5.**   **Starting with college, please describe your educational background.**

16   A5.   I earned a Bachelor of Science specializing in Leadership Development from Texas

17        A&M University in May of 2005. In May of 2009, I graduated with a Juris Doctor

18        from Texas A&M University School of Law formerly known as Texas Wesleyan

19        School of Law. I was admitted to the State Bar of Texas in November 2009.

20   **Q6.**   **Please briefly describe your professional experience.**

21   A6.   In May of 2006 I started my career in the oil and gas industry working for Dale

22        Resources, LLC. I started in the Title Department and ultimately became the

23        Curative Manager. While in the Title Department at Dale Resources, LLC, I

24        managed a team of 6-10 curative agents who worked to cure title defects for clients

25        operating wells in the Barnett Shale located in Fort Worth, Texas. I stayed with

26        Dale Resources, LLC until April of 2010 when I accepted an Operational Landman

27        position with Chesapeake Energy Corporation ("Chesapeake"). My primary role as

28        an Operational Landman for Chesapeake Energy Corporation was to ready wells to

29        drill according to their drilling program in the Barnett Shale. In November 2011 I

30        transferred to Chesapeake's Utica group operated at Chesapeake's headquarters in

31        Oklahoma City. My primary role in the Utica group was to ready wells to drill

Exhibit 4

**Direct Testimony of Jenae Allert, Landman**

| | | |
|---|---|---|
| 1 | | according to their drilling program in the Utica Shale. My area of responsibility |
| 2 | | included Ohio. In December 2013 I accepted a position at Vantage Energy, LLC |
| 3 | | ("Vantage") as Operational Land Manager – Pennsylvania. My primary role was to |
| 4 | | oversee the Appalachia Land Department so that Vantage could develop their |
| 5 | | Marcellus Shale asset primarily located in South Western Pennsylvania. In April |
| 6 | | 2015, I joined Gulfport where I have been working to develop our assets in Ohio. |
| 7 | Q7. | **What do you do as Coordinator – Land & Legal?** |
| 8 | A7. | My responsibilities as a Coordinator – Land & Legal consist of acquiring, |
| 9 | | developing, and maintaining Gulfport's leasehold position in various counties in |
| 10 | | Ohio. I work hand-in-hand with Gulfport's Engineering and Geology departments |
| 11 | | to create production units that we believe will produce the minerals in a way that |
| 12 | | will protect the correlative rights of all parties involved. Once we have determined |
| 13 | | the unit boundaries, I interface with lease brokers, title attorneys, and surveyors to |
| 14 | | determine the ownership of each parcel within the proposed unit and subsequently |
| 15 | | acquire the mineral rights to as much of the unit as possible. If there are other |
| 16 | | operators who have a leasehold presence within the boundary lines, I work with |
| 17 | | them to negotiate trade agreements, term assignments, and various other |
| 18 | | commitment agreements. If there are unleased mineral owners within the unit, I |
| 19 | | work on securing Oil and Gas Leases from the unleased mineral owners. |
| 20 | | Additionally, I oversee the surface development and permitting process for these |
| 21 | | wells as well as any other tasks that are necessary in preparing Gulfport to |
| 22 | | successfully drill horizontal Utica/Point Pleasant wells. |
| 23 | Q8. | **Are you a member of any professional associations?** |
| 24 | A8. | Yes, I am a member of the American Association of Professional Landmen and the |
| 25 | | Oklahoma City Association of Professional Landmen. |
| 26 | Q9. | **Have you ever been involved in combining or pooling oil and gas interests for** |
| 27 | | **development in other states?** |
| 28 | A9. | Yes, I have been accepted as an expert witness by the Texas Railroad Commission |
| 29 | | in regard to Rule 37 spacing matters in Texas for horizontal development in the |
| 30 | | Barnett Shale formation. |
| 31 | Q10. | **Were you involved in the preparation of Gulfport's Application for** |

J. Allert

**Direct Testimony of Jenae Allert, Landman**

| | | |
|---|---|---|
| 1 | | Unitization with respect to the Horseshoe B Unit? |
| 2 | A10. | Yes, after our initial lease acquisition covering the relevant land, I have assisted in |
| 3 | | the formation of the Horseshoe B Unit in its present configuration and have been |
| 4 | | involved with the preparation of this application for unitization. |
| 5 | **Q11.** | **Can you generally describe the Horseshoe B Unit?** |
| 6 | A11. | Sure. The Horseshoe B Unit consists of thirty-two (32) distinct parcels of land |
| 7 | | totaling approximately 673.838 surveyed acres of land in Washington and York |
| 8 | | Townships, Belmont County, State of Ohio. |
| 9 | | **EFFORTS MADE BY GULFPORT TO LEASE UNIT TRACTS.** |
| 10 | **Q12.** | **The Application submitted by Gulfport indicates that it holds the oil and gas** |
| 11 | | **operational rights to 654.01760 acres of the proposed 673.838 surveyed acre** |
| 12 | | **Unit. Would you describe how Gulfport acquired its rights?** |
| 13 | A12. | Gulfport began acquiring these leasehold rights in 2013 through its own leasing |
| 14 | | efforts as well as through acreage trades with third parties. Additionally Gulfport |
| 15 | | has a Joint Venture with Rice Drilling D LLC, ("Rice"). |
| 16 | **Q13.** | **What percentage of the total acreage of the Horseshoe B Unit is represented** |
| 17 | | **by the oil and gas rights held by Gulfport?** |
| 18 | A13. | 97.05858% |
| 19 | **Q14.** | **When you say Gulfport has operational rights to 654.01760 acres or** |
| 20 | | **97.05858% of the unit, how was that calculated?** |
| 21 | A14. | Gulfport creates and reviews title abstracts and title opinions for every single parcel |
| 22 | | purported to be included in the Unit. Those abstracts and opinions set out the |
| 23 | | owners of the mineral estate, surface estate, executive interest and royalty interest. |
| 24 | | That ownership is then organized into Exhibit A2 – A6 of the Application on a tract |
| 25 | | level basis so that each line of the exhibit represents the net acreage and net |
| 26 | | participation for every interest owner in the unit. For example, Tract 24 consists of |
| 27 | | 47.93 acres or 7.11299% of the Unit. Gulfport's research shows that ownership of |
| 28 | | Tract 24 is divided between at least one hundred twenty seven (127) undivided |
| 29 | | interest owners. Three Branches, L.L.C. ("Three Branches") own a 16.66667% |
| 30 | | interest in Tract 24 which nets to 1.18550% ownership of the Unit. Three Branches |
| 31 | | is leased to Gulfport and thus that 1.18550% is attributed to Gulfport's Committed |

**Direct Testimony of Jenae Allert, Landman**

| | | |
|---|---|---|
| 1 | | Working Interest Ownership. By contrast, Glenna Heskett, ("Heskett") own a |
| 2 | | 1.04166% interest in Tract 24 which nets to 0.07409% ownership of the Unit. |
| 3 | | Gulfport does not have a lease or other voluntary agreement with Heskett and so |
| 4 | | has not included the 0.07409% Gates interest in the calculation of the Committed |
| 5 | | Working Interest Ownership. |
| 6 | Q15. | **Is this calculation method the industry standard for determining an** |
| 7 | | **Operator's committed working interest ownership?** |
| 8 | A15. | Yes. In my experience this is the way an Operator's committed working interest |
| 9 | | ownership is always calculated. |
| 10 | Q16. | **Using this calculation method, what is the unleased ownership in the Unit?** |
| 11 | A16. | 2.94142% |
| 12 | Q17. | **What tracts make up this percentage?** |
| 13 | A17. | All or Portions to Tracts 24 and 25. |
| 14 | Q18. | **Does Gulfport have voluntary agreements with any interest owners in these** |
| 15 | | **parcels with unleased ownership?** |
| 16 | A18. | Yes. Gulfport has voluntary agreements with interest owners in Tracts 24 and 25. |
| 17 | Q19. | **For the partially unleased parcels, how has Gulfport treated those under a** |
| 18 | | **non-unitized scenario?** |
| 19 | A19. | Gulfport has shown those parcels with a 500' setback. |
| 20 | Q20. | **Have other working interest owners in the Horseshoe B Unit approved the** |
| 21 | | **Unit Plan prior to filing this application?** |
| 22 | A20. | No. There are no uncommitted working interest owners. |
| 23 | Q21. | **Why was Gulfport not able to acquire the commitment of oil and gas rights to** |
| 24 | | **all of the acreage in the proposed Unit?** |
| 25 | A21. | Gulfport has been working to come to terms with uncommitted, unleased, and |
| 26 | | partially unleased tracts within the Unit. Some of these tracts are subject to ancient |
| 27 | | mineral reservations which fall in the chain of title in the 1900's. Because of the |
| 28 | | passage of time since these reservations, the interest has passed through several |
| 29 | | estates, most of which have not been probated. Gulfport is conducting extensive |
| 30 | | and time consuming heirship research which includes applying Ohio's intestacy |
| 31 | | laws and employing multiple databases such as: Ancestry.com, Westlaw, Accurint, |

J. Allert
Rev. 11.1.2017

1      and Family Search.

2   **Q22.**   **Could you describe the location of the leased, unleased, partially unleased**

3      **within the Horseshoe B Unit?**

4   A22.   Yes. Exhibit JA-2 and JA3 are attached hereto, with plats showing each of the

5      tracts in the Horseshoe B Unit.

6   **Q23.**   **Have you prepared a log detailing Gulfport's efforts to obtain an agreement**

7      **from the leased and partially unleased interest owners in the proposed Unit?**

8   A23.   Yes. I have outlined Gulfport's communications in Exhibit JA 1.1.

9   **UNIT PLAN PROVISIONS.**

10   **Q24.**   **Would you describe generally the development plan for the Horseshoe B Unit?**

11   A24.   Gulfport plans to develop the Horseshoe B Unit from a centrally located padsite

12      (the Horseshoe padsite). The Horseshoe padsite is located inside the western

13      boundary of the Unit. The access road is partially inside the Unit. The Horseshoe

14      padsite will be adequately built to support the drilling of multiple horizontal wells;

15      all in a southeasterly orientation planned in the Unit. The Unit is currently

16      configured to include multiple horizontal wellbores, with projected lateral lengths

17      of approximately 13,493-13,497 feet.

18   **Q25.**   **Can you describe the location of the proposed wellbores within the Horseshoe**

19      **B Unit?**

20   A25.   Yes. I have attached as Exhibit JA-2 & JA-3 to my testimony a plat showing the

21      configuration of the wellbores. It shows the Horseshoe padsite located inside the

22      western boundary of the Horseshoe B Unit.

23   **Q26.**   **Do you know where the drilling and completion equipment will be located on**

24      **the pad?**

25   A26.   Yes, We have acquired surface use agreements with the surface owners of those

26      parcels. Our plan to develop the surface location is to do so pursuant to the terms

27      of that agreement.

28   **Q27.**   **If the Division were to issue an order authorizing the proposed Unit, and if**

29      **Gulfport agreed with the terms and conditions of that order, how long**

30      **thereafter would Gulfport drill the exploratory well contemplated by the**

31      **petition?**

J. Allert

### Direct Testimony of Jenae Allert, Landman

1    A27.    We plan to drill the initial well in the first quarter of 2018.

2    **Q28.**    **Does Gulfport have a specific timeline for drilling additional wells in the**

3           **Horseshoe B Unit?**

4    A28.    Subsequent wells will be drilled at some indeterminate time following the drilling

5           of the initial well.

6    **Q29.**    **What are the benefits to this type of Unit development?**

7    A29.    Developing the Horseshoe B Unit in the manner previously described protects the

8           correlative rights of the Unit participants while also providing for substantial

9           environmental and economic benefits. Drilling, completing and producing multiple

10          horizontal wells from a single pad site significantly reduces the environmental

11          impact by allowing Gulfport to build a single access road rather than many, reduce

12          traffic, and allow for the development of acreage that might not otherwise be

13          available for development due to various surface limitations (terrain, residences,

14          etc.). Developing the Utica Shale via the drilling of vertical wells is not

15          practicable, as this reservoir cannot be produced at economic flow rates or volumes

16          with vertical drilling, and due to the fact that even if economically feasible, surface

17          limitations set out above would prevent the practical well spacing necessary too

18          efficiently and effectively produce the reservoir. Horizontal drilling negates these

19          issues by allowing for a central pad locations to develop mineral acreage

20          underlying otherwise inaccessible lands with a minimum of surface disturbance.

21    **Q30.**    **So is it fair to say that the benefits of this type of development are substantial?**

22    A30.    Yes, the type of development planned by Gulfport for the Horseshoe B Unit offers

23          significant benefits not only to the operator, but also to the landowners in the Unit

24          and the surrounding area.

25    **Q31.**    **Are you familiar with the Unit Plan proposed by Gulfport for the Horseshoe B**

26          **Unit?**

27    A31.    Yes. The Unit Plan proposed by Gulfport is set out in two documents attached to

28          the Application. The first, the Unit Agreement, establishes the non-operating

29          relationship between the parties in the Unit. The second, the Unit Operating

30          Agreement, establishes how the Unit will be explored, developed, and produced.

31    **Q32.**    **Let's turn first to the Unit Agreement, marked as Exhibit 1 to the Application.**

J. Allert
Rev. 11.1.2017

## Direct Testimony of Jenae Allert, Landman

1    **Would you describe briefly what it does?**

2    A32.    Yes.  The Unit Agreement in effect combines the oil and gas rights in the

3    Horseshoe B Unit so that they can be developed as if they were part of a single oil

4    and gas lease.

