UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TERA II, LLC, *et al.*,

    Plaintiffs,      :    Case No. 2:19-cv-2221

    v.      Judge Sarah D. Morrison
    Magistrate Judge Kimberly A. Jolson

RICE DRILLING D, LLC, *et al.*,      :

    Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss. (ECF Nos. 4, 16, 17.) Plaintiffs filed Memoranda in Opposition in response to these Motions (ECF Nos. 31, 36), and Defendants filed Replies (ECF Nos. 42, 45, 46). Also before the Court is a Motion for Leave to Join as Plaintiff to which no opposition has been filed. (ECF No. 32.) These matters are now ripe for consideration.

## I. ALLEGATIONS IN THE COMPLAINT

Plaintiffs TERA II, LLC ("TERA II"); TERA III Honza, LLC ("Honza"); TERA IV, LLC ("TERA IV"); TERA Watson, LLC ("Watson"); and Thomas Shaw each own various pieces of property in Belmont County, Ohio. (Compl. ¶¶ 1–5, 30, 34, 37, 40, 43, ECF No. 1-1.) With the exception of Watson, they own the oil and gas rights to their respective properties, too. (*Id.* ¶¶ 1–3, 5; Mot. for Joinder, at 4–5, ECF No. 32.) Defendant Rice Drilling D, LLC, ("Rice") has leased Plaintiffs' properties for the development of oil and gas minerals. (ECF No. 1-1 ¶¶ 31–44.) Rice assigned its leases with Watson and TERA II to Defendant Ascent Resources –

1

Utica, LLC ("Ascent"). (*Id.* ¶¶ 31–32, 41.) Ascent subsequently assigned a partial interest in one of its leases with TERA II to Defendant Gulfport Energy Corporation ("Gulfport"). (*Id.* ¶ 31.)[1]

Rice entered into an agreement with Gulfport to allow Gulfport the right to drill horizontal wells on TERA II's and Honza's properties. (*Id.* ¶¶ 57, 65.) Pursuant to this agreement, Gulfport has drilled two horizontal wells on each property. (*Id.* ¶¶ 55, 63.) Ascent entered into an agreement with Gulfport to drill these wells, as did Defendants XTO Energy Inc. and Phillips Exploration, LLC (collectively, "XTO"[2]). (*Id.* ¶¶ 58, 66.) Rice, Ascent, and XTO own an interest in these wells and have benefitted from the sale of the oil, gas, and other hydrocarbons that these wells have produced. (*Id.* ¶¶ 56, 61–62, 69–70.)

Rice entered into an agreement with Gulfport to develop TERA IV's property. (*Id.* ¶ 72.) Ascent and XTO entered an agreement with Rice to drill wells on this property. (*Id.* ¶ 73.) Defendants have drilled these wells, which have produced gas, oil, and other hydrocarbons. (*Id.* ¶¶ 77–83.) Ascent and XTO own an interest in these wells and have benefitted from the sale of any oil, gas, and other hydrocarbons that these wells have produced. (*Id.* ¶ 74.)

Rice entered into an agreement with Gulfport to develop Mr. Shaw's property. (*Id.* ¶ 90.) Rice and Gulfport have drilled two wells on Mr. Shaw's property, which have produced gas, oil, and other hydrocarbons. (*Id.* ¶¶ 93–94.) Ascent and XTO own an interest in these wells and have benefitted from the sale of any oil, gas, and other hydrocarbons that these wells have produced. (*Id.* ¶¶ 55–56, 89.)

---

[1] Gulfport has not filed a motion to dismiss.

[2] Neither the Complaint nor the motion papers draws any distinctions between XTO Energy Inc. and Phillips Exploration, LLC. Indeed, in their jointly-filed motion papers, these two companies refer to themselves by the singular name of "XTO." (*See* ECF No. 17, at 1.) Accordingly, the Court will follow suit.

Finally, Ascent has drilled wells on Watson's property, which have produced gas, oil, and other hydrocarbons. (*Id.* ¶¶ 84–88.) The Complaint does not allege that any of the other Defendants currently have any involvement with this property.

