**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TERA II, LLC, et al.,**

              **Plaintiffs,**

        **v.**                             **Civil Action 2:19-cv-2221
Chief Judge Algenon L. Marbley
Magistrate Judge Jolson**

**RICE DRILLING D, LLC, et al.,**

              **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel Discovery.  (Doc. 195). For the following reasons, Plaintiffs' Motion is **GRANTED in part and DENIED in part**.

## I.    BACKGROUND

This lawsuit is about several oil and gas leases, which address rights to develop two oil and gas formations, commonly known to as the Marcellus Shale and Utica Shale.  After a dispute arose about the scope of Defendants' drilling rights, Plaintiffs filed suit in the Belmont County, Ohio, Court of Common Pleas on April 24, 2019.  (Doc. 1).  Shortly after, Defendants timely removed the case to federal court.  (Docs. 1, 6, 10).  In brief, Plaintiffs seek a judgment declaring the parties' rights under the leases and damages from Defendants for trespass, conversion, and unjust enrichment.  (*See generally* Doc. 154).

After the Court granted in part Defendants' Motions to Dismiss (Doc. 64), the parties progressed with discovery—requiring Court intervention several times.  (*See* Docs. 120, 152, 159, 160, 168, 198, 215).  Relevant here, when Plaintiffs filed the instant Motion to Compel, the Court initially struck the filing, noting the parties had not exhausted their attempts to resolve the matter extrajudicially.  (Doc. 196).  Furthermore, in light of the Court's October 14, 2020, Opinion and

Order on similar issues in the related case, *J&R Passmore, LLC v. Rice Drilling D, LLC*, 2:18-cv-1587 ("J&R Passmore"), Defendants had already agreed to produce certain categories of documents. (*Id.*). Ultimately, while the parties were able to resolve a number of the production issues underlying Plaintiffs' Motion, several disputes remained. (*See* Doc. 206). Accordingly, the Court withdrew its Order striking Plaintiffs' Motion, and ordered the parties to proceed with briefing. (Doc. 209). Thereafter, Defendants filed their Responses (Docs. 216, 217, 218, 219), and Plaintiffs filed their Reply (Doc. 223).

Before the Court could rule on Plaintiffs' Motion, Defendant Gulfport Energy Corporation ("Gulfport") notified the Court it filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, invoking an automatic stay of proceedings. (*See* Docs. 224, 226). The stay was lifted on May 17, 2021. (*See* Docs. 229, 230). Given the time elapsed, the Court directed the parties to discuss the prior disputes and update the Court on outstanding issues. (Doc. 242). The parties reported that they had resolved a majority of the disputes underlying Plaintiffs' Motion, but several still remained. (*See* Doc. 248). Given this representation, the Court ordered the parties to discuss further the remaining disputed discovery and file another status report. (Doc. 250). The parties narrowed their dispute even further. (*See* Doc. 257). Now, with Plaintiff's Motion fully briefed, there are only two disputes remaining.

## II.    STANDARD

Two federal rules matter here. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents

2

under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine,* 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

## III.    DISCUSSION

As noted, two of Plaintiff's discovery requests are still at issue: (1) Gulfport's underlying well cost data and gas sales data; and (2) documents related to Defendant XTO Energy, Inc.'s ("XTO") top leases. (*See* Doc. 257 at ¶¶ 7, 8). While the parties also initially raised disputes over gas-in-place, estimated ultimate recovery, fracture modeling, and drainage analysis from all wells in Belmont County, they now represent such discovery "should be held in abeyance until the case proceeds into the damages phase of discovery, if necessary[.]" (*Id.*).

### A.  Gulfport's Production

The first live issue in Plaintiff's Motion to Compel relates to Gulfport's "underlying well cost data and gas sales data." (Doc. 257 at ¶ 7). Plaintiffs initially sought: (1) the sales contracts with the third-party purchasers of the gas produced from the subject wells; (2) the production and sales monthly statements; and (3) the marketing agreements with any other entity who sells the gas for Gulfport. (Doc. 223 at 3). Thus far, Gulfport has produced "a spreadsheet containing

numbers for gas sales and well costs . . . and monthly royalty statements for royalties paid to Plaintiffs." (*Id.*; *see also* Doc. 216 at 2–3). Plaintiffs, however, represent this production is not responsive to the requests for production. (Doc. 223 at 3).

