# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

| | |
|---|---|
| **TERA II, LLC, *et al.*,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **RICE DRILLING D, LLC, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**Case No. 2:19-CV-02221**
**CHIEF JUDGE ALGENON L. MARBLEY**
**Magistrate Judge Kimberly A. Jolson**

---

## SECOND AMENDED COMPLAINT WITH JURY DEMAND ENDORSED HEREON

---

Now come Plaintiffs TERA II, LLC, TERA III Honza, LLC, TERA IV, LLC, TERA Watson, LLC, Thomas Shaw, Joyce Chambers, Jeannine Shaw, and Donald Scott Harvey (collectively, "Plaintiff"), by and through counsel, and hereby states as follows for their Second Amended Complaint:

## JURISDICTION AND VENUE

1.      Plaintiff TERA II, LLC is an Ohio limited liability company, whose principal place of business is 65010 Country Club Road, Belmont, Ohio 43718, that owns certain oil and gas mineral rights subject of this complaint located in Richland Township, Belmont County, Ohio.

2.      Plaintiff TERA III Honza, LLC is an Ohio limited liability company, whose principal place of business is 65010 Country Club Road, Belmont, Ohio 43718, that owns certain oil and gas mineral rights subject of this complaint located in Richland Township, Belmont County, Ohio.

3.      Plaintiff TERA IV, LLC is an Ohio limited liability company, whose principal place of business is 65010 Country Club Road, Belmont, Ohio 43718, that owns certain oil and gas mineral rights subject of this complaint located in Smith Township, Belmont County, Ohio.

4.      Plaintiff TERA Watson, LLC is an Ohio limited liability company, whose principal place of business is 47002 Watson Road, St. Clairsville, Ohio 43950, that owns certain oil and gas mineral rights subject of this complaint located in Richland Township, Belmont County, Ohio.

5.      Plaintiff Thomas Shaw is an individual who resides at 47210 Belmont-Warnock Road, Belmont, Ohio 43718 and owns certain oil and gas mineral rights subject of this complaint located in Richland Township, Belmont County, Ohio.

6.      Plaintiffs Jeannine Shaw, and Donald Scott Harvey are individuals who reside at 47002 Watson Road, St. Clairsville, Ohio 43950.

7.      Plaintiff Joyce Chambers is an individual who resides at 51677 Rehm Rd., St. Clairsville, Ohio 43950.

8.      Defendant Rice Drilling D, LLC is a Delaware limited liability company that is licensed to do business in the State of Ohio with a principal place of business located at 625 Liberty Avenue, Suite 1700, Pittsburgh, PA 15222.

9.      Defendant Gulfport Energy Corporation is a Delaware corporation that is licensed to do business in the State of Ohio and whose principal place of business is 3001 Quail Springs Parkway, Oklahoma City, OK 73134.

10.      Defendant Ascent Resources – Utica, LLC is an Oklahoma limited liability company that is licensed to do business in the State of Ohio with a principal place of business located at 3501 NW 63rd St., Oklahoma City, OK 73116.

11.    Defendant XTO Energy Inc. (hereinafter "XTO") is a Delaware corporation that is licensed to do business in the State of Ohio and whose principal place of business is 22777 Springwoods Village Pkwy., Spring, TX 77389.

12.    Defendant Phillips Exploration, LLC is a Delaware limited liability company that is not licensed to do business in the State of Ohio, but does business in Ohio, and whose principal place of business is 810 Houston St., Fort Worth, TX 76102.

## FACTUAL BACKGROUND
### POINT PLEASANT FORMATION

13.    Plaintiffs reassert every allegation contained in the foregoing paragraphs as if stated verbatim herein.

14.    In recent years, oil and gas companies have implemented new technology to drill *horizontal* oil and gas wells into shale (rock) formations to extract oil and gas.

15.    Starting in 2011, large oil and gas companies such as Defendants began drilling horizontal wells in eastern Ohio in what has become colloquially known as the "Utica/Point Pleasant Shale Play."

16.    While the nomenclature for the drilling activity in eastern Ohio is generally called the Utica/Point Pleasant Shale Play, the Utica Shale formation and the Point Pleasant formation are separate and distinct formations.

17.    In or around 2012, there was a concerted effort made by the oil and gas industry to specifically delineate a distinction between the Utica formation and the Point Pleasant formation.

As explained by Chesapeake Exploration LLC[1] in a 2012 presentation[2] to the Technical Advisory Counsel of the Ohio Department of Natural Resources:

> Although the Utica Shale was (and is) the commonly accepted <u>nomenclature</u> applied to this horizontal shale play [in eastern Ohio], geologic data from wire line logs and cores indicated that it is the Point Pleasant Formation that is the producing reservoir. **The Point Pleasant underlies the Utica**, is approximately 120 feet thick and consists of interbedded shales, calcareous siltstones and carbonates. **The pay zone within the Point Pleasant is a relatively thin layer in the lower third of the Point Pleasant** and it is within that zone where the horizontal drilling and production occurs (emphasis added).

18.     Around the same time, on April 9, 2012, another oil and gas company, Anadarko, that drilled horizontal wells in Ohio requested that the Ohio Department of Natural Resources change the Formation designation on existing Anadarko permits to reflect its target formation as the Point Pleasant formation.  It wrote:

> The original applications for those permits to drill reflected the Utica, the Utica/Point Pleasant, or the Utica/Lower Point Pleasant as the target formation. After discussing the fact that the horizontal lateral wells in our exploration efforts are all targeting what **we agreed is typically referred to in [sic] industry as the Point Pleasant formation**, we concluded it would be appropriate to consistently refer to the Point Pleasant formation as our target reservoir for all of our exploration wells…[3]

19.     Also in 2012, the Ohio Legislature passed S.B. 315 defining a "horizontal well" to be "a well that is drilled for the production of oil or gas in which the wellbore reaches a horizontal or near horizontal position in the <u>Point Pleasant</u>, Utica, or Marcellus formation and the well is stimulated" (emphasis added). R.C. 1509.01(GG) (eff. 9/10/2012).

