**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

TERA II, LLC, et al.,

      **Plaintiffs,**

    v.                            **Civil Action 2:19-cv-2221
Chief Judge Algenon L. Marbley
Magistrate Judge Jolson**

RICE DRILLING D, LLC, et al.,

      **Defendants.**

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Protective Order (Doc. 307) and Motion to Stay Depositions (Doc. 308). Defendant Rice Drilling D, LLC ("Rice") requests costs associated with arranging a deposition which Plaintiffs failed to attend. (Doc. 324 at 8–10). For the following reasons, Plaintiffs' Motions are **DENIED**, and Defendant Rice is awarded costs totaling $490.20. Plaintiffs are **ORDERED** to pay this award within **thirty (30) days** of the date of this Opinion and Order.

**I.    BACKGROUND**

The Court previously summarized the background of this case:

> This lawsuit is about several oil and gas leases, which address rights to develop two oil and gas formations, commonly known as the Marcellus Shale and Utica Shale. After a dispute arose about the scope of Defendants' drilling rights, Plaintiffs filed suit in the Belmont County, Ohio, Court of Common Pleas on April 24, 2019. (Doc. 1). Shortly after, Defendants timely removed the case to federal court. (Docs. 1, 6, 10). In brief, Plaintiffs seek a judgment declaring the parties' rights under the leases and damages from Defendants for trespass, conversion, and unjust enrichment. (*See generally* Doc. 154).

(Doc. 271 at 1).

Now, the close of discovery is fast approaching. Initially scheduled to be completed by May 2020, (Doc. 34) the deadline for discovery was extended several times (Docs. 120, 159, 234,

277).  When it was ultimately extended to February 11, 2022, the Court advised that no further extensions would be permitted.  (Doc. 277).  With that deadline looming, the parties spent several months conferring to schedule depositions in late 2021 and early 2022.  (*See* Doc. 307-1).

Depositions had previously been an issue of dispute between the parties, with Plaintiffs moving for a protective order preventing Defendants from taking depositions of witnesses already deposed in the related state court action.  (*See* Doc. 176).  The Court ordered that depositions be allowed for those witnesses.  (Doc. 180 at 3–8).  In summarizing the parties' positions on those depositions, the Court noted that Defendants had "represented 'that they do not need to depose any individual more than once – for example, if an individual is both a plaintiff and a corporate representative, that individual can be deposed in both capacities in one deposition.'"  (*Id.* at 2 (quoting Doc. 167 at 1)).

The present dispute concerns depositions of Cynthia Shaw.  Plaintiffs designated Ms. Shaw as the corporate representative for three different companies, TERA II, LLC ("TERA II"), TERA III Honza, LLC ("TERA III"), and TERA IV, LLC ("TERA IV").  (Doc. 307 at 1).  On November 24, 2021, when responding regarding the availability of witnesses for depositions, Plaintiffs indicated they believed Ms. Shaw should only be deposed once in all four of her capacities—that is, in her individual capacity and as the corporate representative of the three different companies.  (Doc. 307-1 at 4).  Defendants then offered to take two depositions: one in which Ms. Shaw testified as the representative of TERA II and TERA III, on December 9, 2021, and one at a later date in which she would testify in her individual capacity and as the representative of TERA IV.  (*Id.*).

On December 2, Plaintiffs again insisted that Ms. Shaw be deposed only once (*id.* at 3), but Defendants regardless noticed the deposition of TERA II and TERA III for December 9 (Docs.

2

303, 304). Plaintiffs renewed their objection by formal correspondence the following day, requesting that Defendants respond by December 7 describing how they planned to proceed. (Doc. 307-2 at 2). On December 7, Defendants responded that their position on the depositions had not changed and that they were not "required to take three TERA entities (each named Plaintiffs) together on the same date, and Plaintiffs ha[d] pointed to no legal authority requiring [them] to do so." (Doc. 307-1 at 2).

Plaintiffs then sought judicial intervention on December 8, the afternoon before the scheduled deposition. (Doc. 319-5 at 3–4). They requested that they be permitted to file a motion for protective order, which the Court allowed. (*Id.*). When they did so that evening, after close of business, they sent a request for a telephonic conference with the Undersigned, at which they requested a ruling to stay the scheduled deposition. (*Id.* at 2). The Undersigned denied the last-minute hearing, in part because urgent discovery rulings in the related matter, *J&R Passmore*, resulted in concern about the sufficiency of process and adequate development of the record. (*Id.* at 2); *J&R Passmore, LLC et al. v. Rice Drilling D, LLC et al.*, 2:18-cv-01587-ALM-KAJ at (Doc. 373). Thus, the Court ordered that the dispute be fully briefed before any ruling would issue. (Doc. 319-5 at 2).

