**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TERA II, LLC, et al.,**

        **Plaintiffs,**

      **v.**
                           **Civil Action 2:19-cv-2221**
                           **Chief Judge Algenon L. Marbley**
                           **Magistrate Judge Jolson**

**RICE DRILLING D, LLC, et al.,**

        **Defendants.**

**OPINION AND ORDER**

      This matter is before the Court on several discovery motions brought by Plaintiffs and by Defendant Rice Drilling D, LLC ("Rice"). For the following reasons, Plaintiffs' Motion to Quash (Doc. 380) is **DENIED**; Rice's Motion to Compel (Doc. 404) is **GRANTED**; Plaintiffs' Motion to Strike and for Sanction (Doc. 410) is **DENIED**; Plaintiffs' Motion to Seal (Doc. 385) is **GRANTED**; Plaintiffs' Motion to Declassify and Seal (Doc. 416) is **GRANTED in part and DENIED in part**; Rice's Motion to Seal (Docs. 423, 429) is **GRANTED**; and Plaintiffs' Motion to Seal (Doc. 425) is **GRANTED**.

      Plaintiffs shall have **seven (7) days** from the date of this Order to employ a third-party vendor to complete the collection ordered in conjunction with the motion to compel. Thereafter, Plaintiffs shall have **fourteen (14)** days to prepare a privilege log detailing the basis for withholding any documents and submit it and all non-privileged documents to Defendants. Plaintiffs and Rice shall submit sealed and redacted exhibits consistent with this Opinion and Order within **seven (7) days**.

## I. BACKGROUND

      The Court previously summarized the background giving rise to this action:

This lawsuit is about several oil and gas leases, which address rights to develop two oil and gas formations, commonly known to as the Marcellus Shale and Utica Shale. After a dispute arose about the scope of Defendants' drilling rights, Plaintiffs filed suit in the Belmont County, Ohio, Court of Common Pleas on April 24, 2019. (Doc. 1). Shortly after, Defendants timely removed the case to federal court. (Docs. 1, 6, 10). In brief, Plaintiffs seek a judgment declaring the parties' rights under the leases and damages from Defendants for trespass, conversion, [breach of contract,] and unjust enrichment. (*See generally* Doc. [302]).

(Doc. 271 at 1).

Now, the deadline for discovery has passed (Doc. 277), and the parties have begun briefing on dispositive motions (Docs. 386, 387, 388, 389, 392, 393, 394, 407, 414, 418). Disputes between the parties regarding subpoenas and document production toward the close of discovery give rise to the Motion to Quash (Doc. 380), the Motion to Compel (Doc. 404), and the Motion to Strike Exhibits and for Sanction (Doc. 410). Those motions have been fully briefed. (Docs. 408, 409, 412, 413, 421, 422, 428). Additionally, Plaintiffs and Rice move to seal, redact, and declassify exhibits supporting their briefing on dispositive motions. (Docs. 385, 416, 423, 425, 429). Those motions are predominately unopposed but have otherwise been briefed. (Doc. 420). Accordingly, all the motions before the Court are ripe for consideration.

## II.    MOTION TO QUASH (DOC. 380)

Rule 45 of the Federal Rules of Civil Procedure governs subpoenas and provides that the court must, upon motion, quash or modify a subpoena if it fails to allow a reasonable time to comply, requires a nonparty to travel more than 100 miles, requires disclosure of privileged or protected material, or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A).

When a subpoena is directed at a nonparty, like the one here, the court must first decide whether the party moving to quash the subpoena has standing. Generally, a party has no standing to quash a subpoena directed at a nonparty, but an exception exists where the party seeking to quash claims a "personal right or privilege with regard to the documents sought." *Waite,*

2

*Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 1:11-cv-0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013). (quotation marks and citation omitted). But a mere claim of personal right or privilege does not automatically confer standing. Indeed, "[t]he party seeking to quash a subpoena bears a heavy burden of proof." *Ajuba Int'l, LLC v. Saharia*, No. 1:11-CV-12936, 2014 WL 4793846, at *2 (E.D. Mich. Sept. 25, 2014). To meet that heavy burden, the movant must make more than "conclusory" assertions of an interest or privilege. *See Hamm v. Cunningham*, No. 1:12CV124, 2012 WL 13027079, at *1 (N.D. Ohio May 16, 2012) (finding that "conclusory" assertions of confidentiality failed to satisfy heavy burden of proof). Without standing, a party may not challenge the subpoena on any ground, including undue burden or relevance. *See Riding Films, Inc. v. John Does 129–193*, No. 2:13-CV-46, 2013 WL 3322221, at *6 (S.D. Ohio July 1, 2013) (collecting cases).

Plaintiffs move to quash subpoenas which Rice served upon third parties Vince Thompson and Matt Thompson. (Doc. 380 at 1). Because the subpoenas were served on the last day permitted for discovery, Plaintiffs say that the subpoenas are untimely. (*Id.*). Particularly, they say that Rice did not afford the Thompsons "reasonable time to comply" with the subpoenas, as required by Rule 45. (*Id.* at 6–7). In turn, Rice argues that Plaintiffs lack standing to bring a motion to quash on behalf of these third parties. (Doc. 408 at 6–7). Even assuming standing, says Rice, there was reasonable time to comply with the subpoena, and the motion is moot because the Thompsons have already stipulated that the subpoenaed documents, previously produced in a related action, "can be considered produced" in this action. (*Id.* at 7–8).

