# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**TERA II, LLC, et al.,**

    **Plaintiffs,**

    v.                                                **Civil Action 2:19-cv-2221**
                                                               **Chief Judge Algenon L. Marbley**
                                                               **Magistrate Judge Jolson**

**RICE DRILLING D, LLC, et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendant Rice Drilling D, LLC's ("Rice") Motion to Compel (Doc. 455). For the following reasons, the Motion is **GRANTED in part and DENIED in part**. Plaintiffs must produce the amici materials and litigation update email to Defendants. The meeting minutes, however, are privileged and protected from production.

**I.    BACKGROUND**

    The Court previously summarized the background giving rise to this action:

> This lawsuit is about several oil and gas leases, which address rights to develop two oil and gas formations, commonly known to as the Marcellus Shale and Utica Shale. After a dispute arose about the scope of Defendants' drilling rights, Plaintiffs filed suit in the Belmont County, Ohio, Court of Common Pleas on April 24, 2019. (Doc. 1). Shortly after, Defendants timely removed the case to federal court. (Docs. 1, 6, 10). In brief, Plaintiffs seek a judgment declaring the parties' rights under the leases and damages from Defendants for trespass, conversion, [breach of contract,] and unjust enrichment. (*See generally* Doc. [302]).

(Doc. 271 at 1).

    The Court recently resolved disputes which arose at the close of discovery. (*See* Doc. 430). As a result, Plaintiffs were ordered to employ a third-party vendor to conduct a forensically defensible search of their emails. (*Id.* at 12–13). They were given fourteen days after collection "to prepare a privilege log detailing the basis for withholding any documents and submit it and all

non-privileged documents to Defendants." (*Id.* at 12). Defendant Rice objected to some of the grounds on which Plaintiffs withheld documents (Doc. 449), so the Court ordered the parties to meet and confer to resolve or narrow their disputes (Doc. 450). They were able to reach agreement on all but three categories of documents (Doc. 451), about which the Court requested expedited briefing (Doc. 452). Rice then brought the present Motion to Compel (Doc. 455), which has been fully briefed (Docs. 457, 462).

## II.    STANDARD

Two federal rules matter here. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine,* 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

2

In a diversity case, state law governs claims of attorney-client privilege. *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). Under the privilege, confidential attorney-client legal communications are permanently protected from disclosure, unless the protection is waived. *MA Equip. Leasing I, L.L.C. v. Tilton*, 980 N.E.2d 1072, 1079 (Ohio Ct. App. 2012) (citation omitted). Under Ohio law, the privilege provides:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 824 N.E.2d 990, 995 (Ohio 2005) (quoting *Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998)).

Relevant here, when a communication involves both legal and non-legal matters, a court must "consider whether the predominant purpose of the communication is to render or solicit legal advice." *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (quoting *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d. Cir. 2007)). The predominant purpose "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer." *Id.* (quoting *Erie*, 473 F.3d at 420–21).

### III.   DISCUSSION

Rice moves to compel the production of three categories of documents that Plaintiffs maintain are protected by attorney-client privilege: (1) minutes from a meeting attended by Plaintiffs; (2) draft briefs and communications exchanged between Plaintiffs' counsel and counsel for amici curiae regarding state mineral trespass litigation; and (3) a litigation update email sent from Plaintiffs' counsel to numerous individuals. (Doc. 455 at 1).

A. *Meeting Minutes*

Rice first asks the Court to compel the production of "a two-page set of meeting minutes (TERA030374)" which Plaintiffs have withheld on the basis of attorney-client privilege. (*Id.* at 4). Rice challenges this assertion of privilege, claiming that the "dominant intent of these minutes was not to secure legal advice . . . ." (*Id.*). Rice's claim is supported by the fact that Plaintiffs failed to indicate the presence of counsel at the meeting in their privilege log. (*Id.*). Yet, as Plaintiffs later clarified during the meet-and-confer process, the document "relates to a meeting Plaintiffs had with their counsel to discuss their litigation, case theory, and strategy." (Doc. 457-17 at 5). Particularly, the meeting was between Plaintiffs and two members of their counsel, Charlie Bean and Craig Wilson, held at Mr. Bean's office, and the discussion involved two different litigation matters. (Doc. 457 at 9–10).

