IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **TERA II, LLC,** *et al.*, : | |
| : | Case No. 2:19-cv-2221 |
| **Plaintiffs,** : | |
| : | **Chief Judge Algenon L. Marbley** |
| v. : | **Magistrate Judge Kimberly. A Jolson** |
| : | |
| **RICE DRILLING D, LLC,** *et al.*, : | |
| : | |
| **Defendants.** : | |

**OPINION & ORDER**

This matter is before the Court on Plaintiffs' Motion for Clarification or Reconsideration (ECF No. 492). The Motion seeks clarification or reconsideration of this Court's June 28, 2023 Opinion and Order (hereinafter "Order") (ECF No. 490). Specifically, Plaintiffs seek clarification or reconsideration of six areas of the Order that will be discussed below. Defendants argue that Plaintiffs' Motion be denied in full because Plaintiffs attempt to relitigate issues and/or improperly seek additional evidentiary rulings and advisory opinions.

For the reasons set forth below, this Court **GRANTS IN PART** and **DENIES IN PART** portions of the Motion. To the extent that certain portions of the Motion do not ask for reconsideration but rather seek clarification, where appropriate, this Court provides greater clarity.

**I. BACKGROUND**

A recitation of the factual and procedural background of this case was fully set out in the Order (ECF No. 490), and, thus, this Court adopts the factual and procedural background as set out there. After full briefing, the Plaintiffs' Motion is now ripe for consideration.

## II. STANDARD OF REVIEW

### A. Motion for Reconsideration

The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration. *Rodriquez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Nonetheless, such motions are typically construed in the Sixth Circuit as either a Rule 59(e) motion to alter or amend judgment or as a Rule 60(b) motion for relief from judgment. *Peake v. First Nat'l Bank & Trust Co. of Marquette*, 717 F.2d 1016, 1019 (6th Cir. 1983).

Under Rule 59(e), a party may seek to alter or amend a judgment by filing a motion no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). "A Rule 59(e) motion must present newly discovered evidence or clearly establish a manifest error of law." *D.E. v. John Doe*, 834 F.3d 723, 727 (6th Cir. 2016) (citing *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007)).

Under Rule 60(b), the court may relieve a party from a final order for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

Due to the importance of finality in the justice system, a motion to reconsider a final order should be granted only in extraordinary circumstances. *Solly v. Mausser,* No. 2:15-cv-956, 2016 WL 74986, at *1 (S.D. Ohio Jan. 7, 2016). Generally, motions for reconsideration are justified

only when there is an intervening change of controlling law, new evidence available, or a need to correct a clear error or prevent manifest injustice. *Doyle*, 2010 WL 658652 at *1. To be considered newly discovered evidence, "the evidence must have been previously unavailable." *Boyce v. Shoop*, No. 3:21-cv-216, 2023 WL 7015751, at *1 (S.D. Ohio Oct. 25, 2023) (citations omitted).

Importantly, motions for reconsideration are "not intended to re-litigate issues previously considered by the court or to present evidence that could have been raised earlier." *Doyle*, 2010 WL 658652 at *1 (citing *J.P v. Taft*, No. C2-04-692, 2006 WL 689091, at *13 (S.D. Ohio Mar. 15, 2006)). Said differently, motions for reconsideration are not a "mechanism for a plaintiff to relitigate issues previously considered and rejected, or to submit evidence which in the exercise of reasonable diligence could have been submitted earlier." *Kittle v. State,* No. 2:05-CV-1165, 2007 WL 543447, at *1 (S.D. Ohio Feb. 15, 2007) (citation omitted); *see Lloyd v. City of Streetsboro*, No. 5:18-cv-73, 2018 WL 2985098, at *1 (N.D. Ohio June 14, 2018) ("It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'") (quoting *McConocha v. Blue Cross & Blue Shield Mut. of Ohio,* 930 F. Supp. 1182, 1184 (N.D. Ohio 1996)).

