**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TERA II, LLC**, *et al.*, | : | |
| | : | **Case No. 2:19-cv-2221** |
| **Plaintiffs,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | **Magistrate Judge Kimberly. A Jolson** |
| | : | |
| **RICE DRILLING D, LLC**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## <u>OPINION & ORDER</u>

The following matters are before this Court: Defendants' Motion to Strike Plaintiffs' Reply in Support of Motion for Partial Summary Judgment and Untimely *Daubert* Motion (ECF No. 609); Plaintiffs' Motion for Leave to File their Reply Brief in Support of their Motion for Partial Summary Judgment and Motion *in Limine* Regarding Opinions and Testimony of Danny Watson and Lesa Adair (ECF No. 628); Defendants' Motion to Exclude Expert Opinions of Paul Herzing and Strike His Reports (ECF No. 555); Defendants' Motion to Strike Untimely and Non-Harmless Expert Testimony of Jeffrey Dick and Thomas Jordan (ECF No. 538); Plaintiffs' Motion *in Limine* Regarding Opinions and Testimony of Danny Watson and Lesa Adair (ECF No. 596); Plaintiffs' Motion *in Limine* Regarding Opinions and Testimony of Thomas Payne (ECF No. 598); Plaintiffs' Motion for Partial Summary Judgment on the Defenses of Good Faith Costs and Expenses and Offset (ECF No. 551); and Defendants' Motion for Summary Judgment (ECF No. 556).

For the reasons explained below, Defendants' Motion to Exclude Expert Opinions of Paul Herzing and Strike His Reports (ECF No. 555) is **DENIED IN PART AND GRANTED IN PART**; Plaintiffs' Motion *in Limine* Regarding Opinions and Testimony of Thomas Payne (ECF

No. 598) and Plaintiffs' Motion for Leave to File their Reply Brief in Support of their Motion for Partial Summary Judgment and Motion *in Limine* Regarding Opinions and Testimony of Danny Watson and Lesa Adair (ECF No. 628) are **DENIED AS MOOT**; and the remaining motions (ECF Nos. 538, 609, 596, 551, 556) are **DENIED**.

# I. BACKGROUND

A recitation of the factual and procedural background of this case was fully set out in this Court's June 28, 2023 Opinion and Order on the parties' motions for summary judgment as to issues of liability (hereinafter "Order") (ECF No. 490), and, thus, this Court adopts the factual and procedural background as set out there. Since the Order, however, Plaintiffs settled all claims with Defendant Ascent Resources – Utica LLC (hereinafter "Ascent"). (ECF No. 581). Additionally, this Court granted Plaintiffs' motion to dismiss the remaining issue in Claim VI against Defendants Gulfport Energy Corporation and Gulfport Appalachia, LLC (hereinafter "Gulfport"). (ECF Nos. 590, 621). Further, this Court issued an Opinion and Order in response to Plaintiffs' Motion for Reconsideration and Clarification of the Order. (ECF No. 620). Based on these developments, the remaining Defendants are Rice Drilling D, LLC (hereinafter "Rice") and Gulfport, and the remaining claims are:

- **COUNT I** – Declaratory Judgment;
- **COUNT II** – Trespass for wellbore invaded properties only;
- **COUNT III & IV** – Conversion and Unjust Enrichment for all properties (i.e. both wellbore and non-wellbore invaded properties[1]); and
- **COUNT V** – Fees[2]

In the Magistrate Judge's Scheduling Order filed on June 1, 2021, the Magistrate Judge ordered that discovery on damages be completed by 150 days following this Court's ruling on

---

[1] This Court clarified this issue in ECF No. 620.
[2] Note that the only valid claims against Gulfport are for those that occurred post-May 17, 2021. (*See* ECF No. 490 at PageID 16968-16971).

issues of liability. (ECF No. 234 at PageID 3760). Additionally, the Magistrate Judge ordered that Plaintiffs' expert reports on damages be produced 90 days after this Court's ruling on issues of liability, and rebuttal expert reports on damages be produced 30 days thereafter (i.e. 120 days after ruling on issues of liability). (*Id*.).

On August 1, 2023, this Court issued a Trial Schedule Order. (ECF No. 493). In the Order, this Court set the following schedule, in relevant part, to which the parties were to adhere:

| | |
|---|---|
| November 30, 2023 | Damages discovery completed. |
| December 21, 2023 | Simultaneous motions practice due related to damages discovery. |
| January 4, 2024 | Simultaneous responses to motions practice for damages discovery due. |
| January 12, 2024 | Motions in limine, pretrial motions, joint jury instructions and supplemental jury instructions, designation of deposition portions, witness statements, stipulations, and exhibit lists. |
| January 22, 2024 | Memoranda contra pretrial motions or motions in limine, objections to supplemental jury instructions, objections to deposition designations, and final pretrial order. |

(*Id*. at PageID 17036-17037).

On September 26, 2023, Plaintiffs filed their disclosure regarding damages experts. (ECF No. 507). Plaintiffs' damages experts are Paul Herzing, Jeffrey Dick, and Thomas Jordan. On October 26, 2023, Ascent filed its disclosure regarding damages experts. (ECF No. 515). Ascent's damages expert is Terry Payne. The next day, on October 27, 2023, Rice and Gulfport filed their disclosure regarding damages experts. (ECF No. 516). Rice and Gulfport's damages experts are Danny Watson and Lesa Adair.

On November 30, 2023, Defendants filed their motion to exclude Plaintiffs' damages experts Jeffrey Dick and Thomas Jordan. (ECF No. 538). On December 21, 2023, the parties filed their motions for summary judgment as it relates to damages and Defendants filed their motion to exclude Plaintiffs' damages expert Paul Herzing. (ECF Nos. 551, 555, 556). That same day, Plaintiffs filed their response in opposition to Defendants' motion to exclude Jeffrey Dick and

3

Thomas Jordan. (ECF No. 554). On January 4, 2024, Plaintiffs responded in opposition to Defendants' motion for summary judgment and motion to exclude Paul Herzing (ECF Nos. 573, 574). Additionally, that same day, Defendants responded in opposition to Plaintiffs' motion for partial summary judgment (ECF No. 575) and replied to Plaintiffs' response in opposition to their motion to exclude Jeffrey Dick and Thomas Jordan (ECF No. 576).

On January 12, 2024, Plaintiffs filed motions *in limine* to exclude Defendants' damages experts Danny Watson and Lesa Adair (ECF Nos. 596) and Ascent's damages expert Terry Payne (ECF No. 598). On January 18, 2024, Plaintiffs filed a reply in support of their motion for partial summary judgment. (ECF No. 606). On January 19, 2024, Defendants filed a motion to strike Plaintiffs' reply in support of their motion for partial summary judgment (ECF No. 606) and untimely *Daubert* motion (ECF No. 596). (ECF No. 609). On January 24, 2024, Plaintiffs filed a response to Defendants' motion to strike their reply brief in support of their motion for partial summary judgment and Plaintiffs' motion *in limine* to exclude Defendants' damages experts. (ECF No. 628). In the response, Plaintiffs requested leave of court to file said briefings. (*Id*.). On January 26, 2024, this Court held oral arguments on the motions. The motions have been fully briefed and are now ripe for consideration.

## II. STANDARD OF REVIEW

### A. Motions to Exclude Expert

#### 1. *Federal Rules Regarding Relevancy*

Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant, and therefore generally admissible, so long as it has any tendency to make a fact of consequence more or less probable. Fed. R. Evid. 401. The standard for relevancy is "extremely liberal." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (citation omitted). Relevant evidence can, however, be

excluded if its probative value is substantially outweighed by, among other things, a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403.

### 2. *Rules Regarding Expert Witnesses*

Rule 702 of the Federal Rules of Evidence, which governs the testimony of expert witnesses, reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 was amended in 2000 to reflect the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) (discussing advisory committee's notes to the Rule's 2000 amendments). The Rule was again amended most recently in 2023 to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's notes to 2023 amendments. The advisory committee to the 2023 amendments stated: "[M]any courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." *Id.*

Overall, district courts have the responsibility of acting as "gatekeepers" to exclude unreliable expert testimony. *See In re Scrap Metal*, 527 F.3d at 528-29 Together, Rule 702, *Daubert*, and *Kumho Tire* establish that district courts may admit proposed expert testimony only if the court finds that it is more likely than not that the testimony satisfies the four factors within Rule 702, which this Court expands upon below.