5    **Q33.    Are mineral rights to all geological formations combined under the Unit**

6    **Agreement?**

7    A33.    No.  The Unit Agreement only Unitizes the oil and gas rights located fifty feet

8    above the top of the Utica Shale to fifty feet below the top of the Trenton

9    Limestone formation, defined in the Agreement as the "Unitized Formation," to

10    allow development of the Utica Shale formation.

11    **Q34.    How will production proceeds from the Horseshoe B Unit be allocated among**

12    **royalty interest owners and working interest owners in the Unit?**

13    A34.    On a surface-acreage basis.  Under Article 4 of the Unit Agreement, every tract is

14    assigned a tract participation percentage based on surface acreage and shown on

15    Exhibits A-2 thru A-6 to the Unit Operating Agreement.  Article 5 of the Unit

16    Agreement allocates production based on each individual's proportionate

17    ownership of that tract participation.

18    **Q35.    Why use a surface-acreage basis as the method of allocation?**

19    A35.    Based on the testimony of Michael Buckner attached to the Application as Exhibit

20    3, a surface-acreage basis is an appropriate method of allocation because the

21    formation thickness and reservoir quality of the Unitized Formation is expected to

22    be consistent across the Horseshoe B Unit.

23    **Q36.    Would you go through an example from Exhibit A-2 to the Unit Operating**

24    **Agreement to illustrate how a surface-acreage allocation would be applied to**

25    **the Horseshoe B Unit?**

26    A36.    Yes.  The sixth column on Exhibit A-2 to the Unit Operating Agreement, entitled

27    "Surface Acres in Unit," shows the number of surface acres in each tract of land

28    within the Horseshoe B Unit.  Column seven on Exhibit A-2 shows the related tract

29    participation of each tract, which is calculated by taking the total number of surface

30    acres in the tract and dividing it by the total number of surface acres in the Unit.

31    So, for example, if you look at Tract Number 1 on Exhibit A-2, it shows that the

J. Allert

Direct Testimony of Jenae Allert, Landman

| | | |
|---|---|---|
| 1 | | Richard Freiberg and Michelle Freiberg ("Freiburg") interest comprises 4.728 net |
| 2 | | surface acres in the 673.838 acre Horseshoe B Unit, which equates to a tract |
| 3 | | participation of approximately 0.70165% (4.728/673.838). |
| 4 | **Q37.** | **What does that mean in terms of production allocated to that particular** |
| 5 | | **Freiburg tract?** |
| 6 | A37. | It would mean that roughly 0.70165% of all production from the Horseshoe B Unit |
| 7 | | would be allocated to the Freiburg tract, and would be distributed based on the |
| 8 | | terms of the lease or other pertinent documents affecting the ownership to |
| 9 | | production proceeds from the tract. |
| 10 | **Q38.** | **In your experience, is that a customary way to allocate production in a Unit?** |
| 11 | A38. | In my experience, surface-acreage allocation is both fair and customary for |
| 12 | | horizontal shale development. |
| 13 | **Q39.** | **How are Unit expenses allocated?** |
| 14 | A39. | Similarly to production, Unit expenses are allocated on a surface-acreage basis. |
| 15 | | Article 3 of the Unit Agreement provides that expenses, unless otherwise allocated |
| 16 | | in the Unit Operating Agreement, will be allocated to each tract of land within the |
| 17 | | Unit based on the proportion that the surface acres of each particular tract bears to |
| 18 | | the surface acres in the entire Unit. |
| 19 | **Q40.** | **Who pays the Unit expenses?** |
| 20 | A40. | Working interest owners. |
| 21 | **Q41.** | **Do the royalty owners pay any part of the Unit expenses?** |
| 22 | A41. | No. Royalty interest owners are responsible only for their proportionate share of |
| 23 | | taxes and post-production costs, which are deducted from their share of the |
| 24 | | proceeds from sales of production of hydrocarbons from the Unit area. |
| 25 | **Q42.** | **Let's turn to the Unit Operating Agreement, marked as Exhibit 2 to the** |
| 26 | | **Application. It appears to be based upon a form document. Could you please** |
| 27 | | **identify that form document?** |
| 28 | A42. | Yes. The Unit Operating Agreement is based upon *A.A.P.L. Form 610 – Model* |
| 29 | | *Form Operating Agreement – 1982*, which we typically use when we enter into |
| 30 | | joint operating agreements with other parties. |
| 31 | **Q43.** | **Are you familiar with the custom and usage of the Form 610 and other similar** |

Page 8

J. Allert

### Direct Testimony of Jenae Allert, Landman

| | | |
|---|---|---|
| 1 | | agreements in the industry? |
| 2 | A43. | Yes. The Form 610, together with its exhibits, is commonly used in the industry |
| 3 | | and is frequently modified to address the development objectives of the parties. As |
| 4 | | a landman, I have been involved in negotiating and modifying versions of A.A.P.L. |
| 5 | | operating agreements. |
| 6 | **Q44.** | **Turning to the Unit Operating Agreement in particular, does it address how** |
| 7 | | **Unit expenses are determined and paid?** |
| 8 | A44. | Yes. Article III of the Unit Operating Agreement provides that all costs and |
| 9 | | liabilities incurred in operations shall be borne and paid by the working interest |
| 10 | | owners, in accordance with their Unit Participation percentages. Those percentages |
| 11 | | can be found in Exhibits A-2 thru A-6 to the Unit Operating Agreement. Also, the |
| 12 | | Unit Operating Agreement has attached to it an accounting procedure identified as |
| 13 | | Exhibit C. |
| 14 | **Q45.** | **What is the purpose of the document marked as Exhibit C in connection with** |
| 15 | | **the East Fork North Unit Operating Agreement?** |
| 16 | A45. | The document presents information concerning how Unit expenses are determined |
| 17 | | and paid. |
| 18 | **Q46.** | **At the top of each page of Exhibit C, there appears a label that reads:** |
| 19 | | **"COPAS 2005 Accounting Procedure, Recommended by COPAS, Inc." Are** |
| 20 | | **you familiar with this society?** |
| 21 | A46. | Yes, COPAS stands for the Council of Petroleum Accountants Societies. |
| 22 | **Q47.** | **Is this COPAS document used in oil and gas operations across the country?** |
| 23 | A47. | Yes. It is commonly used in the industry. |
| 24 | **Q48.** | **In your opinion, is this COPAS document generally accepted in the industry?** |
| 25 | A48. | Yes. This was drafted by an organization whose membership encompasses various |
| 26 | | companies and sectors across the industry, and, as a result, is designed to be fair. |
| 27 | **Q49.** | **Will there be in-kind contributions made by owners in the Unit area for Unit** |
| 28 | | **operations, such as contributions of equipment?** |
| 29 | A49. | No, Gulfport Energy does not anticipate in-kind contributions for the Unit |
| 30 | | Operations. |
| 31 | **Q50.** | **Are there times when a working interest owner in the Unit chooses not to – or** |

J. Allert

### Direct Testimony of Jenae Allert, Landman

1         **cannot – pay their allocated share of the Unit expenses?**

2   A50.   Yes. Joint Operating Agreements account for such occurrences, which are not

3         uncommon. The agreements allow working interest owners the flexibility to

4         decline to participate in an operation that they may not believe will be a profitable

5         venture or that they cannot afford. The remaining parties can then proceed at their

6         own risk and expense.

7   **Q51.**   **Generally, how is the working interest accounted for when an owner chooses**

8         **not to participate in an operation?**

9   A51.   A working interest owner who cannot or chooses not to participate in an operation

10        is considered a non-consenting party. If the remaining working interest owners

11        decide to proceed with the operation, the consenting parties bear the full cost and

12        expense of the operation. A non-consenting party is deemed to have relinquished

13        its interest in that operation until the well revenues pay out the costs that would

14        have been attributed to that party, plus a prescribed risk penalty or non-consent

15        penalty.

16   **Q52.**   **What is a risk penalty or non-consent penalty, and why are they included in**

17        **the agreement?**

18   A52.   A risk penalty or non-consent penalty is a means to compensate consenting parties

19        for the financial risks of proceeding with a well that may be a non-producer when

20        one or more working interest owners do not consent to pay their share of the costs

21        of drilling said well. A non-consent penalty can also serve as a means to allow a

22        working interest owner to finance participation in a well when unable to advance its

23        share of drilling costs.

24   **Q53.**   **Can a working interest owner choose to go non-consent in the initial well in**

25        **the Horseshoe B Unit?**

26   A53.   Yes. If a working interest owner chooses not to participate in the Unit's initial

27        well, Article VI.A of the Unit Operating Agreement provides that the working

28        interest owner shall be deemed to have relinquished to the other parties its working

29        interest in the Unit with a back-in provision with a risk factor of 300%.

30   **Q54.**   **Does the Unit Operating Agreement treat the initial well and subsequent**

31        **operations differently in terms of going non-consent, and if so, why?**

J. Allert

**Direct Testimony of Jenae Allert, Landman**

1  A54.  Yes. Subsequent operations have a smaller risk factor of 200%. A lack of

2      information as to whether the well will be economic makes participation in the

3      initial well a riskier endeavor than subsequent operations, when information gained

4      from the initial well reduces the risk factor going forward. Therefore, it is common

5      for joint operating agreements to distinguish risk factors between initial and

6      subsequent operations.

7  **Q55.**  **But if the working interest owner still has a royalty interest in the Unit, that**

8      **royalty interest would remain in place and be paid?**

9  A55.  Yes. The royalty interest would still be paid even if the working interest is being

10      used to pay off a risk factor.

11  **Q56.**  **What is the risk factor for subsequent operations set out in the Unit Operating**

12      **Agreement?**

13  A56.  200%, as set out in Article VI.B of the Unit Operating Agreement.

14  **Q57.**  **Are the percentages included in the Unit Operating Agreement unusual?**

15  A57.  No, not for joint operating agreements used in horizontal drilling programs.

16      Because of the significant costs associated with drilling horizontally to the Utica

17      Shale (often in excess of $10,000,000 to plan, drill, and complete) and because the

18      Utica Shale is an unconventional play (where uneven geological performance is

19      likely), it is common for companies to incorporate into their joint operating

20      agreements a risk factor proportionate to the substantial financial commitment.

21  **Q58.**  **Have you seen risk factor levels of 200% to 300% in other parts of the country**

22      **that you've worked in and are familiar with?**

23  A58.  Yes. Those numbers are not unusual, and in fact higher numbers are sometimes

24      seen in the early stages of a play's development due to the relative lack of

25      information and the corresponding risk.

26  **Q59.**  **How are decisions made regarding Unit operations?**

27  A59.  Article V of the Unit Operating Agreement designates Gulfport as the Unit

28      Operator, with full operational authority for the supervision and conduct of

29      operations of the Unit. Additionally, except where otherwise provided, Article XV

30      of the Unit Operating agreement sets forth a voting procedure for any decision,

31      determination or action to be taken by the Unit participants. Under the voting

J. Allert

**Direct Testimony of Jenae Allert, Landman**

| | | |
|---|---|---|
| 1 | | procedure, each Unit participant has a vote that corresponds in value to that |
| 2 | | participant's allocated responsibility for the payment of Unit expenses. |
| 3 | **Q60.** | **I believe you've already described generally the documents in Exhibits A and** |
| 4 | | **C to the Unit Operating Agreement. Let's turn therefore to Exhibit B of the** |
| 5 | | **Unit Operating Agreement. What is it?** |
| 6 | A60. | Exhibit B is Gulfport's standard oil and gas lease form, which we attached to the |
| 7 | | joint operating agreement to govern any unleased interests owned by the parties. |
| 8 | | Article III.A of the Unit Operating Agreement provides that if any party owns or |
| 9 | | acquires an oil and gas interest in the Contract Area, then that interest shall be |
| 10 | | treated for all purposes of the Unit Operating Agreement as if it were covered by |
| 11 | | the form of lease attached as Exhibit B. |
| 12 | **Q61.** | **Does this oil and gas lease contain standard provisions that Gulfport uses in** |
| 13 | | **connection with its drilling operations in Ohio and elsewhere?** |
| 14 | A61. | Yes. |
| 15 | **Q62.** | **Moving on to Exhibit D of the Unit Operating Agreement, would you describe** |
| 16 | | **what it is?** |
| 17 | A62. | Exhibit D is the insurance exhibit to the joint operating agreement. It outlines |
| 18 | | coverage amounts and limitations, and the insurance terms for operations |
| 19 | | conducted under the Unit Operating Agreement. |
| 20 | **Q63.** | **Are the terms of insurance contained in Exhibit D substantially similar to** |
| 21 | | **those employed in connection with Gulfport's other Unitized projects in the** |
| 22 | | **State of Ohio?** |
| 23 | A63. | Yes. |
| 24 | **Q64.** | **Based upon your education and professional experience, do you view the terms** |
| 25 | | **of Exhibit D as reasonable?** |
| 26 | A64. | Yes. |
| 27 | **Q65.** | **Would you next describe Exhibit E of the Unit Operating Agreement?** |
| 28 | A65. | Exhibit E is the Gas Balancing Agreement, which sets out the rights and |
| 29 | | obligations of the parties with respect to marketing and selling any production from |
| 30 | | the Contract Area. |
| 31 | **Q66.** | **Would you give me an example of how Exhibit E might come into play?** |