Plaintiffs allege that Defendants have infringed on Plaintiffs' mineral rights by drilling property that they are not entitled to drill, outside of the terms of the leases. (*Id.* ¶¶ 59–62, 67–70, 75–83, 85–88, 91–98.) That is, Plaintiffs allege that their leases only permit Defendants to drill a rock formation called the Utica Shale formation but that Defendants have gone beyond the terms of the leases by also drilling another rock formation, the Point Pleasant formation. (*Id.* ¶¶ 30–54.)

On April 25, 2019, Plaintiffs filed suit in the Court of Common Pleas of Belmont County, seeking a declaratory judgment regarding their rights under the leases and alleging trespass, conversion, and unjust enrichment.[3] (*Id.* at 23–29.) On May 28, 2019, Defendant Rice timely removed this action to this Court, on the grounds of diversity jurisdiction, with the consent of each of its co-defendants. (ECF No. 1.)

Rice subsequently filed a motion to dismiss the complaint for failure to state a claim. (ECF No. 4.) Ascent and XTO filed near-identical motions to dismiss the complaint on the grounds of lack of jurisdiction, failure to state a claim, and failure to join a necessary party. (ECF Nos. 16, 17.)

## II.     MOTIONS TO DISMISS FOR LACK OF JURISDICTION

The Court first addresses Ascent and XTO's jurisdictional arguments, because if this Court lacks jurisdiction, it can go no further. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541

---

[3] The Complaint also asserts a "Claim X" for "fees." (*Id.* at 29–30.) At this time, the Court will construe this claim as merely outlining some of the remedies sought by Plaintiffs and not as a separate cause of action. Thus, the Court construes the complaint as pleading four causes of action.

3

U.S. 567, 593 (2004) ("[I]t is the obligation of both [the] district court and counsel to be alert to jurisdictional requirements.").

A. **Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack under Rule 12(b)(1) "questions merely the sufficiency of the pleading[,]" and the trial court therefore takes the allegations of the complaint as true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (internal quotation marks omitted). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). A factual attack is a challenge to the factual existence of subject matter jurisdiction, in which case no presumptive truthfulness applies to the factual allegations. *Ritchie*, 15 F.3d at 598. In the context of a factual attack, a reviewing court may weigh the evidence in order to satisfy itself as to the existence of its power to hear the case. *Id.* When subject matter jurisdiction is challenged, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

B. **Analysis**

Ascent and XTO have each put forth two jurisdictional arguments—1) they have no interest in any of the leases, so there exists no case or controversy, and 2) Plaintiffs lack standing. The Court begins with Ascent and XTO's first argument, which pertains only to

Plaintiffs' request for declaratory judgment. (Ascent Mot. to Dismiss, at 5–7, ECF No. 16; XTO Mot. to Dismiss, at 5–7, ECF No. 17.)

For a court to have jurisdiction over a declaratory judgment, "there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (per curiam) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937)). This is because federal courts only have jurisdiction over "'Cases' or 'Controversies.'" *Akron Bd. of Educ. v. State Bd. of Educ. of Ohio*, 490 F.2d 1285, 1289 (6th Cir. 1974) (quoting U.S. Const. art. III, § 2, cl. 1).

"To get a declaratory judgment, [the plaintiff] must present a justiciable case or controversy under Article III." *Hemlock Semiconductor Corp. v. Kyocera Corp.*, 747 F. App'x 285, 292 (6th Cir. 2018). That is, the plaintiff "must demonstrate that 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

Ascent and XTO argue that because they are not parties to the leases, they have no stake in a declaratory judgment as to the scope of the leases. That is only partially true. Plaintiffs have alleged that Rice assigned its leases with Watson and TERA II to Ascent making Ascent the rightsholder to these leases. *See Chrysler Fin. Co. v. Wilkins*, 812 N.E.2d 948, 952 (Ohio 2004) (noting that assignee of contract "stands in the shoes" of the original contracting party). As a result, Ascent certainly has a stake in any declaratory judgment that might issue with respect to the Watson and TERA II leases.

In addition, Ascent and XTO are alleged to be parties to an agreement to drill wells on properties owned by TERA II, Honza, TERA IV, and Shaw; Ascent and XTO also own an

interest in these wells. As a result, there remains an "actual case or controversy" regarding the scope of Ascent's and XTO's drilling rights vis-à-vis these properties. Thus, Ascent and XTO have a stake in any declaratory judgment that might issue with respect to the TERA II, Honza, TERA IV, and Shaw leases because that judgment has the potential to determine the scope of their drilling rights.