Plaintiffs represent they have evidence—from documents Gulfport previously produced—which shows "certain costs and expenses [may have been] considered in [] reducing the gas price on which Plaintiffs' royalties are based." (Doc. 195 at 13). Were that the case, Plaintiffs argue, it would violate the subject oil and gas lease royalty clause. (*Id.*). Accordingly, Plaintiffs seek "the underlying sales contracts and monthly statements to verify the gas price." (Doc. 223 at 4–5). Gulfport represents that they have repeatedly told Plaintiffs "deductions are not taken in calculating their royalty payments[,]" and the documents already produced illustrate that. (Doc. 216 at 3). Plaintiffs believe they have reason to believe otherwise.

From the Court's view, Plaintiffs want to understand how Defendants calculated the sales price and royalty payments. Given the terms of the subject oil and gas lease, this is a relevant inquiry. Still, the Court acknowledges Gulfport's concern over the sufficiency of its previous production and the vagueness of Plaintiffs' request. (*Id.*). Accordingly, Plaintiffs are **DIRECTED** to serve on Gulfport narrowed requests relating specifically to well cost data and gas sales data within **fourteen (14) days** from the date of this Order. Gulfport is **ORDERED** to respond to the revised requests **fourteen (14) days** thereafter.

### B. XTO's Production

Additionally, Plaintiffs seek to compel from XTO the "identification of the person(s) who prepared, reviewed, and approved certain 'top leases' recorded in Belmont County, Ohio." (Doc. 195 at 9). Plaintiffs argue "[t]he top lease language is [] evidence that XTO does not use the words 'Utica Shale' to include rights to the Point Pleasant Formation." (*Id.*). This nomenclature is

4

particularly important, say Plaintiffs, given XTO's argument that the lease at issue does convey rights to the Point Pleasant Formation, because the lease explicitly includes the "Utica Shale." (*Id.* at 10; *see also* Doc. 165 at ¶ 16).  XTO, conversely, argues that "Plaintiffs are not entitled to information regarding [any] [] "Top Lease" as it has no bearing on Plaintiffs' claims nor on any defense in this case." (Doc. 218 at 3).

In reviewing its Answer to the Amended Complaint, it is clear that XTO argues, at least in part, that this case turns on how the parties interpret the lease:

> 'Utica Shale' was and is the commonly accepted nomenclature and term of art used to describe the subsurface interval from the top of the Utica Shale to the top of the Trenton Limestone, including the Point Pleasant. Thus, for purposes of contracting and lease interpretation, there is no distinction between the Utica Shale and Point Pleasant.

(Doc. 165 at ¶ 16 (rejecting Plaintiffs' argument that "[s]tarting in 2011 . . . Defendants began drilling horizontal wells in eastern Ohio in what has become colloquially known as the 'Utica/Point Pleasant Shale Play'")).  Given this question of interpretation, which XTO itself raised, Plaintiffs are entitled to know how XTO generally uses the term "Utica Shale" in leases.  Put simply, the top lease language is relevant to rebutting XTO's defense.

Moreover, XTO's argument that its use of these terms "in other documents unrelated to Plaintiffs' leases[,] provides no insight into the parties' intention in negotiating and executing the leases[,]" has no merit.  (Doc. 218 at 4).  As Plaintiffs correctly argue, "this interrogatory is not aimed at obtaining XTO's intent, but rather at XTO's [] assertion of industry and common use of certain terminology at issue in this case." (Doc. 223 at 5).  Because, as detailed above, XTO raised this "commonly accepted nomenclature" argument, Plaintiffs are entitled to explore XTO's uses of the term "Utica Shale" in these other leases.

Accordingly, XTO is **ORDERED** to provide Plaintiffs with the identification of the

person(s) who prepared, reviewed, and approved the top leases within **twenty-one (21) days** from the date of this Order.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion (Doc. 195) is **GRANTED in part and DENIED in part**.  Plaintiffs are **DIRECTED** to serve on Gulfport narrowed requests relating specifically to well cost data and gas sales data within **fourteen (14) days** from the date of this Order, and Gulfport is **ORDERED** to respond to the revised requests **fourteen (14) days** thereafter.  Further, XTO is **ORDERED** to provide Plaintiffs with the identification of the person(s) who prepared, reviewed, and approved the top leases within **twenty-one (21) days** from the date of this Order.

IT IS SO ORDERED.


Date: September 1, 2021                                    /s/ Kimberly A. Jolson
                                                          KIMBERLY A. JOLSON
                                                          UNITED STATES MAGISTRATE JUDGE