20.     In 2012, the Ohio Department of Natural Resources, Division of Geological Survey also recognized that the Utica Shale formation is a separate and distinct formation from the Point

---

[1] Chesapeake Exploration LLC has drilled the most horizontal oil and gas wells in the State of Ohio to date. *See* http://oilandgas.ohiodnr.gov/portals/oilgas/shale-activity/comprehensive/Utica_110318.pdf.
[2] A copy of the Presentation is attached as **Exhibit A to the original complaint**.
[3] A copy of Anadarko's April 9, 2012 email to the Ohio Division of Natural Resources Division of Oil & Gas Resources is attached as **Exhibit B to the original complaint**.

Pleasant formation; that the Point Pleasant formation is underneath the Utica Shale formation; that the Point Pleasant formation is above the Trenton Limestone formation; and that the Point Pleasant formation is a primary reservoir of oil, natural gas, and other hydrocarbon products.[4]

21.     The Ohio Department of Natural Resources, Division of Oil and Gas Resources Management ("DOGRM") regulates the oil and gas industry in Ohio and requires an oil and gas company to submit a Well Completion Record (Form 8)[5] after drilling and fracturing a horizontal well in Ohio.  The Well Completion Record requires the oil and gas company to identify the specific formation(s) from which it is producing oil and gas from a particular well.  The second page of Well Completion Record form identifies and lists fifty-seven (57) different formations in Ohio by order of depth.

22.     In 2012, DOGRM amended its Well Completion Record to separately identify the Point Pleasant formation. Thereafter, the Well Completion Record form indicates that the Utica Shale formation is distinctly separate from and lies above the Point Pleasant formation.

23.     Accordingly, in 2012, the oil and gas industry, the Ohio Legislature, the Ohio Department of Natural Resources Division of Geologic Survey, and the Ohio Department of Natural Resources Division of Oil and Gas, all acknowledged the Point Pleasant formation is separate and distinct from the Utica Shale.

24.     The Utica Shale formation and the Point Pleasant formation are separate and distinct formations based on lithology and geologic characteristics.[6]

---

[4] See, **Exhibit C to the original complaint**.
[5] A copy of Form 8 Well Completion Record is attached as **Exhibit D to the original complaint**.
[6] Hickman, J. et al. 2015, A Geologic Play Book for Utica Shale Appalachian Basin Exploration, Final Report July 1, 2015, Utica Shale Appalachian Basin Exploration Consortium, Coordinated by the Appalachian Oil and Natural Gas Consortium at West Virginia University.

25.    The Utica Shale formation and the Point Pleasant formation are separate and distinct formations based on stratigraphy.

26.    The Utica Shale formation and the Point Pleasant formation are recognized within the oil and gas industry as being separate and distinct formations.[7]

27.    Defendant Gulfport admits that the Utica Shale and Point Pleasant formations are separate and distinct formations in its Applications for Unit Operations Pursuant to R.C. 1509.28 publicly filed with the DOGRM.  For example, in the prepared testimony of Michael Buckner on behalf of Gulfport Energy Corp. in its Application of Gulfport Energy Corporation for Unit Operations in the Horseshoe B Unit, dated July 19, 2017 and later supplemented, filed with the DOGRM ("Horseshoe Application")[8] Gulfport states:

Q16: What do these exhibits tell us about the Horseshoe B Unit?

A:16: Exhibits MB-1 and MB-2 are a location map and cross section created using downhole electric logs, respectively. **The cross-section suggests equal thickness of the Utica formation and Point Pleasant formation** and the location map shows the extent of the predicted thickness across the Horseshoe B Unit. (emphasis added).

***

Q19: How and why were these formations chosen?

A19: We expect to produce from **both the Utica Shale and Point Pleasant formations**, though fractures from completion activities may extend outside those formations.  We ask for a 50' buffer above and below the productive formation for this reason. (emphasis added).

---

[7] U.S. Energy Information Administration, Utica Shale Play: Geology Review, April 2017.
[8] A copy of relevant portions of the Horseshoe Application are attached as **Exhibit E to the original complaint**.

28.     Defendant Rice admits that the Utica Shale and Point Pleasant formations are separate and distinct formations in its Applications for Unit Operations Pursuant to R.C. 1509.28 publicly filed with the DOGRM.  For example, Rice states it is producing its horizontal wells:

A6: Fifty feet (50') above the top of the Utica Shale to fifty feet (50') below the base of the Point Pleasant formation.[9]

29.     Defendant Ascent admits that the Utica Shale and Point Pleasant formations are separate and distinct formations in its Applications for Unit Operations Pursuant to R.C. 1509.28 publicly filed with the DOGRM.  For example, Ascent states it is producing:

A8: 50' above the top of the Utica Shale, to 50' below the base of the Point Pleasant formation.[10]

30.     Defendant XTO admits that the Utica Shale and Point Pleasant formations are separate and distinct formations in its Applications for Unit Operations Pursuant to R.C. 1509.28 publicly filed with the DOGRM.  For example, XTO states:

A17:  . . . The cross section going over the Heller B Unit shows a near equal thickness of the Utica and Point Pleasant formations. [11]

## PLAINTIFFS' PROPERTY AND LEASES

31.     Plaintiff TERA II, LLC acquired 54.02 acres, more or less, by virtue of Warranty Deed dated October 27, 2011 recorded in the Official Record Book 294, Page 439 and by virtue

---

[9] Prepared Direct testimony of Derek Rice attached to the Application of Rice Drilling D LLC ("RICE") FOR UNIT OPERATIONS for the Gold Digger Unit dated January 24, 2014.
[10] Prepared Testimony of Michael Hale on Behalf of Ascent Resources-Utica, LLC attached to the Application of Ascent Resources- Utica, LLC ("ARU") for Unit Operations for the Sophia Joe SW CLR BL Unit dated February 17, 2016.
[11] Prepared Direct Testimony of Jeff Jacksons on Behalf of XTO Energy Inc. ("XTO") (Geologist) attached to the Application of XTO Energy Inc. ("XTO") For Unit Operations for the Heller B Unit dated June 16, 2015.

of Warranty Deed dated March 8, 2015 recorded in the Official Record Book 537, Page 1191 ("TERA II Property").