On the morning of December 9, a little over an hour before the scheduled deposition, without a stay from the Court or agreement from Defendants to reschedule the deposition, Plaintiffs informed Defendants that they would not be attending the deposition. (Doc. 319-3 at 2–3). Defendants then noted that, in the absence of a protective order, they did not believe Plaintiffs absence from the deposition was excusable, and that they would take a certificate of non-appearance and move for sanctions. (*Id.* at 2). When Defendant Rice replied in opposition to the motions for a protective order and stay, it accordingly requested that the Court award it the "costs

3

and expenses associated with arranging for and attending the deposition, including court reporter costs and the cost of a statement of non-appearance. (Doc. 319 at 9).

Plaintiffs maintain that the two depositions are "designed to harass Ms. Shaw" and that "Rice elected to incur expense" related to the scheduled deposition. (Doc. 324 at 4, 7). The matter is now fully briefed and ripe for consideration.

## II. STANDARD

In order to protect a party from annoyance, embarrassment, oppression, or undue expense, and upon a finding of good cause, a court can issue a protective order under Rule 26. Fed. R. Civ. P. 26(c)(1) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . ."). "The burden of establishing good cause for a protective order rests with the movant." *Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 WL 7276959, at *1–2 (S.D. Ohio Apr. 13, 2006) (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)). To show good cause, a movant must be "able to demonstrate that the requested discovery, if not excluded or materially modified, would cause a clearly defined and serious injury." *Consumer Fin. Prot. Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 WL 9460471, at *2 (W.D. Ky. June 29, 2016) (citations omitted); *see also Smith*, 2006 WL 7276959, at *1–2 (citing *Nix*, 11 F. App'x at 500) ("To show good cause, a movant for a protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements.").

## III. DISCUSSION

A. *Motion for Protective Order*

At the center of Plaintiffs' claim for a protective order is Defendants' earlier indication that "that they do not need to depose any individual more than once – for example, if an individual is

both a plaintiff and a corporate representative, that individual can be deposed in both capacities in one deposition." (Doc. 167 at 1). Plaintiffs argue this means Ms. Shaw should be deposed "one time in all her capacities (individually and as the designated corporate witness for [TERA II, TERA III, and TERA IV])" and that the two depositions proposed by Defendants are "superfluous, cumulative, disproportionate to the needs of the case, and [ ] intended solely for the purpose of harassment, annoyance and expense." (Doc. 307 at 1). Defendant Rice maintains that it "has no desire to depose [Ms.] Shaw multiple times," only "to depose each named Plaintiff (including TERA II, TERA III and TERA IV . . . ) in a reasonable fashion . . . ." (Doc. 308 at 1). To ask each of the TERA Plaintiffs to sit for a single deposition, it argues, cannot be an undue burden. (*Id.*).

Simply put, Defendants have the more reasonable reading of their earlier offer. As they say, "they did not commit to deposing multiple named Plaintiffs at the same time; they committed to deposing a natural person in both their corporate representative and individual capacities at the same time." (Doc. 319 at 7). Defendants contemplated an individual testifying on her own behalf and as the representative of a single company, as indicated by their suggestion that such an "individual can be deposed in *both* capacities in one deposition." (Doc. 167 at 1 (emphasis added)). Plaintiffs, in suggesting that this was a promise to depose a single individual once, regardless of how many named Plaintiffs that person was designated to represent, stretches Defendants' good faith offer to streamline depositions too far.

Indeed, Defendants could take three depositions—one in which they deposed Ms. Shaw as an individual and as the representative for TERA II, say; one in which she testified on behalf of TERA III; and one in which she testified on behalf of TERA IV—and still conform to their earlier representation that they would allow an individual to testify in *both* an individual and a corporate representative capacity in a single deposition. Rather, attempting to streamline depositions,

Defendants offered a compromise of two depositions, which Plaintiffs declined to accept.

Plaintiffs' reading is seemingly boundless.  By their understanding, if Ms. Shaw had been designated as the corporate representative of six, or ten, different named Plaintiffs, as opposed to three, she should still sit for only a single deposition.  But that, as Defendants suggest, would unreasonably permit Plaintiffs to "use their choice of corporate representative as a sword to cut down or limit the amount of time each Plaintiff is available for deposition . . . ."  (Doc. 319 at 1).

In support of their belief that the proposed depositions would be unnecessarily duplicative, Plaintiffs assert that "[t]he facts and knowledge for each TERA II Plaintiff is identical, to which Ms. Shaw will testify." (Doc. 307 at 5).  However, that is premised on their own view of the facts, and Defendants are permitted to design their own defense as they see fit.  The Court will not limit Defendants' ability to develop the facts and their own theory of the case because of Plaintiffs' representation that the three corporate Plaintiffs are not meaningfully distinct.