First, Plaintiffs must demonstrate that they have standing to challenge a subpoena issued to the Thompsons. They have not. As described above, standing requires a "personal right or privilege with regard to the documents sought." *Waite*, 2013 WL 146362, at *5. Plaintiffs claim

personal privilege with regard to the subpoenas' request for "'all communications' with Craig Wilson, Plaintiffs' counsel, about the Smith Gosen group." (Doc. 380 at 5). Because the Thompsons are "former clients of Attorney Wilson," Plaintiffs suggest that a request for their communications with Craig Wilson implicates the attorney-client privilege. (*Id.*)

Yet, as Rice identifies, that privilege is reserved to the clients, the Thompsons, not to the attorney, Mr. Wilson. (Doc. 408 at 6) (citing *Allen Cnty. Bar Ass'n v. Williams*, 766 N.E.2d 973, 974 (Ohio 2002) ("The privilege belongs not to the attorney but to the client."); Ohio Rev. Code Ann. § 2317.02(A)(1) (noting that exception to the testimonial privilege protecting attorney-client communications occurs upon consent or waiver by the client)). Plaintiffs do not challenge Rice's position in their reply. (*See* Doc. 412). Instead, they urge the Court to quash the subpoenas on its own motion. (Doc. 380 at 5; Doc. 412 at 3).

This Court has previously quashed third-party subpoenas upon its own motion. *FIP Realty Co., Ltd. v. Ingersoll-Rand plc*, 2:19-cv-3291, 2020 WL 6060412 at *3 (Oct. 14, 2020) (collecting cases in which other courts have done the same)). But the Court finds no need to do so here.

The Thompsons were subpoenaed months ago in the related action, *J&R Passmore, LLC et al. v. Rice Drilling D, LLC et al.*, 2:18-cv-1587-ALM-KAJ, (Docs. 364, 365). At that time, they reached an agreement with Rice regarding production of documents related to those subpoenas. *Id.* at (Doc. 366). In the present action, counsel for the Thompsons and Rice agreed that the Thompsons would declare, in response to a formal subpoena, that what was produced in the related case could be considered produced in the instant case. (Doc. 408-6). So, when the subpoenas were noticed to the docket on the day of discovery cutoff, the Thompsons and Rice had already agreed that the responsive "production" would be a stipulation, not an actual production of documents, and it could thus be achieved instantaneously. Accordingly, the Court finds both that

4

a motion to quash the subpoenas would be moot, and that Plaintiffs' arguments about timeliness are unpersuasive. *See Gentile v. Kohl's Dep't Stores*, 2:16-MC-54, 2016 WL 6080285, at *4 (S.D. Ohio Oct. 18, 2016) (denying as moot a motion to quash when the non-party had already complied with the subpoena); *Duncan v. Husted*, 2:13-cv-1157, 2014 WL 4659863, at *7 (same).

Plaintiffs argue that the subpoenas left the Thompsons with "no time to comply prior to the discovery cutoff, much less than the [reasonable time] set forth in [Rule 45]." (Doc. 380 at 6–7). But here, the document production had already been completed, and all that the subpoenas required in response was a stipulation. Reasonableness is always a contextual determination. Though Plaintiffs argue that fourteen days should be a *de facto* minimum amount of "reasonable time" to comply with Rule 45 (*id.* at 6) (citing *Donahoo v. Ohio Dep't of Youth Servs.*, 211 F.R.D. 303, 306 (N.D. Ohio 2002) (finding that fourteen days was a reasonable time to comply with a subpoena commanding attendance at a deposition)), fourteen days would be an unreasonable amount of time to afford for a simple stipulation already agreed to in principle.

Nor does the time required for response beyond the discovery cutoff so frustrate the Court's scheduling order as to require intervention. *See FIP Realty Co.*, 2020 WL 6060412, at *3 (motion to quash by court's own motion where "subpoenas were served nearly two months after the close of discovery," in "open defiance of [the court's] scheduling order[ ]"). Indeed, because Rice asked only for a stipulation, which could be produced instantaneously, it is not clear they have failed to observe the deadline. For all the foregoing reasons, the Motion to Quash (Doc. 380) is **DENIED**.

## III.     MOTION TO COMPEL (DOC. 404)

Two federal rules are relevant here. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Rule 37, for its part, allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine,* 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

Rice "moves to compel Plaintiffs to engage a third-party vendor to conduct a forensically defensible collection and search of Plaintiffs' emails using a defined set of relevant search terms[,]" as well as to produce all communications between Plaintiffs and the Smith-Gosen Group list-serv and between Plaintiffs and Joyce Paglialunga, a member of the Smith-Gosen Group. (Doc. 404 at 1, 11). Plaintiffs argue that Rice's motion is untimely, seeks information irrelevant to the case, is based upon an unfounded belief that Plaintiffs' collection practice is insufficient, and will produce attorney-client privileged communications. (Doc. 409 at 10–14).

First, the Court finds that the motion is timely. Plaintiffs argue the motion should be denied because it was brought after the discovery deadline of February 11, 2022. (*See* Docs. 404, 277). They say this contravenes the Court's directive in the scheduling order that the parties "shall file any motions relating to discovery within the discovery period unless it is impossible or impractical

to do so." (Doc. 234 at 2). Yet, though Rice harbored doubts about Plaintiffs' production as early as October 2021 (Doc. 404-6), it did not have concrete evidence that supported this doubt until more recently. Particularly, it was during the deposition of Cynthia Shaw, on February 10, 2022, that Rice learned of responsive communications that had not been produced. (Doc. 404 at 7–8). On February 12, Plaintiffs' counsel purported to produce all the communications discussed at the deposition, but that production itself revealed that there were further unproduced communications. (*Id.* at 8–9). Thereafter, Rice undertook meet-and-confer efforts with Plaintiffs before asking the Court for leave to file this motion on February 15. (Doc. 413-2). In sum, Rice moved swiftly to bring this motion as soon as was practicable—that is, when it had reasonable supporting information and had conferred with Plaintiffs—and the motion is thus not untimely.

Second, Rice has satisfied its burden of demonstrating that the information sought is relevant. Rice suggests six search terms for Plaintiffs' emails: "Utica"; "Point Pleasant"; "Utica-Point"; "Utica/Point"; "Smith Goshen"; and "ODNR". (Doc. 404 at 11). This action centers on lease agreements conveying mineral rights "in the formations commonly known as the Marcellus Shale and the Utica Shale" (Doc. 302, ¶ 50), and the extent to which they did—or did not—convey rights to the Point Pleasant Formation. Plaintiffs argue that the Point Pleasant Formation is distinct from the Utica Shale, which Defendants were "specifically told" by the Ohio Department of Natural Resources ("ODNR") are separate formations. (Doc. 386 at 2). Defendants argue that the Utica Shale was commonly understood to include the Point Pleasant Formation, including by ODNR and by the Smith-Goshen Group, an industry group which hosted meetings about natural gas development and prepared a template lease form for landowners. (*See, e.g.,* Doc. 389 at 9–10).

Though the parties strongly dispute the degree to which Plaintiffs were influenced by the Smith-Gosen group (*compare* Doc. 409 at 11 *with* Doc. 413 at 7), the facts before the Court do not foreclose that information related to the Smith-Group group is relevant (*see, e.g.,* Doc. 413-3 (Plaintiff Thomas Shaw testifying that he attended most Smith-Gosen group meetings, with the aim of improving his knowledge about the natural gas industry)). Rice's proposed search terms, therefore, strike to the heart of the discrepancy over the lease language and are designed to produce relevant information. Similarly, the requests for emails between the Smith-Gosen Group and Plaintiffs, and between Joyce Paglialunga and Plaintiffs, are relevant. Ms. Paglialunga was a member of the Smith-Gosen Group who sent documents prepared by the group to Cynthia Shaw, a member of Plaintiffs TERA II, TERA III, and TERA IV. (Doc. 404-16 at 23:4–24; *id.* at 293:2–294:13; Doc. 409 at 4).

Third, Rice has offered reasonable grounds for doubting Plaintiffs' collection method. The Court thus finds that compelling collection by a third-party vendor is necessary to ensure proper responses to Rice's requests for production. Here, Plaintiffs searched through their own emails and forwarded to counsel those which they believed to be responsive to Defendants' requests for production. (Doc. 404 at 3; *see also* Doc. 404-1 (deposition excerpts in which Cynthia Shaw describes the method of collection)). This type of manual collection of information, including "by the document authors or custodians themselves," "may be appropriate in some situations." *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, 167 (2018).[1] Yet, "[s]elf-collections by

---

[1] *The Sedona Principles* are "a set of core principles and best practice recommendations [ ] for addressing the production of electronic information in litigation[,]" which were developed and continue to be updated by a working group of "attorneys and others with experience in handling electronic information in litigation[.]" For an example of their salience in advising parties and courts on best practices surrounding discovery of electronic information, *see, e.g., John B. v. Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2022).

custodians may give rise to questions regarding the accuracy and completeness of collections if directions and oversight by legal counsel or forensics experts are poor or non-existent." *Id.* at 168. Such is the case here.

Cynthia Shaw's testimony highlights that there was not legal or forensic oversight to her self-collection. (Doc. 404-1 at 52:22–24) ("Q. Did anyone assist you in collecting your own documents? A. No."). This lack of oversight is further supported by apparent confusion between Plaintiffs' counsel and Shaw about relevant communications. In advance of Joyce Paglialunga's deposition, Plaintiffs' counsel produced an email from Paglialunga to Shaw, to which Paglialunga had attached numerous Smith-Goshen emails. (Doc. 404-3). At her deposition, Paglialunga testified that Shaw asked her for the emails, and she believed the conversation was through text messages, because that was their usual manner of communication. (Doc. 404-16 at 293:2–294:17).

Following this deposition, Rice requested responsive communications, including text messages, between Paglialunga and Shaw. (Doc. 404-2 at 3). Then, on February 9, 2022, Plaintiffs' counsel represented that it had produced the "one and only" such correspondence. (Doc. 404-17 at 2). Yet, when Shaw was deposed the following day, her testimony revealed that other correspondence did exist. Initially, she denied texting Paglialunga altogether. (Doc. 404-18 at 109:9–10) ("Q. Have you ever texted Joyce?" A. No."). Then, after a break in which she was allowed to check her phone for messages, she testified that she did have texts "from a long time ago[,]" about "[n]othing correlating to this case." (*Id.* at 110:15–111:2). She stated that the last text she had exchanged with Paglialunga was from September 2021. (*Id.* at 111:11–18). But, after another break, she read into the record an exchange between herself and Paglialunga from December 10, 2021, in which Paglialunga requested Shaw's email address, so she could send her

the Smith-Goshen emails. (*Id.* at 135:12–136:9). She represented that this was their final communication. (*Id.* at 136:23–137:6).

Custodians of documents may not be forthcoming with responsive documents for a number of reasons, some of which may be innocuous. Such is the case with Shaw, who repeatedly misrepresented the communications between herself and Paglialunga. These problems with self-collection may be counteracted with a systematic procedure for producing documents, overseen by a legal or forensic professional. But that was also missing here. Following Shaw's deposition, Plaintiffs' counsel produced screenshots of the text messages between her and Paglialunga. (Doc. 404 at 13–14; Doc. 404-19). Yet, the screenshot of the text messages from December 10, 2021—supposedly the last exchanged between Shaw and Paglialunga—did not appear to be the last messages in the thread. Indeed, below those messages there was a new timestamp, indicating subsequent messages had been exchanged. (Doc. 404 at 13–14; Doc. 404-19). Plaintiffs' counsel appears to accept custodians' production at face value. But additional scrutiny is necessary to ensure that Plaintiffs are complying with their legal obligations.

Further, a late-produced email, clearly responsive to Rice's earliest requests for production, casts doubt on Plaintiffs' method of collection. By way of their April 28, 2020 response to Rice's first set of interrogatories and requests for production, Plaintiffs identified documents responsive to Rice's request for communications including the terms "Utica", "Point Pleasant", or "Utica/Point Pleasant", and indicated that they would continue to supplement production throughout discovery. (Doc. 404-7 at 18). But it was not until December 30, 2021, responding to Rice's third set of interrogatories and requests for production, including a request for emails between Plaintiffs and ODNR employees, that Plaintiffs produced an email between Jeannine Shaw and Mohammad Fakhari. (Doc. 404 at 10–11; Doc. 404-14 at 11; Doc. 326). This email

involved an exchange of documents and information regarding "Utica and Point Pleasant[.]"  (Doc. 404-4 at 2).  Because this email was clearly responsive to the first set of requests for production and would have presumably been located with even a rudimentary use of search terms by Plaintiffs, the delayed production casts further doubt on Plaintiffs' methodology (or lack thereof) for identifying responsive documents.  And it underscores the utility in employing a search methodology like that suggested by Rice.

Fourth, Plaintiffs' suggested time restriction on the discovery is not appropriate.  They ask that the search be limited to the period before the parties entered active litigation.  (Doc. 409 at 13–14).  If the search is not limited to documents predating 2017, they say, the production will include numerous documents protected by attorney-client privilege.  (*Id.*).  Yet, as Cynthia Shaw's exchange with Joyce Paglialunga reveals, Plaintiffs or their agents have engaged in relevant communications with third parties after the initiation of this litigation.  So, restricting the time frame, especially for a significant number of years, is likely to be underinclusive of relevant discovery.  It is preferable that Plaintiffs review any documents collected by a third-party vendor and remove and log any material protected by the attorney-client privilege.  *See The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 168 (2018) (briefly outlining the use of a privilege log when producing electronic information collected by a third-party vendor).

At base, the information Rice seeks is relevant and proportional to the needs of the case.  And that is the relevant standard here.  Rice suggests that it could also satisfy the higher burden for invasive collection of electronic information outlined in *Delta T, LLC v. Williams*, 337 F.R.D. 395.  (Doc. 404 at 12–13).  Plaintiffs contest this.  (Doc. 409 at 12–13).  But *Delta* and the related cases are of limited use.  They considered an invasive form of "mirror imaging" computers, which exceeds the scope of the ordinary document collection at issue here.  Further, there is sufficient

reason to doubt that Plaintiffs have fulfilled their good faith obligation to produce relevant information. Rice has identified concrete instances of failure to produce, which Plaintiffs have not adequately explained. *See Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-CV-899, 2007 WL 1723509, at *2 (June 12, 2007) (finding that enforcement of a motion to compel was not necessary where plaintiff's "few allegations of misconduct" were "adequately explained by defendant"). Accordingly, the Motion to Compel (Doc. 404) is **GRANTED**.

The parties dispute the proper procedure for completing the compelled production. After considering the parties' relative concerns, the Court adopts the following procedure: Plaintiffs must employ a third-party vendor to search Plaintiffs' email (including, but not limited to, CyndisBP1@aol.com; shawfarmsarena@gmail.com; and jeannineshaw8@gmail.com) for communications with the Smith-Goshen group list-serv (smithgoshenlandownersgroup@windstream.net) and Joyce Paglialunga (pango21@comcast.net). The third-party vendor must also search Plaintiffs' email using the six proposed search terms: "Utica"; "Point Pleasant"; "Utica-Point"; "Utica/Point"; "Smith Goshen"; and "ODNR". The search shall not be time restricted.

In the interest of resolving this expeditiously, without a further extension of deadlines, Plaintiffs shall have **seven (7) days** from the date of this Order to employ a third-party vendor to complete this collection. To the extent they suggest this would be difficult, the Court encourages them to take advantage of Rice's proposal to submit three qualified vendors for their choosing. Thereafter, Plaintiffs shall have **fourteen (14) days** to prepare a privilege log detailing the basis for withholding any documents and submit it and all non-privileged documents to Defendants. The Court is affording this time to prepare a privilege log so that Plaintiffs may meaningfully contemplate their burden for demonstrating privilege as to each entry, bearing in mind that

12

"conclusory statement[s]" of privilege are insufficient. *U.S. v. Roxworthy*, 457 F.3d 590, 597 (6th Cir. 2006) (quoting *Guardsmark, Inc. v. Blue Cross and Blue Shield of Tenn.*, 206 F.R.D. 202, 210 (W.D. Tenn. 2002)).

Finally, Plaintiffs must bear the cost of employing the third-party vendor. "The costs of preserving and producing relevant and proportionate electronically stored information ordinarily should be borne by the responding party." *The Sedona Principles, Third Edition*, 19 SEDONA CONF. J. 53 (2018). The Court finds no reason to depart from the ordinary course here.

## IV. MOTION TO STRIKE AND FOR SANCTION (DOC. 410)

Rule 26(e) imposes a burden on each party to "supplement or correct" an initial disclosure or discovery response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1) proscribes that where a party fails to comply with Rule 26(e), "the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Further, a Court may order other sanctions including any of those listed in Rule 37(b)(2)(A)(i)–(vi). *Id.* at 37(c)(1)(C). "The party seeking to invoke the preclusion sanction [of Rule 37(c)(1)] must first prove that the opposing party violated Rule 26(a) or (e)." *Nathan v. Ohio State Univ.*, No. 2:10-cv-872, 2012 WL 5342666, at *4 (S.D. Ohio Oct. 29, 2012).

Plaintiffs ask that Defendants be precluded from using as evidence sixty-one documents, which include newspaper articles, ODNR submissions, and industry publications. (Doc. 410 at 1–8). Since the beginning of this action, Rice has maintained that "'Utica Shale' was and is the commonly accepted nomenclature and term of art used to describe the subsurface interval from the top of the Utica Shale to the top of the Trenton Limestone, including the Point Pleasant." (Doc.

67, ¶ 14).  Accordingly, Plaintiffs asked Rice, in their first set of interrogatories, to identify facts supporting that assertion.  (Doc. 410-1 at 10).  Rice responded on April 2, 2020, referring Plaintiffs to "the news articles, ODNR submissions, oil-and-gas industry publications, and other non-privileged documents and business records which were produced" in the earlier state court proceeding.  (*Id.*).

    On the last day of discovery, February 11, 2022, Rice produced the sixty-one documents at issue.  Plaintiffs say this was gamesmanship—that Rice sat on these documents for some portion of the almost two years between initial disclosures and the supplementation and did so to deny Plaintiffs "any opportunity to review the documents or depose any witness on the said documents or their knowledge of the same."  (Doc. 428 at 2).  This late disclosure, they say, violates Rule 26(e)'s duty to supplement "in a timely manner" and Defendants should be precluded from using the documents under Rule 37(c)(1).  Rice responds that the documents at issue are publicly available and it was under no duty to disclose them.  (Doc. 421 at 1–5).  Further, it says that production was not untimely, nor harmful to Plaintiffs.  (*Id.* at 9–18).  The Court finds the production does not warrant sanction.

    The parties agree the newspaper articles, ODNR submissions, and industry publications are publicly available materials.  (Doc. 410 at 12–13; Doc. 421 at 1–5).  Generally, the Sixth Circuit has stated that "[t]he rules of discovery ... do not permit parties to withhold material simply because the opponent could discover it on his or her own."  *Tdata Inc. v. Aircraft Tech. Publishers*, No. 2:03-CV-264, 2007 WL 433295, at *2 (S.D. Ohio Feb. 5, 2007) (quoting *Abrahamsen v. Trans–State Exp., Inc.*, 92 F.3d 425, 428 (6th Cir. 1996)) (alterations in original).  Yet there is support for Rice's proposition that there is no discovery obligation to produce documents in the public record that are equally available to both parties.  *See id.*; *Equal Emp. Opportunity Comm'n v. Dolgencorp,*

14

*LLC*, 196 F. Supp. 3d 783, 796–97 (E.D. Tenn. 2016), *aff'd*, 899 F.3d 428 (6th Cir. 2018); *Hobson v. Mattis*, No. 3:14-CV-01540, 2017 WL 11475404, at *7 (M.D. Tenn. Sept. 11, 2017). Additionally, courts have found that a failure to disclose public records in discovery has been found to have minimal impact on the opposing party. *Hobson*, 2017 WL 11475404, at *7–8 (citing *Ford v. Hamilton Cnty. Juvenile Court*, No. 1:05–CV–557, 2007 WL 2302816, at *8 n.6 (S.D. Ohio Aug. 8, 2007)).

Even presuming there was a discovery obligation, the production would also have to be untimely to violate Rule 26(e).  The Sixth Circuit recently suggested that "so long as the information was disclosed before the close of discovery and within 30 days of discovering it[,]" a presumption of timeliness "seems reasonable absent evidence of bad faith or gamesmanship." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 217 n.7 (6th Cir. 2019) (citing *Dolgencorp*, 196 F. Supp. 3d at 785).  Here, Rice represents that all but two of the sixty-one documents were downloaded on February 8, 2022, just three days before they were produced.  (Doc. 421 at 3 n.8). The timestamps on the documents bear this out.  *Compare* (Doc. 389-14) (timestamped "2/8/22, 8:04PM") *with* (Doc. 389-26) (timestamped "7/14/2021").  So, the vast majority of the documents were produced within the presumptively timely period—within thirty days of being discovered and before the close of discovery.

Plaintiffs ask the Court to infer gamesmanship because the documents were produced on the last day of discovery and after depositions had concluded.  But they offer no meaningful evidence to support such an inference.  Rather, the timing of production seems to align with the overall discovery timeline.  On January 31, 2022, Defendants deposed Cynthia Shaw as the corporate representative for Plaintiffs TERA II and TERA III.  (Doc. 421 at 3).  During that deposition, she testified that she utilized the ODNR website to access various records, when she

read a newspaper it was typically the Times Leader, and she followed an industry publication called Marcellus Drilling News.  (Doc 421-1 at 9:8–11:6, 40:3–17, 84:17–86:18).  It was in response to this testimony, and in preparation for subsequent depositions of Plaintiff Thomas Shaw (on February 9, 2022) and of Cynthia Shaw in her personal capacity and as the corporate representative for Plaintiff TERA IV (on February 10, 2022), that Rice searched for additional newspaper articles, ODNR submissions, and industry publications, particularly from those sources mentioned by Ms. Shaw.  (Doc. 421 at 3–4).  Thus, it seems the parties' scheduling of key depositions for the waning days of the discovery period, not gamesmanship, is the likely cause of the last-minute production.

Simply put, the Court is not persuaded that there was a violation of Rule 26(e).  Because a violation of Rule 26(a) or (e) is predicate for sanctions under Rule 37(c)(1), the Court need not proceed through the analysis.  Nonetheless, the Court briefly considers harm under Rule 37(c)(1), which further underscores that preclusion is not a necessary remedy here.  The Sixth Circuit has adopted a five-factor test to determine whether an omitted or late disclosure is harmful:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)).

First, the disclosure was not likely a surprise to Plaintiffs.  As described above, all the documents were culled from publicly available sources with which Plaintiffs were personally familiar.  And all the documents address an issue that has been at the center of this litigation from its beginning—the common meaning of Utica Shale.  It cannot therefore be unduly surprising to Plaintiffs that Rice collected documents from these familiar sources to address a known argument.

16

Second, the ability-to-cure factor at best slightly favors Plaintiffs.  As Plaintiffs indicate, the depositions for Rice's corporate representatives and experts concluded before the supplemental production was made, so they thus lost their opportunity to examine those witnesses about the documents.  (Doc. 410 at 10).  Yet, as Rice notes, Plaintiffs did not elicit any testimony from those witnesses about the initial production or any related public documents.  (Doc. 421 at 15–16).  And it is unclear the extent to which such testimony would be useful, given that the argument centers on the notion of a common public understanding, and not an understanding particular to Defendants.  Further, Plaintiffs have had ample opportunity to dispute the persuasiveness of the documents in their briefing on the various motions for summary judgment.

Third, the evidence will not disrupt the resolution of the pending motions for summary judgment, as it was disclosed two weeks before briefing on those motions began.

Fourth, the evidence is important; it addresses a significant argument brought by Defendants.  This factor can cut both ways: "The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure."  *Bisig*, 940 F.3d at 220 (quoting *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017)).  Again, it is important to note that the information was publicly available.  When important information that is within the exclusive possession or control of one party is withheld, the harm in late disclosure is clear.  Here, however, it was within Plaintiffs' own power to collect similar or opposing public record evidence.  Thus, this factor does not favor preclusion.

Fifth, Rice offered an adequate explanation for its failure to disclose the evidence earlier. It conducted a simple public records search in preparation for depositions and provided the relevant documents to Plaintiffs just a few days later.  Though Plaintiffs allege Rice's true purpose was

gamesmanship, the objective circumstances surrounding the production do not give rise to that inference.

Taking these factors in total, the Court finds that the disclosure was harmless. This coheres with the general proposition that the failure to disclose public records has minimal impact on the opposing party. *Hobson*, 2017 WL 11475404 at *7–8.

In sum, because Rice did not clearly violate an obligation under Rule 26(e)—and because regardless its disclosure was harmless—sanctions, including preclusion, are not appropriate. Accordingly, the Motion to Strike and for Sanction (Doc. 410) is **DENIED**.

## V.     MOTIONS TO SEAL (DOCS. 385, 416, 423, 425, 429)

Courts distinguish between limiting public disclosure of information during discovery versus the adjudicative stage of a case. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016). "The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record." *Id.* (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). "Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). For this reason, the moving party has a "heavy" burden of overcoming a "'strong presumption in favor of openness' as to court records." *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1179); *see also Shane Grp.*, 825 F.3d at 305 ("Only the most compelling reasons can justify non-disclosure of judicial records." (quotation omitted)).

"[I]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in

confidence (such as the name of a minor victim of a sexual assault), is typically enough to overcome the presumption of access." *Shane Grp.*, 825 F.3d at 308 (citation and quotations omitted). "[T]he seal itself must be narrowly tailored to serve" the reason for sealing, which requires the moving party to "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305–06 (quotation omitted). Ultimately, the movant must show that "disclosure will work a clearly defined and serious injury . . . . And in delineating the injury to be prevented, specificity is essential." *Id.* at 307–08 (internal citations and quotations omitted). If there is a compelling reason, "the party must then show why those reasons outweigh the public interest in access to those records." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (citing *Shane Grp.*, 825 F.3d at 305). The Court "has an obligation to keep its records open for public inspection [and] that obligation is not conditioned upon the desires of the parties to the case." *Harrison v. Proctor & Gamble Co.*, No. 1:15-CV-514, 2017 WL 11454396, at *1–2 (S.D. Ohio Aug. 11, 2017) (citing *Shane Grp.*, 825 F.3d at 307.). The court "that chooses to seal court records must set forth specific findings and conclusions 'which justify nondisclosure to the public.'" *Shane Grp.*, 825 F.3d at 306 (citing *Brown & Williamson*, 710 F.2d at 1176).

Trade secrets are a "recognized exception to the right of public access to judicial records." *Brown & Williamson*, 710 F.2d at 1180. With respect to the *Shane Group* analysis, the existence of a trade secret will generally satisfy the first "compelling interest" element. *Kondash*, 767 F. App'x at 638. A trade secret is information from which the holder "derives independent economic value . . . from [its] not being generally known to . . . others" and which "is the subject of efforts . . . to maintain its secrecy." *Handel's Enters., Inc. v. Schulenberg*, 765 F. App'x 117, 122

(6th Cir. 2019). Ohio has formulated a list of six non-dispositive factors to help determine the existence of a trade secret:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Id.*

a. *Plaintiffs' Motion to Seal (Doc. 385)*

Plaintiffs bring this unopposed motion to seal exhibits accompanying their motion for summary judgment. These documents comprise three categories: (1) royalty remittance statements; (2) geosteering reports; and (3) Defendant Ascent Resources – Utica LLC ("Ascent")'s well completion analysis. (Doc. 385 at 5).

First, the Court must consider the compelling interest in sealing each category of documents. Regarding the royalty remittance statements, Plaintiffs suggest they "identify proprietary gas pricing, gathering costs, compression costs, and post-production deduction fees, along with the amount of money received by Plaintiffs." (*Id.* at 6). And upon *in camera* review, the Court agrees they contain sensitive financial information about the revenue and expenses generated at various wells. This type of "explicit financial data including a company's costs" rises to the level of trade secret. *Kondash v. Kia Motors Am., Inc.*, No. 1:15-cv-506, 2018 WL 770418, at *5 (S.D. Ohio Feb. 7, 2018) (quoting *Nelson v. Nissan N. Am., Inc.*, No. 11-5712, 2014 WL 12617593 at *4 (D. N.J. Dec. 22, 2014)). Significantly, these figures are unlikely to be known to those outside the business and are protected by the well owners and the companies with whom they chose to enter contracts. Accordingly, there is a compelling interest in sealing the royalty remittance statements.

Regarding the geosteering reports, this Court has previously undertaken consideration of similar reports in the related action. *J&R Passmore, LLC v. Rice Drilling D, LLC*, 2:18-cv-1587, 2022 WL 472435, at *1 (Feb. 16, 2022). These documents contain technical data regarding directional drilling operations. The data is proprietary; it resulted from years of development and expense by Defendants, is not shared with others outside of their businesses, and competitors could not easily reproduce it without expending a similar amount of time and money. *Id.*. Accordingly, there is a compelling interest in sealing the geosteering reports.

Regarding Ascent's well completion analysis, Plaintiffs liken it to the geosteering reports. (Doc. 385 at 6–7). Particularly, they say that the "statement contains sensitive internal information regarding Ascent's well completion procedures and gas drainage understanding, which is based on years of completing wells in eastern Ohio, and a competitor could not easily reproduce this information." (*Id.* at 7). Upon *in camera* review, the Court agrees that the analysis reveals a technical procedure developed at the time and expense of Ascent, and there is a compelling interest in sealing.

Second, no countervailing public interest counsels against sealing the records. A public interest is at its height "when public safety is implicated," and especially in class actions, which involve "the interest[s] of a broader public outside of the named parties." *Kondash*, 767 F. App'x at 637. While the present case is a putative class action, it does not invoke any of these "interests of public health and safety" that would outweigh these compelling interests in sealing. *Id.* There is little benefit to the public—if any—in disclosing this explicit financial and technical data. Nor will the sealing of these documents obscure the overall evidentiary record on which the parties and the Court will base their reasoning.

Finally, Plaintiffs' request is sufficiently narrowly tailored to address only the compelling interests in sealing. *Shane Grp.*, 825 F.3d at 305–06. To meet the exacting standard for sealing, movants should generally redact only the objectionable portions of documents rather than seal them in their entirety. However, the Court is satisfied that Plaintiffs have met their burden to "analyze in detail" the matter to be sealed here. *Id.* at 305. These documents, line-by-line, contain the very financial and technical data sought to be protected. Plaintiffs cannot effectively redact these documents. Therefore, the Court finds that Plaintiffs' request to fully seal the seven exhibits sufficiently narrow.

Accordingly, Plaintiffs' Motion to Seal (Doc. 385) is **GRANTED**. Plaintiffs shall file sealed exhibits consistent within this Opinion and Order within seven (7) days.

### b. *Plaintiffs' Motion to Declassify and Seal (Doc. 416)*

Plaintiffs bring this motion to file a lease exchange agreement that Ascent marked as confidential with redacted price terms. (Doc. 16 at 3). Ascent and Plaintiffs agree as to the proposed redactions, which they submitted before the Court. Plaintiffs also move to declassify and file without seal a MicroSeismic report that Rice marked as confidential. (*Id.*). While conceding that the "report like does contain certain sensitive proprietary information," Plaintiffs believe sealing is unnecessary given that it "was publicly filed in the related state court lawsuit[.]" (*Id.* at 6). Rice says that the report was produced only for use at trial, and pursuant the parties' agreed protective order, which "contemplated that confidential documents could be handled at trial in a way that they could maintain their confidentiality." (Doc. 420 at 2–3). At base, Rice says, the report "is not readily accessible to the public." (*Id.* at 3).

Regarding the lease exchange agreement, this Court has previously undertaken consideration of price terms in these agreements in the related action. *J&R Passmore, LLC*, 2022

WL 472435, at *3. Ascent "derives an economic benefit from its competitors not having the pricing terms of the Lease Exchange Agreement, and it has taken measures to keep these terms secret." *Id.* Moreover, it "does not derive an economic benefit from the pricing information in itself, but only insofar as that information remains secret. Therefore, the independent economic value and the confidentiality, taken together, comprise [Ascent's] compelling interest in redacting the pricing terms." *Id.*

So there is a compelling interest for sealing, and no countervailing public interest weighs against the redactions. Further, Plaintiffs and Ascent have proposed redactions which eliminate only the price terms—a few paragraphs of the overall agreement—and are therefore narrowly tailored. The Court approves the redactions of paragraphs 1(a), 3(c)(iii) and (iv), and 7. As to the lease exchange agreements, Plaintiffs' Motion to Seal is **GRANTED**.

The MicroSeismic report is filled with similar technical data to the geosteering reports and well completion analysis that the Court has already found may be sealed. What the parties dispute is the degree to which that information has been kept confidential, and thus to what degree the compelling interest in sealing remains. The report was produced at a trial, pursuant to a confidentiality agreement which ensured that material could be produced in that fashion and remain confidential. And it does not appear to be readily accessible by the public. For instance, it cannot be accessed through a public records search on the website for the Belmont County Court of Common Pleas. And Rice represents that the physical record is now with the state appellate court and not readily accessible to the public. (Doc. 420 at 3). The Court therefore finds that Rice has taken sufficient steps to keep the data confidential, and there is a compelling interest in sealing.

Further, no countervailing public interest weighs against sealing. Redaction of the report is not practicable, because "[n]early every page of the confidential report features MicroSeismic's

data and analysis, and the remaining pages include cover pages and an outline." (*Id.* at 4). Thus, sealing of the entire document is appropriate. As to the MicroSeismic report, Plaintiffs' Motion to Declassify is **DENIED**.

Accordingly, Plaintiffs' Motion to Declassify and Seal (Doc. 416) is **GRANTED in part and DENIED in part**. Plaintiffs shall file redacted and sealed exhibits consistent with this Opinion and Order within **seven (7) days**.

### c. *Rice's Motion to Seal (Docs. 423, 429)*

Rice brings this unopposed motion to file a geosteering report under seal. (Doc. 423). It filed a supplemental motion to clarify that it had mislabeled the Bates number designation of the document in its original filing. (Doc. 429). As detailed above, the geosteering reports contain proprietary technical data. Thus, there is a compelling interest to seal, which is not outweighed by any countervailing public interest in disclosure. Finally, because this document contains only technical data, redaction is not practicable, and fully sealing the exhibit is narrowly tailored to serve the compelling interest.

Accordingly, Rice's Motion to Seal (Docs. 423, 429) is **GRANTED**. Rice shall file a redacted exhibit consistent with this Opinion and Order within seven (7) days.

### d. *Plaintiffs' Motion to Seal (Doc. 425)*

Plaintiffs bring this motion to file five exhibits under seal. Each exhibit is an attorney's title opinion, which Defendants sought as to Plaintiffs' mineral estates before leasing or drilling. (Doc. 425 at 4–5). Defendants have marked the documents "confidential" and have not agreed that they should be declassified. (*Id.* at 3). Plaintiffs assert that the documents constitute attorney-client privilege material and should be sealed. (*Id.* at 5).

Ohio law governs claims of attorney-client privilege. *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. CIV A 206-CV-899, 2007 WL 1500899, at *3 (S.D. Ohio May 18, 2007) (citing *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006)). Under the privilege, confidential attorney-client legal communications are permanently protected from disclosure, unless the protection is waived. *MA Equip. Leasing I, L.L.C. v. Tilton*, 980 N.E.2d 1072, 1079 (Ohio Ct. App. 2012) (citation omitted). The privilege provides:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 824 N.E.2d 990, 995 (Ohio 2005) (quoting *Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998)).

The attorney-client privilege is a recognized privilege that gives rise to a compelling interest in sealing. Here, Defendants requested these opinions for the purpose of securing legal advice from attorneys, and the title opinions solely related to communicating that legal advice. Further, the communications were made in confidence, and Defendants have not waived the confidential protection. Indeed, they have endeavored to keep the communications confidential by marking them as such throughout discovery. The Court finds a compelling interest in sealing the title opinions.

As with the foregoing exhibits, the Court also finds no countervailing public interest favoring disclosure. The exhibits are being used for the narrow purpose of demonstrating Plaintiffs "own their respective oil and gas mineral estates." (Doc. 426 at 20–21). Sealing these exhibits will not meaningfully obscure the evidentiary record. And because the title opinions contain only

legal communications, there is not a practicable way to redact them. Full sealing is narrowly tailored to serve the compelling interest.

Accordingly, Plaintiffs' Motion to Seal (Doc. 425) is **GRANTED**. Plaintiffs shall file sealed exhibits consistent with this Opinion and Order within **seven (7) days**.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Quash (Doc. 380) is **DENIED**; Rice's Motion to Compel (Doc. 404) is **GRANTED**; Plaintiffs' Motion to Strike and for Sanction (Doc. 410) is **DENIED**; Plaintiffs' Motion to Seal (Doc. 385) is **GRANTED**; Plaintiffs' Motion to Declassify and Seal (Doc. 416) is **GRANTED in part and DENIED in part**; Rice's Motion to Seal (Docs. 423, 429) is **GRANTED**; and Plaintiffs' Motion to Seal (Doc. 425) is **GRANTED**.

Plaintiffs shall have **seven (7) days** from the date of this Order to employ a third-party vendor to complete the collection ordered in conjunction with the motion to compel. Thereafter, Plaintiffs shall have **fourteen (14)** days to prepare a privilege log detailing the basis for withholding any documents and submit it and all non-privileged documents to Defendants. Plaintiffs and Rice shall submit sealed and redacted exhibits consistent with this Opinion and Order within **seven (7) days**.

IT IS SO ORDERED.


Date: April 14, 2022                                        /s/ Kimberly A. Jolson
                                                           KIMBERLY A. JOLSON
                                                           UNITED STATES MAGISTRATE JUDGE