The Court can confirm, from *in camera* review, that the meeting minutes contain communications between Plaintiffs and their counsel in which legal advice was sought. Indeed, the entirety of the minutes' content, aside from a passing reference to the food provided at the meeting, is legal advice. Plaintiffs further assert that the minutes were confidential and protected from disclosure, "emailed directly to Plaintiffs' counsel, and [ ] not disclosed to any third party." (*Id.* at 11). Nothing in the record before the Court undermines that assertion. The minutes list only Plaintiffs and counsel in attendance at the meeting, and the minutes appear to have been transmitted only to Mr. Bean, at his request. In sum, the minutes satisfy the elements of attorney-client privilege and are protected from disclosure.

Even so, Rice asks the Court to exercise its discretion to find waiver based on Plaintiff's bad faith and deficient privilege log. (Doc. 462 at 2–11). The Court agrees that discovery in this case has been far from exemplary. But "[w]aiver is a serious remedy, one the Court does not

4

impose lightly." *Casale v. Nationwide Children's Hosp.*, No. 2:11-cv-1124, 2013 WL 12203243, at *1 (S.D. Ohio Sep. 13, 2013). And here, the deficiencies in Plaintiffs' communications do not amount to a "complete failure to produce a privilege log[,]" so waiver is not clearly appropriate. *Id.*

Rice presses its argument by saying that Plaintiffs' deficient description of privilege in their log was not cured by their meet-and-confer letter, which nonspecifically referred to a meeting between Plaintiffs and counsel regarding litigation. (Doc. 462 at 10). But Plaintiffs' representation in the meet-and-confer letter makes "at least a minimal showing that the communication contained legal matters[.]" *Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (quoting *In re Search Warrant Executed at Law Offices of Stephen Garea*, No. 97-4112, 1999 WL 137499 at *1 (6th Cir. Mar. 5, 1999)). Under the circumstances, the Court finds this to be enough. And the privilege attached to the minutes will not therefore be considered waived, and the minutes need not be produced.

B. Amici Curiae Materials

Rice next asks the Court to compel the production of "amici curiae materials prepared for the state court case involving the TERA, LLC entity (TERA012635, TERA012636, TERA012661, TERA050379, TERA[0]50380, TERA070916, TERA070917)" which Plaintiffs have withheld on the basis of attorney-client privilege. (Doc. 455 at 7). Rice challenges this assertion of privilege "because the disputed documents are emails attaching draft briefs prepared by third parties who are not Plaintiffs' counsel." (*Id.* at 8). Plaintiffs counter that the disputed documents "are not relevant and are protected by the common interest exception to the attorney[-]client privilege." (Doc. 457 at 14).

5

To start, Plaintiffs say these documents are irrelevant because they relate to another lawsuit, and Rice has failed to otherwise demonstrate their relevance. (*Id.*). Yet, as Rice observes, these materials were identified in the email collection by search terms which the Court previously determined were designed to procure relevant material. (Doc. 462 at 15–16, 19) (citing Doc. 430 at 7). Because the materials were produced by the search of relevant terms, they meet the low bar for relevance. A contrary result would disrupt the ESI protocol used in this case.

Turning to attorney-client privilege, Plaintiffs concede that generally the privilege is waived by disclosure of the at-issue communications to third parties. (Doc. 457 at 14). Yet they maintain that these communications are subject to an exception to that general rule: the common interest doctrine. (*Id.* at 15). This doctrine "typically arises in the context of litigation when two parties are either represented by the same attorney or are independently represented but have the same goal in litigation. Under those circumstances they may freely share otherwise privileged communications without waiving the [attorney-client] privilege." *William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-cv-00807, 2017 WL 1326504, at *24 (S.D. Ohio Apr. 11, 2017) (quoting *Avis Rent A Car Sys., LLC v. City of Dayton, Ohio*, No. 3:12-cv-399, 2013 WL 3781784, at *3 (S.D. Ohio July 18, 2013)). This exception "should be construed narrowly[,]" and thus "will only apply where the 'disclosures are made in the course of formulating a common legal strategy.'" *Buckeye Corrugated, Inc. v. Cincinnati Ins. Co.*, 9th Dist. Summit No. 6634, 2013-Ohio-3508 (quoting *Cigna Ins. Co. v. Cooper Tires and Rubber, Inc.,* No. 3:99CV7397, 2001 WL 640703, at *2 (N.D. Ohio May 24, 2001)). And the burden of establishing that the underlying communications are privileged still rests with the party asserting privilege. *Avis*, 2013 WL 3781784, at *8 (citing *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983).

This exception cannot, as Plaintiffs urge, apply to the amici curiae here. Amici "offer assistance in resolving issues properly before a court," but are not parties to the litigation, and have a limited ability to impact the shape of litigation. *Cellnet Commc'ns, Inc. v. F.C.C.*, 149 F.3d 429, 443 (6th Cir. 1998) (noting that "[t]o the extent that the amicus raises issues or make arguments that exceed those properly raised by the parties, we may not consider such issues."). So, without more, it would be improper to consider them "parties" for the purpose of the common interest doctrine. Simply put, an amicus's legal interest in the outcome of an action is not equivalent to that of a plaintiff or defendant, such that the amicus and the party can be considered truly united in a legal strategy or defense.

Nor do Plaintiffs establish why the particular relationship between Plaintiffs and the amici here should be afforded special consideration. Though Plaintiffs cite *MPT, Inc. v. Marathon Labels, Inc.*, which found that a plaintiff shared an identical legal interest with a non-party, they do not assert equally compelling facts. No. 1:04 CV 2357, 2006 WL 314435, at *7 (N.D. Ohio Feb. 9, 2006). *MPT* was a patent infringement action. *Id.* at *1. Throughout the course of the litigation, MPT, the plaintiff company, shared privileged documents with TKG, a company from which MPT had acquired the license to the at-issue patent. *Id.* Significantly, the three brothers who owned MPT were part owners of TKG, one of these brothers was the president of both companies, and even the defendants in the action had previously argued that the interests of the two companies were "nearly identical." *Id.* at *1 n.2, *7. Here, Plaintiffs make no such showing regarding their relationship with amici. Rather, it would appear that the amici are simply other mineral estate owners who, like Plaintiffs, seek rulings favorable to mineral estate owners. The same could undoubtedly be said of all the mineral estate owners in Ohio. But this shared commercial interest does not mean that Plaintiffs and the amici have an identical legal interest.

7

Thus, even assuming that attorney-client privilege attaches to the underlying materials (which Plaintiffs do not meaningfully establish), the common interest doctrine would not protect that privilege from being waived by disclosure. Accordingly, the amici materials are not privileged and should be produced.

    C. *Litigation Update Email*

Finally, Rice asks the Court to compel the production of "two mass update emails (TERA054639 and TERA 073944)" which Plaintiff withheld on the basis of attorney client-privilege. (Doc. 455 at 9). Rice suggests that these emails are not privileged, because they were disclosed to third parties. (*Id.* at 10). Particularly, Rice formed this opinion after a representation from Plaintiff's counsel that the correspondence was directed from "counsel to clients related to oil and gas royalty case law." (*Id.*) (quoting Doc. 455-6 at 7). Rice inferred that the use of the word "clients," rather than "Plaintiffs" indicated that these emails had been shared more widely. (*Id.*).

This was correct. Plaintiffs' counsel acknowledges by affidavit that he sent a singular email (which appears, in different formatting, under both Bates numbers TERA054639 and TERA073944) to nineteen clients "regarding a new decision on oil and gas royalty payments." (Doc. 457-20 at 1). Plaintiffs argue that because this email was "specifically sent to current clients who sought legal advice on royalty payment and potential litigation on the same[,]" it is protected by attorney-client privilege and cannot be said to have been disclosed to third parties. (Doc. 457 at 17–18).

Attorneys may communicate with multiple clients without waiving attorney-client privilege. But the communications must still conform to the general contours of the privilege: that is, they must be made in the context of an attorney-client relationship, for the purpose of rendering

8

legal advice, in confidence, and protected from disclosure. For instance, in *Southern Scrap Material Co., LLC v. Fleming*, a district court found that a litigation update newsletter that was mailed to thousands of clients was protected by attorney-client privilege. No. Civ.A.01-2254, 2003 WL 21783318, at *4 (July 29, 2003). Crucially, the court noted that the newsletter was only provided to clients who were represented by the attorney in the same mass-tort litigation, there was clear language in the newsletter dictating that it was considered privileged communication and should not be disclosed, and despite the thousands of mailings, there was only one known instance of disclosure, suggesting that clients took the confidential nature of the communications seriously. *Id.* at *4–5.

The *Southern Scrap* court distinguished the communication before it from communications before another district court in *Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 451–55 (E.D. Tex. 2003), *other portions of order vacated sub nom. In re Texas Auto. Dealers Ass'n*, No. 03-40860, 2003 WL 21911333, at *1 (July 25, 2003). The relevant communications in *Robinson* were sent from the chief counsel of a trade association to its hundreds of members. 214 F.R.D. at 451. The court found that attorney-client privilege did not apply because it was unclear whether every member of the trade association had actually established an attorney-client relationship with the association's chief counsel. *Id.* at 451–53. And as the *Southern Scrap* court noted, not only was the client-status of the recipients in *Robinson* dubious, but the communications were not marked as "confidential" or "attorney-client communication[.]" 2003 WL 21783318, at *4.

The email communication now before the Court contains no language indicating to its recipients that it is attorney-client communication, that it should be considered confidential, or that it should be protected from disclosure. In this respect, the email is more similar to the non-privileged communications in *Robinson* than the privileged communications in *Southern Scrap*.

9

Further, while the Court accepts Mr. Wilson's representation that he considered all nineteen recipients to be his clients, the *Robinson* case underscores that the attorney-client relationship is not unilaterally established, and the assent and actions of the clients themselves are necessary to form such a relationship. The Court simply does not have enough information about the nineteen individuals to engage in the fact-specific determination of whether each was in an attorney-client relationship with Mr. Wilson.

Still more, while legal advice may be a purpose of the communication, it also resembles the kind of ordinary business development that attorneys often undertake for prospective or current clients, keeping them informed of litigation trends within their industry to convey expertise. Indeed, the communication resembles in significant respects the sort of case synopsis regularly published to a law firm's website. *See, e.g.,* Zachary D. Eddy, *Ohio federal court decides that Ohio would apply "at the well" rule in oil and gas royalty dispute*, BRICKER & ECKLER (Nov. 7, 2017), https://www.bricker.com/insights-resources/publications/ohio-federal-court-decides-that-ohio-would-apply-"at-the-well"-rule-in-oil-and-gas-royalty-dispute (noting particularly that the article is for "informational purposes only[,]" and "not intended to be legal advice"); *Lutz v. Chesapeake Appalachia, LLC*, BAKERHOSTETLER, https://www.bakerlaw.com/shalemap/lutz-v-chesapeake-appalachia-llc (last visited June 30, 2022); David J. Wigham, *Ohio Federal Court Rules in Landowner Royalty Case*, ROETZEL & ANDRESS (Apr. 1, 2018), https://www.ralaw.com/media/insights/article/ohio_federal_court_rules_in_landowner_royalty_case. All told, the communication lacks a clear indication that it was intended to be confidential, it has a mixed legal and business purpose, and it was transmitted to numerous individuals about whom the Court knows little. Plaintiffs have simply not carried their burden of establishing that this email is privileged. The litigation update email must therefore be produced.

IV.     **CONCLUSION**

For the foregoing reasons, Rice's Motion to Compel (Doc. 455) is **GRANTED in part and DENIED in part**. Plaintiffs must produce the amici materials and litigation update email to Defendants. The meeting minutes, however, are privileged and protected from production.

IT IS SO ORDERED.

Date: July 1, 2022                                             /s/ Kimberly A. Jolson
                                                                                    KIMBERLY A. JOLSON
                                                                                    UNITED STATES MAGISTRATE JUDGE