### B. Motion for Clarification

A motion for clarification cannot be used to seek either legal advice or an advisory opinion from a district court. *United States v. Troutman*, No. 1:11-cr-472, 2022 WL 326523, at *1 (N.D. Ohio Feb. 3, 2022). Instead, "a motion for clarification is properly used to clarify the scope of a district court's prior order." *Id.*; *see Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 715 (6th Cir. 2011) ("The 'case or controversy' requirement prohibits all advisory opinions,

not just some advisory opinions and not just advisory opinions that hold little interest to the parties or the public."). Overall, a motion for clarification should present the Court with "a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Gutierrez v. CogScreen, LLC*, No. 17-cv-2378, 2018 WL 6517117, at *1 (W.D. Tenn. Apr. 5, 2018) (citations omitted).

### III. LAW & ANALYSIS

Plaintiffs seek reconsideration or clarification of the following: (A) the scope of Plaintiffs' remaining conversion and unjust enrichment claims and evidence relevant to the Court's conclusions and trial of the issues identified by the Court; (B) the scope of Plaintiffs' remaining trespass claims and evidence relevant to the Court's conclusions and trial of the issues identified by the Court; (C) an analysis of Plaintiffs' breach of contract claim against Rice post-2017; (D) application of collateral estoppel against Rice and Gulfport with briefing on the *Parklane* factors; (E) if ambiguity remains as to the rights conveyed by the leases after applying the traditional rules of contract interpretation and secondary rules of construction; and (F) Plaintiffs' status in the oil and gas industry, or knowledge of usage therein, and evidence relevant to the Court's conclusions and trial of the issues identified by the Court. (ECF No. 492 at PageID 17017). This Court will address each issue in turn.

### A. Conversion and Unjust Enrichment Claims

Plaintiffs seek clarification or reconsideration of two aspects of their conversion and unjust enrichment claims: (1) whether their conversion and unjust enrichment claims apply solely to the wellbore invasion tracts, or as to all tracts in a pooled unit; and (2) how Defendants' rule of capture theory applies to the claims.

4

*1. Conversion and Unjust Enrichment Claims & Tracts*

Specifically, Plaintiffs seek to know if they have a conversion and unjust enrichment claim related to non-wellbore invaded tracts. Plaintiff states the Court identified specific tracts that Plaintiffs do not have trespass claims for, but did not make a similar finding as to the conversion and unjust enrichment claims.

In its Order, the Court first analyzed the requirements for a conversion claim: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. (ECF No. 490 at PageID 16991). The Court found that Plaintiffs established prong one, but a material fact existed as to prongs two and three. (*Id*. at PageID 16991-16994). As for prong two, the parties agreed that "it is impossible to know exactly where each particle of oil or gas produced originated, even with expert testimony." (ECF No. 490 at PageID 16991). The Court then acknowledged that "[t]his is an issue of first impression because Plaintiffs do not allege conversion of royalties owed, but conversion of the oil and gas extracted from the pooled units in which Plaintiffs' properties are included." (*Id*.). After recognizing this is an issue of first impression, the Court explained that Defendants' argument that Plaintiffs fail to establish that Defendants converted oil and gas extracted from their particular property, fails as a matter of law and public policy. (*Id*. at PageID 16991-16993).

Next, the Court analyzed the requirements for an unjust enrichment claim: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. (*Id*. at PageID 16994). The Court found that Plaintiffs established prongs one and two, but a material fact existed as to prong three because a factfinder must assess whether

5

Defendants acted wrongfully and whether Defendants have improperly calculated royalties based on the parties' agreement. (*Id*. at 16994-16995).

Ultimately, the Court denied summary judgment for Plaintiffs as it relates to the conversion and unjust enrichment claims. (*Id*. at PageID 16995). Additionally, the Court granted summary judgment for Defendants on the rule of capture theory as applied to the conversion and unjust enrichment claims, but denied summary judgment for Defendants as to the remainder of the claims. (*Id*.).

The Court's analysis for trespass differed from the Court's analysis for conversion and unjust enrichment since those claims contain different elements. For trespass, the Court explained Plaintiffs must show an unauthorized intentional act, entry upon land in possession of Plaintiffs, and some type of physical damages or interference with use. (*See id*. at PageID 16984-16985). The issue the Court identified with Plaintiffs' trespass claim was that Plaintiffs provided no evidence that wellbore fractures actually physically intersected those properties not crossed by a wellbore. (*See id*. at PageID 16988). Accordingly, this Court granted summary judgment for Defendants as to non-wellbore invaded properties.

The genuine issues of material fact for Plaintiffs' conversion claim (i.e. Defendants' conversion by a wrongful act or disposition of Plaintiffs' property rights and damages) and unjust enrichment claim (i.e. retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment) do not involve the issue that was present with Plaintiffs' trespass claim (i.e. physical invasion). As such, the Court now clarifies that it's ruling did not limit Plaintiffs' conversion and unjust enrichment claims to only those properties where Plaintiffs can prove physical invasion (like it did for Plaintiffs' trespass claim). Rather, Plaintiffs have viable conversion and unjust enrichment claims as to all properties in a pooled unit. Said differently,

6

Plaintiffs have conversion and unjust enrichment claims as to both wellbore and non-wellbore invaded tracts.

### 2. Rule of Capture

Plaintiffs also seek clarification of how Defendants' rule of capture theory applies to the claims. Specifically, Plaintiffs seek to know whether the rule of capture applies if the wellbore was not lawfully drilled. This Court finds Plaintiffs' request for clarification is more accurately a request for an advisory opinion, which the Court will not issue. The Court directs the parties to its analysis of the rule of capture outlined in the Order. (*See id.* at PageID 16991-16995).

### B. Trespass Claim

Plaintiffs seek clarification or reconsideration of two aspects of their trespass claim: (1) a finding that Plaintiffs have trespass claims as to the Son Uva Digger 3 well on Plot 85 and the Gold Digger 3H well on Plot 10; and (2) the nature of the trespass claim and material evidence needed for a finding of bad faith.

### 1. *Son Uva Digger 3 Well on Plot 85 and Gold Digger 3H Well on Plot 10*

Plaintiffs argue that they do, indeed, have claims for trespass as to the Son Uva Digger 3 Well on Plot 85 and the Gold Digger 3H Well on Plot 10 because the wellbores for said wells directly intersect each of those tracts. Plaintiffs provide zoomed-in versions of plat maps with circles showing intersection to support their argument. The plat maps were previously submitted as part of an exhibit to Plaintiffs' February 25, 2022 motion for summary judgment. (*See* ECF No. 386-2 at PageID 4691-4692).

Defendants do not dispute the validity of Plaintiffs' argument, but rather argues that Plaintiffs' request with respect to these two wells should be rejected as untimely. Specifically, Defendants argue that Plaintiffs never argued a trespass of those plots by those wells; instead,

Plaintiffs listed each of the ten pooled units at issue and argued that different wells intersected the subject plots. Ultimately, Defendants allege Plaintiffs are requesting a "do-over by shoving untimely arguments and illustrations of evidence at the Court that they could have raised at the appropriate time but did not." (ECF No. 494 at PageID 17064).

Indeed, a motion for reconsideration is not intended to be used to "present evidence that should have been raised in connection with the earlier motion." *Ohio Midland, Inc. v. Proctor*, No. 2:05-cv-1097, 2012 WL 580407, at *1 (S.D. Ohio Feb. 22, 2012). Plaintiffs, however, are not presenting new evidence since they provided these plat maps on February 25, 2022 in support of their motion for summary judgment. (*See* ECF No. 386-2 at PageID 4691-4692). As such, this Court will not bar Plaintiffs' request for reconsideration as improper or untimely.

In its Order, the Court found the following as it relates to Plaintiffs' trespass claim:

> For all alleged tort claims, Plaintiffs must demonstrate that Defendants improperly infringed upon a right or benefit held by Plaintiffs as related to their specific plot of land. Plaintiffs have done so with plat maps that show wellbores crossing some of Plaintiffs' properties. As discussed *supra*, a physical invasion of Plaintiff's property by wellbores, regardless of whether the wells are in production, interferes with the reasonable and foreseeable use of the subsurface property. As it relates to hydraulic fractures, however, Plaintiff's evidence is substantially lacking. While the scientific studies Plaintiffs cite detail that hydraulic fractures can reach up to 1000 feet from a wellbore, Plaintiffs have provided no evidence that wellbores fractures actually physically intersect those properties not crossed by a wellbore. Regardless of the outcome of the declaratory judgment claim, Plaintiffs cannot prove trespass for those properties.

(ECF No. 490 at PageID 16988) (internal citation omitted). The Court then listed specific properties that Plaintiffs could not prove physical invasion and granted summary judgment for Defendants as to those properties. (*See id*. at 16988-16989.) After reviewing the list of properties, the Court sees that it inadvertently included the Son Uva Digger 3 Well on Plot 85 and the Gold Digger 3H Well on Plot 10. These properties should not have been included since the plat maps

8

previously provided by Plaintiffs show that the specific wellbores intersect those properties. Accordingly, Plaintiffs' request for a finding that Plaintiffs have trespass claims as to the Son Uva Digger 3 Well on Plot 85 and the Gold Digger 3H Well on Plot 10 is **GRANTED**.

*2. Bad Faith*

Plaintiffs also seek clarification if bad faith trespass is to be determined at the time of trespass, not at the time of lease execution or at the time the lease was signed. This Court, however, already answered this question. In its Order, the Court stated: "As there exist more than one reasonable interpretation of the lease language, there also exists a genuine issue of material fact as to whether Defendants acted in good faith when drilling into the Point Pleasant." (ECF No. 490 at PageID 16988). To the extent Plaintiffs seek an advisory opinion beyond this Court's ruling, this Court declines to issue one.

Further, Plaintiffs request clarification as to whether they can present to the jury all their evidence of bad faith after the 2014 Larry Cain memorandum. Nothing in the Order restricts Plaintiffs' ability to do so. To the extent, however, Plaintiffs treat this request for clarification as a motion *in limine*, Plaintiffs' request is denied. If Plaintiffs seek a ruling on whether certain evidence of bad faith after the 2014 Larry Cain memorandum is admissible, they must submit a separate motion *in limine*. If Plaintiffs choose not to submit a separate motion *in limine*, Defendants are, of course, free to object to any evidence at trial.

**C. Breach of Contract Claim**

Plaintiffs request that this Court reconsider its decision on whether Rice breached the contract by calculating Plaintiffs' royalty based on an affiliate sale after 2017, rather than an unaffiliated sale. Specifically, Plaintiffs argue that the Court did not consider Plaintiffs' primary argument that Rice breached the lease after 2017 because Rice was paying royalties based on the

9

gross proceeds received from an affiliate sale to EQT Energy, rather than a sale to an unaffiliated third-party. This Court, however, rejected Plaintiffs' argument that their post-2017 royalties based on the TETCO M2 index price were undercut. Specifically, this Court stated: "Mr. Gabbianelli's deposition testimony demonstrates that despite initially deducting post-production costs from the royalty calculations, Plaintiffs are then credited for those deductions given the contractual requirement that no costs be deducted from the gross sales price—the opposite of what Plaintiffs allege the deposition demonstrates." (ECF No. 490 at PageID 16999) (cleaned up). Additionally, this Court stated: "Without evidence that Defendants are in fact using the wrong pricing index and breaching the contract, Plaintiffs fail to meet their burden to present prima facie evidence of breach of contract." (*Id*. at PageID 17000). Since this Court considered Plaintiffs' argument and ultimately rejected it, and Plaintiffs' request for reconsideration is not based on change in the law, new evidence available, or a need to correct a clear error or prevent manifest injustice, Plaintiffs' motion for reconsideration of the breach of contract claim is **DENIED**.

### D. Collateral Estoppel

In its Order, the Court found the *Parklane* "wait and see" factor applied to this case, and, thus, prevented the application of collateral estoppel against Rice and Gulfport. (*See* ECF No. 490 at PageID 16958-16961). Plaintiffs now seek an opportunity to brief fully the *Parklane* factors and requests that the Court reconsider its decision as to collateral estoppel. Plaintiffs' request, however, is untimely. Defendants referenced *Parklane* in their response in opposition to Plaintiffs' motion for partial summary judgment. (ECF No. 407 at PageID 11153, 11171). As such, Plaintiffs were on notice of *Parklane* and had the opportunity to brief fully the case in their reply brief. Plaintiffs failed to do so and this Court will not give Plaintiffs an opportunity to do so now. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citing *FDIC v.*

10

*World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) ("Rule 59(e) motions are aimed at *re*consideration, not initial consideration. Thus, parties should not use them to raise argument which could, and should, have been made before judgment issued.") (emphasis in the original). Ultimately, since this Court acted within its discretion to consider binding precedent outside of the parties' focused briefing and finds it did not err in its analysis of the *Parklane* factors, Plaintiffs' motion for reconsideration of the collateral estoppel claim is **DENIED**.

### E. Declaratory Judgment Claim

Plaintiffs argue that the Court's analysis on the declaratory judgment claim was incomplete and/or flawed because the Court did not cite or apply the primary rules of interpretation or the secondary rules of construction as to the lease agreement. Specifically, Plaintiffs allege the Court did not analyze or give effect to the word "formation" and did not reference or incorporate any part of the Reservation Clause of the contract into its analysis. In reviewing the Order, however, the Court finds it thoroughly analyzed the declaratory judgment claim. (*See* ECF No. 490 at PageID 16978-16981). Specifically, the Court looked to context clues since the lease did not define certain language and the parties disagreed on their meaning. (*See id*. at PageID 16979). The Court then differentiated *TERA, LLC* and another Ohio state court case from this case by explaining:

> [H]ere, both parties present substantial evidence from emails, industry presentations, communications, and deposition testimony that demonstrate competing theories of the lease's meaning. In other words, "Utica Shale" reasonably could be given multiple definitions by those across the scientists, landowners, and drilling companies that make up the oil and gas industry. The evidence presented by both parties demonstrates that the qualifying language of "commonly known as" introduces ambiguity into how "Utica Shale" should be defined.

(*Id*. at PageID 16980). Since this Court finds there is no need to correct a clear error or prevent manifest injustice, Plaintiffs' motion for reconsideration of the declaratory judgment claim is **DENIED**.

11

### F. Consideration of Industry Usage

Plaintiffs argue this Court erred by considering Defendants' extrinsic evidence of industry usage in the oil and gas industry, or knowledge of usage therein, without making a pre-requisite finding that Plaintiffs are members of the industry. Additionally, Plaintiffs seek clarification from this Court if the Court has deemed Plaintiffs to be industry members or if it has found that Plaintiffs had knowledge of the industry usage in its determination that the term "Utica Shale" is ambiguous.

In reviewing its Order, the Court finds it did not err in considering extrinsic evidence of industry usage. Indeed, the Court cited to Ohio state court cases that confirm extrinsic evidence of custom or trade usage is permissible to show the parties to a written agreement employed terms having a special meaning within a certain geographic location or a particular trade or industry, not reflected on the face of the agreement. (*See* ECF No. 490 at PageID 16980). Additionally, the Court cited to Ohio state court cases that confirm technical terms and words of art are given their technical meaning when used in a transaction within their technical field. (*See id*.). To the extent Plaintiffs are asking for an advisory opinion regarding Plaintiffs' membership in the industry, this Court will not provide one. Since this Court finds there is no need to correct a clear error or prevent manifest injustice, Plaintiffs' motion for reconsideration of industry usage is **DENIED**.

### IV. CONCLUSION

For the reasons explained above, Plaintiffs' Motion for Clarification or Reconsideration (ECF No. 492) is **GRANTED IN PART and DENIED IN PART**. Specifically, Plaintiffs' Motion for Reconsideration of trespass of the Son Uva Digger Well on Plot 85 and the Gold Digger 3H Well on Plot 10 is **GRANTED.** This Court's previous decision granting summary judgment to Defendants with respect to trespass of those two properties is hereby **REVERSED**; Plaintiffs

therefore have viable trespass claims as to those two properties. Plaintiffs' Motion, however, is **DENIED** as to the remainder of the requests for reconsideration.

    **IT IS SO ORDERED.**

                                                    **ALGENON L. MARBLEY**
                                                    **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: January 22, 2024**