First, "the witness must be qualified by 'knowledge, skill, experience, training, or education.'" *Id.* at 529 (quoting Fed. R. Evid. 702). The Sixth Circuit "take[s] a liberal view of what 'knowledge, skill, experience, or training' is sufficient to satisfy [this] requirement." *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2005) (citing *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)). A witness's qualifications are not measured "in the abstract," but rather by determining "whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). Relevant factors include, among other things, the length of the expert's experience in the field, *compare United States v. Ledbetter*, Nos. 2:15-cr-080, 2:14-cr-127, 2016 WL 1019260, at *3 (S.D. Ohio Mar. 15, 2016), *with United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000); whether she has previously been qualified by courts to testify as an expert, *see United States v. Norwood*, 16 F. Supp. 3d 848, 863 (E.D. Mich. 2014); and her education and training credentials as demonstrated through coursework, hours of formal training, and designations or certificates, *see United States v. Goxcon-Chagal*, 886 F. Supp. 2d 1222, 1241 (D.N.M. 2012).

Second, the proposed testimony "must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *In re Scrap Metal*, 527 F.3d at 529 (quoting Fed. R. Evid. 702). Said differently, opinion testimony must "fit" the issue to be resolved at trial. *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999). An expert is not

permitted, however, to testify as to the "ultimate issue" in a trial. *Berry*, 25 F.3d at 1354 ("We would not allow a fingerprint expert . . . to opine that a defendant was guilty (a legal conclusion)," but would permit him to testify "that the defendant's fingerprint was the only one on the murder weapon (a fact).").

Third, "the testimony must be reliable." *In re Scrap Metal*, 527 F.3d at 529; *see also Daubert*, 509 U.S. at 589 ("Under the Federal Rules of Evidence, the trial judge must ensure that any and all testimony or evidence admitted is not only relevant, but reliable." (cleaned up)). The reliability requirement focuses on the methodology and principles underlying the testimony. *Greenwell*, 184 F.3d at 496-97. The Supreme Court has extended the factors for evaluating the reliability of scientific expert testimony, first set forth in *Daubert*—testing, peer review, error rates, and acceptance in the relevant scientific community—to other technical but non-scientific realms as well. *See Kumho Tire*, 526 U.S. at 141-42. The test of reliability, however, is "flexible" and the *Daubert* factors are "neither necessarily nor exclusively appli[cable] to all experts or in every case." *Id.* at 142. Ultimately, a district court is tasked not with assessing whether the expert's opinion is "correct, but rather to determin[ing] whether it rests upon a reliable foundation." *Little Hocking Water Ass'n, Inc., v. E.I. du Pont de Nemours & Co.*, 90 F. Supp. 3d 746, 752 (S.D. Ohio 2015); *see In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) ("[Plaintiffs] do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable." (emphasis in the original)).

Ultimately, the burden is on the party proffering the expert report and testimony to demonstrate by a preponderance of proof that the opinions of their experts are admissible. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). District courts, however, have broad

discretion to determine whether to admit or exclude expert testimony. *In re Scrap Metal*, 527 F.3d at 528 ("[W]e will not substitute our own judgment for that of the district court and will reverse an evidentiary decision 'only where we are left with a definite and firm conviction that [the district court] committed a clear error of judgment.'" (citation omitted)). Where the proposed expert testimony is in dispute, "it is more appropriate for a judge to admit the evidence than to keep it from the fact-finder." *Little Hocking Water Ass'n, Inc.*, 90 F. Supp. 3d at 752 (explaining that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction of the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" (quoting *Daubert*, 509 U.S. at 596) (alteration in original)); Fed. R. Evid. 702 advisory committee's notes to 2000 amendments ("A review of the case law after *Daubert* shows that the rejection of the expert testimony is the exception rather than the rule."); *Jahn v. Equine Services, PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (stating that in *Daubert*, "[t]he Court explained that Rule 702 displays a liberal thrust with the general approach of relaxing the traditional barriers to opinion testimony" (cleaned up)).

## B. Motions for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). The court's function at the summary judgment stage is "not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court thus asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52).

Ultimately, "summary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. That is, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 250. Evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249-50

The party seeking summary judgment carries the initial burden of presenting the court with law and argument in support of its motion, as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, then the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 250.

Importantly, at the summary judgment stage, the court must "view[] factual evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Accordingly, at this stage in the litigation, the court must accept the non-moving party's version of events without weighing the evidence or assessing the credibility of prospective witnesses. *Cordell v. McKinney*, 759 F.3d 573, 578 (6th Cir. 2014). But, "[t]he mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).

### III. LAW & ANALYSIS

This Court will first address the motions to strike and motions to exclude since those inform the parties' motions for summary judgment as it relates to damages. *See Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 657 (6th Cir. 2005) ("Generally, a district court should dispose of motions that affect the record on summary judgment before ruling on the parties' summary judgment motions.").

### A. Defendants' Motion to Exclude Paul Herzing

#### 1. Defendants' Arguments

Defendants move to exclude the entirety of the testimony and reports of Plaintiffs' damages expert, Mr. Paul Herzing, on the basis that he allegedly does not use a reliable methodology to form his opinions, nor does he reliably apply his methods to the facts of this case.[3] Specifically, Defendants argue that Mr. Herzing's four methodologies for calculating damages—(1) reduced unit acreage, (2) wellbore penetration allocation, (3) time of trespass, and (4) full unit acreage— fail because they do not quantify how much gas, if any, was purportedly taken from any specific Plaintiff's tract, nor do they put forward evidence of the market value of such gas at the mouth of the well at the time of extraction. Defendants contend that Mr. Herzing himself conceded that methods (1), (2), and (3) are inaccurate under the applicable science. Additionally, Defendants assert that method (4)—full unit acreage—is unreliable and unhelpful because it includes damages for tracts and wells that this Court dismissed,[4] improperly includes future damages, and improperly uses a present value multiplier of ten percent for the present value of historic monthly productions.

---

[3] Defendants do not challenge Mr. Herzing's expertise and this Court finds that Mr. Herzing is qualified given that he is a Reservoir Engineer with over 40 years of experience in the oil and gas industry. (*See* ECF No. 573 at PageID 19213).

[4] Defendants concede, however, that Mr. Herzing removed wells that this Court dismissed in a supplemental report.

Defendants also move to exclude certain opinions of Mr. Herzing that Defendants allege are improper liability opinions. Defendants contend these liability opinions are unsupported and inadmissible legal conclusions.

Last, Defendants move to strike Mr. Herzing's supplemental and amended reports. Defendants argue that these reports are untimely, not justified, not harmless, and an inappropriate attempt to bolster his report after its weaknesses were exposed.[5]

## 2. *Plaintiffs' Arguments*

Plaintiffs respond that Mr. Herzing was retained as a damage expert in *TERA LLC,* the Ohio state court companion case, and presented the same full unit acreage model for calculating and allocating damages for subsurface trespass claims. Plaintiffs assert that the Ohio trial court denied Defendants' almost identical *Daubert* motion, and the Ohio appellate court affirmed Mr. Herzing's full unit acreage method. Plaintiffs explain that, based on this Court's Order limiting Plaintiffs' trespass claims to only those properties with wellbore invasion, Mr. Herzing developed the other three models. Plaintiffs maintain that all four models are scientifically reliable and based on industry accepted methodology. Specifically, Plaintiffs argue Mr. Herzing's use of sales price without reduction for post-production costs to determine market value is the appropriate methodology and best evidence given the presumption that Defendants must prove good faith trespass, and Mr. Herzing's opinions on future damages and present value are appropriate and reliable.

Last, Plaintiffs assert that Mr. Herzing's supplemental and amended reports should not be stricken. While Plaintiffs concede that Mr. Herzing made several supplements to his original report, they explain the supplements and amendments simply incorporate newly produced

---

[5] The specific reports are outlined in ECF No. 555 at PageID 17719 n.1, 17730-17732.

information or correct inadvertent errors. Plaintiffs contend Mr. Herzing did not change his methodology, any of his opinions, or any of his analysis in any of the reports. Plaintiffs also point out that Defendants have not sought to depose Mr. Herzing again nor have they asked for further clarification from Plaintiffs or Mr. Herzing as to the changes; instead, they filed this "extreme" motion to strike his reports.

### 3. Court's Findings and Analysis

#### a. Methods (1) Reduced Unit Acreage, (2) Wellbore Penetration Allocation, and (3) Time of Trespass

This Court disagrees with Defendants assertion that Mr. Herzing concedes that methods (1), (2), and (3)—reduced unit acreage, wellbore penetration allocation, and time of trespass—are unreliable. In his October 24, 2023 deposition, Mr. Herzing explains that these methods were developed based on this Court's Order which limited Plaintiffs' trespass claims to only those properties with wellbore invasion. (*See* ECF No. 555-2 at PageID 17791-17793; ECF No. 573-1 at PageID 19251, 19252, 19255). In reading the deposition transcript, it appears to this Court that Mr. Herzing's criticisms with these models are based on this Court's ruling, not on the science behind the models. In fact, Mr. Herzing does not invalidate the scientific reliability of the models; rather, he explains they are valid models but have some inequities as compared to method (4)— full unit acreage—which was used and upheld in *TERA, LLC*. Regardless of his criticisms, Mr. Herzing explains that these methods use decline curve analysis (*see* ECF No. 565-1), which Mr. Herzing asserts "has been in existence since the early 1900s . . . was perfected by Art's in 1950s . . . is the accepted reporting measure for reserves from a well for the SEC for all publicly traded companies . . . is the methodology of which companies pay the lessor his royalty rights . . . is accepted science . . . is accepted calculations . . . has been used in industry for quite a long time." (ECF No. 573-2 at PageID 19262). Ultimately, Mr. Herzing asserts that these models are

"scientifically valid" within the parameters set by this Court's Order. (ECF No. 573-1 at PageID 19253).

Overall, this Court finds Mr. Herzing did not disclaim methods (1), (2), and (3) as unscientific and the methods can be tested and are based on established industry methodology. Accordingly, Defendants' motion with respect to these methods is **DENIED**.

### b. Method (4) Full Unit Acreage

Mr. Herzing maintains that method (4)—full unit acreage—is the best model to use. (ECF No. 555-2 at PageID 17795; ECF No. 565-1 at PageID 18131). Under the full unit acreage model, Mr. Herzing calculates damages by "allocating well revenues based on the percentage of surface acreage Plaintiffs own compared to the total surface acreage in the unit." (ECF No. 555-2 at PageID 17740). Specifically, Mr. Herzing relied upon "a USGS publication, micro seismic reports, his knowledge of proppant placement, and the geological characteristics of the Utica Shale acting like a cap rock over the Point Pleasant" (*see* ECF No. 573 at PageID 19214) to opine that "conservatively 90% of the gas produced from the wells came from the Point Pleasant Formation or below, and 10% of the gas produced from the well was from the Utica Shale" (*see id*. at PageID 19213). Based on this assessment, Mr. Herzing "determined that the remaining gas in the ground has been rendered inaccessible because a new well is economically unfeasible and practically impossible due to well spacing regulations to drill." (*Id*. at PageID 19214). "Thus, Mr. Herzing valued the reserves (remaining gas in the ground) by utilizing a decline curve analysis, applying the NYMEX index gas price, and applying a present value interest rate of 10 percent." (*Id*.). As referenced above, Mr. Herzing explained that decline curve analysis is an accurate forecasting tool in the oil and gas industry to value and project the future production of any given well. Then, Mr. Herzing "allocated the reserves to Plaintiffs by proportionately applying it based on the parcel

acreage in the pooled unit." (*Id.*). Overall, "Mr. Herzing opines this 'Full Unit' allocation model is appropriate because of the fracture network, and uniform geological properties within the pooled unit indicates to a reasonable degree of scientific certainty that the entire pooled unit is being effectively drained." (*Id.*).

This Court finds Defendants criticisms—that Mr. Herzing failed to determine how much gas, if any, was extracted from each tract; Mr. Herzing calculated damages based on sales prices from gas sold all over the country instead of the value of the gas at the time and place of extraction; Mr. Herzing improperly included future damages for trespass; and Mr. Herzing's assessment of the present value of past productions improperly included pre-judgment interest—do not render Mr. Herzing's expert testimony on the full acreage method fatally unreliable and subject to exclusion. As to Defendants' first argument that Mr. Herzing failed to determine how much gas, if any, was extracted from each tract, this Court stated in its Order that "Plaintiffs declare, and Defendants agree, it is impossible to know exactly where each particle of oil or gas produced originated, even with expert testimony." (ECF No. 490 at PageID 16991). Given the impossibility of identifying the origin of a fungible substance like natural gas, Mr. Herzing nonetheless offered a method to assess damages based on scientific data such as well completion techniques, fracture network and lengths, geological data, and microseismic surveys. (*See* ECF No. 565-1 at PageID 18131-18134). Ultimately, Mr. Herzing concluded: "We are positive within a reasonable degree of scientific certainty that the hydraulic fracture network designed and employed will create fractures to drain the full amount of acreage based upon current ODNR [Ohio Department of Natural Resources] 800' spacing rules." (ECF No. 565-1 at PageID 18136).

Defendants' other arguments regarding sales prices, future damages, and present values do not render Mr. Herzing's testimony excludable. As previously discussed, this Court's job is not to

assess whether Mr. Herzing's opinion is correct, but rather whether it rests upon a reliable foundation. *Little Hocking Water Ass'n, Inc.*, 90 F. Supp. 3d at 752. This Court finds that it does. While Defendants may not like Mr. Herzing's conclusions, Defendants will be free to test them, along with Mr. Herzing's calculations and methods, on cross-examination and through scrutiny and criticism by their own expert witnesses. Indeed, that is what happened in *TERA, LLC*, *see* 2023-Ohio-237, ¶¶ 65-100, and what is the appropriate avenue for attacking expert testimony. *See Little Hocking Water Ass'n, Inc.*, 90 F. Supp. 3d at 752 (explaining that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction of the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" (quoting *Daubert*, 509 U.S. at 596) (alteration in original)).

Overall, this Court finds that Plaintiffs have demonstrated that it is more likely than not that Mr. Herzing's scientific, technical, or other specialized knowledge will help the trier of fact to understand the issue of damages; Mr. Herzing's testimony is based on sufficient facts or data; Mr. Herzing's testimony is the product of reliable principles and methods; and Mr. Herzing's opinion reflects a reliable application of the principles and methods to the facts of the case. Accordingly, Defendants' motion to exclude Mr. Herzing with respect to this method—and therefore all four methodologies—is **DENIED**.

*c. Mr. Herzing's Supplemental and Amended Reports*

As for Mr. Herzing's supplemental and amended reports, Federal Rule of Civil Procedure 26(a)(2)(B) states that an individual retained to provide expert testimony must provide a written report containing, among other things, a complete statement of all opinions and the basis and reasons for them, as well as the facts or data considered by the witness in forming them. *See generally* Fed. R. Civ. P. 26(a)(2)(B). Additionally, Rule 26(a)(2)(C) provides that "these

disclosures shall be made at the time and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2). Parties, however, are required to supplement disclosures if they learn that the disclosures are incomplete or incorrect. *See generally* Fed. R. Civ. P. 26(e).

A violation of Rule 26 implicates Rule 37(c)(1), which states: "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Sixth Circuit has set forth four factors to assess whether a party's late disclosure is substantially justified or harmless: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015) (citation omitted). These factors, however, do not need to be applied "rigidly." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019). Indeed, "[d]istrict courts have broad discretion in applying these factors." *Id.* (internal quotation marks and citations omitted). The factors are meant to "simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that thwarts the harsh remedy of exclusion." *Id.* (citations omitted).

This Court finds that all of Mr. Herzing's supplemental and amended reports were substantially justified. First, Mr. Herzing's supplemental report dated October 16, 2013 incorporated additional data that Plaintiffs received from Rice's affiliate. (ECF No. 565-2). Second, Mr. Herzing's amended original report and amended supplemental report dated October 21, 2023 corrected three inadvertent mathematical errors that Mr. Herzing discovered when preparing for his deposition. (ECF Nos. 565-3, 565-4). Finally, Mr. Herzing's second amended

original report and second amended supplemental report dated November 13, 2023 and November 16, 2023 corrected three additional inadvertent errors that Mr. Herzing discovered during his deposition. (ECF Nos 565-5, 565-6).

Defendants allege that the reports are non-harmless because they have been deprived of the opportunity to depose Mr. Herzing on the changes. As Plaintiffs point out, however, Defendants have not asked to re-depose Mr. Herzing despite there being time to do so. Additionally, Defendants allege that they and their experts do not have adequate time to address the reports before trial. The last supplemental and amended reports, however, were provided approximately three months before trial is anticipated to begin, which gives Defendants and their experts time to address the reports. As such, this Court finds Defendants are not prejudiced by the supplemental and amended reports, especially given Mr. Herzing did not change his methodology or analysis from his original report. Since that this Court finds the supplemental and amended reports were substantially justified and harmless, Defendants' motion to strike the reports is **DENIED**.

### d.   Mr. Herzing's Liability Opinions

Defendants also move to strike Mr. Herzing's alleged liability opinions. Defendants are not particularly clear on which opinions they seek to strike, but based on Defendants' citations to Mr. Herzing's deposition, this Court believes they are opinions 1, 2, 3, 5, 7, and 8 within Mr. Herzing's report. Specifically:

> 1. Plaintiffs entered into identical leases with Rice Drilling D, LLC for development of the Marcellus Shale and Utica Shale.
>
> 2. Throughout my extensive lease experience, negotiating over 1,000 leases, I have never seen a lease quite like this. In my experience, when split formations are leased, a geologic description along with a log example of the formations at issue is provided to accurately depict the exact depths and formations leased.
>
> 3. Plaintiffs reserved all other formations in the leases.

> 5. Defendants knowingly produced natural gas from horizontal wells drilled in the Point Pleasant Formation.
>
> 7. The scientific community holds that the Point Pleasant Formation is a unique and separate formation, and is not included with, nor is a part of, the Utica Shale.
>
> 8. Per geologic formation definitions, Defendants did not acquire a right to develop the Point Pleasant Formation under Plaintiff's property by the express terms of the lease.

(ECF No. 565-1 at PageID 18129). Plaintiffs do not appear to respond to this issue in their response brief, so this Court is without the benefit of their view on the relevance of these statements.

While "testimony offering nothing more than a legal conclusion—i.e, testimony that does little more than tell the jury what result to reach—is properly excludable under the Rules," *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997), opinion testimony is "not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704.

Evidence consisting of background information "can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding." Advisory Committee Notes to 1972 Proposed Rules. And any witness—even one with expert training—can testify to his personal knowledge of the facts at issue. *See United States v. White*, 492 F.3d 380, 403 (6th Cir. 2007). Such is the case here for opinions 1, 2, and 3, which provide background information within Mr. Herzing's personal knowledge.

As to opinion 7, Mr. Herzing established in his report that he is a member of the "relevant scientific community," *Daubert*, 509 U.S. at 592-94, so he has the foundation to put forth this opinion.

Lastly, this Court is persuaded by Defendants' argument that opinions 5 and 8 rest on contractual interpretation that "is a matter of law for the Court." *Eur. Pensions Mgmt. Ltd. v. Columbus Life Ins. Co.*, 2017 WL 4540233, at *8 (S.D. Ohio Oct. 11, 2017). Particularly in light of the apparent lack of argument to the contrary from Plaintiffs on this issue, this Court finds these two opinions are inadmissible. Therefore, Defendants' motion to strike is **GRANTED IN PART**, only as two opinions 5 and 8 of Mr. Herzing's report.

### B. Defendants' Motion to Exclude Jeffrey Dick and Thomas Jordan

Defendants move to exclude the expert opinions of Drs. Jeffrey Dick and Thomas Jordan based on alleged untimeliness and prejudice to Defendants.[6] Dr. Dick is a geologist and Dr. Jordan is a geophysicist. Defendants do not dispute these experts' qualifications. Rather, the issue involves Plaintiffs' alleged untimely disclosure of these experts.

#### 1. Defendants' Arguments

Defendants argue that these witnesses are untimely because they speak solely to liability and not damages. Defendants point out that the deadline for liability experts expired over 3 years ago. Defendants allege Plaintiffs are engaging in "sandbagging of liability expert evidence" by submitting disclosure of liability experts under the guise of damages experts. Defendants contend these experts do not address any relevant input to Plaintiffs' damages case because they do not speak to price or quantity of gas.[7] Additionally, Defendants assert Mr. Herzing—Plaintiffs' actual damages expert—did not rely upon these experts' information, and these experts themselves admitted during depositions that they are not damages experts. Finally, Defendants argue that

---

[6] Defendants contend Dr. Dick provided timely liability opinions in his original March 2020 report and January 2022 supplemental report. Thus, Defendants only seek to have his new opinions submitted as part of damage disclosures excluded.

[7] Defendants maintain damages for subsurface trespass and conversion must reflect "the value of the gas in place." (ECF No. 576 at PageID 19621) (quoting *Brady v. Stafford*, 152 N.E. 188, 192 (Ohio 1926).

while these experts likely could have (and should have) scientifically assessed production from, and damages connected to, Plaintiffs' individual properties, they failed to do so in this case.

Aside from the late disclosures not being substantially justified, Defendants allege the late disclosures are non-harmless. Specifically, Defendants state they were deprived of any opportunity to leverage admissions from these experts at liability summary judgment; they do not have the opportunity to proffer rebuttal opinions related to liability that might erode the experts' credibility at trial or facilitate a *Daubert* motion against either of them; and their depositions of Plaintiffs and their affiliates occurred without the full benefits of these experts' opinions. Ultimately, Defendants assert Rule 37 requires this Court to exclude the experts.

### 2.  Plaintiffs' Arguments

Plaintiffs respond that the disclosures of Dr. Dick and Jordan are not untimely because their opinions do, indeed, relate to damages. Plaintiffs contend the experts analyzed the petrophysical properties of the Utica Shale and Point Pleasant Formation and offered opinions related to the fracture design and completion of the subject wells, as well as production from Plaintiffs' properties. According to Plaintiffs, these experts' opinions establish the baseline for Mr. Herzing to opine on the drainage across the wells and laterals.

Plaintiffs also delve into the lengthy procedural history of the case and point out that this Court's September 1, 2021 Opinion and Order on Plaintiffs' Motion to Compel Discovery stated: "While the parties also initially raised disputes over gas-in-place, estimated ultimate recovery, fracture modeling, and drainage analysis from all wells in Belmont County, they now represent such discovery 'should be held in abeyance until the case proceeds into the damages phase of discovery, if necessary.'" (ECF No. 271 at PageID 3906) (quoting ECF No. 257 at ¶¶ 7, 8). Plaintiffs allege Defendants are now seeking to exclude evidence that they previously agreed were

appropriate for the damages phase of the case. Nonetheless, Plaintiffs argue that even if this Court finds these expert disclosures were untimely, they are substantially justified and harmless under the circumstances.

### 3. Court's Findings and Analysis

As the measure of damages informs any damages experts' testimony, this Court finds it necessary to start by discussing the measure of damages for the claims in this case before reaching the substance of these experts' testimony. While the parties seem to disagree on the appropriate measure of damages, Ohio law is clear: damages for conversion is the value of the goods (i.e. gas) at the time of conversion, *Concrete Creations & Landscape Design LLC v. Wilkinson*, 2021-Ohio-2508, ¶ 148, 2021 WL 3088752, at *26 (Ohio Ct. App. 2021) (citing *Erie R. Co. v. Steinberg*, 94 Ohio St. 189, 198, 113 N.E. 814, 817 (Ohio 1916)); damages for unjust enrichment is the amount the defendant benefited, *Zara Construction, Inc. v. Belcastro*, 2022-Ohio-788, ¶ 61, 186 N.E. 3d 288, 300 (Ohio Ct. App. 2022); damages for "good faith trespass" is the value of the goods (i.e. gas) in place,[8] *Brady v. Stafford*, 115 Ohio St. 67, 78, 152 N.E. 188, 192 (1926);[9] and damages for "bad faith trespass" is the market value of the goods (i.e. gas), at the time of removal, without any deductions for costs or expenses, *id*.[10]

---

[8] *See Keys v. Pittsburg & W. Coal Co.*, 58 Ohio St. 246, 50 N.E. 911 (Ohio 1898) (discussing how to measure the value of coal in place).

[9] *Brady* defines "good faith trespass" as follows: "When coal is taken without right, but innocently or by mistake, and under the bona fide belief that it was property of the taker, the measure of damages to the owner of such coal is the market value of the coal in place. *Brady v. Stafford*, 115 Ohio St. 67, 78, 152 N.E. 188, 192 (1926).

[10] *Brady* defines "bad faith trespass" as follows: "Where coal is taken from under the land of another, willfully, wrongfully, and intentionally, and without right, the measure of damages to the owner of such coal is the market value of the same at the mouth of the mine, without any deduction for the cost of labor and other expenses incurred in severing and transporting such coal to the mouth of the mine." *Brady v. Stafford*, 115 Ohio St. 67, 78, 152 N.E. 188, 192 (1926). In *TERA, LLC*, the Ohio appellate court stated: "[W]e find that the phrase 'the market value of the same at the mouth of mine' in *Brady* refers not to the valuation of gas by local versus national indices, but instead, to the rule that no production costs may be deducted where the defendant commits an intentional trespass. The phrase 'the market value of the same at the mouth of mine' is replaced with 'the market value of the coal in place' with respect to an innocent trespass. In other words, the two phrases seek to distinguish the right of the innocent trespasser to deduct production expenses ('the market value of the coal in place') versus the prohibition against the deduction of any

This Court recognizes that, in their depositions, Drs. Dick and Jordan responded affirmatively to Defendants' question "whether it is fair to say they are not offering any damages opinions." (*See* ECF No. 538-1 at PageID 17280; ECF No. 538-2 at PageID 17289). Additionally, this Court acknowledges that Mr. Herzing stated in his deposition that he had not spoken with Drs. Dick or Jordan, reviewed their reports, or relied on their reports in formulating his opinions. (*See* ECF No. 538-5 at PageID 17340-17341). These facts, while factors in this Court's decision, are not, however, dispositive of the issue. Rather, the question this Court must answer is whether Dr. Dick's or Dr. Jordan's testimony speaks to the value of the gas and/or assists the jury in understanding Mr. Herzing's calculations as to the value of the gas. This Court finds that both do.

Specifically, Dr. Dick characterizes "the geologic and lithologic characteristics of the Point Pleasant Formation and the Utica Shale and the relationships of these properties to natural gas production." (ECF No. 538-3 at PageID 17295). Without Dr. Dick's opinions regarding "the consistent petrophysical properties of the Point Pleasant Formation across the wells at issue" (ECF No. 554 at PageID 17634), damages could not be assessed and/or understood. Additionally, Dr. Jordan provides opinions on the completion formation for 20 unconventional wells associated with specific properties; the lithological and petrophysical properties of the Point Pleasant Formation, the overlying Utica Shale, and the underlying Trenton Limestone that promote or conversely attenuate the propagation of hydraulically induced fractured; and the length and geometry of the induced fracture network resulting from applying hydraulic stresses. (ECF No. 548-2 at PageID 17508). Again, without this information, damages could not be assessed and/or understood.

---

production costs by the intentional trespasser ('the market value of the same at the mouth of the mine')." 2023-Ohio-273, ¶ 126.

While this Court finds that these experts' testimony speak to damages, this Court will nonetheless analyze whether these experts' alleged untimely disclosure is substantially justified and harmless under Rule 37. As previously discussed, the Sixth Circuit has set forth four factors to assess whether a party's late disclosure is substantially justified or harmless. *See Howe*, 801 F.3d at 747-48. This Court will discuss each *Howe* factor in turn.

### a. Surprise to Defendants

The first factor is surprise to Defendants. On the one hand, Defendants assert they are surprised that Plaintiffs used Defendants' well completion data for additional liability opinion years after the deadline for such opinions. On the other hand, Plaintiffs maintain Defendants should not be surprised given that the parties agreed to wait for discovery related to gas-in-place, estimated ultimate recovery, fracture modeling, and drainage analysis discovery until the damages phase of the case. Plaintiffs also argue Defendants should not be surprised given that their own expert stated experts like Drs. Dick and Jordan would be required to calculate damages. Specifically, the conversation with Defendants' expert went as follows:

> Q: And what method should someone use to calculate the contribution of a particular parcel in which the wellbore has penetrated?
>
> A: [Y]ou would have to look at the contribution to the actual production from individual tracts and scientifically figure out which molecules that were produced came from which acreage.
>
> Q: And you would base that upon petrophysical characteristics of the reservoir in a reserve analysis?
>
> A: I would certainly consult people who do that to ask them how they would make that determination, yes.

(ECF No. 554-1). Giving Defendants the benefit of the doubt that they are indeed surprised by recognizing the merits of Plaintiffs' arguments, this Court finds this factor neutral.

### b. The Ability of Defendants to Cure the Surprise

The second factor is the ability of Defendants to cure the surprise. Defendants maintain they cannot cure the surprise because they cannot go back in time to hire additional rebuttal liability experts; cannot re-depose Plaintiffs' fact witnesses to see if their understanding matches these experts' technical views; and cannot retroactively leverage Dr. Jordan's deposition admissions at liability summary judgment. Plaintiffs respond that Defendants had years to prepare for any potential opinions in this regard since they knew this discovery was requested, and Defendants had the opportunity to address the issue during damages discovery.

This Court finds that Defendants have adequate opportunity to remedy the surprise since they have their own liability and damages experts upon whom to rely, which include individuals with the same professional engineering degree as Drs. Dick and Jordan. Accordingly, this Court finds this factor weighs against Defendants.

### c. Whether the Evidence Would Disrupt the Trial

The third factor is whether the evidence would disrupt the trial. Defendants argue the evidence will disrupt trial because Defendants assert these experts have not actually conducted any scientific analysis as to production from Plaintiffs' property. Additionally, Defendants argue the evidence will disrupt trial if Plaintiffs intend to have them testify to what they, as non-laymen, consider the Utica Shale to be, since the relevant inquiry is what was "commonly known" as the Utica Shale. Plaintiffs argue that the evidence would not disrupt trial since Defendants had years to prepare for such opinions and had every reason to suspect that such opinions would be forthcoming as part of any damages disclosure.

This Court finds that this evidence will not disrupt trial since the trial has yet to begin and Defendants will have the opportunity to cross-examine fully these experts. *See Howe*, 801 F.3d at

749 (discussing how the retrial had not commenced and therefore defendant still had the opportunity to cross-examine witnesses). Accordingly, this Court finds this factor weighs against Defendants.

### d. *Importance of the Evidence*

The fourth factor is the importance of the evidence. Defendants argue these experts are not important to damages since they maintain the experts speak to liability and not damages. Conversely, Plaintiffs maintain that these experts do, indeed, speak to damages and set the foundation for Mr. Herzing's drainage analysis. This Court already found that the experts speak to damages and without their testimony, damages could not be assessed and/or understood. Accordingly, this Court finds this factor weighs against Defendants.

### e. *Plaintiffs' Explanation for its Failure to Disclose the Evidence.*

The fifth and final factor is Plaintiffs' explanation for its allegedly untimely disclosure of these experts. Again, Plaintiffs maintain that the experts were timely disclosed because they speak to damages. As previously explained, this Court agrees. Accordingly, this Court finds this factor weighs against Defendants.

Since the majority of the *Howe* factors weigh against Defendants and excluding an expert witness is a "drastic" sanction, Defendants' motion to exclude Drs. Dick and Jordan is **DENIED**. *See Freeland v. Amigo*, 103 F.3d 1271, 1280 (6th Cir. 1997); *see also E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1050 (E.D. Tenn. 2015) (describing the exclusion of expert testimony as an "extreme sanction").

### C. Plaintiffs' Motion to Exclude Danny Watson and Lesa Adair

#### 1. Plaintiffs' Arguments

Plaintiffs move to exclude the entirety of opinions and testimony of Danny Watson and Lesa Adair—professional engineers who were retained by Defendants to rebut the testimony of Plaintiffs' damages expert, Mr. Herzing. Plaintiffs criticize these witnesses for not performing their own analysis of the damage issues in this case, refusing to answer questions about the proper method and manner to calculate damages, and failing to provide the rationale for their critiques of Mr. Herzing. Specifically, Plaintiffs allege, despite being asked repeatedly, these experts failed to offer (1) a scientific or technical methodology by which they arrived at their criticisms, (2) a statement of any specific methodological error committed by Mr. Herzing, or (3) any specific factual or logical reason, other than the legal assumptions they were supplied by defense counsel, for their criticisms of Mr. Herzing's opinions and testimony. Overall, Plaintiffs assert these witnesses offer nothing more than *ipse dixit* statements, devoid of factual support, expert methodology, or logical reason. Plaintiffs claim these experts' testimony is improper under Rule 702, not relevant under Rule 401, or, at the least, should be excluded under Rule 403 of the Federal Rules of Evidence.

#### 2. Defendants' Arguments

Defendants respond by moving to strike what they allege is an untimely *Daubert* motion. (ECF No. 609). Defendants assert Plaintiffs' motion *in limine* is more accurately a *Daubert* motion and should have been filed by December 21, 2023 rather than January 12, 2024. Defendants argue Plaintiffs did not seek leave of court to file this motion to exclude and continue to disobey this Court's scheduling orders "without even an attempt at a perfunctory showing of good cause for their untimely filings." (ECF No. 609 at PageID 20223).

Plaintiffs respond that the August 1, 2023, Scheduling Order does not single out *Daubert* motions and, therefore, Plaintiffs believed that the deadline for *Daubert* motions was the same as the motion *in limine* deadlines. (ECF No. 628 at PageID 20564).

This Court recognizes that it made a comment regarding *Daubert* motions in the July 19, 2023 telephonic status conference (*see* ECF No. 498), but finds it was not entirely clear in its subsequent August 1, 2023 Scheduling Order in terms of what would be considered necessary to file by December 21, 2023 as a motion related to damages discovery and what would be considered necessary to file by January 12, 2024 as a motion *in limine*. This Court will not penalize Plaintiffs since this Court did not define "motions practice for damages discovery." Since this Court's Scheduling Order lacked clarity and the prejudice to Plaintiffs in granting the motion to strike would be greater than the prejudice to Defendants in denying the motion to strike, Defendants' motion to strike Plaintiffs' motion *in limine* to exclude Defendants' damages experts (ECF No. 596) is **DENIED**. Additionally, Plaintiffs' motion for leave to file said motion is **DENIED AS MOOT** since this Court will consider the motion as timely filed.

### 3. *Court's Findings and Analysis*

This Court finds Plaintiffs' arguments unavailing. Indeed, rebuttal experts can respond to the content of the original expert witness' report and opinions. *See Express Energy Servs. Operating, L.P. v. Hall Drilling LLC*, No. 2:14-cv-204, 2015 WL 3743795, at *3 (E.D. Ohio June 15, 2015); *see also* Fed. R. Civ. P. 26(a)(2)(D)(ii) (setting disclosure deadline for expert whose "evidence is intended solely to contradict or rebut evidence of the same subject matter identified by another party"). The purpose of rebuttal experts "is not to advance new arguments or new evidence outside the scope of the opposing expert's testimony." *Presidio, Inc. v. People Driven Tech., Inc.*, Nos. 2:21-cv-05779, 2:22-cv-03838, 2023 WL 5178345, at *10 (S.D. Ohio Aug. 11,

2023) (quoting *Sinomax USA, Inc. v. Am. Signature, Inc.*, No. 2:21-cv-03925, 2022 WL 7180339, at *2 (S.D. Ohio Sep. 30, 2022)). Rather, rebuttal witnesses are limited to testifying to matters addressed by the other party's witness. *Encana Oil & Gas, Inc. v. Zaremba Family Farms, Inc.*, 2015 WL 12883088, at *1 (E.D. Mich. Sep. 18, 2015) (citations omitted). So, "[r]ebuttal experts must limit the scope of their testimony to refuting the testimony of the other party's expert. *Id*. (citations omitted). If rebuttal witnesses are designated as experts and have submitted an expert report, however, they must still meet the standard in Rule 702. *Id*. (citations omitted).

Here, Plaintiffs do not dispute that these experts are qualified; rather, Plaintiffs argue that their testimony is not relevant since they did not perform their own analysis of the damage issues in this case and offer nothing but speculation as to the methodology used by Plaintiffs' expert, Mr. Herzing. This Court disagrees. Contrary to Plaintiffs' assertions, Mr. Watson and Ms. Adair, as Defendants' rebuttal witnesses, are not required to suggest alternate theories of damages or conduct independent damages calculations; instead, they are entitled to criticize Mr. Herzing's damages calculations. *See CDA of America Inc. v. Midland Life Ins. Co.*, No. 01-cv-837, 2006 WL 5349266, at *6 (S.D. Ohio Mar. 27, 2006) (collecting cases where the court allowed defendant's expert to testify as to the weaknesses in plaintiff's theory of damages without offering his own theory); *see also Tepro, Inc.*, 133 F. Supp. 3d at 1047 (defendant's rebuttal expert was not required to conduct independent statistical analysis in his role as a rebuttal expert). Since these experts' testimony is relevant to the weight and credibility of Mr. Herzing's expert damages analysis and opinions, Plaintiffs' motion to exclude their testimony is **DENIED**.

### D. Plaintiffs' Motion to Exclude Terry Payne

Plaintiffs argue that Mr. Terry Payne, who was retained as a damages rebuttal expert by Defendant Ascent Resources – Utica LLC (hereinafter "Ascent"), should be excluded from

testifying at trial because Plaintiffs settled their claims with Ascent, Ascent was dropped as a party to the lawsuit, Mr. Payne's opinions and testimony were limited to the claims against Ascent, and Mr. Payne was not cross-designated as an expert for the other Defendants in the case.Defendants Rice and Gulfport confirmed with this Court that they do not intend to call Mr. Payne as an expert witness at trial. As such, Plaintiffs' motion to exclude Mr. Payne is **DENIED AS MOOT**.

### E. Plaintiffs' Motion for Partial Summary Judgment

#### 1. *Defendants' Motion to Strike Plaintiffs' Reply Brief*

This Court will first consider Defendants' request to strike Plaintiffs' reply brief (ECF No. 606) in support of their motion for partial summary judgment. (ECF No. 609). Defendants move to strike this reply brief arguing that this Court did not authorize the parties to file reply memoranda in support of their motions for summary judgment on damages and Plaintiffs did not seek leave of court to file such a reply.

Plaintiff responds that they believed a reply brief was authorized for this dispositive motion since the local rules allow for reply briefs, the Scheduling Order was silent as to reply briefs for motions related to damages, and the Scheduling Order specifically stated reply briefs were not authorized for pretrial motions and motions *in limine*.

Plaintiffs are correct that Local Rule 7.2(a)(2) allows for reply briefs. Additionally, Plaintiffs are correct that this Court's August 1, 2023 Scheduling Order was silent on reply briefs for motions relating to damages but specifically stated reply briefs were not authorized for pretrial motions and motions *in limine*. (*See* ECF No. 493 at PageID 17036, 17042). As such, this Court will not penalize Plaintiffs for believing a reply brief was authorized for their motion for partial summary judgment. Accordingly, Defendants' motion to strike with respect to this reply brief is

**DENIED** and Plaintiffs' motion for leave to file said reply brief is **DENIED AS MOOT** since this Court will consider the reply brief.[11]

### 2.  Plaintiffs' Arguments

Plaintiffs request summary judgment particularly to the defense of good faith as it relates to the proposed offset of Plaintiffs' damages for the costs and expenses purportedly associated with the subject wells. In its Order, this Court detailed how "good faith" applies to Plaintiffs' trespass claim:

> Trespassing creates a presumption of willful conduct on the part of the trespasser and requires the defendant to prove by a preponderance of the evidence that he acted in good faith. Determining the existence of good faith is a question of fact to be arrived at by the trier of facts from all the relevant material evidence adduced in the case. Unlike in *TERA, LLC*, where the court concluded that there was only one reasonable interpretation of the Reservation Clause and therefore there were no facts by which the drilling companies could demonstrate a good faith belief in their right to drill and extract from the Point Pleasant, the parties have both presented sufficient evidence that there remains a genuine dispute as to the meaning of the phrase "commonly known as the Utica Shale."
>
> . . .
>
> Plaintiffs advance a claim for willful trespass, which creates the additional burden on Defendants to prove good faith. . . . As there exist more than one reasonable interpretation of the lease language, there also exists a genuine issue of material fact as to whether Defendants acted in good faith when drilling into the Point Pleasant.

(ECF No. 490 at PageID 16985-16988) (internal quotation marks and citations omitted).

Plaintiffs allege that Defendants have failed in their duty to come forward with evidence sufficient to submit the issue of the alleged good faith damage offsets to a jury. Plaintiffs claim this issue involves an evidentiary standard, and not a punitive damages standard as Defendants suggest. As such, Plaintiffs request that this Court issue an order precluding Defendants from

---

[11] Ultimately, this Court finds considering Plaintiffs' reply brief does not prejudice Defendants since, as explained below, this Court denies Plaintiffs' motion for partial summary judgment.

submitting their claims for damage offsets to the jury and grant Plaintiffs judgment as a matter of law against Defendants on their defenses of good faith and offsets to damages. This Court will summarize Plaintiffs' specific arguments in turn.

First, Plaintiffs argue that Defendants have the burden of proving good faith and the associated offsets they intend to claim in that regard. Plaintiffs state the offset costs are purely within Defendants' knowledge and they have not made any threshold showing of offset costs, even though they pled the affirmative defense of good faith and offset. Plaintiffs acknowledge that Ohio appellate courts have not addressed the issue as it pertains to mineral trespass, but argue that the burden falling on Defendants is consistent with Ohio's approach to crediting "operating expenses" in the context of evaluating habendum clauses that contain the requirement of production "in paying quantities." Plaintiffs claim their argument is also consistent with the rule in other jurisdictions.

Second, Plaintiffs argue that Defendants' affirmative defenses of good faith and offset require expert testimony that Defendants have not disclosed or proffered. Plaintiffs, however, cite to no authority to support this argument. During oral argument, Plaintiffs stated Defendants, and now Plaintiffs, have taken the position throughout the case that good faith compensatory damages is not just a mathematical equation that a fact witness can present to the jury based on what the financial books show; rather, an expert within the industry needs to testify whether the offsets are reasonable. Overall, Plaintiffs argue whether offset costs are reasonable is outside the kin of the jury and Defendants have not come forward with any evidence of reasonableness. Plaintiffs maintain they do not know what numbers Defendants will present to the jury or what evidence Defendants will be allowed to present to the jury regarding costs incurred in production of the gas and the reasonableness of such costs.

Third, Plaintiffs argue that they are entitled to judgment as a matter of law and dismissal of Defendants' affirmative defenses of good faith and offset. Plaintiffs cite to non-binding authority to support this argument.

Fourth, Plaintiffs argue that they are entitled to judgment as a matter of law and dismissal of Gulfport's affirmative defenses of good faith and offset as to amounts discharged in bankruptcy. Plaintiffs rely on this Court's grant of summary judgment to Gulfport regarding claims against Gulfport prior to May 17, 2021 to support this argument.

Fifth, Plaintiffs argue that they are entitled to judgment as a matter of law as to post-production costs. Plaintiffs rely on Ohio caselaw and the lack of evidence that Defendants actually incurred post-production costs to support this argument.

Overall, Plaintiffs assert that if the evidentiary presumption outlined in *Athens & Pomeroy* (i.e. that trespassing creates a presumption of willful conduct on the part of the trespasser and requires the defendant to prove by a preponderance of the evidence that he acted in good faith) is to have any "teeth," then the starting point must be that damages is the value of the gas with no offsets for costs and since Defendants have not come forward with any evidence of offsets at the pretrial stage, then they should not be allowed to present offsets to the jury at trial.

### 3. Defendants' Arguments

Defendants recognize that they have the burden to prove the affirmative defense of good faith during the liability phase of trial. Defendants, however, respond that Plaintiffs' motion for partial summary judgment is a disguised request for judgment as a matter of law that Plaintiffs are entitled to "bad faith" punitive damages. Defendants contend that Plaintiffs improperly shift the burden of proof to Defendants to prove damages when, in reality, the burden is on Plaintiffs.

Defendants cite to the Ohio Rules of Evidence and recent Ohio Supreme Court jurisprudence to support their argument.

Defendants maintain that the proper compensatory damages that Plaintiffs must prove is the value of the gas in place, which, among other methods, can be calculated by subtracting drilling and production costs from the market value of the taken gas after severance from the ground. Defendants assert that they do not have the burden of proving drilling and production costs used to calculate the value of gas in place for compensatory damages. Even if Defendants did have the burden, Defendants contend that expert testimony is not required to prove that the costs were reasonable and actually incurred. During oral argument, Defendants clarified their position, namely that expert proof is required for decline curve analysis and the volume of gas produced from Plaintiffs' individual properties, but proving costs can, indeed, come from fact witnesses. Nonetheless, Defendants state that they did offer expert opinions and testimony as to the total lease operating expenses and capital costs incurred and as to the reasonableness of such costs.

### 4. *Court's Findings and Analysis*

This Court already determined in its Order that there is a genuine issue of material fact as to whether Defendants acted in good faith when drilling into the Point Pleasant Formation. (*See* ECF No. 490 at PageID 16988). This Court does not understand Plaintiffs' request that this Court now issue a ruling that says Plaintiffs are entitled to bad faith punitive damages as a matter of law. In other words, how can this Court deprive Defendants of the benefit of offsetting damages based on good faith at the summary judgment phase when this Court ruled that the issue of whether Defendants trespassed in good faith is a question for the jury? It appears to this Court that Plaintiffs' motion is premature. Plaintiffs offer no authority that Defendants must prove good faith at the pre-trial stage.

Additionally, this Court disagrees with Plaintiffs' argument that Defendants bear the burden of proving damages and must do so through expert witnesses. As previously stated, under Ohio law, "[t]respassing creates a presumption of willful conduct on the part of the trespasser and requires the defendant to prove by a preponderance of the evidence that he acted in good faith." *TERA, LLC v. Rice Drilling D, LLC*, 2023-Ohio273, ¶ 55, 205 N.E. 3d 1168, 1184-85 (Ohio Ct. App. Jan. 18, 2023) (citing *Athens & Pomeroy Coal and Land Co. v. Tracy*, 22 Ohio App. 21, 153 N.E. 240 (1925)). That rule, however, does not imply that Defendants also bear the burden of proof with respect to damages as Plaintiffs suggest. It appears to this Court that Plaintiffs are conflating Defendants' burden when it comes to its affirmative defense of good faith with the issue of damages. Put differently, Plaintiffs seem to suggest that because there is a conclusive presumption that Defendants must put forward evidence of good faith during the liability phase of the trial, that burden carries over into the damages phase. But that is not what the law says.

Indeed, this Court is not aware of, and Plaintiffs do not provide, any binding precedent that states the burden is on defendants to prove damages and must do so through expert witnesses. The cases Plaintiffs rely on simply do not state or imply that defendants bear the burden of proof when it comes to damages and that they must prove damages through expert testimony—some do not even discuss the burden at all. *See Brady*, 115 Ohio St. 67, 77-80, 152 N.E. 188, 191-192 (1926) (discussing the proper measure of damages in an action for coal taken, not burden), *Athens & Pomeroy*, 22 Ohio App. 21, 31-36, 153 N.E. 240, 243-245 (Ohio Ct. App. 1925) (stating only that defendants bear the burden of proving by a preponderance of the evidence that they acted in good faith for a claim of subsurface trespass, not at the damages stage), *Bates*, 246 Cal. App. 2d 357, 360-362 (Cal. Ct. App. 1966) (non-binding court discussing the proper measure of damages in an action for subsurface trespass, not who bears the burden), *Bamer*, No. CA-86-17, 1987 WL 11004,

at *5 (Ohio Ct. App. May 8, 1987) (finding that defendants did not meet their burden of producing persuasive evidence of good faith and innocence in a claim for subsurface trespass).

In fact, an Ohio appellate court stated: "It is axiomatic that every plaintiff bears the burden of proving the nature and extent of his damages in order to be entitled to compensation." *Akro-Plastics v. Drake Indus.*, 115 Ohio App. 3d 221, 226, 685 N.E. 2d 246, 250 (Ohio Ct. App. 1996) (citation omitted). And Ohio courts have specified that for the specific claims in this case— trespass, conversion, and unjust enrichment—a plaintiff seeking damages bears the burden of proof by a preponderance of the evidence. *See, e.g., Allstate Fire Ins. Co. v. Singler*, 14 Ohio St. 2d 27, 29, 236 N.E. 2d 79, 81 (1968) (trespass claim); *Acme Co. v. Saunders TopSoil*, 2011-Ohio-623, ¶ 46, 2011 WL 6230529 (Ohio 2011) (conversion claim); *KN Excavation LLC v. Rockmill Brewery LLC*, 2022-Ohio-3414, ¶ 31, 196 N.E. 3d 916, 924 (Ohio Ct. App. 2022) (unjust enrichment claim). Since this Court already found there is a genuine issue of material fact as to whether Defendants acted in good faith and the arguments within Plaintiffs' motion rely on the faulty premise that Defendants bear the burden to prove damages and must do so through expert testimony, Plaintiffs' motion for partial summary judgment is **DENIED**.

## F. Defendants' Motion for Summary Judgment

### 1. Defendants' Arguments

Defendants argue that they are entitled to summary judgment because Plaintiffs failed to present a "reasonably certain" showing of their alleged damages. Specifically, Defendants argue that Plaintiffs failed to quantify the volume of gas, if any, purportedly converted from beneath their respective properties, despite having the ability to do so. Additionally, Defendants argue Plaintiffs failed to put forward any evidence of the market value of the purportedly converted gas at the wellhead. Further, Defendants argue Plaintiffs cannot avoid summary judgment with

nominal damages and, without a valid compensatory damages case, Plaintiffs cannot seek punitive damages. Finally, Defendants argue that even if this Court disagrees and finds Plaintiffs have presented "reasonably certain" damages, this Court should enter an order limiting Plaintiffs' recovery to the value of the gas in place, which Defendants argue is the local market value of the gas at the time of production, less cost of severance, post-production costs, taxes, transit, marketing, and royalties.

During oral argument, Defendants discussed key disputes between the parties: (a) the use of unitization to establish Plaintiffs' volumes; and (b) the analytical order of operations for deciding this case. This Court will summarize Defendants' arguments to each key dispute in turn.[12]

*a. Use of Unitization to Establish Plaintiffs' Volumes*

Defendants argue that with both "good faith" compensatory damages and "bad faith" punitive damages, Plaintiffs have the burden of proving the volume of gas. Defendants maintain that the full unit acreage model that Plaintiffs' expert Mr. Herzing uses relies on the fiction of unitization. Additionally, Defendants' assert Plaintiffs' two other experts Drs. Dick and Jordan could have identified Plaintiffs' volume, but did not do so in this case. As such, Defendants argue Plaintiffs made a choice and how to present their damages case and chose to do so through the fiction of unitization.

---

[12] Defendants also discussed the burden of establishing "good faith" compensatory damages, which, as stated above, this Court finds rests with Plaintiffs.

### b. The Analytical Order of Operations for Deciding this Case

Defendants argue that the proper analytical order of operations for deciding this case, based on Ohio Revised Code § 2315.21(C), *Brady*, and *Keys v. Pittsburg & W. Coal Co.*, 50 N.E. 911, 913-14 (Ohio 1898) is as follows:



### 2. Plaintiffs' Arguments

Plaintiffs respond that they have adduced sufficient admissible evidence of damages to submit the issue to the jury through their expert witnesses. Specifically, Plaintiffs state their experts have quantified the production of gas from Plaintiffs' Point Pleasant Formation and the value of the same to a reasonable degree of professional certainty.

As to Drs. Dick and Jordan, Plaintiffs argue both analyzed Defendants' records related to the subject wells and available scientific data, including geophysical well logs, microseismic studies and well completion documentation, rendered opinions as to the petrophysical characteristics of the subject. Plaintiffs argue Mr. Herzing analyzed Defendants' historical production and pricing data, the petrophysical characteristics of the reservoirs at issue, and the completions of the subject wells to render opinions as to the volume and value of the gas produced from Plaintiffs' properties, as well as the future production from Plaintiffs' properties and the present value thereof. Plaintiffs assert that scientific analysis and industry experience underly Mr. Herzing's methodology.

*3. Court's Findings and Analysis*

Defendants seem to be challenging damages as they relate to elements of the claims, as well as resulting damages if Defendants are found liable at trial. This Court will first discuss damages as they relate to elements of the claims. As discussed in the Order, damages are elements of Plaintiffs' trespass and conversion claims. (*See* ECF No. 490 at PageID 16984, 16991, 16994). This Court already found that there exists a genuine issue of material fact as to damages for Plaintiffs' conversion claim since this Court concluded there is a dispute about to whom and how the oil extracted from these pools is sold. (*Id*. at PageID 16994). This Court stated "[u]pon settlement of that dispute, the parties' experts can calculate the damages owed during the second phase of trial." (*Id*.). Since this Court already found a genuine issue of material fact as to damages as an element of the conversion claim, Defendants' motion to the extent it relates to this issue is **DENIED**.

As for Plaintiffs' trespass claim, this Court stated Plaintiffs must prove some type of physical damages or interference with use. (*See* ECF No. 490 at PageID 16984). Further, this Court stated:

> For all alleged tort claims, Plaintiffs must demonstrate that Defendants improperly infringed upon a right or benefit held by Plaintiffs as related to their specific plot of land. Plaintiffs have done so with plat maps that show wellbores crossing some of Plaintiffs' properties. As discussed *supra*, a physical invasion of Plaintiff's property by wellbores, regardless of whether the wells are in production, interferes with the reasonable and foreseeable use of the subsurface property.

(*Id*. at PageID 16988). Since this Court found that Plaintiffs satisfied the damages element of their trespass claim for wellbore-invaded properties, Defendants' motion to the extent it relates to this issue is **DENIED**.

As for resulting damages if Defendants are found liable at trial, this Court finds Plaintiffs have presented sufficient evidence such that granting summary judgment to Defendants would be inappropriate. Under Ohio law, "[a]n award of damages must be shown with a reasonable degree of certainty and in some manner other than mere speculation, conjecture, or surmise." *TERA,* LLC, 2023-Ohio-273, ¶ 70 (citation omitted). In this case, the damages requirement means Plaintiffs must demonstrate that it is possible, to a reasonable degree of scientific certainty, to determine the proportionality of the gas removed from the Point Pleasant Formation and Utica Shale. *See id* at ¶ 71. Plaintiffs have done that through Mr. Herzing.

As this Court previously explained when analyzing Defendants' motion to exclude Mr. Herzing, Mr. Herzing assessed damages based on four models, including the full acreage model, which was used at trial in *TERA, LLC* and affirmed as a proper method of damages by the Ohio appellate court. (*See* ECF No. 565-1). Mr. Herzing explains in detail in his report the data he used for his calculations and the reliability of such data. (*See id*. at PageID 18131-18134). Based on the information Mr. Herzing provided, this Court finds Plaintiffs have presented competent evidence of damages such that summary judgment in favor of Defendants is inappropriate. Accordingly, Defendants' Motion for Summary Judgment is **DENIED**.

### IV.  CONCLUSION

For the reasons explained above, Defendants' Motion to Exclude Expert Opinions of Paul Herzing and Strike His Reports (ECF No. 555) is **DENIED IN PART AND GRANTED IN PART**. Specifically, the Motion is granted only as to exclusion of opinions 5 and 8, and is denied as to all other aspects. Additionally, the following motions are **DENIED**: Defendants' Motion to Strike Untimely and Non-Harmless Expert Testimony of Jeffrey Dick and Thomas Jordan (ECF No. 538); Defendants' Motion to Strike Plaintiffs' Reply in Support of Motion for Partial Summary

Judgment and Untimely *Daubert* Motion (ECF No. 609); Plaintiffs' Motion *in Limine* Regarding

Opinions and Testimony of Danny Watson and Lesa Adair (ECF No. 596); Plaintiffs' Motion for

Partial Summary Judgment on the Defenses of Good Faith Costs and Expenses and Offset (ECF

No. 551); and Defendants' Motion for Summary Judgment (ECF No. 556).

Lastly, Plaintiffs' Motion *in Limine* Regarding Opinions and Testimony of Terry Payne

(ECF No. 598) and Plaintiffs' Motion for Leave to File their Reply Brief in Support of their Motion

for Partial Summary Judgment and Motion *in Limine* Regarding Opinions and Testimony of Danny

Watson and Lesa Adair (ECF No. 628) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: February 14, 2024**