J. Allert

### Direct Testimony of Jenae Allert, Landman

| | | |
|---|---|---|
| 1 | A66. | Yes. Assuming that Company A is the operator of a well, and Company B is the |
| 2 | | non-operator, the fact that Company A will drill, complete, and secure pipeline to |
| 3 | | the well, does not preclude Company B from negotiating its own marketing |
| 4 | | agreements. In the event that Company B wishes to do so, the Gas Balancing |
| 5 | | Agreement would provide protection for both companies on volumes, |
| 6 | | underproduction, failure to take production, maintaining the leases, etc. |
| 7 | **Q67.** | **Are the terms contained in Exhibit E substantially similar to those employed** |
| 8 | | **in connection with Gulfport's other Unitized projects in the State of Ohio?** |
| 9 | A67. | Yes. |
| 10 | **Q68.** | **Has Gulfport documented which of the working interest owners included** |
| 11 | | **within the Horseshoe B Unit have given their consent to the proposed** |
| 12 | | **Unitization?** |
| 13 | A68. | Yes. Exhibit 6.1 to the application documents the approvals for the Unit Plan |
| 14 | | received from working interest owners included with the Horseshoe B Unit up to |
| 15 | | the time the Application was filed. |
| 16 | **Q69.** | **Does the Application contain a list of those mineral owners who have not** |
| 17 | | **previously agreed to enter into any oil and gas lease with respect to the tracts** |
| 18 | | **they own within the Horseshoe B Unit?** |
| 19 | A69. | Yes, Exhibit A-3 to the Unit Operating Agreement lists the "Unitized parties," |
| 20 | | being the fee mineral owners who remain unleased. |
| 21 | **Q70.** | **In your professional opinion, given your education and experience, are Unit** |
| 22 | | **operations for the proposed Horseshoe B Unit reasonably necessary to** |
| 23 | | **increase substantially the ultimate recovery of oil and gas?** |
| 24 | A70. | Yes. Unit operations for the Horseshoe B Unit will minimize waste and allow for |
| 25 | | the most efficient recovery of oil and gas. By drilling horizontally, Gulfport can |
| 26 | | develop a larger area with a much smaller surface disturbance than through the |
| 27 | | drilling of vertical wells. Without Unit operations, we would not be able to |
| 28 | | develop the Unit area, so it's fair to say that Unit operations are necessary to |
| 29 | | increase substantially the recovery of oil and gas. I believe that the Horseshoe B |
| 30 | | Unit represents a reasonable and efficient means to develop the Utica Shale. |
| 31 | **Q71.** | **Does this conclude your testimony?** |

J. Allert

**Direct Testimony of Jenae Allert, Landman**

1    A71.   Yes.

J. Allert



# EXHIBIT "JA-2"
## GULFPORT ENERGY CORPORATION
## HORSESHOE B UNIT
## BELMONT COUNTY, OHIO
## 673.838 ACRES

| MAP ID | PARCEL NUMBER | ACRES |
|---|---|---|
| 1 | 43-00123.000 | 4.728 |
| 2 | 43-00162.000 | 14.104 |
| 3 | 43-00163.000 | 54.871 |
| 4 | 43-00163.000 | 0.667 |
| 5 | 43-00171.000 | 8.304 |
| 6 | 43-00174.000 | 28.589 |
| 7 | 43-00178.001 | 5.761 |
| 8 | 43-00178.006 | 0.477 |
| 9 | 43-00178.007 | 4.050 |
| 10 | 43-00178.008 | 4.462 |
| 11 | 43-00194.003 | 0.405 |
| 12 | 43-00266.000 | 53.895 |
| 13 | 43-00266.001 | 63.228 |
| 14 | 43-00266.002 | 11.104 |
| 15 | 43-00293.000 | 10.333 |
| 16 | 43-00308.000 | 0.766 |
| 17 | 43-00321.000 | 0.577 |
| 18 | 43-00326.000 | 11.733 |
| 19 | 43-00467.000 | 13.460 |
| 20 | 43-00468.000 | 75.047 |
| 21 | 43-00471.000 | 75.502 |
| 22 | 43-00472.000 | 9.410 |
| 23 | 43-00502.000 | 0.074 |
| 24 | 43-00716.000 | 47.930 |
| 25 | 43-00716.001 | 0.504 |
| 26 | 43-00767.000 | 114.027 |
| 27 | 43-00768.000 | 19.117 |
| 28 | 43-00770.000 | 0.004 |
| 29 | 43-00819.000 | 35.682 |
| 30 | 43-60008.000 | 0.689 |
| 31 | 52-00372.000 | 2.019 |
| 32 | 52-00372.002 | 2.319 |

Belmont County

### LEGEND
- ● HORSESHOE
- - → WELL BORES
- ⌐ ⌐ 500 FT BUFFER
- □ UNIT BOUNDARY - 673.838 ACRES
- ■ UNLEASED
- ▨ PARTIALLY UNLEASED
- □ LEASED

WASHINGTON Township

YORK Township

## HORSESHOE B
## WASHINGTON & YORK TOWNSHIPS
## BELMONT COUNTY, OHIO

1 in = 1,500 ft

N

**Gulfport ENERGY**

Last Updated: October 27, 2017
Version 2
Rev. 11.1.2017



# EXHIBIT "JA-3"
## GULFPORT ENERGY CORPORATION
### HORSESHOE B UNIT
### BELMONT COUNTY, OHIO
### 673.838 ACRES

**Belmont County**

| MAP ID | PARCEL NUMBER | ACRES |
|---|---|---|
| 1 | 43-00123.000 | 4.728 |
| 2 | 43-00162.000 | 14.104 |
| 3 | 43-00163.000 | 54.871 |
| 4 | 43-00163.000 | 0.667 |
| 5 | 43-00171.000 | 8.304 |
| 6 | 43-00174.000 | 28.589 |
| 7 | 43-00178.001 | 5.761 |
| 8 | 43-00178.006 | 0.477 |
| 9 | 43-00178.007 | 4.050 |
| 10 | 43-00178.008 | 4.462 |
| 11 | 43-00194.003 | 0.405 |
| 12 | 43-00266.000 | 53.895 |
| 13 | 43-00266.001 | 63.228 |
| 14 | 43-00266.002 | 11.104 |
| 15 | 43-00293.000 | 10.333 |
| 16 | 43-00308.000 | 0.766 |
| 17 | 43-00321.000 | 0.577 |
| 18 | 43-00326.000 | 11.733 |
| 19 | 43-00467.000 | 13.460 |
| 20 | 43-00468.000 | 75.047 |
| 21 | 43-00471.000 | 75.502 |
| 22 | 43-00472.000 | 9.410 |
| 23 | 43-00502.000 | 0.074 |
| 24 | 43-00716.000 | 47.930 |
| 25 | 43-00716.001 | 0.504 |
| 26 | 43-00767.000 | 114.027 |
| 27 | 43-00768.000 | 19.117 |
| 28 | 43-00770.000 | 0.004 |
| 29 | 43-00819.000 | 35.682 |
| 30 | 43-60008.000 | 0.689 |
| 31 | 52-00372.000 | 2.019 |
| 32 | 52-00372.002 | 2.319 |

WASHINGTON Township

YORK Township

**Legend:**
- ● HORSESHOE
- – ➤ WELL BORES
- ⌐ ¬ 500 FT BUFFER
- ☐ UNIT BOUNDARY - 673.838 ACRES
- ☐ UNLEASED
- ▨ PARTIALLY UNLEASED

## HORSESHOE B
## WASHINGTON & YORK TOWNSHIPS
## BELMONT COUNTY, OHIO

**Gulfport ENERGY**

1 in = 1,500 ft

N

Last Updated: October 27, 2017
Version 2
Rev. 11.1.2017

# EXHIBIT "JA-4"
## GULFPORT ENERGY CORPORATION
## HORSESHOE B UNIT
## BELMONT COUNTY, OHIO
## 673.838 ACRES

**Belmont County**

**Monroe County**

### Legend

- ─ ─ ► PRODUCING WELLS
- HORSESHOE B
- CHARLIE 210472
- CHARLIE 210055
- CONWAY 210464
- CONWAY 210119
- GEORGE 210467
- GEORGE 210084
- THOMPSON SOUTH 210466
- THOMPSON SOUTH 210235
- VALERIE 210473



**Gulfport ENERGY**

HORSESHOE B
WASHINGTON & YORK TOWNSHIPS
BELMONT COUNTY, OHIO

1 in = 6,000 ft

N

Last Updated: July 7, 2017
Version 1

# Exhibit F

## WELL COMPLETION RECORD (Form 8)

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
**2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693**
**Telephone: (614) 265-6922; Fax: (614) 265-6910**

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back), and return to our office within 30 days after expiration. ☐

| | |
|---|---|
| 1. Owner #: 8799 | 3. API #: 34-013-2-1063-00-00 |
| 2. Owner name, address and telephone numbers: <br> Gulfport Energy Corporation <br> 3001 Quail Springs Parkway <br> Oklahoma City, OK 73134   Telephone No.:   405-252-4600 | 4. Type of Permit: Drill New Well, Horizontally |
| | 5. County: Belmont |
| | 6. Civil Township: Richland |
| 8. Type of Well:  Oil & Gas | 7. Footage: <br> Tgt: 2983'NL & 1065'WL OF SEC 22 (Richland Twp) <br> Surf: 1227'NL & 549'WL OF SEC 29 (Richland Twp) |
| 9. X: 2457327         Y: 767611 | 21. Date drilling commenced: 7/10/16 |
| 10. Quad: Lansing | 22. Date drilling completed: 11/3/16 |
| 11. Section: 29          12. Lot: | 23. Date put into production: 3/4/17 |
| 13. Fraction:          14. Qtr. Twp: | 24. Date plugged, if dry: |
| 15. Tract: | 25. Producing formation: Utica/Point Pleasant |
| 16. Allot: | 26. Deepest formation:  Utica/Point Pleasant |
| 17. Well #: 1B | 27. Driller's total depth: 20,278 |
| 18. Lease Name: Dorsey 210963 | 28. Logger's total depth: 20,278 |
| 19. PTD: 21600          20. Drilling unit: 493.374 | 29. Lost hole at _____ feet. |

| 30. Type of tools: | 31. Type of completion: | 32: Elevation: |
|---|---|---|
| ☐ Cable  ☒ Air Rotary | ☐ Open Hole | Ground Level  1155 |
| ☒ Fluid Rotary  ☐ Service Rig | ☒ Through Casing | Derrick Floor  1183 |
| | ☐ Slotted Liner | Kelly Bushing  28 |

33. Perforated intervals and number of shots: 55 stages and 2,740 shots

34. Name of Frac Company: Stingray Pressure Pumping

35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): |
|---|---|---|---|---|
| Lbs. | Gals. _____ | Water (gals) _____ | Lbs. _____ | Breakdown _____ |
| Qts.  See Report | Type _____ | Water (bbl) _____ | Sks. _____ | ATP _____ |
| Type _____ Percent ___ | | CO2 (tons) _____ | | ISIP _____ |
| | | N2 (mscf) _____ | | 5 min. SIP _____ |
| | | | | Avg. Rate _____ |

METHOD OF FLUID CONTAINMENT

| FLUIDS: | PIT | FRAC TANK | |
|---|---|---|---|
| Swab | ☐ | ☒ | DATE TREATED: _____ 12/3/16 - 1/19/17 |
| Flowback | ☐ | ☒ | ☐ Well Stimulation Additives Report (Form 8B) Attached <br> ☒ Stimulation Information Reported to FracFocus. |

| 36. Amount of initial production per day: | (MCF) | | (Bbls) | | (Bbls) |
|---|---|---|---|---|---|
| Natural: | Gas _____ | Oil _____ | Brine _____ |
| After Treatment: | Gas  14377.014 | Oil _____ | Brine  294.069 |
| SERC Data:  Number of Tanks:  4 | | Maximum Storage Capacity of all Tanks (bbls.) 1600 |

37. Casing and tubing record:

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | 26 | 26 | 104 | 260 | | |
| Surface: | 24 | 18-5/8 | 368 | 1000 | | 4 |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| Intermediate: | 17.5 | 13-3/8 | 2080 | 1560 | | 12 |
| Production: | 8.5 | 5-1/2 | 20258 | 2750 | | 95 |
| Tubing: | | | | | | |
| Other:  2nd Inter: Wellbore - 12.25, Casing - 9-5/8, Feet - 9288, Cement - 3090, Centralizers - 25 | | | | | | |

38. Name of drilling contractor:  Pioneer Drilling

39. Type of electrical and/or wireline logs run:       MWD Logs
*(all logs must be submitted)*

40. Name of logging company:   Cathedral

| **DIVISION USE ONLY** | | |
|---|---|---|
| Log Submitted:  Yes/No | FRAC DATA SUBMITTED: | Well Class:_____ |
| Confidential:   Yes/No | Pressure/Rate Graph ☐ | |
| | Record ☐ | |
| | Invoice ☐ | |

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | 1880' MD | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | | | | |
| Marcellus | | | | |
| Big Lime | 5429' MD | | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | 5816' MD | | | |
| Bass Island | | | | |
| Salina | 6294' MD | | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | | | | |
| | 7280' MD | | | |
| Little Lime | | | | |
| Packer Shell | 8080' MD | | | |
| Stray Clinton | | | | |
| Red Clinton | 8120' MD | | | |
| White Clinton | | | | |
| Medina | | | | |
| | | | | |
| Queenston | 8310' MD | | | |
| Utica | 9562' MD | | | |
| Point Pleasant | 10152' MD | | | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_____
(SIGNATURE)

**Jake Bullard**
(NAME TYPED OR PRINTED)

9-7-2017
(DATE)

Planning Manager
(TITLE)

Gulfport Energy Corporation
(REPRESENTING)

## WELL COMPLETION RECORD (Form 8)

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
**2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693**
**Telephone: (614) 265-6922; Fax: (614) 265-6910**

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back), and return to our office within 30 days after expiration. ☐

| | |
|---|---|
| 1. Owner #: 8799 | 3. API #: 34-013-2-1062-00-00 |
| 2. Owner name, address and telephone numbers:<br>Gulfport Energy Corporation<br>3001 Quail Springs Parkway<br>Oklahoma City, OK 73134  Telephone No.: 405-252-4600 | 4. Type of Permit: Drill New Well, Horizontally |
| | 5. County: Belmont |
| | 6. Civil Township: Richland |
| 8. Type of Well: Oil & Gas | 7. Footage:<br>Tgt: 3508'NL & 222'WL OF SEC 22 (Richland Twp)<br>Surf: 1220'NL & 536'WL OF SEC 29 (Richland Twp) |
| 9. X: 2457314   Y: 767618 | 21. Date drilling commenced: 7/16/16 |
| 10. Quad: Lansing | 22. Date drilling completed: 10/13/16 |
| 11. Section: 29   12. Lot: | 23. Date put into production: N/A |
| 13. Fraction:   14. Qtr. Twp: | 24. Date plugged, if dry: N/A |
| 15. Tract: | 25. Producing formation: Utica/Point Pleasant |
| 16. Allot: | 26. Deepest formation: Utica/Point Pleasant |
| 17. Well #: 2A | 27. Driller's total depth: 20,060 |
| 18. Lease Name: Dorsey 210963 | 28. Logger's total depth: |
| 19. PTD: 22100   20. Drilling unit: 493.374 | 29. Lost hole at _____ feet. |

| 30. Type of tools: | 31. Type of completion: | 32: Elevation: |
|---|---|---|
| ☐ Cable   ☒ Air Rotary<br>☒ Fluid Rotary   ☐ Service Rig | ☐ Open Hole<br>☒ Through Casing<br>☐ Slotted Liner | Ground Level 1155<br>Derrick Floor 1183<br>Kelly Bushing 28 |

**33. Perforated intervals and number of shots:**

**34. Name of Frac Company:**

**35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:**

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): |
|---|---|---|---|---|
| Lbs. _____ | Gals. _____ | Water (gals) _____ | Lbs. _____ | Breakdown _____ |
| Qts. _____ | Type _____ | Water (bbl) _____ | Sks. _____ | ATP _____ |
| Type _____ Percent _____ | | CO2 (tons) _____ | | ISIP _____ |
| | | N2 (mscf) _____ | | 5 min. SIP _____ |
| | | | | Avg. Rate _____ |

**METHOD OF FLUID CONTAINMENT**

| FLUIDS: | PIT | FRAC TANK | DATE TREATED: _____ |
|---|---|---|---|
| Swab | ☐ | ☐ | ☐ Well Stimulation Additives Report (Form 8B) Attached |
| Flowback | ☐ | ☐ | ☐ Stimulation Information Reported to FracFocus. |

| 36. Amount of initial production per day: | *(MCF)* | | *(Bbls)* | | *(Bbls)* |
|---|---|---|---|---|---|
| Natural: | Gas _____ | Oil _____ | | Brine _____ | |
| After Treatment: | Gas _____ | Oil _____ | | Brine _____ | |
| SERC Data: Number of Tanks: _____ | | Maximum Storage Capacity of all Tanks (bbls.) _____ | | | |

**37. Casing and tubing record:**

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | 26 | 26 | 116 | | | |
| Surface: | 24 | 18-5/8 | 342 | 394 | | 2 |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| Intermediate: | 17.5 | 13-3/8 | 2100 | 1560 | | 12 |
| Production: | 12.25 | 5-1/2 | 20060 | 4190 | | 95 |
| Tubing: | | | | | | |
| Other: 2nd Inter: Wellbore - 12.25, Casing - 9-5/8, Feet - 9064, Cement - 2660, Centralizers - 25 | | | | | | |

**38. Name of drilling contractor:** Pioneer Drilling

**39. Type of electrical and/or wireline logs run:** MWD Logs
*(all logs must be submitted)*

**40. Name of logging company:** Cathedral

| DIVISION USE ONLY | | | |
|---|---|---|---|
| Log Submitted: Yes/No | FRAC DATA SUBMITTED: | | Well Class: _____ |
| Confidential: Yes/No | Pressure/Rate Graph ☐ | | |
| | Record ☐ | | |
| | Invoice ☐ | | |

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | 1900' MD | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | | | | |
| Marcellus | | | | |
| Big Lime | 5494' MD | | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | 5690' MD | | | |
| Bass Island | | | | |
| Salina | 6170' MD | | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | 7130' MD | | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | 7910' MD | | | |
| Stray Clinton | | | | |
| Red Clinton | 7956' MD | | | |
| White Clinton | | | | |
| Medina | | | | |
| | | | | |
| Queenston | 8120' MD | | | |
| Utica | 9398' MD | | | |
| Point Pleasant | 9994' MD | | | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_____ (SIGNATURE)

**Jake Bullard**
(NAME TYPED OR PRINTED)

7-10-2017 (DATE)

Planning Manager (TITLE)

_____
Gulfport Energy Corporation
(REPRESENTING)

# WELL COMPLETION RECORD (Form 8)

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
**2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693**
**Telephone: (614) 265-6922; Fax: (614) 265-6910**

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back), and return to our office within 30 days after expiration. ☐

| | |
|---|---|
| 1. Owner #: 8799 | 3. API #: 34-013-2-1110-00-00 |
| 2. Owner name, address and telephone numbers:<br>Gulfport Energy Corporation<br>3001 Quail Springs Parkway<br>Oklahoma City, OK 73134    Telephone No.:  405-252-4600 | 4. Type of Permit: Drill New Well, Horiz. Urban 5000 |
| | 5. County: Belmont |
| | 6. Civil Township: Richland |
| | 7. Footage:<br>Tgt: 103'SL & 703'EL OF SEC 34<br>Surf: 2399'NL & 556'EL OF SEC 26 |
| 8. Type of Well: Oil & Gas | |
| 9. X: 2460879          Y: 750355 | 21. Date drilling commenced: 11/1/16 |
| 10. Quad: Saint Clairsville | 22. Date drilling completed: 12/10/16 |
| 11. Section: 26          12. Lot: | 23. Date put into production: 6/5/17 |
| 13. Fraction:          14. Qtr. Twp: | 24. Date plugged, if dry: N/A |
| 15. Tract: | 25. Producing formation:  Utica/Point Pleasant |
| 16. Allot: | 26. Deepest formation: Utica/Point Pleasant |
| 17. Well #: 1B | 27. Driller's total depth: 19380 |
| 18. Lease Name: Snodgrass 210010 | 28. Logger's total depth: 19380 |
| 19. PTD: 20300          20. Drilling unit: 458.46 | 29. Lost hole at _____ feet. |

**30. Type of tools:**
- ☐ Cable
- ☒ Fluid Rotary
- ☒ Air Rotary
- ☐ Service Rig

**31. Type of completion:**
- ☐ Open Hole
- ☒ Through Casing
- ☐ Slotted Liner

**32. Elevation:**
Ground Level  1122
Derrick Floor  1151
Kelly Bushing  29

---

**33.** Perforated intervals and number of shots: 51 stages, 2,540 shots

**34.** Name of Frac Company: Stingray Pressure Pumping

**35.** Method of shot, acid, or fracture treatments, production tests, pressures, etc.:

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): |
|---|---|---|---|---|
| Lbs.  See | Gals. _____ | Water (gals) _____ | Lbs. _____ | Breakdown _____ |
| Qts.  Report | Type _____ | Water (bbl) _____ | Sks. _____ | ATP _____ |
| Type _____ | Percent _____ | CO2 (tons) _____ | | ISIP _____ |
| | | N2 (mscf) _____ | | 5 min. SIP _____ |
| | | | | Avg. Rate _____ |

**METHOD OF FLUID CONTAINMENT**

| FLUIDS: | PIT | FRAC TANK | DATE TREATED: _____ 3/4/17 - 4/5/17 |
|---|---|---|---|
| Swab | ☐ | ☒ | ☐ Well Stimulation Additives Report (Form 8B) Attached |
| Flowback | ☐ | ☒ | ☒ Stimulation Information Reported to FracFocus. |

**36. Amount of initial production per day:**

| | | (MCF) | | (Bbls) | | (Bbls) |
|---|---|---|---|---|---|---|
| Natural: | Gas | _____ | Oil | _____ | Brine | _____ |
| After Treatment: | Gas | 12372.302 | Oil | _____ | Brine | 135.062 |
| SERC Data: | Number of Tanks: | 4 | Maximum Storage Capacity of all Tanks (bbls.) | | 1600 | |

**37. Casing and tubing record:**

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | 26 | 26 | 117 | | | |
| Surface: | 18-5/8 | 18-5/8 | 370 | 1605 | | 3 |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| Intermediate: | 17.5 | 13-3/8 | 2084 | 1570 | | 12 |
| Production: | 8.5 | 5-1/2 | 19380 | 262 | | 95 |
| Tubing: | | | | | | |
| Other:  2nd Inter: Wellbore - 12.25, Casing - 9.625, Feet - 9092, Cement - 3060, Centralizers - 25 | | | | | | |

**38.** Name of drilling contractor:  Pioneer Drilling

**39.** Type of electrical and/or wireline logs run:      MWD Logs
*(all logs must be submitted)*

**40.** Name of logging company:  Cathedral

| **DIVISION USE ONLY** | | |
|---|---|---|
| Log Submitted:   Yes/No | FRAC DATA SUBMITTED: | Well Class:_____ |
| Confidential:    Yes/No | Pressure/Rate Graph ☐ | |
| | Record ☐ | |
| | Invoice ☐ | |

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | 1940' TVD | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | | | | |
| Marcellus | | | | |
| Big Lime | 5496' TVD | | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | 5667' TVD | | | |
| Bass Island | | | | |
| Salina | 6025' TVD | | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | 7048' TVD | | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | 7850' TVD | | | |
| Stray Clinton | | | | |
| Red Clinton | | | | |
| White Clinton | | | | |
| Medina | | | | |
| | | | | |
| Queenston | 8118' TVD | | | |
| Utica | 9210' TVD | | | |
| Point Pleasant | 9790' TVD | | | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_9Bull_ (SIGNATURE)

**Jake Bullard**
(NAME TYPED OR PRINTED)

_9-7-2017_ (DATE)

_Planning Manager_ (TITLE)

**Gulfport Energy Corporation**
(REPRESENTING)

## WELL COMPLETION RECORD (Form 8)

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693
Telephone: (614) 265-6922; Fax: (614) 265-6910

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back), and return to our office within 30 days after expiration. ☐

| | |
|---|---|
| 1. Owner #: 8799 | 3. API #: 34-013-2-1107-00-00 |
| 2. Owner name, address and telephone numbers:<br>Gulfport Energy Corporation<br>3001 Quail Springs Parkway<br>Oklahoma City, OK 73134    Telephone No.:   405-252-4600 | 4. Type of Permit: Drill New Well, Horiz. Urban 5000 |
| | 5. County: Belmont |
| | 6. Civil Township: Richland |
| | 7. Footage:<br>Tgt: 224'NL & 1654'EL OF SEC 33<br>Surf: 2369'NL & 551'EL OF SEC 26 |
| 8. Type of Well: Oil & Gas | |
| 9. X: 2460886           Y: 750384 | 21. Date drilling commenced: 11/1/16 |
| 10. Quad: Saint Clairsville | 22. Date drilling completed: 1/15/17 |
| 11. Section: 26          12. Lot: | 23. Date put into production: 6/5/17 |
| 13. Fraction:          14. Qtr. Twp: | 24. Date plugged, if dry: N/A |
| 15. Tract: | 25. Producing formation: Utica/Point Pleasant |
| 16. Allot: | 26. Deepest formation: Utica/Point Pleasant |
| 17. Well #: 3A | 27. Driller's total depth: 19350 |
| 18. Lease Name: Snodgrass 210010 | 28. Logger's total depth: 19338 |
| 19. PTD: 20700          20. Drilling unit: 458.46 | 29. Lost hole at _____ feet. |

| 30. Type of tools: | 31. Type of completion: | 32. Elevation: |
|---|---|---|
| ☐ Cable          ☒ Air Rotary | ☐ Open Hole | Ground Level   1122 |
| ☒ Fluid Rotary   ☐ Service Rig | ☒ Through Casing | Derrick Floor   1151 |
| | ☐ Slotted Liner | Kelly Bushing   29 |

| |
|---|
| 33. Perforated intervals and number of shots: 51 stages, 2,540 shots |
| 34. Name of Frac Company: Stingray Pressure Pumping |

35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi) |
|---|---|---|---|---|
| Lbs. ___See___ Gals. _____ | | Water (gals) _____ Lbs. _____ | | Breakdown _____ |
| Qts. __Report__ Type _____ | | Water (bbl) _____ Sks. _____ | | ATP _____ |
| Type _____ Percent _____ | | CO2 (tons) _____ | | ISIP _____ |
| | | N2 (mscf) _____ | | 5 min. SIP _____ |
| | | | | Avg. Rate _____ |

METHOD OF FLUID CONTAINMENT

| FLUIDS: | PIT | FRAC TANK | |
|---|---|---|---|
| Swab | ☐ | ☒ | DATE TREATED: _____3/4/17 - 4/5/17_____ |
| Flowback | ☐ | ☒ | ☐ Well Stimulation Additives Report (Form 8B) Attached |
| | | | ☒ Stimulation Information Reported to FracFocus |

| 36. Amount of initial production per day: | (MCF) | | (Bbls) | | (Bbls) |
|---|---|---|---|---|---|
| Natural: | Gas _____ | Oil _____ | Brine _____ |
| After Treatment: | Gas 13734.997 | Oil _____ | Brine 194.959 |
| SERC Data: | Number of Tanks: 4 | Maximum Storage Capacity of all Tanks (bbls.) 1600 |

37. Casing and tubing record:

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | 26 | 26 | 117 | | | |
| Surface: | 18-5/8 | 18-5/8 | 390 | 934 | | 1 |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| Intermediate: | 17.5 | 13-3/8 | 2060 | 1570 | | 12 |
| Production: | 8.5 | 5-1/2 | 19333 | 3060 | | 95 |
| Tubing: | | | | | | |
| Other:  2nd Inter: Wellbore - 12.25, Casing - 9.625, Feet - 9050, Cement - 3060, Centralizers - 25 | | | | | | |

| |
|---|
| 38. Name of drilling contractor: Pioneer Drilling |
| 39. Type of electrical and/or wireline logs run:        MWD Logs<br>    (all logs must be submitted) |
| 40. Name of logging company:  Baker Hughes |

| DIVISION USE ONLY | | |
|---|---|---|
| Log Submitted:   Yes/No | FRAC DATA SUBMITTED: | Well Class:_____ |
| Confidential:    Yes/No | Pressure/Rate Graph ☐ | |
| | Record ☐ | |
| | Invoice ☐ | |

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | 1930' TVD | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | | | | |
| Marcellus | | | | |
| Big Lime | 5487' TVD | | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | 5592' TVD | | | |
| Bass Island | | | | |
| Salina | 6014' TVD | | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | 7023' TVD | | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | 7806' TVD | | | |
| Stray Clinton | | | | |
| Red Clinton | | | | |
| White Clinton | | | | |
| Medina | | | | |
| | | | | |
| Queenston | 8040' TVD | | | |
| Utica | 9184' TVD | | | |
| Point Pleasant | 9769' TVD | | | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_____ (SIGNATURE)

**Jake Bullard**
(NAME TYPED OR PRINTED)

9-7-2017 (DATE)

Planning Manager (TITLE)

Gulfport Energy Corporation
(REPRESENTING)

# WELL COMPLETION RECORD (Form 8)

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
**2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693**
**Telephone: (614) 265-6922; Fax: (614) 265-6910**

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back), and return to office within 30 days after expiration. ☐

**RECEIVED**

| | |
|---|---|
| 1. Owner #: 9040 | 3. API #: 34-013-2-1074-00-00 |
| 2. Owner name, address and telephone numbers: <br> Rice Drilling D LLC <br> 2200 Rice Drive <br> Canonsburg, PA 15317    Telephone No.:  724-271-7200 | 4. Type of Permit: Drill new well, horizontally |
| | 5. County: BELMONT |
| | 6. Civil Township: SMITH |
| | 7. Footage: TGT: 1'SL & 1518'EL OF SEC 10 <br> SURF: 290'NL & 1028'WL OF SEC 17 |
| 8. Type of Well: Oil & Gas | |

| | |
|---|---|
| 9. Tgt: X: 2442979 Y: 726896  Surf: X: 2435181 Y: 737636 | 21. Date drilling commenced:  10/30/2016 |
| 10. Quad: SAINT CLAIRSVILLE | 22. Date drilling completed:  1/20/2017 |
| 11. Section: 17        12. Lot: | 23. Date put into production:  12/22/2017 |
| 13. Fraction:        14. Qtr. Twp: | 24. Date plugged, if dry: N/A |
| 15. Tract: | 25. Producing formation: UTICA/POINT PLEASANT |
| 16. Allot: | 26. Deepest formation:  POINT PLEASANT |
| 17. Well #: 6 | 27. Driller's total depth: 22855 |
| 18. Lease Name: GOLD DIGGER | 28. Logger's total depth: 22855 |
| 19. PTD: 22800      20. Drilling unit: 289.3843 | 29. Lost hole at N/A                    feet. |

| 30. Type of tools: | 31. Type of completion: | 32. Elevation: | |
|---|---|---|---|
| ☐ Cable          ☒ Air Rotary | ☐ Open Hole | Ground Level | 1218.65 |
| ☒ Fluid Rotary    ☐ Service Rig | ☒ Through Casing | Derrick Floor | 1243.65 |
| | ☐ Slotted Liner | Kelly Bushing | 1243.65 |

**33. Perforated intervals and number of shots: 76/1842**

**34. Name of Frac Company: Stingray Pressure Pumping LLC**

**35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:**

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): | |
|---|---|---|---|---|---|
| Lbs. N/A | Gals. 79026 | Water (gals) 32,957,27↓ | Lbs. 38040695 | Breakdown | 7923 |
| Qts. N/A | Type HCL | Water (bbl) 784697 | Sks. 380406.9 | ATP | 10644 |
| Type N/A | Percent 15% | CO2 (tons) N/A | | ISIP | 6919 |
| | | N2 (mscf) N/A | | 5 min. SIP | N/A |
| | | | | Avg. Rate | 93.5 |

**METHOD OF FLUID CONTAINMENT**

| FLUIDS: | PIT | FRAC TANK | |
|---|---|---|---|
| Swab | ☐ | ☐ | DATE TREATED:          7/8/2017 |
| Flowback | ☐ | ☒ | ☒ Well Stimulation Additives Report (Form 8B) Attached |
| | | | ☒ Stimulation Information Reported to FracFocus |

| 36. Amount of initial production per day: | (MCF) | | (Bbls) | | (Bbls) |
|---|---|---|---|---|---|
| Natural:        Gas | N/A | Oil | N/A | Brine | N/A |
| After Treatment:   Gas | 20206 | Oil | N/A | Brine | 984 |
| SERC Data:    Number of Tanks: | 19 | Maximum Storage Capacity of all Tanks (bbls.) 9000 | | | |

**37. Casing and tubing record:**

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | 36 | 30 | 100 | 275 | 100 | 0 |
| Conductor/Drive Pipe: | | | | | | |
| Surface: | 24 | 20 | 481 | 720 | 481 | 3 |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| 1st Intermediate: | 17.5 | 13.375 | 2156 | 1690 | 2156 | 14 |
| 2nd Intermediate: | 12.25 | 9.625 | 8932 | 1495 | 8932 | 54 |
| Production: | 8.5 | 5.5 | 22845 | 3925 | 22845 | 156 |
| Tubing: | | | | | | |
| Other: | | | | | | |

| | |
|---|---|
| 38. Name of drilling contractor: NOMAC DRILLING LLC | |
| 39. Type of electrical and/or wireline logs run:      LWD REALTIME LOG - GAMMA RAY <br> (all logs must be submitted) | |
| 40. Name of logging company:  BAKER HUGHES | |

**DIVISION USE ONLY**

| | | |
|---|---|---|
| Log Submitted:  Yes/No | FRAC DATA SUBMITTED: | Well Class: _____ |
| Confidential:  Yes/No | Pressure/Rate Graph ☐ | |
| | Record ☐ | |
| | Invoice ☐ | |

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | 4557 | 5376 | | |
| Marcellus | 5376 | 5410 | | |
| Big Lime | 5410 | 5759 | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | | | | |
| Bass Island | 5759 | 6210 | | |
| Salina | 6210 | 6880 | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | 6880 | 7521 | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | | | | |
| Stray Clinton | 7521 | 7697 | | |
| Red Clinton | 7697 | 7733 | | |
| White Clinton | 7733 | 7887 | | |
| Medina | | | | |
| | | | | |
| Queenston | 7887 | 9423 | | |
| Utica | 9423 | 9547 | | |
| Point Pleasant | 9547 | | | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_(signature)_
(SIGNATURE)

1/18/2018
(DATE)

Michael Rehl
(NAME TYPED OR PRINTED)

Director - Completions
(TITLE)

Rice Drilling D LLC
(REPRESENTING)

## WELL COMPLETION RECORD (Form 8)

RECEIVED
JAN 2 6 2018

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693
Telephone: (614) 265-6922; Fax: (614) 265-6910

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back) and return to our office within 30 days after expiration. ☐

| | |
|---|---|
| 1. Owner #: 9040 | 3. API #: 34-013-2-1073-00-00 |
| 2. Owner name, address and telephone numbers:<br><br>Rice Drilling D LLC<br>2200 Rice Drive<br>Canonsburg, PA 15317    Telephone No.: 724-271-7200 | 4. Type of Permit: Drill new well, horizontally |
| | 5. County: BELMONT |
| | 6. Civil Township: SMITH |
| 8. Type of Well: Oil & Gas | 7. Footage: TGT: 351'SL & 546'EL OF SEC 10<br>    SURF: 279'NL & 1050'WL OF SEC 17 |

| | |
|---|---|
| 9. Tgt: X: 2443964 Y: 727199  Surf: X: 2435204 Y: 737646 | 21. Date drilling commenced: 10/18/2016 |
| 10. Quad: SAINT CLAIRSVILLE | 22. Date drilling completed: 1/8/2017 |
| 11. Section: 17          12. Lot: | 23. Date put into production: 12/22/2017 |
| 13. Fraction:        14. Qtr. Twp: | 24. Date plugged, if dry: N/A |
| 15. Tract: | 25. Producing formation: UTICA/POINT PLEASANT |
| 16. Allot: | 26. Deepest formation: POINT PLEASANT |
| 17. Well #: 8 | 27. Driller's total depth: 23294 |
| 18. Lease Name: GOLD DIGGER | 28. Logger's total depth: 23294 |
| 19. PTD: 23299      20. Drilling unit: 500.4760 | 29. Lost hole at N/A                    feet. |

| 30. Type of tools: | 31. Type of completion: | 32. Elevation: |
|---|---|---|
| ☐ Cable           ☒ Air Rotary | ☐ Open Hole | Ground Level 1218.65 |
| ☒ Fluid Rotary    ☐ Service Rig | ☒ Through Casing | Derrick Floor 1243.65 |
| | ☐ Slotted Liner | Kelly Bushing 1243.65 |

33. Perforated intervals and number of shots: 78/1890

34. Name of Frac Company: Stingray Pressure Pumping LLC

35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:

| SHOT: | ACID: | FRAC FLUIDS:          SAND: | PRESSURES (psi): |
|---|---|---|---|
| Lbs. N/A | Gals. 77725 | Water (gals) 33,249,242 Lbs. 39036535 | Breakdown 7708 |
| Qts. N/A | Type HCL | Water (bbl) 791651  Sks. 390365 | ATP 10756 |
| Type N/A | Percent 15% | CO2 (tons) N/A | ISIP 7005 |
| | | N2 (mscf) N/A | 5 min. SIP N/A |
| | | | Avg. Rate 95.1 |

METHOD OF FLUID CONTAINMENT

| FLUIDS: | PIT | FRAC TANK |
|---|---|---|
| Swab | ☐ | ☐ |
| Flowback | ☐ | ☒ |

DATE TREATED: 7/6/2017
☒ Well Stimulation Additives Report (Form 8B) Attached
☒ Stimulation Information Reported to FracFocus.

36. Amount of initial production per day:

| | | (MCF) | | (Bbls) | | (Bbls) |
|---|---|---|---|---|---|---|
| Natural: | Gas | N/A | Oil | N/A | Brine | N/A |
| After Treatment: | Gas | 17,110 | Oil | N/A | Brine | 996 |
| SERC Data: | Number of Tanks: | 19 | Maximum Storage Capacity of all Tanks (bbls.) 9000 | | | |

37. Casing and tubing record:

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | 36 | 30 | 100 | 275 | 100 | 0 |
| Conductor/Drive Pipe: | | | | | | |
| Surface: | 24 | 20 | 478 | 790 | 478 | 3 |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| 1st Intermediate: | 17.5 | 13.375 | 2151 | 1595 | 2151 | 14 |
| 2nd Intermediate: | 12.25 | 9.625 | 9149 | 1520 | 9149 | 56 |
| Production: | 8.5 | 5.5 | 23284 | 3820 | 23284 | 157 |
| Tubing: | | | | | | |
| Other: | | | | | | |

38. Name of drilling contractor: NOMAC DRILLING LLC

39. Type of electrical and/or wireline logs run:   LWD REALTIME LOG - GAMMA RAY
*(all logs must be submitted)*

40. Name of logging company: BAKER HUGHES

| DIVISION USE ONLY | | | |
|---|---|---|---|
| Log Submitted: Yes/No | FRAC DATA SUBMITTED: | | Well Class: |
| Confidential: Yes/No | Pressure/Rate Graph ☐ | | |
| | Record ☐ | | |
| | Invoice ☐ | | |

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | 4550 | 5393 | | |
| Marcellus | 5393 | 5424 | | |
| Big Lime | 5424 | 5759 | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | | | | |
| Bass Island | 5759 | 6224 | | |
| Salina | 6224 | 6871 | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | 6871 | 7523 | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | | | | |
| Stray Clinton | 7523 | 7704 | | |
| Red Clinton | 7704 | 7748 | | |
| White Clinton | 7748 | 7864 | | |
| Medina | | | | |
| | | | | |
| Queenston | 7864 | 9436 | | |
| Utica | 9436 | 9561 | | |
| Point Pleasant | 9561 | | | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_(signature)_
(SIGNATURE)

**Michael Rehl**
[NAME TYPED OR PRINTED]

1/23/2018
(DATE)

**Director - Completions**
(TITLE)

EQT Production
(REPRESENTING)

# WELL COMPLETION RECORD (Form 8)

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693
Telephone: (614) 265-6922; Fax: (614) 265-6910

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back) and return to our office within 30 days after expiration. ☐

*DIVISION OIL & GAS FEB 28 2017* (stamp)

| | |
|---|---|
| 1. Owner #: 9040 | 3. API #: 34-013-2-1072-00-00 |
| 2. Owner name, address and telephone numbers:<br>Rice Drilling D LLC<br>2200 Rice Drive<br>Canonsburg, PA 15317    Telephone No.: 724-271-7200 | 4. Type of Permit: Drill new well, horizontal |
| | 5. County: BELMONT |
| | 6. Civil Township: SMITH |
| | 7. Footage: TGT: 2709'NL & 263'EL OF SEC 10<br>SURF: 268'NL & 1073'WL OF SEC 17 |
| 8. Type of Well: Oil & Gas | |

| | |
|---|---|
| 9. Tgt: X: 2444335 Y: 729487  Surf: X: 2435227 Y: 737655 | 21. Date drilling commenced: 10/6/2016 |
| 10. Quad: SAINT CLAIRSVILLE | 22. Date drilling completed: 12/26/2016 |
| 11. Section: 17     12. Lot: | 23. Date put into production: |
| 13. Fraction:     14. Qtr. Twp: | 24. Date plugged, if dry: |
| 15. Tract: | 25. Producing formation: UTICA/POINT PLEASANT |
| 16. Allot: | 26. Deepest formation: POINT PLEASANT |
| 17. Well #: 10 | 27. Driller's total depth: 22089 |
| 18. Lease Name: GOLD DIGGER | 28. Logger's total depth: 22089 |
| 19. PTD: 22042     20. Drilling unit: 418.5541 | 29. Lost hole at N/A                    feet. |

| 30. Type of tools: | 31. Type of completion: | 32. Elevation: |
|---|---|---|
| ☐ Cable     ☒ Air Rotary | ☐ Open Hole | Ground Level 1218.65 |
| ☒ Fluid Rotary     ☐ Service Rig | ☐ Through Casing | Derrick Floor 1243.65 |
| | ☐ Slotted Liner | Kelly Bushing 1243.65 |

| |
|---|
| 33. Perforated intervals and number of shots: |
| 34. Name of Frac Company: |

35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): |
|---|---|---|---|---|
| Lbs. _____ | Gals. _____ | Water (gals) _____ | Lbs. _____ | Breakdown _____ |
| Qts. _____ | Type _____ | Water (bbl) _____ | Sks. _____ | ATP _____ |
| Type _____ Percent _____ | | CO2 (tons) _____ | | ISIP _____ |
| | | N2 (mscf) _____ | | 5 min. SIP _____ |
| | | | | Avg. Rate _____ |

METHOD OF FLUID CONTAINMENT

| FLUIDS: | PIT | FRAC TANK | |
|---|---|---|---|
| Swab | ☐ | ☐ | DATE TREATED: _____ |
| Flowback | ☐ | ☐ | ☐ Well Stimulation Additives Report (Form 8B) Attached |
| | | | ☐ Stimulation Information Reported to FracFocus. |

| 36. Amount of initial production per day: | *(MCF)* | *(Bbls)* | *(Bbls)* |
|---|---|---|---|
| Natural:        Gas | _____ | Oil _____ | Brine _____ |
| After Treatment:     Gas | _____ | Oil _____ | Brine _____ |
| SERC Data:     Number of Tanks: | | Maximum Storage Capacity of all Tanks (bbls.) _____ |

37. Casing and tubing record:

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | 36 | 30 | 100 | 275 | 100 | 0 |
| Conductor/Drive Pipe: | 24 | 20 | 475 | 800 | 475 | 3 |
| Surface: | | | | | | |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| 1st Intermediate: | 17.5 | 13.375 | 2150 | 1700 | 2150 | 13 |
| 2nd Intermediate: | 12.25 | 9.625 | 9550 | 1520 | 9550 | 58 |
| Production: | 8.5 | 5.5 | 22071 | 3780 | 22071 | 145 |
| Tubing: | | | | | | |
| Other: | | | | | | |

| |
|---|
| 38. Name of drilling contractor: NOMAC DRILLING LLC |
| 39. Type of electrical and/or wireline logs run:     LWD REALTIME LOG - GAMMA RAY<br>(all logs must be submitted) |
| 40. Name of logging company:  BAKER HUGHES |

| DIVISION USE ONLY | | |
|---|---|---|
| Log Submitted:  Yes/No | FRAC DATA SUBMITTED: | Well Class: _____ |
| Confidential:  Yes/No | Pressure/Rate Graph ☐ | |
| | Record ☐ | |
| | Invoice ☐ | |

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; Indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | 4540 | 5385 | | |
| Marcellus | 5385 | 5415 | | |
| Big Lime | 5415 | 5733 | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | | | | |
| Bass Island | 5733 | 6212 | | |
| Salina | 6212 | 6875 | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | 6875 | 7522 | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | | | | |
| Stray Clinton | 7522 | 7701 | | |
| Red Clinton | 7701 | 7744 | | |
| White Clinton | 7744 | 7919 | | |
| Medina | | | | |
| | | | | |
| Queenston | 7919 | 9461 | | |
| Utica | 9461 | 9576 | | |
| Point Pleasant | 9576 | | | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_Lance M. Blanchard_ (SIGNATURE)          _02/06/2017_ (DATE)

**Lance Blanchard** (NAME TYPED OR PRINTED)          **Drilling Engineering Manager** (TITLE)

**Rice Drilling D LLC** (REPRESENTING)

**WELL COMPLETION RECORD (Form 8)**

R ✓

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693
Telephone: (614) 265-6922; Fax: (614) 265-6910

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back), and return to our office within 30 days after expiration. ☐

| | |
|---|---|
| 1. Owner #: 9040 | 3. API #: 34-013-2-0779-00-00 |
| 2. Owner name, address and telephone numbers:<br>Rice Drilling D LLC<br>2200 Rice Drive<br>Canonsburg, PA 15317    Telephone No.: 724-271-7200 | 4. Type of Permit: Reissue new well, horizontally |
| | 5. County: BELMONT |
| | 6. Civil Township: Tgt: RICHLAND Surf: SMITH |
| 8. Type of Well: Oil & Gas | 7. Footage: Tgt: 1283' SL & 1957' EL OF SEC 25 (W) RICH-<br>LAND TWP Surf: 1483' NL & 787' EL OF SEC 23 (SMITH<br>TWP) |

| | |
|---|---|
| 9. Tgt: X: 2427502 Y: 744676   Surf: X: 2433325 Y: 736501 | 21. Date drilling commenced: 5/11/2014 |
| 10. Quad: Saint Clairsville | 22. Date drilling completed: 9/26/2014 |
| 11. Section: 23    12. Lot: 36-00236.000 | 23. Date put into production: 4/7/2015 |
| 13. Fraction: _____ 14. Qtr. Twp: NW | 24. Date plugged, if dry: N/A |
| 15. Tract: _____ | 25. Producing formation: Pt Pleasant/Utica |
| 16. Allot: _____ | 26. Deepest formation: Pt Pleasant |
| 17. Well #: 1H | 27. Driller's total depth: 19,252' MD |
| 18. Lease Name: Son-Uva Digger | 28. Logger's total depth: 19,252' MD |
| 19. PTD: 19290    20. Drilling unit: 698.256 | 29. Lost hole at N/A _____ feet. |

**30. Type of tools:**

☐ Cable  ☒ Air Rotary
☒ Fluid Rotary  ☐ Service Rig

**31. Type of completion:**

☐ Open Hole
☒ Through Casing
☐ Slotted Liner

**32. Elevation:**

Ground Level 1270
Derrick Floor 1282
Kelly Bushing _____

**33.** Perforated intervals and number of shots: 9792-19141: 1692 Perforations

**34.** Name of Frac Company: CalFrac

**35.** Method of shot, acid, or fracture treatments, production tests, pressures, etc.:

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): | |
|---|---|---|---|---|---|
| Lbs. N/A | Gals. 48594 | Water (gals) 18094259 | Lbs. 23498245 | Breakdown | 8766 |
| Qts. N/A | Type HCL | Water (bbl) 430816 | Sks. 234982 | ATP | 9743 |
| Type N/A | Percent 15% | CO2 (tons) N/A | | ISIP | 6637 |
| | | N2 (mscf) N/A | | 5 min. SIP | N/A |
| | | | | Avg. Rate | 75.8 |

**METHOD OF FLUID CONTAINMENT**

| FLUIDS: | PIT | FRAC TANK |
|---|---|---|
| Swab | ☐ | ☒ |
| Flowback | ☐ | ☒ |

DATE TREATED: 12/15/14 - 2/14/15
☒ Well Stimulation Additives Report (Form 8B) Attached
☒ Stimulation Information Reported to FracFocus.

**36.** Amount of initial production per day:

| | | (MCF) | | (Bbls) | | (Bbls) |
|---|---|---|---|---|---|---|
| Natural: | Gas | _____ | Oil | _____ | Brine | _____ |
| After Treatment: | Gas | 2375.69 | Oil | N/A | Brine | 380.65 |
| SERC Data: | Number of Tanks: | _____ | Maximum Storage Capacity of all Tanks (bbls.) | | | |

**37.** Casing and tubing record:

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | 30 | 26 | 40 | Redi-Mix | | Unknown |
| Surface: | 24 | 20 | 400 | | | 5 |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| 1st Intermediate: | 17.5 | 13 3/8 | 2115 | 1859 | | 14 |
| 2nd Intermediate: | 12 3/8 | 9 5/8 | 8830 | 2255 | | 126 |
| Production: | 8.75 | 5.5 | 19311 | 2575 | | 254 |
| Tubing: | 5 1/2 | 2 7/8 | 9945 | | | |
| Other: | | | | | | |

**38.** Name of drilling contractor: Patterson UTI

**39.** Type of electrical and/or wireline logs run:    Realtime LWD - Gamma Ray
    (all logs must be submitted)

**40.** Name of logging company: Baker Hughes

**DIVISION USE ONLY**

| | | FRAC DATA SUBMITTED: | |
|---|---|---|---|
| Log Submitted: | Yes/No | Pressure/Rate Graph | ☐ |
| Confidential: | Yes/No | Record | ☐ |
| | | Invoice | ☐ |

Well Class: _____

RECEIVED

JAN 1 8 2017

DIVISION OF OIL & GAS

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; Indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | | | | |
| Marcellus | | | | |
| Big Lime | | | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | | | | |
| Bass Island | | | | |
| Salina | | | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | | | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | | | | |
| Stray Clinton | | | | |
| Red Clinton | | | | |
| White Clinton | | | | |
| Medina | | | | |
| | | | | |
| Queenston | 7966 | 9657 | | |
| Utica | 9657 | 9796 | | |
| Point Pleasant | 9796 | | | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_(SIGNATURE)_   1/3/2017
                (DATE)

Erin Spine   Well Permitting Manager
(NAME TYPED OR PRINTED)   (TITLE)

(REPRESENTING)

**WELL COMPLETION RECORD (Form 8)**

R

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693
Telephone: (614) 265-6922; Fax: (614) 265-6910

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back), and return to our office within 30 days after expiration. ☐

**RECEIVED**
**MAY 2 2 2015**
Division of Oil and Gas Resources Management

| | |
|---|---|
| 1. Owner #: 9040 | 3. API #: 34-013-2-07781 00-00 |
| 2. Owner name, address and telephone numbers:<br>Rice Drilling D LLC<br>400 Woodcliff Drive<br>Canonsburg, PA 15317   Telephone No.: 724-746-6720 | 4. Type of Permit: Reissue new well, horizontally |
| | 5. County: BELMONT |
| | 6. Civil Township: Tgt: RICHLAND Surf: SMITH |
| 8. Type of Well: Oil & Gas | 7. Footage: Tgt 1685' SL & 1323' EL OF SEC 25 (RICHLAND TWP) Surf: 1483' NL & 763' EL OF SEC 23 (SMITH TWP) |
| 9. Tgt: X: 2428147  Y: 744998   Surf: X: 2433350 Y: 736501 | 21. Date drilling commenced: 5/7/2014 |
| 10. Quad: Saint Clairsville | 22. Date drilling completed: 10/10/2014 |
| 11. Section: 23       12. Lot: 36-00236.000 | 23. Date put into production: 4/7/2015 |
| 13. Fraction:       14. Qtr. Twp: NW | 24. Date plugged, if dry: N/A |
| 15. Tract: | 25. Producing formation: Pt Pleasant/Utica |
| 16. Allot: | 26. Deepest formation: Trenton |
| 17. Well #: 3H | 27. Driller's total depth: 19,398' MD |
| 18. Lease Name: Son-Uva Digger | 28. Logger's total depth: 19,398' MD |
| 19. PTD: 19419       20. Drilling unit: 698.256 | 29. Lost hole at N/A _____ feet. |

| 30. Type of tools: | 31. Type of completion: | 32. Elevation: |
|---|---|---|
| ☐ Cable         ☒ Air Rotary | ☐ Open Hole | Ground Level 1270 |
| ☒ Fluid Rotary   ☐ Service Rig | ☒ Through Casing | Derrick Floor 1282 |
| | ☐ Slotted Liner | Kelly Bushing _____ |

33. Perforated intervals and number of shots: 9759-19370: 1728 Perfs

34. Name of Frac Company: CalFrac

35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): |
|---|---|---|---|---|
| Lbs. N/A | Gals. 79980 | Water (gals) 18365329 | Lbs. 24036851 | Breakdown 8524 |
| Qts. N/A | Type HCL | Water (bbl) 437270 | Sks. 240369 | ATP 9697 |
| Type N/A | Percent 15% | CO2 (tons) N/A | | ISIP 6536 |
| | | N2 (mscf) N/A | | 5 min. SIP N/A |
| | | | | Avg. Rate 76.4 |

**METHOD OF FLUID CONTAINMENT**

| FLUIDS: | PIT | FRAC TANK |
|---|---|---|
| Swab | ☐ | ☒ |
| Flowback | ☐ | ☒ |

DATE TREATED: 12/14/14-2/13/15
☒ Well Stimulation Additives Report (Form 8B) Attached
☒ Stimulation Information Reported to FracFocus.

| 36. Amount of initial production per day: | (MCF) | | (Bbls) | | (Bbls) |
|---|---|---|---|---|---|
| Natural: | Gas _____ | Oil _____ | | Brine _____ | |
| After Treatment: | Gas 2540 | Oil N/A | | Brine 380.65 | |
| SERC Data: | Number of Tanks: _____ | Maximum Storage Capacity of all Tanks (bbls.) _____ | | | |

37. Casing and tubing record:

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | 30 | 26 | 40 | Redi-Mix | | unknown |
| Surface: | 24 | 20 | 388 | 504 | | 5 |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| 1st Intermediate: | 17.5 | 13.375 | 2094 | 1601 | | 26 |
| 2nd Intermediate: | 12.375 | 9.625 | 8859 | 2255 | | 111 |
| Production: | 8.75 | 5.5 | 19399 | 2580 | | 227 |
| Tubing: | | | | | | |
| Other: | | | | | | |

38. Name of drilling contractor: Patterson UTI

| 39. Type of electrical and/or wireline logs run:<br>(all logs must be submitted) | Realtime LWD - Gamma Ray, High Resolution Laterolog Array, Caliper,<br>Gamma Ray, Litho Density, compensated Neutron, Gamma Ray Spectroscopy |
|---|---|

40. Name of logging company: Baker Hughes, Schlumberger Wireline

**DIVISION USE ONLY**

| Log Submitted: Yes/No | FRAC DATA SUBMITTED: | Well Class: _____ |
|---|---|---|
| Confidential: Yes/No | Pressure/Rate Graph ☐ | |
| | Record ☐ | |
| | Invoice ☐ | |

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; Indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | | | | |
| Marcellus | 5374 | 5428 | | |
| Big Lime | 5428 | 5624 | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | 5624 | 5751 | | |
| Bass Island | 5751 | 6883 | | |
| Salina | | | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | 6883 | 7517 | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | | | | |
| Stray Clinton | 7517 | 7696 | | |
| Red Clinton | 7696 | 7723 | | |
| White Clinton | 7723 | 7877 | | |
| Medina | | | | |
| | | | | |
| Queenston | 7877 | 9441 | | |
| Utica | 9441 | 9565 | | |
| Point Pleasant | 9565 | 9684 | | |
| Trenton | 9684 | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_(SIGNATURE)_

**5/14/2015**
(DATE)

Erin Spine
(NAME TYPED OR PRINTED)

Permitting Manager - Drilling
(TITLE)

Rice Drilling D LLC
(REPRESENTING)

## WELL COMPLETION RECORD (Form 8)

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693
Telephone: (614) 265-6922; Fax: (614) 265-6910

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check below, sign on reverse side (Back), and return to this office within 30 days after expiration. ☐

*RECEIVED MAY 22 2015 Division of Oil and Gas Resources Management*

| | |
|---|---|
| 1. Owner #: 9040 | 3. API #: 34-013-2-0870-00-00 |
| 2. Owner name, address and telephone numbers:<br>Rice Drilling D LLC<br>400 Woodcliff Drive<br>Canonsburg, PA 15317    Telephone No.: 724-746-6720 | 4. Type of Permit: Drill New Well, horizontally |
| | 5. County: BELMONT |
| | 6. Civil Township: Tgt: RICHLAND Surf: SMITH |
| 8. Type of Well: Oil & Gas | 7. Footage: Tgt: 2087' SL & 688' EL OF SEC 25 (RICHLAND TWP) Surf: 1481' NL & 713' EL OF SEC 23 (SMITH TWP) |
| 9. Tgt: X: 2428792  Y: 745380   Surf: X: 2433400  Y: 736501 | 21. Date drilling commenced: 10/18/2014 |
| 10. Quad: Saint Clairsville | 22. Date drilling completed: 11/20/2014 |
| 11. Section: 23           12. Lot: 36-00236.000 | 23. Date put into production: 4/7/2015 |
| 13. Fraction:           14. Qtr. Twp: NW | 24. Date plugged, if dry: N/A |
| 15. Tract: | 25. Producing formation: Pt Pleasant/Utica |
| 16. Allot: | 26. Deepest formation: Pt Pleasant |
| 17. Well #: SH-A | 27. Driller's total depth: 18,977' MD |
| 18. Lease Name: Son-Uva Digger | 28. Logger's total depth: 18,977' MD |
| 19. PTD: 19412        20. Drilling unit: 698.256 | 29. Lost hole at N/A _____ feet. |

| 30. Type of tools: | 31. Type of completion: | 32: Elevation: |
|---|---|---|
| ☐ Cable          ☒ Air Rotary<br>☒ Fluid Rotary     ☐ Service Rig | ☐ Open Hole<br>☒ Through Casing<br>☐ Slotted Liner | Ground Level  1270<br>Derrick Floor  1282<br>Kelly Bushing |

| |
|---|
| 33. Perforated intervals and number of shots: 18962-9688 (NO PERF ZONE: 18388-17692): 1584 Perfs |
| 34. Name of Frac Company: CalFrac |

35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): |
|---|---|---|---|---|
| Lbs. N/A | Gals. 44604 | Water (gals) 17310229 | Lbs. 22967865 | Breakdown 8092 |
| Qts. N/A | Type HCL | Water (bbl) 412148 | Sks. 229679 | ATP 9406 |
| Type N/A | Percent 15% | CO2 (tons) N/A | | ISIP 6727 |
| | | N2 (mscf) N/A | | 5 min. SIP N/A |
| | | | | Avg. Rate 75.1 |

METHOD OF FLUID CONTAINMENT

| FLUIDS: | PIT | FRAC TANK | DATE TREATED: 12/14/14-2/10/15 |
|---|---|---|---|
| Swab | ☐ | ☒ | ☒ Well Stimulation Additives Report (Form 8B) Attached |
| Flowback | ☐ | ☒ | ☒ Stimulation Information Reported to FracFocus. |

36. Amount of initial production per day:

| | | (MCF) | | (Bbls) | | (Bbls) |
|---|---|---|---|---|---|---|
| Natural: | Gas | | Oil | | Brine | |
| After Treatment: | Gas | 1671.59 | Oil | N/A | Brine | 380.65 |
| SERC Data: | Number of Tanks: | | Maximum Storage Capacity of all Tanks (bbls.) | | | |

37. Casing and tubing record:

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left In Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | 30 | 26 | 40 | Redi-mix | | unknown |
| Surface: | 24 | 20 | 410 | 799 | | 5 |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| 1st Intermediate: | 17.5 | 13.375 | 2119 | | | 26 |
| 2nd Intermediate: | 12.375 | 9.625 | 8818 | 2450 | | 113 |
| Production: | 8.75 | 5.5 | 18977 | 2490 | | 237 |
| Tubing: | | | | | | |
| Other: | | | | | | |

| |
|---|
| 38. Name of drilling contractor: Patterson UTI |
| 39. Type of electrical and/or wireline logs run:      Realtime LWD - Gamma Ray<br>*(all logs must be submitted)* |
| 40. Name of logging company: Baker Hughes |

DIVISION USE ONLY

| | | |
|---|---|---|
| Log Submitted: Yes/No | FRAC DATA SUBMITTED: | Well Class: _____ |
| Confidential: Yes/No | Pressure/Rate Graph ☐ | |
| | Record ☐ | |
| | Invoice ☐ | |

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | 1192 | 5375 | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | | | | |
| Marcellus | 5375 | 5449 | | |
| Big Lime | 5449 | 5649 | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | 5649 | 5763 | | |
| Bass Island | 5763 | 6258 | | |
| Salina | 6258 | 6910 | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | 6910 | 7693 | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | | | | |
| Stray Clinton | 7693 | 7767 | | |
| Red Clinton | | | | |
| White Clinton | 7767 | 7894 | | |
| Medina | | | | |
| | | | | |
| Queenston | 7894 | 8130 | | |
| Utica | 8130 | 8257 | | |
| Point Pleasant | 8257 | | | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above Information is true and correct, to the best of my knowledge:

_(SIGNATURE)_

**Erin Spine**
(NAME TYPED OR PRINTED)

5/14/2015
(DATE)

Permitting Manager - Drilling
(TITLE)

Rice Drilling D LLC
(REPRESENTING)

## WELL COMPLETION RECORD (Form 8)

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
**2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693**
**Telephone: (614) 265-6922; Fax: (614) 265-6910**

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back), and return to our office within 30 days after expiration. ☐

| | |
|---|---|
| 1. Owner #: 9040 | 3. API #: 34-013-2-1067-00-00 |
| 2. Owner name, address and telephone numbers:<br><br>Rice Drilling D LLC<br>2200 Rice Drive<br>Canonsburg, PA 15317    Telephone No.: 724-271-7200 | 4. Type of Permit: Drill new well, horizontally |
| | 5. County: BELMONT |
| | 6. Civil Township: SMITH |
| | 7. Footage: TGT: 2575'SL & 2228'WL OF SEC 23<br>     SURF: 2226'NL & 2215'WL OF SEC 30 |
| 8. Type of Well: Oil & Gas | |

| | |
|---|---|
| 9. Tgt: X: 2430941 Y: 735260  Surf: X: 2425714 Y: 741158 | 21. Date drilling commenced: 12/23/2016 |
| 10. Quad: SAINT CLAIRSVILLE | 22. Date drilling completed: 1/12/2017 |
| 11. Section: 30        12. Lot: | 23. Date put into production: |
| 13. Fraction:        14. Qtr. Twp: | 24. Date plugged, if dry: |
| 15. Tract: | 25. Producing formation: UTICA/POINT PLEASANT |
| 16. Allot: | 26. Deepest formation: POINT PLEASANT |
| 17. Well #: 10 | 27. Driller's total depth: 17044 |
| 18. Lease Name: BIGFOOT | 28. Logger's total depth: 17044 |
| 19. PTD: 16944        20. Drilling unit: 351.4833 | 29. Lost hole at N/A _____ feet. |

| 30. Type of tools: | | 31. Type of completion: | 32. Elevation: |
|---|---|---|---|
| ☐ Cable | ☒ Air Rotary | ☐ Open Hole | Ground Level 1141.8 |
| ☒ Fluid Rotary | ☐ Service Rig | ☐ Through Casing | Derrick Floor 1166.8 |
| | | ☐ Slotted Liner | Kelly Bushing 1166.8 |

**33. Perforated intervals and number of shots:**

**34. Name of Frac Company:**

**35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:**

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): |
|---|---|---|---|---|
| Lbs. _____ | Gals. _____ | Water (gals) _____ | Lbs. _____ | Breakdown _____ |
| Qts. _____ | Type _____ | Water (bbl) _____ | Sks. _____ | ATP _____ |
| Type _____ Percent _____ | | CO2 (tons) _____ | | ISIP _____ |
| | | N2 (mscf) _____ | | 5 min. SIP _____ |
| | | | | Avg. Rate _____ |

**METHOD OF FLUID CONTAINMENT**

| FLUIDS: | PIT | FRAC TANK |
|---|---|---|
| Swab | ☐ | ☐ |
| Flowback | ☐ | ☐ |

DATE TREATED: _____

☐ Well Stimulation Additives Report (Form 8B) Attached
☐ Stimulation Information Reported to FracFocus

**36. Amount of initial production per day:**

| | (MCF) | (Bbls) | (Bbls) |
|---|---|---|---|
| Natural: | Gas _____ | Oil _____ | Brine _____ |
| After Treatment: | Gas _____ | Oil _____ | Brine _____ |
| SERC Data: | Number of Tanks: _____ | Maximum Storage Capacity of all Tanks (bbls.) _____ | |

**37. Casing and tubing record:**

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | 36 | 30 | 100 | 275 | 100 | 0 |
| Conductor/Drive Pipe: | | | | | | |
| Surface: | 24 | 20 | 442 | 745 | 442 | 3 |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| 1st Intermediate: | 17.5 | 13.375 | 2060 | 1550 | 2060 | 13 |
| 2nd Intermediate: | 12.25 | 9.625 | 8485 | 1265 | 8485 | 54 |
| Production: | 8.5 | 5.5 | 17038 | 2740 | 17038 | 111 |
| Tubing: | | | | | | |
| Other: | | | | | | |

| | |
|---|---|
| 38. Name of drilling contractor: PATTERSON UTI | |
| 39. Type of electrical and/or wireline logs run:    LWD REALTIME LOG - GAMMA RAY<br>(all logs must be submitted) | |
| 40. Name of logging company:  BAKER HUGHES | |

| DIVISION USE ONLY | | | |
|---|---|---|---|
| Log Submitted:  Yes/No | FRAC DATA SUBMITTED: | Well Class: **RECEIVED** | |
| Confidential:  Yes/No | Pressure/Rate Graph ☐ | | |
| | Record ☐ | **MAR 1 3 2017** | |
| | Invoice ☐ | **DIVISION OF OIL & GAS** | |

Required by ORC Section 1509.10        1 of 2        DOGRM 5607 (Rev. 10/2012)

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | 4163 | 5148 | | |
| Marcellus | 5148 | 5220 | | |
| Big Lime | 5220 | 5847 | | |
| | | | | |
| Sylvania | | | | |
| Oriskany | | | | |
| Bass Island | 5847 | 5995 | | |
| Salina | 5995 | 6661 | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | 6661 | 7280 | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | | | | |
| Stray Clinton | 7280 | 7371 | | |
| Red Clinton | 7371 | 7459 | | |
| White Clinton | 7459 | 7684 | | |
| Medina | | | | |
| | | | | |
| Queenston | 7684 | 9263 | | |
| Utica | 9263 | 9290 | | |
| Point Pleasant | 9290 | | | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

*Lance M. Blanchard*
(SIGNATURE)

2/28/2017
(DATE)

Lance Blanchard
(NAME TYPED OR PRINTED)

Drilling Engineering Manager
(TITLE)

Rice Drilling D LLC
(REPRESENTING)

## WELL COMPLETION RECORD (Form 8)

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
**2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693**
**Telephone: (614) 265-6922; Fax: (614) 265-6910**

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back), and return to our office within 30 days after expiration. ☐

| | |
|---|---|
| 1. Owner #: 9520 | 3. API #: 34-013-2-1030-00-00 |
| 2. Owner name, address and telephone numbers:<br>Ascent Resources - Utica, LLC<br>PO Box 13678<br>Oklahoma City, OK 73116   Telephone No.: 405-252-7721 | 4. Type of Permit: Reissue new well, horizontally Urban |
| | 5. County: Belmont |
| | 6. Civil Township: Richland |
| 8. Type of Well: Oil & Gas | 7. Footage: Tgt: 2160' SL & 410' EL of Sec 23<br>Surf: 3175' NL & 2080' WL of Sec 16 |

| | |
|---|---|
| 9. X: 2437267       Y: 761043 | 21. Date drilling commenced: 3/22/2016 |
| 10. Quad: St. Clairsville | 22. Date drilling completed: 4/12/2016 |
| 11. Section: 16, 17, 23      12. Lot: | 23. Date put into production: 8/10/2016 |
| 13. Fraction:        14. Qtr. Twp: | 24. Date plugged, if dry: |
| 15. Tract: | 25. Producing formation: Point Pleasant |
| 16. Allot: | 26. Deepest formation: Point Pleasant |
| 17. Well #: 1H | 27. Driller's total depth: 19270' TD/9423.2' TVD |
| 18. Lease Name: Coleman RCH BL | 28. Logger's total depth: |
| 19. PTD: 16700'        20. Drilling unit: 622.628 | 29. Lost hole at _____ feet. |

**30. Type of tools:**

- ☐ Cable
- ☒ Fluid Rotary
- ☒ Air Rotary
- ☐ Service Rig

**31. Type of completion:**

- ☐ Open Hole
- ☒ Through Casing
- ☐ Slotted Liner

**32: Elevation:**

Ground Level: 1281'
Derrick Floor: _____
Kelly Bushing: 28'

| |
|---|
| 33. Perforated intervals and number of shots: |
| 34. Name of Frac Company: |

**35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:**

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): |
|---|---|---|---|---|
| Lbs. _____ | Gals. _____ | Water (gals) _____ | Lbs. _____ | Breakdown _____ |
| Qts. _____ | Type _____ | Water (bbl) _____ | Sks. _____ | ATP _____ |
| Type _____ Percent _____ | | CO2 (tons) _____ | | ISIP _____ |
| | | N2 (mscf) _____ | | 5 min. SIP _____ |
| | | | | Avg. Rate _____ |

**METHOD OF FLUID CONTAINMENT**

| FLUIDS: | PIT | FRAC TANK | |
|---|---|---|---|
| Swab | ☐ | ☐ | DATE TREATED: _____ |
| Flowback | ☐ | ☐ | ☐ Well Stimulation Additives Report (Form 8B) Attached<br>☐ Stimulation Information Reported to FracFocus. |

**36. Amount of initial production per day:**

| | | *(MCF)* | | *(bbls)* | | *(bbls)* |
|---|---|---|---|---|---|---|
| Natural: | Gas | 0 | Oil | 0 | Brine | 0 |
| After Treatment: | Gas | 17501 | Oil | 0 | Brine | 180 |
| SERC Data: | Number of Tanks: | | Maximum Storage Capacity of all Tanks (bbls.) _____ | | | |

**37. Casing and tubing record:**

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | _____ | _____ | _____ | _____ | _____ | _____ |
| Surface: | _____ | _____ | _____ | _____ | _____ | _____ |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| Intermediate: | _____ | _____ | _____ | _____ | _____ | _____ |
| Production: | _____ | _____ | _____ | _____ | _____ | _____ |
| Tubing: | _____ | _____ | _____ | _____ | _____ | _____ |
| Other: | | | | | | |

| |
|---|
| 38. Name of drilling contractor: Patterson |
| 39. Type of electrical and/or wireline logs run:<br>*(all logs must be submitted)* |
| 40. Name of logging company: |

**DIVISION USE ONLY**

| | | |
|---|---|---|
| Log Submitted: Yes/No | FRAC DATA SUBMITTED: | Well Class: _____ |
| Confidential: Yes/No | Pressure/Rate Graph ☐ | |
| | Record ☐ | |
| | Invoice ☐ | |

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | | | | |
| Marcellus | | | Gas Show | |
| Big Lime | 5411 | | gas show | |
| | | | | |
| Sylvania | | | | |
| Oriskany | | | | |
| Bass Island | | | | |
| Salina | | | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | | | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | | | | |
| Stray Clinton | | | | |
| Red Clinton | | | | |
| White Clinton | | | | |
| Medina | | | | |
| | | | | |
| Queenston | 7830 | | | |
| Utica | 9450 | | gas show | |
| Point Pleasant | 9720 | | gas show | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_____          11/2/2016
(SIGNATURE)                              (DATE)

Trent Carroll                           Sr. Regulatory Analyst
(NAME TYPED OR PRINTED)                  (TITLE)

Ascent Resources - Utica, LLC
[REPRESENTING]

## WELL COMPLETION RECORD (Form 8)

**Ohio Department of Natural Resources**
**Division of Oil and Gas Resources Management**
**2045 Morse Road, Bldg. F-2, Columbus, OH 43229-6693**
**Telephone: (614) 265-6922; Fax: (614) 265-6910**

This report is due in duplicate 60 days after completion of the well. If the permit has expired and the well was not drilled, check the box below, sign on reverse side (Back), and return to our office within 30 days after expiration. ☐

| | |
|---|---|
| 1. Owner #: 9520 | 3. API #: 34-013-2-1031-00-00 |
| 2. Owner name, address and telephone numbers:<br>Ascent Resources - Utica, LLC<br>PO Box 13678<br>Oklahoma City, OK 73116  Telephone No.: 405-252-7642 | 4. Type of Permit: Reissue new well, horizontally Urban |
| | 5. County: Belmont |
| | 6. Civil Township: Richland |
| | 7. Footage: Tgt: 650' NL & 1945' WL of Sec 23<br>Surf: 3185' NL & 2060' WL of Sec 16 |
| 8. Type of Well: Oil & Gas | |
| 9. X: 2437248    Y: 761037 | 21. Date drilling commenced: 2/27/2016 |
| 10. Quad: St. Clairsville | 22. Date drilling completed: 3/21/2016 |
| 11. Section: 16, 17, 22, 23    12. Lot: | 23. Date put into production: |
| 13. Fraction:    14. Qtr. Twp: | 24. Date plugged, if dry: |
| 15. Tract: | 25. Producing formation: Point Pleasant |
| 16. Allot: | 26. Deepest formation: Point Pleasant |
| 17. Well #: 11H | 27. Driller's total depth: 18893' TD/9395.9' TVD |
| 18. Lease Name: Ross SE RCH BL | 28. Logger's total depth: |
| 19. PTD: 16700'    20. Drilling unit: 606.520 | 29. Lost hole at _____ feet. |

| 30. Type of tools: | 31. Type of completion: | 32. Elevation: |
|---|---|---|
| ☐ Cable    ☒ Air Rotary<br>☒ Fluid Rotary    ☐ Service Rig | ☐ Open Hole<br>☒ Through Casing<br>☐ Slotted Liner | Ground Level  1281'<br>Derrick Floor  ____<br>Kelly Bushing  28' |

33. Perforated intervals and number of shots:

34. Name of Frac Company:

35. Method of shot, acid, or fracture treatments, production tests, pressures, etc.:

| SHOT: | ACID: | FRAC FLUIDS: | SAND: | PRESSURES (psi): |
|---|---|---|---|---|
| Lbs. _____ | Gals. _____ | Water (gals) _____ | Lbs. _____ | Breakdown _____ |
| Qts. _____ | Type _____ | Water (bbl) _____ | Sks. _____ | ATP _____ |
| Type _____ Percent _____ | | CO2 (tons) _____ | | ISIP _____ |
| | | N2 (mscf) _____ | | 5 min. SIP _____ |
| | | | | Avg. Rate _____ |

METHOD OF FLUID CONTAINMENT

| FLUIDS: | PIT | FRAC TANK |
|---|---|---|
| Swab | ☐ | ☐ |
| Flowback | ☐ | ☐ |

DATE TREATED: _____
☐ Well Stimulation Additives Report (Form 8B) Attached
☐ Stimulation Information Reported to FracFocus.

| 36. Amount of initial production per day: | (MCF) | | (bbls) | | (bbls) |
|---|---|---|---|---|---|
| Natural: | Gas _____ | Oil _____ | | Brine _____ | |
| After Treatment: | Gas _____ | Oil _____ | | Brine _____ | |
| SERC Data: | Number of Tanks: | Maximum Storage Capacity of all Tanks (bbls.) _____ | | | |

37. Casing and tubing record:  *Please see attached.*

| Type | Wellbore Diameter | Casing Size | Feet Installed | Amount of Cement (Sacks) | Feet Left in Well | Number of Centralizers |
|---|---|---|---|---|---|---|
| Conductor/Drive Pipe: | _____ | _____ | _____ | _____ | _____ | _____ |
| Surface: | _____ | _____ | _____ | _____ | _____ | _____ |
| ☒ Attach Form 8A (Surface Hole Additives Report) | | | | | | |
| Intermediate: | _____ | _____ | _____ | _____ | _____ | _____ |
| Production: | _____ | _____ | _____ | _____ | _____ | _____ |
| Tubing: | _____ | _____ | _____ | _____ | _____ | _____ |
| Other: | _____ | _____ | _____ | _____ | _____ | _____ |

38. Name of drilling contractor: Patterson

39. Type of electrical and/or wireline logs run:
    (all logs must be submitted)

40. Name of logging company:

| DIVISION USE ONLY | | | |
|---|---|---|---|
| Log Submitted: Yes/No | FRAC DATA SUBMITTED: | Well Class: _____ | |
| Confidential: Yes/No | Pressure/Rate Graph ☐ | | |
| | Record ☐ | | |
| | Invoice ☐ | | |

| FORMATION | TOP | BASE | Shows of oil, gas, fresh water, or brine; indicate depth or interval | REMARKS |
|---|---|---|---|---|
| Fresh water Strata | | | | |
| Glacial Deposits | | | | |
| Coal Seams | | | | |
| | | | | |
| 1st Cow Run | | | | |
| Buell Run | | | | |
| 2nd Cow Run | | | | |
| Salt Sand | | | | |
| Maxton Sand | | | | |
| | | | | |
| Keener Sand | | | | |
| Big Injun Sand | | | | |
| Squaw Sand | | | | |
| Mississippian Shale | | | | |
| Weir Sand | | | | |
| Berea Sand | | | | |
| Bedford Shale | | | | |
| 2nd Berea | | | | |
| Ohio Shale | | | | |
| Gantz | | | | |
| Thirty Foot | | | | |
| Gordon | | | | |
| Cinnamon | | | | |
| Rhinestreet | | | | |
| Marcellus | | | | |
| Big Lime | 5390 | | gas show | |
| | | | | |
| Sylvania | | | | |
| Oriskany | | | | |
| Bass Island | | | | |
| Salina | | | | |
| Salt Section | | | | |
| Newburg | | | | |
| Lockport | | | | |
| | | | | |
| Little Lime | | | | |
| Packer Shell | | | | |
| Stray Clinton | | | | |
| Red Clinton | | | | |
| White Clinton | | | | |
| Medina | | | | |
| | | | | |
| Queenston | 7800 | | | |
| Utica | 9390 | | gas show | |
| Point Pleasant | 9638 | | gas show | |
| Trenton | | | | |
| Black River | | | | |
| Gull River | | | | |
| Glenwood Shale | | | | |
| Knox Unconformity | | | | |
| Beekmantown | | | | |
| Rose Run | | | | |
| | | | | |
| Trempealeau/Copper Ridge | | | | |
| "B" Zone | | | | |
| Krysik | | | | |
| Kerbel | | | | |
| Conasauga | | | | |
| Rome | | | | |
| Mt. Simon | | | | |
| Granite Wash | | | | |
| Middle Run | | | | |
| Granite | | | | |

I certify that the above information is true and correct, to the best of my knowledge:

_(SIGNATURE)_

**4/19/2016**
(DATE)

**Ariel Bravo**
(NAME TYPED OR PRINTED)

**Regulatory Analyst**
(TITLE)

**Ascent Resources - Utica, LLC**
(REPRESENTING)