The Complaint does not, however, allege that XTO has any connection to the Watson property. XTO argues that it has no stake in any declaratory judgment that might issue with respect to any properties to which it has no connection. Such a lack of interest is not necessarily fatal to Watson's claim because of Plaintiffs' argument that Defendants were parties to a joint venture agreement. However, the Court need not determine the existence of a joint venture agreement in the context of this claim because, as is discussed next, Watson lacks standing vis-à-vis XTO regardless.

Ascent and XTO's second jurisdictional argument pertains to Plaintiffs' standing. The Court has an obligation to ensure that Plaintiffs have standing, because standing is a jurisdictional requirement. *In re Troutman Enters., Inc.*, 286 F.3d 359, 364 (6th Cir. 2002). To have standing, a "plaintiff must have suffered an 'injury in fact,'" meaning "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The plaintiff must also prove the existence of "a causal connection between the injury and the conduct complained of . . . ." *Id.* That is, the injury must be "'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Finally, the

plaintiff must prove that it is likely "that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38.).

In arguing that Plaintiffs lack standing, Ascent and XTO rely on the fact that Plaintiffs have not entered into any leases with Ascent or XTO. This is irrelevant. As will be explained in greater detail below, this dispute is broader than a mere breach of Plaintiffs' leases. The salient issue to be determined is the scope of the leases, and if XTO or Ascent has been involved in drilling on Plaintiffs' land beyond the scope of the leases, they are potentially liable in tort, as Defendants allege. Tort liability is not dependent on a contractual relationship.

Plaintiffs allege that Defendants, including Ascent and XTO, have drilled on land on which Defendants are not entitled to drill and that Defendants, including Ascent and XTO, have taken and profited from oil and gas that does not belong to them. A lease entitling Defendants to drill and/or to take oil and gas may be a valid defense to these claims. But should this Court find that Rice, Ascent, and Gulfport have no right under the leases to drill the land at issue, any entity that has engaged in such drilling or has taken or profited from the oil and gas produced is liable regardless of whether it is a party to the leases. As a result, the lack of leases directly with Ascent or XTO is not relevant to Plaintiffs' standing.

To put Plaintiffs' allegations in the context of the standing framework, they allege that they have suffered injury at the hands of Defendants by having their land drilled and their oil and gas taken. A judicial determination that Defendants were not entitled to engage in this conduct, or that Defendants have committed a trespass or conversion or have been unjustly enriched, would redress Plaintiffs' injury. Plaintiffs have alleged sufficient facts to establish standing for most of the claims that they have asserted.

7

The one caveat is that Ascent and XTO argue that Watson does not "own the oil and gas that forms the basis of its claims in this action . . . ." (ECF No. 16, at 18; ECF No. 17, at 17.) This claim is supported by a Motion for Leave to File as Plaintiff filed by Jeannine Shaw and Donald Scott Harvey. (ECF No. 32.) In this motion, Ms. Shaw and Mr. Harvey claim that they own the entire oil and gas mineral estate of the Watson property and cite to the recorded deed as proof of this fact. (*Id.* at 4–5.) Watson has not objected to this assertion or to the motion. Given this, Watson has not met its burden to prove that it has standing to raise any claims related to the Watson property's mineral estate. This Court is thus without jurisdiction on any claims asserted by Watson, since Watson has not met its burden to prove that it has standing to request a declaration of rights as to the mineral estate or to assert claims for trespass onto this estate, conversion of the oil and gas, or unjust enrichment based on the sales of the oil and gas. Because the Complaint is wholly based on the mineral estates of Plaintiffs' properties, Watson's claims are all **DISMISSED**.

### III. MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A. Standard of Review

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotations omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

> Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

### B.  Analysis

Rice, Ascent, and XTO make approximately a dozen arguments for dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6). These arguments fall into four broad categories: 1) the "objective meaning" of the leases granted Defendants the right to drill the Point Pleasant formation; 2) Plaintiffs have failed to provide the requisite notice of default under the leases; 3) Plaintiffs' claims are rooted in contract, which bars the unjust enrichment claim and, under the gist of the action doctrine, the tort claims; and 4) Plaintiffs fail to allege all of the elements of their trespass, conversion, and unjust enrichment claims. These arguments will be referred to by these numerical categories for ease of reference.

#### 1.  Argument One

Rice argues for dismissal of Plaintiffs' declaratory judgment claim on the grounds that the "objective meaning" of the leases granted Defendants the right to drill the Point Pleasant formation. Rice points to various documents attached to the complaint to support its argument that the lease grants Defendants the disputed rights. This is not an appropriate argument at the motion to dismiss stage.

"At the motion to dismiss stage, courts are bound to accept the well-pleaded allegations of a complaint as true and to draw inferences and resolve ambiguities in a plaintiff's favor." *Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014). Rice concedes that the leases at issue are facially ambiguous. (Rice Mot. to Dismiss, at 6, ECF No. 4.) While Rice argues that this ambiguity should be read in its favor, (*id.* at 6–8), even assuming that the leases are ambiguous, at this stage, this ambiguity is read in *Plaintiffs'* favor, not Rice's. That is the end of the inquiry. Rice's motion to dismiss Count One is **DENIED** as to the claims brought by TERA II, Honza, TERA IV, and Shaw.

### 2. Arguments Two and Three

Rice, Ascent, and XTO argue that this is merely a contract case, and several of their arguments rely on that faulty premise. (ECF No. 4, at 9–12; ECF No. 16, at 8–13; ECF No. 17, at 8–14.) This dispute is not about whether Defendants have *violated* the contracts but rather whether Defendants' drilling activities have gone *beyond the scope of* the contracts. Plaintiffs' claims are governed by the contracts only if Defendants' contentions that the leases encompass the Point Pleasant formation are correct. Defendants' arguments assume that Defendants' conclusions about the scope of the leases are correct.

It may be more concrete to look at these facts in a slightly varied context where, all else being equal, Plaintiffs also owned land in Montana (to which Defendants had no relationship) and Defendants began to drill on that land. If Plaintiffs were to sue Defendants for drilling on their Montana land, that lawsuit would not be based on the Ohio leases and there could be no argument that it was. The Ohio leases govern entirely different rights, and under the Ohio leases, Defendants have no duty to refrain from drilling on Montana land. Mere privity of contract

between the parties does not mean that any disputes between them are automatically based on the parties' contractual duties to one another.

The declaratory judgment claim also makes this distinction apparent. There are two possible ways that the Court can decide that claim—Defendants had the right to drill the Point Pleasant formation under the terms of the leases, or they did not. If the Court decides the former, the leases encompass the Point Pleasant formation, and Defendants will have acted within the scope of the leases and will have violated no duty to Plaintiffs. If the Court decides the latter, the leases do not apply, and Defendants' conduct is governed by the common law.

Having determined that this is more than a mere contract case, the Court now turns to the arguments that Defendants have made in reliance on this faulty premise. Rice argues that Plaintiffs were required to provide written notice to Rice prior to bringing suit based on Rice's "'alleged failure to perform as specified'" in the lease. (ECF No. 4, at 9 (quoting Lease Art. XIV).) That is incorrect. This lawsuit alleges that Rice acted beyond the scope of the governing contracts, not that it failed to perform as specified within them.

In support of their contractual arguments, Ascent and XTO point to the same provision in the leases that Plaintiffs claim supports the argument that the Point Pleasant formation is beyond the scope of the leases, specifically: "Lessor reserves all rights not specifically granted to Lessee in this Lease." Ascent and XTO argue that this provision creates a "duty to refrain" from going beyond the scope of the leases. (ECF No. 16, at 10 ("Count II arises entirely out of Defendants' purported breach of a duty imposed by the Leases – to refrain from any activity in the Point Pleasant Formation."); ECF No. 17, at 9 (same).) This distorts the contract; it inserts into the contract a duty that does not exist, the duty to not drill land for which drilling rights are not granted under the contract. The referenced clause is nothing more than a limiting clause; it

merely defines what is governed by the contract and what is not. It does not create any affirmative contractual duties.

To conclude otherwise would mean that any matter beyond the scope of a contract could be reframed so that any time a lawsuit involved parties to a contract, the contract would swallow any other collateral disputes. To return to the earlier analogy, drilling in Montana would not violate any contractual duties because Defendants have no duty in the contract not to drill in Montana. It is not the case that the leases contain a hidden duty to refrain from drilling in Montana merely because the scope of the leases does not include land in Montana.

Similarly, Defendants argue that the trespass and conversion claims are barred by the gist of the action doctrine. Pursuant to this doctrine, "'the existence of a contract action excludes the opportunity to present the same case as a tort claim.'" *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (quoting *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)). "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action *only if the breaching party also breaches a duty owed separately from that created by the contract*, that is, a duty owed even if no contract existed." *Id.* (emphasis added). This doctrine does not apply because Plaintiffs have not alleged that Defendants have breached any actual duty under the contract. Rather, Plaintiffs allege that Defendants have breached their common law duties not to intrude on the property rights of others.

Defendants conflate contractual duties with tort duties. Under the law of tort, Defendants (like everyone else) have the duty not to enter onto Plaintiffs' land without authority, *see Golf Vill. N. LLC v. City of Powell*, 333 F. Supp. 3d 769, 779 (S.D. Ohio 2018), or to wrongfully convert Plaintiffs' property, *see NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81

(S.D. Ohio 1996). These duties exist regardless of how the leases are interpreted, and they would exist even if the leases had never been signed. These duties were created by the common law, not the contracts, so the gist of the action doctrine is inapplicable.

Finally, Defendants' argument as to the unjust enrichment claim fails for a similar reason. Defendants argue that the existence of a contract precludes a plaintiff's ability to bring an unjust enrichment claim. However, that is true only where the alleged unjust enrichment falls within the scope of the contract. *See* Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (2011) ("A valid contract defines the obligations of the parties *as to matters within its scope*, displacing to that extent any inquiry into unjust enrichment." (emphasis added)). Because the scope of the contract at issue is precisely what is in question here, the Court cannot yet determine whether the unjust enrichment claim falls within the scope of the contract. If Plaintiffs are correct and Defendants were not entitled to drill the Point Pleasant Formation, then the unjust enrichment claim is not within the scope of contract and it survives.

Ascent and XTO have additional arguments as to why Counts Two through Four should be dismissed. However, because all of Rice's arguments in favor of dismissing Counts Two through Four have now been disposed of, Rice's motion to dismiss Counts Two through Four is **DENIED** as to the claims brought by TERA II, Honza, TERA IV, and Shaw.

    **3.    Argument Four – Trespass Claim**

Ascent and XTO next argue that Count Two for trespass should be dismissed based on Plaintiffs' failure to plead a *prima facie* case. The elements of trespass under Ohio law are "'(1) an unauthorized intentional act, and (2) entry upon land in the possession of another." *Golf Vill.*, 333 F. Supp. 3d at 779. Ascent and XTO argue that Plaintiffs have not alleged that Ascent or

XTO "took any unauthorized act" or "improperly entered onto Plaintiffs' properties at any time." (ECF No. 16, at 8; ECF No. 17, at 7.)

Plaintiffs respond that Defendants, including Ascent and XTO, have committed trespass based on a joint venture theory—that is, Plaintiffs contend that Defendants have entered into a joint venture agreement and are responsible for the torts of each of their co-adventurers. (Pls.' Reply, at 12–14, ECF No. 36.) Under Ohio law, parties who have entered into a joint venture agreement are each "liable for the negligent and tortious acts of the other members, pursuant to the venture, that result in injury to third persons." *Hulett v. Am.'s Finest Serv. Co.*, No. 1:03CV2497, 2005 WL 2233261, at *12 (N.D. Ohio Sept. 14, 2005).

To establish a joint venture, Plaintiffs must prove five things—1) there is a joint contract; 2) Defendants intended to form a joint venture; 3) there exists a "community of interest and control, including contributions to the joint venture"; 4) Defendants have "the mutual right to direct and control the purpose of the joint venture"; and 5) Defendants have agreed to share in the profits and the losses. *Anchor v. O'Toole*, 94 F.3d 1014, 1024 (6th Cir. 1996). Determining whether a joint venture exists is a question of fact for determination by a jury. *Bennett v. Sinclair Ref. Co.*, 57 N.E.2d 776, 782 (Ohio 1944).

Ascent argues that "[t]he mere existence of an operating agreement does not establish a joint venture relationship." (ECF No. 45, at 3.) However, in making this argument, Ascent relies only on one Fifth Circuit decision relying on Texas law. *See Norman v. Apache Corp.*, 19 F.3d 1017, 1024 (5th Cir. 1994). Under Ohio law, a joint venture is nothing more than an agreement "'to carry out a common business purpose.'" *Schlaegel v. Howell*, 42 N.E.3d 771, 777 (Ohio Ct. App. 2015) (quoting *Nilavar v. Osborn*, 711 N.E.2d 726, 738 (Ohio Ct. App. 1998)). As a result,

14

under Ohio law, an operating agreement alone can constitute a joint venture agreement as long as the agreement meets the criteria identified above.

At this stage, the Court must only determine whether Plaintiffs have pleaded sufficient facts to allege a plausible claim of a joint venture. Plaintiffs have done so. "[P]laintiffs were not required to provide a formulaic recitation of each element of [a] joint venture, but instead were required to allege sufficient factual matter, accepted as true, to allow this Court to draw the reasonable inference" that a joint venture existed. *Lester v. Wow Car Co.*, No. 2:11-cv-850, 2013 WL 6058676, at *3 (S.D. Ohio Nov. 14, 2013).

With respect to the TERA II, Honza, TERA IV, and Shaw properties, Plaintiffs have pleaded that Ascent and XTO have entered into operating agreements with Gulfport and Rice to drill wells on these properties. Plaintiffs have pleaded that Defendants have drilled various wells pursuant to these agreements and that they have shared in the revenues from the oil, gas, and other hydrocarbons produced pursuant to these agreements. "These allegations are sufficient for the Court to draw the reasonable inference that [Defendants] intended to engage in and carry out a single business adventure for joint profit, for which the parties combined their efforts, property, money, skill and knowledge." *Id.* at *4.

Plaintiffs have alleged sufficient facts to establish that these operating agreements constitute "joint venture agreements" under Ohio law. As a result, it is immaterial whether Ascent or XTO physically trespassed on Plaintiffs' properties because Plaintiffs have alleged that one of their alleged co-adventurers did so. TERA II and Honza have alleged a physical trespass by Gulfport—an alleged co-adventurer of Rice, Ascent, and XTO—and TERA IV and Shaw have alleged a physical trespass by Rice—an alleged co-adventurer of Gulfport, Ascent, and XTO.

Accordingly, Ascent and XTO's motion to dismiss Count Two is **DENIED** as to the claims brought by TERA II, Honza, TERA IV, and Shaw.

4. **Argument Four – Conversion Claim**

Ascent and XTO next argue that Count Three for conversion should be dismissed based on Plaintiffs' failure to plead a *prima facie* case. The elements of conversion under Ohio law are "1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages." *NPF*, 922 F. Supp. at 81. Ascent and XTO argue that Plaintiffs have failed to state a claim for conversion because they have not alleged that Ascent or XTO has "committed any wrongful act or disposition with respect to any of Plaintiffs' purported property rights, and Plaintiffs thus could not have suffered any damages as a result of" Ascent or XTO's actions. (ECF No. 16, at 11; ECF No. 17, at 11.) In response, Plaintiffs rely on the same joint venture agreement theory.

Plaintiffs have alleged that Ascent and XTO, or their alleged co-adventurers, have drilled wells on the TERA II, Honza, TERA IV, and Shaw properties and that these wells have produced oil, gas, or other hydrocarbons. Plaintiffs have further alleged that Defendants have wrongfully sold and profited from this oil, gas, or other hydrocarbons. Accordingly, Ascent and XTO's motion to dismiss Count Three is **DENIED** as to the claims brought by TERA II, Honza, TERA IV, and Shaw.

5. **Argument Four – Unjust Enrichment Claim**

Finally, Ascent and XTO argue that Count Four for unjust enrichment should be dismissed based on Plaintiffs' failure to plead a *prima facie* case. The elements of unjust enrichment under Ohio law are: 1) the plaintiff has conferred a benefit upon the defendant, 2) the

defendant is aware of the benefit, and 3) the defendant has retained the benefit under circumstances where it is unjust to do so without payment. *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005). Ascent and XTO argue that Plaintiffs have not alleged that they conferred any benefit on Ascent or XTO or that Ascent or XTO has retained a benefit under unjust circumstances. (ECF No. 16, at 14–15; ECF No. 17, at 14–16.)

As with the other claims discussed above, Plaintiffs have alleged that Ascent and XTO, or their alleged co-adventurers, have drilled wells on the TERA II, Honza, TERA IV, and Shaw properties and that these wells have produced oil, gas, or other hydrocarbons. Plaintiffs have further alleged that Ascent and XTO shared in the profits from the sale of oil, gas, and other hydrocarbons produced by these wells. This is sufficient to establish a plausible claim for unjust enrichment. Ascent and XTO's motion to dismiss Count Four is **DENIED** as to the claims brought by TERA II, Honza, TERA IV, and Shaw.

## IV. MOTION TO DISMISS FOR FAILURE TO JOIN A NECESSARY PARTY

### A. Standard of Review

Pursuant to Fed. R. Civ. P. 19, there is a three-step test for determining whether an absent party must be joined. "First, the court must determine whether the party is necessary and should be joined under Rule 19(a). If the person or entity is a necessary party, the court looks to whether joinder is feasible, or if a lack of subject matter or personal jurisdiction makes joinder impossible. Third, if joinder is not possible, the court must weigh the equities of the situation pursuant to Rule 19(b) and determine if the suit can continue in the party's absence or if the case should be dismissed because the party is indispensable." *Am. Express Travel Related Servs., Co. v. Bank One-Dearborn, N.A.*, 195 F. App'x 458, 460 (6th Cir. 2006).

B.    Analysis

Ascent and XTO have moved to dismiss the Complaint based on a failure to join an indispensable party, Joyce Hall. Subsequently, Joyce Chambers f/k/a Joyce Hall, Jeannine Shaw, and Donald Scott Harvey filed a Motion for Leave to Join as Plaintiff. (ECF No. 32.) Defendants have not opposed this motion.

Ms. Chambers is a co-owner of the mineral rights to the Shaw property; she and Mr. Shaw each own an undivided one-half interest in these rights. (ECF No. 32, at 4.) Ms. Shaw and Mr. Harvey own the mineral rights to the Watson property. (*Id.* at 4–5.) As Ascent and XTO argue in their motions to dismiss, (ECF No. 16, at 19; ECF No. 17, at 18), and as Ms. Chambers argues in her Motion for Leave to Join, (ECF No. 32, at 7–8), any declaratory judgment that this Court might issue in this case will affect Ms. Chambers' present and future rights. The same is true for Ms. Shaw and Mr. Harvey, given their ownership of the mineral rights to the Watson property. All three are necessary parties under Rule 19(a). The Court "cannot accord complete relief among existing parties" without them, they "claim[] an interest relating to the subject of the action," and deciding this action in their absence might impede their ability to protect their interests. *See* Fed. R. Civ. P. 19(a)(1). All three proposed plaintiffs are citizens of Ohio, (ECF No. 32 at 4–5), so the Court has personal jurisdiction over them. And joinder of these plaintiffs has no effect on this Court's subject matter jurisdiction—that is, there remains complete diversity between Plaintiffs and Defendants.

Joyce Chambers, Jeannine Shaw, and Donald Scott Harvey are all necessary parties, and their motions to join are **GRANTED**. Because Joyce Chambers has now been joined in this action, Defendants' motion to dismiss for failure to join a necessary party is **DENIED** as moot.

## V.  CONCLUSION

For the reasons set forth above, Rice's, Ascent's, and XTO's Motions to Dismiss are **GRANTED** vis-à-vis Watson and **DENIED** vis-à-vis TERA II, TERA IV, Honza, and Shaw. TERA Watson, LLC's claims are **DISMISSED** without prejudice.

The Motion for Leave to Join as Plaintiff by Joyce Chambers, Jeannine Shaw, and Donald Scott Harvey is **GRANTED**.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**