32. Plaintiff TERA II, LLC leased 32.865 acres of the TERA II Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record Book 449, Page 197 ("TERA II Lease One"). Rice assigned said lease to Ascent by Assignment and Bill of Sale recorded in Official Record Book 563, Page 534. Ascent assigned a partial interest in the said lease to Gulfport by Correction Assignment, Bill of Sale and Conveyance recorded in Official Record Book 595, Page 56.

33. Plaintiff TERA II, LLC's predecessor in title leased 0.4606 acres of the TERA II Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record Book 449, Page 193 ("TERA II Lease Two") (TERA II Lease One and TERA II Lease Two shall collectively be referred to as "TERA II Lease"). Rice assigned the TERA II Lease to Ascent by Assignment and Bill of Sale recorded in Official Record Book 563, Page 534.

34. Prior to executing the TERA II Lease, Rice knew, or should have known, that the Point Pleasant formation was a separate and distinct formation from the Utica formation.

35. Plaintiff TERA III Honza, LLC acquired 163.06 acres, more or less, by virtue of Warranty Deed dated March 8, 2015 recorded in the Official Record Book 537, Page 1184 ("TERA III Honza Property").

36. Plaintiff TERA III Honza, LLC's predecessor in title leased the TERA III Honza Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record

Book 446, Page 830 ("TERA III Honza Lease").

37.     Prior to executing the TERA III Honza Lease, Rice knew, or should have known, that the Point Pleasant formation was a separate and distinct formation from the Utica formation.

38.     Plaintiff TERA IV, LLC acquired 303.633 acres, more or less, by virtue of Warranty Deed dated March 8, 2015 recorded in the Official Record Book 537, Page 1261 ("TERA IV Property").

39.     Plaintiff TERA IV, LLC's predecessor in title leased the TERA IV Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record Book 446, Page 842 ("TERA IV Lease").

40.     Prior to executing the TERA IV Lease, Rice knew, or should have known, that the Point Pleasant formation was a separate and distinct formation from the Utica formation.

41.     Plaintiff TERA Watson, LLC acquired 7.398 acres, more or less, by virtue of Warranty Deed dated November 15, 2016 recorded in the Official Record Book 652, Page 203 ("TERA Watson Property"). Plaintiffs Jeannine Shaw and Donald Scott Harvey own the mineral rights beneath the TERA Watson Property.

42.     Plaintiff TERA Watson, LLC's predecessor in title leased the TERA Watson Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record Book 446, Page 838 ("TERA Watson Lease").  Rice assigned the said TERA Watson Lease to Ascent by Assignment and Bill of Sale recorded in the Official Record Book 678, Page 25.

43.     Prior to executing the TERA Watson Lease, Rice knew, or should have known, that the Point Pleasant formation was a separate and distinct formation from the Utica formation.

44.     Plaintiffs Thomas Shaw and Joyce Chambers own 66.079 by virtue of deed recorded in Vol. 364, Page 666 of Belmont County, Ohio ("Shaw Property").

45.     Plaintiffs Thomas Shaw and Joyce Chambers Leased the Shaw Property to Rice Drilling D, LLC on December 31, 2013 for the development of oil and gas minerals in two specified formations, with Memorandum of Lease recorded in Official Record Book 449, Page 189 ("Plaintiffs' Leases").

46.     Prior to executing the Plaintiffs' Leases, Rice knew, or should have known, that the Point Pleasant formation was a separate and distinct formation from the Utica formation.

47.     The TERA II Lease, the TERA III Honza Lease, the TERA Watson Lease, the TERA IV Lease, and the Plaintiffs' Leases  are identical in their terms and conditions, except as to the property encumbered by each respective lease and the lessor/owner of each property, and are collectively referred to as the "Plaintiffs' Leases".

48.     The Plaintiffs' Leases provide that the lessee has the right to develop and produce oil and gas from the top to the base of Marcellus Shale formation and Utica Shale formation, only.

49.     The Plaintiffs' Leases reserved to the lessor (now the Plaintiffs) all of the oil and gas minerals from all other formation, including but not limited to, the Point Pleasant formation.

50.     Specifically, the granting clause of Plaintiffs' Leases states:

Lessor, in consideration of the payments described herein and the covenants and agreements hereafter contained, hereby leases and lets exclusively to the Lessee all the oil, gas, minerals and their constituents (not including coal) **in the formations commonly known as the Marcellus Shale and the Utica Shale,** underlying the land described below . . . Together with such exclusive rights as may be necessary or convenient for the Lessee to explore for, develop, produce, measure, and market production from said **Marcellus Shale and Utica Shale** underlying the Leasehold . . . [and] to stimulate or fracture said **Marcellus Shale and Utica Shale formations** (emphasis added).

51.     In addition to the granting clause, the Plaintiffs' Leases also contain a reservation clause, titled Article I. Reservations - (a) Lessor's Reserved Rights, which states:

> Lessor reserves all rights not specifically granted to Lessee in this Lease. **Lessor specifically reserves the rights to all products contained in any formation:** (1) from the surface of the Leased Premises to the top of the formation commonly known as the Marcellus Shale, (2) in any and all formations below the base of the Marcellus Shale to the top of the formation commonly known as the Utica Shale, **and (3) in all formations below the base of the Utica Shale.** Notwithstanding anything to the contrary, Lessee is specifically granted the right to penetrate and drill through the shallower formations in order to drill and produce the Leased Products and the Leased Premises. Lessor also reserves the right to drill through any leased shale(s) subject to Lessee approval which shall not be unreasonably withheld so as not to interfere with the Lessee's drilling operations, and a right of way on all lands granted hereunder and the right to use the Leased Premises and any improvements thereon for any and all other purposes, so long as that right of way does not cause unreasonable interference with Lessee's operations or pose an immediate or foreseeable safety problem to Lessee and/or Lessor. Lessee agrees not to unreasonably interfere with the use and employment of said land by Lessor and Lessor's family, agents, employees, invitees, and guests and to comply with all other specific provisions herein relating to the use of the land (emphasis added).

52.     Moreover, the Lessee Covenants in Article XV states:

> Any and all duties and obligations Lessee has are under implied covenants to benefit landowners and covenants under this lease. The Lessee will utilize current and future technologies to develop the property as operator sees fits [sic] after drilling an initial well, as a prudent operator all reasonable efforts to maximize the development of the resources associated with the Leased Premises in a prudent and efficient manner will be employed with then intent and purposed to cause all of the Lessor's acreage to be included in one or more units of production, primarily implementing horizontal drilling techniques, but not excluding vertical techniques so as to maximize production recovery of all the oil and gas resources contained in the **Marcellus Shale and Utica Shale** and to minimize or eliminate any "orphan" acreage (emphasis added).

53.     Subsequent to executing the Plaintiffs' Leases, Rice and its working interest knowingly trespassed when they drilled horizontal wells in and under Plaintiffs' respective

properties that are producing oil and gas minerals from the Plaintiffs' respective Point Pleasant formation.

54.     Subsequent to executing the Plaintiffs' Leases, Gulfport and its working interest knowingly trespassed when they drilled horizontal wells in and under Plaintiffs' respective properties that are producing oil and gas minerals from the Plaintiffs' respective Point Pleasant formation.

55.     Subsequent to executing the Plaintiffs' Leases, Ascent and its working interest knowingly trespassed when they drilled horizontal wells in and under Plaintiffs' respective properties that are producing oil and gas minerals from the Plaintiffs' respective Point Pleasant formation.

## DRILLING ACTIVITY ON TERA II PROPERTY

56.     Defendant Gulfport has included certain TERA II Property in its Dorsey East Unit where it drilled two horizontal wells: the Dorsey 210963 1B well and the Dorsey 210963 2A well.

57.     Defendants Rice, Ascent, XTO, and Phillips each own an interest in the Dorsey East Unit wells and receive revenues from the sale of oil, gas and/or other hydrocarbon products produced from the aforementioned wells.

58.     Rice entered into a joint venture agreement with Gulfport to allow Gulfport the right to drill a horizontal well pursuant to the TERA II Lease.

59.     Ascent, XTO, and Phillips each have entered into a joint venture agreement with Gulfport to drill said wells.

60.     Prior to drilling the aforementioned wells under the TERA II Lease, Rice, Gulfport, Ascent, XTO, and Phillips each knew, or should have known, that the Point Pleasant formation was separate and distinct from the Utica Shale formation.

61.     Prior to drilling the aforementioned wells under the TERA II Lease, Rice, Gulfport, Ascent, XTO, and Phillips knew, or should have known, that the TERA II Lease did not permit them to drill into and produce oil, gas, or other hydrocarbon products from the Point Pleasant formation.

62.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Dorsey 210963 1B Well (API No. 34013210630000) into TERA II's Point Pleasant formation and has illegally produced 8,441,630 MCFs of gas as of September 30, 2018, some or all of which was illegally produced from the TERA II Property.

63.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Dorsey 210963 2A Well (API No. 34013210630000) into TERA II's Point Pleasant formation and has illegally produced 7,437,401 MCFs of gas as of September 30, 2018, some or all of which was illegally produced from the TERA II Property.

## DRILLING ACTIVITY ON TERA III HONZA PROPERTY

64.     Defendant Gulfport has included some of Plaintiff TERA III Honza's Property in its Snodgrass West Unit where it drilled two horizontal wells: the Snodgrass 210010 1B well and the Snodgrass 210010 3A well.

65.     Defendants Rice, Ascent, XTO, and Phillips each own an interest in the Snodgrass West Unit wells and each receive revenues from the sale of oil, gas and/or other hydrocarbon products produced from the aforementioned wells.

66.     Rice entered into a joint venture agreement with Gulfport to allow Gulfport the right to drill a horizontal well pursuant to the TERA III Honza Lease.

67.     Ascent, XTO, and Phillips each have entered into a joint venture agreement with Gulfport to drill said wells.

68.     Defendant Rice has included some of Plaintiff TERA III Honza's Property in its Skyhawk 3 Unit where it drilled two horizontal wells: the Skyhawk SCL5H10 well and the Skyhawk SCL5H12 well.

69.     Prior to drilling, Rice, Gulfport, Ascent, XTO, and Phillips each knew, or should have known, that the Point Pleasant formation was separate and distinct from the Utica Shale formation.

70.     Prior to drilling, Rice, Gulfport, Ascent, XTO, and Phillips each knew, or should have known, that the TERA III Honza Lease did not permit them to drill into and produce oil, gas, or other hydrocarbon products from the Point Pleasant formation.

71.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Snodgrass 210010 1B well (API No. 34013211100000) into TERA III Honza's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, some or all of which was illegally produced from the TERA III Honza's Property.

72.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Snodgrass 210010 3A well (API No. 34013211070000) into TERA III Honza's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, some or all of which was illegally produced from the TERA III Honza's Property.

73.     Notwithstanding its aforesaid knowledge, Rice and the other working interest owners drilled the Skyhawk SCL5H10 (API No. 34013213950000) into TERA III Honza's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, some or all of which was illegally produced from the TERA III Honza's Property.

74.     Notwithstanding its aforesaid knowledge, Rice and th other working interest owners drilled the Skyhawk SCL5H12 (API No. 34013213960000) into TERA III Honza's Point

Pleasant formation and has illegally produced gas, oil and other hydrocarbons, some or all of which was illegally produced from the TERA III Honza's Property.

## DRILLING ACTIVITY ON TERA IV PROPERTY

75.     Defendant Rice has included the TERA IV Property in its Gold Digger Unit (Gold Digger 1, Gold Digger 3, Gold Digger 10 Well), Gold Digger South 3 Unit (Gold Digger 6H Well), Gold Digger South 4 Unit (Gold Digger 8H Well ), Son-Uva Digger North Unit (Son-Uva Digger 1H, Son-Uva Digger 3H, and Son-Uva Digger 5H-A Wells), and Bigfoot 7 Unit (Bigfoot 10 Well).

76.     Rice entered into a joint venture agreement with Gulfport to jointly develop the TERA IV Property.  Gulfport is a working interest owner in the TERA IV Lease and has received revenues from the sale of oil, gas, and/or other hydrocarbons produced from said wells.

77.     Ascent, XTO, and Phillips each have entered into a joint venture agreement with Rice to drill said wells.

78.     Defendants Ascent, XTO, and Phillips each own an interest in the Gold Digger South 4 Unit well and each receive revenues from the sale of oil, gas and/or other hydrocarbon products produced from the aforementioned wells.

79.     Prior to drilling, Rice, Gulfport, Ascent, XTO, and Phillips each knew, or should have known, that the Point Pleasant formation was separate and distinct from the Utica Shale formation.

80.     Prior to drilling, Rice, Gulfport, Ascent, XTO, and Phillips each knew, or should have known, that the TERA IV Lease did not permit them to drill into and produce oil, gas, or other hydrocarbon products from the Point Pleasant formation.

81.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Gold Digger Well 6 (API No. 34013210740000) into TERA IV's Point Pleasant

formation and has illegally produced gas, oil and other hydrocarbons, some or all of which was illegally produced from the TERA IV Property.

82.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Gold Digger Well 8 (API No. 34013210730000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

83.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Gold Digger 10 Well (API No. 34013210720000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

84.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Son-Uva Digger 1H (API No. 34013207790000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

85.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Son-Uva Digger Well 3H (API No. 34013207780000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

86.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Son-Uva Digger Well 5H-A (API No. 34013208700000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

87.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Bigfoot Well 10 (API No. 34013210670000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA IV Property.

88.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Gold Digger Well 1 (API No. 34013207460000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, some or all of which was illegally produced from the TERA IV Property.

89.     Notwithstanding its aforesaid knowledge, Rice, Gulfport, Ascent, XTO, and Phillips drilled the Gold Digger Well 3 (API No. 34013207470000) into TERA IV's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, some or all of which was illegally produced from the TERA IV Property.

## DRILLING ACTIVITY ON TERA WATSON PROPERTY

90.     Defendant Ascent has included the TERA Watson Property in its Coleman RCH BL Unit (Coleman RCH BL 1H Well, 2H Well, and 4H Well) and Ross SE RCH BL Unit (Ross SE RCH BL 11H Well). Plaintiffs Jeannine Shaw and Donald Scott Harvey own the mineral rights under the TERA Watson Property.

91.     Prior to drilling, Ascent each knew, or should have known, that the Point Pleasant formation was separate and distinct from the Utica Shale formation.

92.     Prior to drilling, Ascent knew, or should have known, that the TERA Watson Lease did not permit them to drill into and produce oil, gas, or other hydrocarbon products from the Point Pleasant formation.

93.     Notwithstanding its aforesaid knowledge, Ascent drilled its Coleman RCH BL 1H Well (API No. 34013210300000), 2H Well (API No. 34013214140000), and 4H Well (API No. 34013214130000) into TERA Watson's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA Watson Property.

94.     Notwithstanding its aforesaid knowledge, Ascent drilled its Ross SE RCH BL 11H Well (API No. 34013210310000) into TERA Watson's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the TERA Watson Property.

## DRILLING ACTIVITY ON SHAW PROPERTY

95.     Defendant Gulfport has included a portion of the Shaw Property in its Dorsey East Unit where it drilled two horizontal wells: the Dorsey 210963 1B well and the Dorsey 210963 2A well.

96.     Rice entered into a joint venture agreement with Gulfport to jointly develop the Shaw Property.

97.     Prior to drilling, Rice and Gulfport each knew, or should have known, that the Point Pleasant formation was separate and distinct from the Utica Shale formation.

98.     Prior to drilling, Rice and Gulfport each knew, or should have known, that the Plaintiffs' Leases  did not permit them to drill into and produce oil, gas, or other hydrocarbon products from the Point Pleasant formation.

99.     Notwithstanding its aforesaid knowledge, Rice and Gulfport drilled the Dorsey 210963 1B Well (API No. 34013210630000) into Shaw's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the Shaw Property.

100.     Notwithstanding its aforesaid knowledge, Defendant Rice and Gulfport drilled the Dorsey 210963 2A Well (API No. 34013210630000) into Shaw's Point Pleasant formation and has illegally produced gas, oil and other hydrocarbons, which was illegally produced from the Shaw Property.

101.     Notwithstanding its aforesaid knowledge, Rice is a working interest owner in the Plaintiffs' Leases  and has received revenues from the sale of oil, gas, and/or other hydrocarbons produced from said wells.

102.     The Well Completion Record forms[12] for each of these wells described above indicate that each of these wells were drilled into and are producing oil and gas from Plaintiffs' Point Pleasant formation.

103.     Rice, Gulfport, Ascent, XTO, and Phillips do not have the right to drill into and produce Plaintiffs' Point Pleasant formation under the Plaintiffs' Leases.

104.     Rice, Gulfport, Ascent, XTO, and Phillips each negligently, willfully, wantonly, recklessly, and/or intentionally, physically drilled and intruded into formations beyond the boundaries of the leased Marcellus Shale formation and leased Utica Shale formation on Plaintiffs' Properties, and have illegally produced and continue to illegally produce oil, natural gas, and other hydrocarbon products from shale formations beyond the Marcellus and Utica Shale formations, including but not limited to, Plaintiffs' respective Point Pleasant formations, without any agreement from Plaintiffs, Plaintiffs' predecessors-in-title, or any other lawful right to do so.

---

[12]A copy of the Well Completion Records for the Gold Digger 1 and Gold Digger 3 Wells are attached as **Exhibit G to the First Amended Complaint.** A copy of the Well Completion Records for all other wells are attached as **Exhibit F to the original complaint**.

## CAUSES OF ACTION
## COUNT I – DECLARATORY JUDGMENT

105.    Plaintiffs reassert every allegation contained above as if stated verbatim herein.

106.    The Plaintiffs' Leases granting clause states:

Lessor, in consideration of the payments described herein and the covenants and agreements hereafter contained, hereby leases and lets exclusively to the Lessee all the oil, gas, minerals and their constituents (not including coal) **in the formations commonly known as the Marcellus Shale and the Utica Shale,** underlying the land described below . . . Together with such exclusive rights as may be necessary or convenient for the Lessee to explore for, develop, produce, measure, and market production from said **Marcellus Shale and Utica Shale** underlying the Leasehold . . . [and] to stimulate or fracture said **Marcellus Shale and Utica Shale formations** (emphasis added).

107.    Plaintiffs' Leases also state the following:

Lessor's Reserved Rights: **Lessor reserves all rights** not specifically granted to Lessee in this Lease. Lessor specifically reserves the rights to all products contained in any formation: (1) from the surface of the Leased Premises to the top of the formation commonly known as the Marcellus Shale, (2) in any and all formations below the base of the Marcellus Shale to the top of the formation commonly known as the Utica Shale, and (3) in **all formations below the base of the Utica Shale.** Notwithstanding anything to the contrary, Lessee is specifically granted the right to penetrate and drill through the shallower formations in order to drill and produce the Leased Products and the Leased Premises. Lessor also reserves a right of way on all lands granted hereunder and the right to use the Leased Premises and any improvements thereon for any and all other purposes, so long as that right of way does not cause unreasonable interference with Lessee's operations or pose a safety concern to Lessee. Lessee agrees not to unreasonably interfere with the use and enjoyment of said land by Lessor and Lessor's family, agents, employees, invitees, and guests and to comply with all other specific provisions herein relating to the use of the land.

108.    Moreover, the Lessee Covenants in Article XV states:

Any and all duties and obligations Lessee has are under implied covenants to benefit landowners and covenants under this lease. The Lessee will utilize current and future technologies to develop the property as operator sees fits [sic] after drilling an initial well, as a prudent operator all reasonable efforts to maximize the development of the resources associated with the Leased Premises in a prudent and efficient manner will be employed with then intent and purposed to cause all of the Lessor's acreage to be included in one or more units of production, primarily implementing horizontal drilling techniques, but not excluding vertical techniques

so as to maximize production recovery of all the oil and gas resources contained in the **Marcellus Shale and Utica Shale** and to minimize or eliminate any "orphan" acreage (emphasis added).

109.    Plaintiffs did not grant or convey to Rice, Gulfport, Ascent, XTO, and Phillips the right to produce oil, gas, or other hydrocarbons from above the top of the Utica Shale or below the base of the Utica Shale formation in the subject leases.

110.    As set forth above, the Point Pleasant formation is a separate and distinct formation that lies below the base of Utica Shale formation.

111.    Rice, Gulfport, and Ascent have each represented in this Declaration of Pooling or Operating Agreements for that they each have the right to drill their horizontal well and produce oil and gas from Plaintiffs' Point Pleasant formation under the Plaintiffs' Lease.

112.    Pursuant to O.R.C. § 2721.02, courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed.

113.    Pursuant to O.R.C. § 2721.03, any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

114.    A declaratory judgment action is proper if: (1) the action is within the scope of the Declaratory Judgment Act; (2) a justiciable controversy exists between adverse parties; and (3) speedy relief is necessary to preserve rights that may otherwise be impaired. *Freedom Found. v. Ohio Dept. of Liquor Control* (1997), 80 Ohio St.3d 202, 204.

115.    Rice, Gulfport, Ascent, XTO and Phillips each allege they have the right to produce oil and gas from below the base of the Utica Shale formation in the Point Pleasant formation pursuant to Plaintiffs' Leases.

116.    A justiciable controversy exists between the parties as to whether or not Plaintiffs reserved under the subject leases the rights to their oil and natural gas from the Point Pleasant formation such that none of the Defendants have the right to drill into and produce oil, gas, or other hydrocarbon products from their respective Point Pleasant formations.

117.    Rice, Gulfport, Ascent, XTO and Phillips continue to produce and receive revenues from the sale of oil, natural gas, and other hydrocarbon products from Plaintiffs' properties, so speedy relief is necessary to preserve Plaintiffs' rights.

118.    This Honorable Court should declare that: (1) Plaintiffs reserved in the subject leases the right to all products contained in any formation below the base of the Utica Shale, including, but not limited to the Point Pleasant formation, (2) the Point Pleasant formation is a separate and distinct formation from the Utica Shale, and lies below the base of the Utica Shale formation; and (3) Rice, Gulfport, Ascent, XTO and Phillips do not have the right under the subject leases to produce oil, natural gas, or other hydrocarbon products from any formation below the Utica Shale including, but not limited to, the Point Pleasant formation.

## COUNT II – TRESPASS

119.    Plaintiffs reassert every allegation contained above as if stated verbatim herein.

120.    As set forth above, Plaintiffs' did not lease, but reserved unto the lessors all rights to drill, explore, and/or produce oil, natural gas, or other hydrocarbons from any formation below the base of Utica Shale formation, including, but not limited to, the Point Pleasant formation, and

Lessors reserved the right to drill through the two leased formations to produce oil, gas and other hydrocarbons from other formations.

121.    Accordingly, Plaintiffs' Leases do not grant the legal authority to any Defendant to drill into or produce oil, natural gas, or other hydrocarbons from the Point Pleasant formation.

122.    At all times relevant hereto, Rice, Gulfport, Ascent, XTO and Phillips each knew, or should have known, that the Point Pleasant formation was (and is) separate and distinct from the Utica formation.

123.    At all times relevant hereto, Rice, Gulfport, Ascent, XTO and Phillips each knew, or should have known, that Plaintiffs' Leases did not permit any of these Defendants to drill into the Plaintiffs' respective Point Pleasant formations or to recognize revenues from the sale of those products illegally obtained.

124.    Despite their aforesaid knowledge, Rice, Gulfport, Ascent, XTO and Phillips each have intentionally drilled into and produced, and continue to produce, oil, gas, and/or other hydrocarbon products from Plaintiffs' Point Pleasant formation.

125.    As to each of the wells described above Rice, Gulfport, Ascent, XTO and Phillips each have drilled and hydraulically fractured their wells below the base of the Utica Shale formation, including into the Plaintiffs' reserved Point Pleasant formation, and have thereby intentionally physically invaded the Plaintiffs' property without authorization.

126.    Rice, Gulfport, Ascent, XTO and Phillips each have produced, and continue to produce, oil, natural gas, and/or other hydrocarbon products from Plaintiffs' properties from formations below the base of the Utica Shale formation without Plaintiffs' agreement or consent.

127. Rice's, Gulfport's, Ascent's, XTO's and Phillip's drilling and fracturing into formations below the base of the Utica Shale formation constitutes a physical trespass into the mineral estates of the Plaintiffs.

128. Rice's, Gulfport's, Ascent's, XTO's and Phillip's production of oil, natural gas, and/or other hydrocarbon products from formations below the base of the Utica Shale formation constitutes a continuing trespass into the Plaintiffs' mineral estates, specifically and without limitation, in their reserved formations which include the Point Pleasant formation.

129. Rice's, Gulfport's, Ascent's, XTO's and Phillip's trespass was and continues to be intentional, knowingly, willful, and unlawful, and has been done with a conscious disregard for the property rights of Plaintiffs.

130. As a result of Rice's, Gulfport's, Ascent's, XTO's and Phillip's trespass, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven herein, including but not limited to the market value of the oil and gas unlawfully taken from Plaintiffs' reserved mineral estates; the diminution in the value of the Plaintiffs' mineral rights; and the loss of the right to develop and produce oil, natural gas, hydrocarbon products, and other minerals that existed and do exist in the Plaintiffs' Point Pleasant formations and other formations below the base of the Utica Shale formation.

131. Rice, Gulfport, XTO, Phillips, and Ascent, as a result of their respective willful trespasses, are liable to Plaintiffs for the full value of the oil, natural gas, and other hydrocarbon products removed from Plaintiffs' Point Pleasant formations, without deduction of expenses incurred in exploring, producing, and transporting the natural gas or its hydrocarbon byproducts.

## COUNT III- CONVERSION

132. Plaintiffs reassert every allegation contained above as if stated verbatim herein.

133.     As set forth above, Plaintiffs' Leases reserved unto the lessor all rights to drill, explore, and/or produce oil, natural gas, or other hydrocarbon products from any formation below the base of Utica Shale formation.

134.     Rice, Gulfport, Ascent, XTO and Phillips, and each of them, have illegally removed oil, natural gas, and/or other hydrocarbons products from Plaintiffs' Point Pleasant formation, and other formations.

135.     Rice's, Gulfport's, Ascent's, XTO's and Phillip's illegal removal of oil, natural gas, and/or other hydrocarbons from formations below the base of the Utica Shale formation from Plaintiffs' properties constitute the wrongful exercise of dominion and control over Plaintiffs' property to the exclusion of Plaintiffs' rights.

136.     Rice's, Gulfport's, Ascent's, XTO's and Phillip's actions have been taken knowingly and with a conscious disregard of the rights of Plaintiffs.

137.     As a result of Rice's, Gulfport's, Ascent's, XTO's and Phillip's actions, Plaintiffs have been harmed in an amount to be proven at trial.

138.     Rice, Gulfport, Ascent, XTO and Phillips are also liable for the Plaintiffs' and prospective class members' attorney fees because "'compensation for time lost as a proximate result of the conversion, or for time and money spent in pursuit of the property converted, may be recovered.'" *Fulks v. Fulks*, 95 Ohio App. 515 (4th Dist. 1953) (quoting, 53 American Jurisprudence, 897, Section 106).

## COUNT IV – UNJUST ENRICHMENT

139.     Plaintiffs reassert every allegation contained above as if stated verbatim herein.

140.     A benefit has been conferred upon each of the Rice, Gulfport, and Ascent by virtue of their respective illegal takings of Plaintiffs' oil, natural gas, and/or other hydrocarbon products

from formations below the base of Plaintiffs' respective Utica Shale formations without the right to do so.

141.    Rice, Gulfport, Ascent, XTO and Phillips have knowledge of the benefits they have received and continue to receive from their respective illegal takings of Plaintiffs' oil, natural gas, and/or other hydrocarbon products from formations below the base of Plaintiffs' respective Utica Shale formations without the right to do so.

142.    Rice, Gulfport, Ascent, XTO and Phillips have retained the benefits from their respective illegal takings of Plaintiffs' oil, natural gas, and/or other hydrocarbons from formations below the base of Plaintiffs' respective Utica Shale formations.

143.    Under the circumstances, it would be inequitable and unjust to permit Rice, Gulfport, Ascent, XTO and Phillips to retain the benefits they have each received without compensating the Plaintiffs for the oil, natural gas, and/or other hydrocarbon products the Defendants have illegally removed from formations below the base of Plaintiffs' respective Utica Shale formations without a right to do so.

## COUNT V - FEES

144.    Plaintiff hereby reasserts all of the allegations contained above in this Complaint as if fully rewritten herein.

145.    The Plaintiffs' Leases contain an Indemnity Clause which reads as follows:

**Indemnity:**    Lessee agrees to indemnify, defend, and hold harmless Lessor and Lessor's heirs, successors, agents, assigns, and any other person acting under Lessor's direction and/or control against any and all claims, damages, costs, losses, liabilities, expenses (including but not limited to any reasonable attorneys' fees, expert fees, and court costs) arising out of, incidental to or resulting from the Lessee's Operations and actions, and the Operations and actions of Lessee's servants, agents, employees, guests, licensees, invitees, independent contractors, assigns, or any other person acting under Lessee's direction and control. Lessee's obligations hereunder shall survive the termination of this Lease.

146.    Said Indemnity agreement requires the lessee (Defendants Rice, Gulfport and Ascent) to indemnify the Plaintiff for any expenses incurred as a result of lessee's actions.

147.    Plaintiff is requesting that all its litigation expenses, court costs, attorney fees, audit costs, expert fees, and other related costs be ordered to be paid by Defendants Rice, Gulfport and Ascent, since it was its actions which caused this lawsuit to be filed.

## COUNT VI – BREACH OF CONTRACT

148.    Plaintiff hereby incorporates by reference all of the allegations contained above in this Complaint as if fully rewritten herein.

149.    The Plaintiffs' Leases requires the Lessee to pay the Lessor a certain confidential royalty percentage based on the gross proceeds received by the lessee from an unaffiliated third party at the point of sale, at a price no less than the prevailing price in the pricing area, for all the gas, oil, and any other salable materials produced from the well(s), without deduction for any costs including but not limited to gathering costs.

150.    Further, the Plaintiffs' Leases state, "[i]f as a result of such inspection Lessor discovers a deficiency in payment of royalties or other amounts due to Lessor under this Lease, Lessee will be liable for the amount of the deficiency plus interest at the maximum rate allowed by law. In the event that the deficiency exceeds 125% of the amount actually owed to Lessor, then Lessee shall pay all reasonable costs incurred by Lessor in conducting the inspection that led to discovery of the deficiency."

151.    In the alternative to the other Counts, Defendants Rice and Gulfport have not properly paid Plaintiffs royalties for the gas, oil, and any other salable materials produced from the wells at the prevailing price, or without deduction for any costs in violation of the Plaintiffs' Leases.

152.   Defendant Rice is basing the gas price on which Plaintiff's royalties are paid on the TETCO M2 first of the month index, which is not the prevailing price.

153.   Defendant Rice is deducting from the gas price on which Plaintiff's royalties are paid certain gathering and other costs.

154.   Defendants Rice and Gulfport have breached the Plaintiffs' Leases  by refusing and failing to properly pay royalty payments to Plaintiff as required under the Plaintiffs' Leases .

155.   As a result of Defendants Rice and Gulfport's breach of lease, Plaintiff has suffered damages to be determined through discovery, including but not limited to underpayment of owed royalty payments and accrued interest.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs request relief as follows:

a.      A declaration that: (1) Plaintiffs specifically reserved in the subject leases the right to all products contained in any formation below the base of the Utica Shale; (2) the Point Pleasant formation is a separate and distinct formation from the Utica Shale, and lies below the base of the Utica Shale formation; and (3) Defendants do not have the right under the subject leases to produce oil, natural gas, or other hydrocarbon products from any formation below the Utica Shale including in the Point Pleasant formation.

b.      The full value of the oil, natural gas and hydrocarbon products, and any other products removed from Plaintiffs' formations below the base of the Utica Shale formation, without deduction of expenses incurred in exploring, producing, and transporting the oil, natural gas and hydrocarbon products, and any other products;

c.      Damages for the diminution of value of the Plaintiffs' mineral estates, the loss of the right to lease, contract for, or otherwise develop and produce natural gas and other minerals

that exist from formations below the base of the Utica Shale formation, given the Defendants' unlawful trespass into the formations below the base of the Utica Shale;

       d.      As to Count VI, Defendants Rice and Gulfport have breached the Shaw Lease for not properly paying royalties to Plaintiff, and Plaintiff has suffered damage in the amount of unpaid royalties, applicable interest, and costs incurred by Plaintiffs to discover the deficiency.

       e.      Pre- and post-judgment interest;

       f.      Reasonable attorneys' fees;

       g.      Punitive damages;

       h.      Equitable and/or injunctive relief for providing an accounting and notice to Plaintiffs and the class;

       i.      Such other and further relief to which Plaintiffs may be entitled.

**JURY DEMAND**

Plaintiffs request a trial by jury on all issues so triable.

                Respectfully submitted,

                **THORNBURG & BEAN**

                */s/ Charlie Bean*
                CHARLES H. BEAN, ESQ. (0007119)
                113 West Main Street
                P.O. Box 96
                St. Clairsville, Ohio 43950
                Telephone:    (740) 695-0532
                Fax:           (740) 695-8039
                E-Mail:       cbean_tbg@sbcglobal.net

                **LAW OFFICE OF ELIZABETH L. GLICK**

                */s/ Elizabeth Glick*
                ELIZABETH L. GLICK, ESQ. (0039591)
                P.O. Box 191
                St. Clairsville, Ohio 43950

Telephone:    (740) 695-0532
E-Mail:     eglick_tbg@att.net

**MYSER & DAVIES**

*/s/ Richard Myser*
Richard Myser, Esq. (0007462)
Myers & Davies
320 Howard Street
Bridgeport, Ohio 43912
Telephone:    740-635-0162
E-Mail:     myser@belmontlaw.net

**C.J. WILSON LAW, LLC**

*/s/ Craig Wilson*
Craig J. Wilson, Esq.
C.J. Wilson Law, LLC
PO Box 2879
Westerville, Ohio 43086
Telephone:    614-723-9050
E-Mail:     craig@wilsonlaw.com

*Attorneys for Plaintiffs*