At base, Plaintiffs have not demonstrated a clearly defined and serious injury which the two depositions would cause Ms. Shaw or the three TERA Plaintiffs she has been designated to represent.  Accordingly, the Court finds there is not good cause for a protective order permitting only a single deposition of Ms. Shaw, and Plaintiffs' Motion for Protective Order (Doc. 307) is **DENIED**.  The parties should proceed with two depositions, as proposed by Defendants.

B.  *Motion to Stay*

Plaintiffs request that the deposition of TERA II and TERA III, set for December 9, be stayed.  (Doc. 308 at 1).  As indicated above, Plaintiffs made this motion the evening before the deposition was set to take place, and the Court requested briefing on the motions before it would issue any ruling.  Because the date of the contested deposition has passed, a stay would be moot.  Accordingly, Plaintiffs' Motion to Stay Depositions (Doc. 308) is **DENIED as moot**.

C.  *Costs*

Defendant Rice requests that it be awarded the costs associated with arranging and attending the December 9 deposition, because Plaintiffs lacked a proper excuse for not attending. (Doc. 319 at 8–10).  The associated costs, for the court reporter and the statement of non-appearance, total $490.20.  (*Id.* at 9–10; Doc. 319-6).  Plaintiffs counter that because Rice was aware of a dispute surrounding the depositions beginning November 24, it "could have easily rescheduled" the deposition and avoided the associated costs; Rice is therefore, they argue, responsible for incurring unnecessary expenses.  (Doc. 324 at 3–4).

Federal Rule of Civil Procedure 37 allows for sanctions when a party fails to appear for a noticed deposition.  Fed. R. Civ. P. 37(d).  Particularly, Rule 37 states that a "court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).  Here, Plaintiffs elected not to attend the deposition after they had filed a motion for a protective order, "[b]ut having a pending protective order is merely a necessary condition for excusing a party's failure to appear.  It is not alone sufficient." *E.M.W. Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 447 (6th Cir. 2020).

The Court finds that Plaintiffs' absence was not substantially justified, and the award of costs is just.  Without a protective order or stay in place by the Court, or agreement from Defendants to reschedule the deposition, it was improper for Plaintiffs to skip the deposition.  The pending motion for a protective order, filed the night before the deposition, was not alone sufficient to excuse Plaintiffs' absence.

The Sixth Circuit uses a four-factor test to determine whether a trial court's decision to

impose sanctions under Rule 37 amounts to abuse of discretion:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Doe v. Lexington-Fayette Urban Cty. Gov't*, 407 F.3d 755, 766 (6th Cir. 2005) (citing *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)).

First, the Court finds that Plaintiffs' delay in seeking judicial intervention and last-minute notice to Defendants that they would not attend the deposition were willful. Plaintiffs made the nature of their objection to the deposition known on November 24, 2021 (Doc. 307-1 at 4), but did not seek judicial intervention until December 8, 2021, the day before the contested deposition (Docs. 307, 308). While the Court appreciates that some of that intervening time was spent on the meet-and-confer process between parties, it should have been apparent to Plaintiffs that Defendants were not amenable to their position when the deposition was noticed on December 2, 2021. (Docs. 319-1, 319-2, 303, 304). When the Court informed the parties that it would not make an overnight ruling, Plaintiffs elected not to attend the deposition, but provided Defendants with only about an hour's notice of their decision. (Doc. 319-3 at 2–3).

Second, Defendants were prejudiced by Plaintiffs' failure to participate in discovery. Defendants wasted time and money facilitating the deposition. The Court does not agree with Plaintiffs that Defendants unnecessarily incurred these expenses. Defendants had an obligation to attend the deposition they noticed before the Court, and themselves could have been sanctioned had they failed to appear. Nor did Plaintiffs' late notice that they would not attend give Defendants meaningful opportunity to mitigate the expense of the deposition. Additionally, the missed deposition delayed the overall process of deposing witnesses and completing discovery before a

fast-approaching and final discovery deadline, which itself is not without cost.

Third, Plaintiffs had sufficient warning that their failure to appear might result in sanctions. In correspondence to Plaintiffs, Defendants warned that "[i]f deponents do not appear as required by the Federal Rules, we will take a certificate of non-appearance and we may seek sanctions for failure to appear." (*Id.* at 2).

Finally, less drastic sanctions were considered. But Defendant Rice deserves to be compensated for its wasted expenses, and nothing but an award of costs will accomplish that. The Court finds the costs purported by Defendant reasonable and properly documented. (Doc. 319-6). Accordingly, Defendant Rice is awarded costs totaling $490.20. Plaintiffs are **ORDERED** to pay this award within **thirty (30) days** of the date of this Opinion and Order.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motions (Docs. 307, 308) are **DENIED**, and Defendant Rice is awarded costs totaling $490.20. Plaintiffs are **ORDERED** to pay this award within **thirty (30) days** of the date of this Opinion and Order.

IT IS SO ORDERED.


Date: January 4, 2022                           /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE